IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-605 (KAJ) |
| | ) | |
| ABBOTT DIABETES CARE INC. and | ) | REDACTED - PUBLIC VERSION |
| ABBOTT DIABETES CARE SALES | ) | |
| CORP., | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' OPENING BRIEF IN**
**<u>SUPPORT OF THEIR MOTION TO STAY</u>**

OF COUNSEL:

Ellisen Shelton Turner
Joshua P. Glucoft
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Benjamin A. Lasky
Jon R. Carter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

Edward A. Mas II
Leland G. Hansen
Alexander M. Vogler
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 887-8000

Original filing date: May 26, 2022
Redacted filing date: July 5, 2022

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.    SUMMARY OF ARGUMENT ........................................................................... 4

IV.     FACTUAL BACKGROUND.............................................................................. 5

V.      LEGAL STANDARD ........................................................................................ 8

VI.     THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF ADC'S
        LICENSE ACTION ........................................................................................... 9

        A.      The License Action Would Simplify This Case And Could Moot It
                Entirely........................................................................................................ 9

        B.      Discovery Is in Its Infancy, With Fact Discovery Yet to Start ............................. 13

        C.      A Stay Will Not Cause DexCom Undue Prejudice Or Tactical
                Disadvantage.............................................................................................. 15

        D.      ADC Would Face Significant Inequity If Forced To Proceed With This
                Action.......................................................................................................... 17

VII.    CONCLUSION ................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care Inc. v. DexCom, Inc.*,
  C.A. No. 05-590-GMS (D. Del.), D.I. 79 ...................................................................................6

*Abbott Diabetes Care Inc. v. DexCom, Inc.*,
  C.A. No. 21-1699-KAJ ................................................................................... *passim*

*Advanced Micro Devices, Inc. v. Mediatek Inc.*,
  C.A. No. 19-70-CFC, 2019 WL 4082836 (D. Del. Aug. 29, 2019) ...........................................8

*AGIS Software Dev. LLC v. Google LLC*,
  No. 2:19-CV-00359-JRG, 2021 WL 465424 (E.D. Tex. Feb. 9, 2021) ............................14, 15

*Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*,
  755 F.2d 1559 (Fed. Cir. 1985)..................................................................................8

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
  C.A. No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020)..............................14, 15

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
  C.A. No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015)....................................13

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
  C.A. No. 18-533-RGA, 2019 WL 4098002 (D. Del. Aug. 29, 2019)..................................4, 13

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
  264 F. Supp. 2d 753 (S.D. Ind. 2003) .....................................................................11

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  C.A. No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ....................................4, 8

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012)......................................................................5, 16

*Foods, LLC v. Welbilt, Inc.*,
  C.A. No. 19-1028-CFC, 2019 WL 5626857 (D. Del. Oct. 31, 2019)......................................13

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013)...............................................................................13

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  C.A. No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019)..............................12, 13

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
    109 F.3d 1567 (Fed. Cir. 1997)................................................................................8

*Mike Murphy's Enters., Inc. v. Fineline Indus., LLC*,
    No. 1:16-CV-784-LJO-SAB, 2016 WL 6441607 (E.D. Cal. Oct. 31, 2016) .........................17

*Monterey Rsch., LLC v. Nanya Tech. Corp.*,
    C.A. No. 19-2090, 2021 WL 6502552 (D. Del. June 25, 2021)...............................13

*PACT XPP Schweiz AG v. Intel Corp.*,
    C.A. No. 19-1006-JDW, 2020 WL 13119705 (D. Del. Nov. 5, 2020)................................5, 15

*Ralph Gonnocci Revocable Living Tr. v. Three M Tool & Mach., Inc.*,
    No. 02-74796, 2003 WL 22870902 (E.D. Mich. Oct. 7, 2003)..............................15

*Schering Corp. v. Roussel-UCLAF SA*,
    104 F.3d 341 (Fed. Cir. 1997)..........................................................................8, 10

*SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*,
    C.A. No. 21-721-CFC, 2021 WL 7628181 (D. Del. Dec. 20, 2021)........................13

*Softview Comput. Prods. Corp. v. Haworth, Inc.*,
    No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ....................15

*Stryker Corp. v. Microvention, Inc.*,
    C.A. No. 21-36-CFC, D.I. 73 (D. Del. Dec. 13, 2021)............................................14

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
    C.A. No. 16-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019) ........................15

*TC Tech. LLC v. Sprint Corp.*,
    C.A. No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021) ........................14

*Uniloc 2017 LLC v. Vudu, Inc.*,
    C.A. No. 19-183-CFC, D.I. 72 (D. Del. Mar. 26, 2020)...........................................15

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    No. 12-CV-05501-SI, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015) .....................9, 15

*Witco Chem. Corp. v. Dow Chem. Co.*,
    623 F. Supp. 308 (D. Del. 1985), *aff'd*, 795 F.2d 1019 (Fed. Cir. 1986) .................8

*WTA Tour, Inc. v. Super Slam Ltd.*,
    339 F. Supp. 3d 390 (S.D.N.Y. 2018)...............................................................5, 19

*Zebra Techs. Corp. v. Typenex Med., LLC*,
    No. 18 C 4711, 2018 WL 6567076 (N.D. Ill. Dec. 13, 2018) ..............................4, 16

**Statutes**

35 U.S.C § 112 .................................................................................................................6, 12

35 U.S.C. § 314 (b) ..............................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................4

**Other Authorities**

37 CFR § 42.107(b) ..............................................................................................................3

## I.    INTRODUCTION

DexCom and both defendants are California-headquartered corporations, incorporated in Delaware—none reside in Texas.  And they have an operative agreement selecting Delaware as their "exclusive" forum for disputes.  But DexCom filed this patent infringement action in Waco, Texas, seeking patentee-favoring advantages it could get there, including "an unusual level of speed," pre-*Markman* discovery limitations that "present[] a significant disadvantage to defendants," trial dates that "beat[] the PTAB to a validity decision" and "can lead the PTAB to forgo review altogether," and "aversion to transfer."  *See* Ex. 1 (Anderson, J. et al., *Federal Judge Seeks Patent Cases*, Duke L. J. 71:419-497 (2021)) at 455, 457, 460-61.

DexCom's strategy did not work.  The Texas court rejected DexCom's decision to file the case in Waco, and transferred it here.  Yet DexCom intends to plow forward, seeking most of the same strategic advantages it would have had if the case improperly proceeded in Texas, as if the parties had no agreement at all.  DexCom has even argued almost the same Texas schedule should apply.

That is not the right result.  It would only reward and encourage more improper venue filings if a plaintiff like DexCom could, after agreeing to litigate in Delaware under Delaware procedures, and after a court orders its case belongs in Delaware, still carry the improper venue's schedule with it, and force the defendants to do the most critical briefing in a patent case in its chosen, improper venue's unique way.

Instead, this action should be stayed until the threshold license issue that caused its transfer here is decided in *Abbott Diabetes Care Inc. v. DexCom, Inc.*, C.A. No. 21-1699-KAJ ("License Action").  The Texas court transferred this case because "Defendants have shown that this lawsuit is likely covered by" DexCom's patent license to ADC in the parties' 2014 Settlement and License Agreement ("SLA"), "triggering application of the [Delaware Forum Selection

Clause]" in that agreement.  All the relevant factors favor a stay.  A stay would give faith to the parties' agreement, significantly simplify the parties' dispute and streamline the issues, reducing the significant litigation burden the parties and Court currently face.  Other courts have granted stay relief under these circumstances.  A stay also would avoid piecemeal litigation against ADC and its affiliates, as the parties agreed, all while avoiding significant prejudice to any of the parties.

And the core point of DexCom's license to ADC, and the other SLA promises DexCom broke, was to wholly prevent the bringing and maintenance of infringement suits exactly like this one and those abroad.  Failure to stay would necessarily deprive ADC of the benefit of its bargain and encourage more licensors and promisors to do the same.  Settlement agreements, and their suit-prevention protections, would effectively be dead-letter and one would be left to wonder why future litigants would ever again accept and find comfort in the types of compromises these parties reached.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

DexCom, Inc. filed this action in the United States District Court for the District of Western District of Texas (C.A. No. 6:21-cv-00690-ADA (W.D. Tex.)) on June 30, 2021, alleging that Defendants Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp. (collectively, "ADC") infringe claims of five U.S. Patents, Nos. 11,000,213 ("'213 Patent"), 10,980,452 ("'452 Patent"), 10,702,215 ("'215 Patent"), 10,702,193 ("'193 Patent"), and 10,993,642 ("'642 Patent"). D.I. 19.  DexCom accuses ADC's "FreeStyle Libre" continuous glucose monitoring technology of infringement.  DexCom also filed suits in Germany accusing the same technology of infringing other DexCom patents.  *See* License Action, D.I. 2 (D. Del. Dec. 1, 2021) (hereinafter, "License Action Complaint"), ¶¶ 49-60, Exs. H-K.

ADC moved to transfer DexCom's Texas action because it was improperly filed in Texas.  Among other reasons for transfer, ADC showed that this suit invoked a Delaware forum

selection clause in the SLA between the parties, because DexCom's asserted patent claims were already licensed under that agreement. The Texas court agreed with that basis for transfer, granting ADC's motion, and finding "Defendants have shown that this lawsuit is likely covered by the SLA, triggering application of the [Forum Selection Clause]." D.I. 105 at 9, 13.

Approximately the same time it moved to transfer DexCom's Texas case, ADC also initiated the dispute resolution procedure in the SLA, a procedure that ADC contends DexCom should have initiated before filing this action. License Action Complaint at ¶¶ 61-67. DexCom refused to engage in that procedure or to discuss ADC's license position. *Id.* at ¶¶ 68-76; *see also* Ex. 2 (10/6/2021 Letter M. Clark to A. Hollis); Ex. 3 (10/15/2021 Letter A. Hollis to M. Clark).

On December 1, 2021, ADC filed an action in this Court against DexCom for breach of the SLA and breach of the SLA's implied covenant of good faith and fair dealing, as well as a declaratory judgement of non-infringement of all of the asserted DexCom patents due to license and exhaustion. *See* License Action Complaint.

In addition, ADC filed petitions for *inter partes* review ("IPR") by the U.S. Patent and Trademark Office ("USPTO") of every asserted claim in every U.S. patent DexCom has asserted.[1] Institution decisions are expected by early November 2022.[2] If successful, these petitions would invalidate all of DexCom's asserted claims on prior art grounds, mooting this action.

---

[1]     *See* PTAB-IPR2022-00908 ('193 Patent); -00909 ('215 Patent); -00913 and -00914 ('213 Patent); -00917 and -00918 ('452 Patent); -00921 and -00922 ('642 Patent) (all filed between April 21-23, 2022).

[2]     DexCom's Patent Owner Preliminary Responses ("POPRs") to all of ADC's IPRs are due within 3 months from notice of the filings (*see* 37 CFR § 42.107(b)), and institution decisions are expected within 3 months from the filings of, or the deadlines to file, the POPRs (*see* 35 U.S.C. § 314 (b)).

The present action first appeared on this Court's docket on May 5, 2022, and is in its infancy.  D.I. 106.  ADC has yet to file an answer to DexCom's Complaint.  Before transfer, ADC moved to dismiss DexCom's induced infringement claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  D.I. 34.  That motion was not decided before transfer.  The parties exchanged initial, "preliminary" infringement and invalidity contentions and briefed claim construction issues, but did so according to the Texas court's unique procedures, which differ from this Court's procedures, and prioritized Texas caselaw over Delaware caselaw.  D.I. 89; D.I. 98; D.I. 104; D.I. 108.  No *Markman* hearing occurred.  Due to Judge Albright's unique procedures in the Western District of Texas, "[e]xcept with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery [was] stayed until after the *Markman* hearing." D.I. 51 at 2.

## III.    SUMMARY OF ARGUMENT

All the factors "[c]ourts typically rely on" "in determining whether a stay is appropriate" strongly support staying this action until the License Action is resolved first.  *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019).

(1)    **Whether a stay will simplify the issues for trial.**  Resolving whether any asserted claims are licensed to ADC "could significantly narrow the issues before this Court or even resolve the case completely" because "to the extent [there is a finding] that the [SLA] applies to even some parts of [DexCom's] claims, [it will] narrow[] the discovery and motion practice here."  *Zebra Techs. Corp. v. Typenex Med., LLC*, No. 18 C 4711, 2018 WL 6567076, at *3-4 (N.D. Ill. Dec. 13, 2018).

(2)    **Whether discovery is complete and a trial date has been set.**  "This case has barely begun," ADC has "yet to file [its] answer to [DexCom's Complaint]," this Court has

"not issued a scheduling order," "[t]he parties have done minimal discovery and no trial date has been set." *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, C.A. No. 18-533-RGA, 2019 WL 4098002, at *1 (D. Del. Aug. 29, 2019). In fact, the "minimal discovery" done to date related mainly to venue issues. The work DexCom forced the parties to do by trapping them in the wrong venue should not be counted against ADC.

(3)    **Whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.** DexCom "never sought a preliminary injunction" nor has it alleged that it is currently being irreparably harmed. *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012). "[A]ny harm that [DexCom] might suffer from a delay is monetary and insufficient to defeat a motion to stay." *PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-1006-JDW, 2020 WL 13119705, at *2 (D. Del. Nov. 5, 2020).

(4)    **Whether the moving party would face hardship or inequity in going forward with the litigation.** Allowing this action to proceed in parallel or together with the License Action would be exceedingly unjust to ADC. The whole point of the license, and DexCom's other promises, was to avoid patent suits just like this one. DexCom never should have gotten the patents asserted in this action, much less sued ADC on them, much less sued it in multiple venues spread far apart from the one DexCom agreed to, without notice and without going through the parties' agreed dispute resolution procedure. ADC has already suffered and "will suffer irreparable harm if [it is] forced to litigate [] this dispute. Even if [it] ultimately prevail[s], [it] will have lost the very benefit of the" license, "which was to avoid litigation." *E.g.*, *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 406 (S.D.N.Y. 2018).

## IV.    FACTUAL BACKGROUND

The parties are no strangers. In 2014, after 9 years of litigation, DexCom faced multiple patent infringement lawsuits brought by ADC against it in this District, asserting multiple

patents, each of which jeopardized DexCom's business and only product line. License Action Complaint, ¶ 2; Ex. 4 (DexCom Feb. 2014 10K (https://dexcom.gcs-web.com/node/13596/html), pg. 17. At the same time, DexCom's challenges to ADC's asserted patents through serial reexaminations in the USPTO had resulted in not a single patent being invalidated. *See* Ex. 5, *Abbott Diabetes Care Inc. v. DexCom, Inc.*, C.A. No. 05-590-GMS (D. Del.), D.I. 79 at 1-9; Ex. 6, *id.*, D.I. 87.

Rather than risk an infringement finding at trial, DexCom sought settlement with ADC. Facing the prospects of significant liability and a product-line injunction (*see* Ex. 4 at 17), DexCom sought dismissal of ADC's lawsuits, a license to ADC's asserted patents, and a period of patent peace through a mutual covenant-not-to-sue (*see* Ex. 7 (DexCom Feb. 2015 10K (https://investors.dexcom.com/node/14656/html) at 40). ADC agreed, and both parties signed the SLA in July 2014. License Action Complaint, Ex. B (SLA) at 1.

But there was a price paid by DexCom. Included in the agreement was a license by DexCom to almost all of its patents and applications filed worldwide before January 1, 2005, *id.* at ¶ A.13(a), plus all worldwide patents that claim priority thereto, *id.* at ¶ A.13(b). ███████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████      ████████████████████████████

――――――――――――――――――
█  ████████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████

Additionally, given the history of litigation before this Court, the parties agreed in a "Forum Selection Clause" that this Court would have "exclusive jurisdiction over any dispute arising from or under or relating to" the SLA, including whether patents were licensed.  SLA at ¶ J.4.  They also agreed that a months-long notice and dispute resolution procedure would be followed before initiating any litigation of related disputes in court.  *Id.* at ¶ J.1.

At the time, DexCom was understandably "pleased" to give these promises.  It had dodged ADC's litigation bullet.  *See* License Action Complaint, Ex. A (DexCom Inc. Q2 2014 Earnings Call (Aug. 6, 2014)) at 6.  This freedom to operate from ADC would help DexCom grow.  At the time DexCom settled the litigation its market capitalization was ~$3B and its stock price was ~$37; on May 20, 2022, its market capitalization was ~$31B with a stock price of ~$320.[4]

Yet, despite all its promises, DexCom has now asserted patents against ADC and its affiliates, ██████████████████████████████████████████ ████████████████████████████████████ License Action Complaint, ¶¶ 35-43, Exs. C-G, H-K.  Worse, DexCom asserted these licensed patents in several separate lawsuits without prior notice to ADC in places other than this Court, both in the U.S. and abroad, completely sidestepping the dispute resolution procedures in the SLA.  D.I. 1 (Complaint filed in W.D.Tex.); License Action Complaint, ¶ 49 (citing infringement claims filed by DexCom in several European

---

[4]    https://companiesmarketcap.com/dexcom/marketcap/ (last viewed May 20, 2022); https://www.macrotrends.net/stocks/charts/DXCM/dexcom/market-cap (last viewed May 20, 2022); https://investors.dexcom.com/historic-stock-lookup (last viewed May 20, 2022).

actions).  It tactically filed this action in Western District of Texas, whose rules require *Markman*

and contention work before transfer gets decided, though all the parties are headquartered far away

in California and incorporated in Delaware.   D.I. 1, ¶¶ 1, 3-4.

        And even though the Texas court rejected all of the arguments DexCom raised for why

the patents were not licensed, DexCom intends to go forward in this action asserting those patents.

## V.    LEGAL STANDARD

        "[L]icenses" are "a promise by the licensor not to sue the licensee."  *Jim Arnold*

*Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997).  If licensed, ADC "enjoy[s]

a complete defense  gainst [DexCom's] infringement claim" and this action should be dismissed.

*Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) (affirming summary

judgment of no infringement where patentee "had granted a valid license to [defendant]").  "The

claims of patent infringement [] cannot be reached [if] the [SLA] grants [ADC] a license."  *Witco*

*Chem. Corp. v. Dow Chem. Co*., 623 F. Supp. 308, 316 (D. Del. 1985), *aff'd*, 795 F.2d 1019 (Fed.

Cir. 1986).  Thus, the Federal Circuit has "recognize[d] that in cases where a license is pled as a

defense, or where the license defense is anticipated in the complaint, that ***the most expeditious***

***conduct of the trial would necessitate that the license issue be resolved first, for if the license***

***issue is resolved in defendant's favor the infringement issue is mooted***."  *Jim Arnold Corp.*, 109

F.3d at 1577 (quoting *Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1562

(Fed. Cir. 1985)) (emphasis added).

        "[T]he power to stay proceedings is incidental to the power inherent in every court

to control the disposition of the cases on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Advanced Micro Devices, Inc. v. Mediatek Inc.*, C.A. No. 19-70-CFC,

2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019).  "Courts typically rely on three factors in

determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial,

(2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Ethicon LLC*, 2019 WL 1276029, at *1 (granting stay). "Sometimes courts also consider whether the moving party would face hardship or inequity in going forward with the litigation." *Id.*

"[C]ourts have repeatedly found no undue prejudice [to a patentee] unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-CV-05501-SI, 2015 WL 435457, at *4 (N.D. Cal. Feb. 2, 2015) (citing cases).

## VI.    THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF ADC'S LICENSE ACTION

All of the factors courts typically consider favor granting ADC's motion to stay.

### A.    The License Action Would Simplify This Case And Could Moot It Entirely

The first "simplification" factor strongly favors a stay.  The License Action squarely presents the question of whether all the patent claims DexCom asserts in this action are licensed.  ADC's License Action Complaint contends that "*each* asserted claim" is "licensed under the SLA" (License Action Complaint at ¶¶ 35-43), ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████.  The motion to dismiss deadline passed and DexCom did not move to dismiss those allegations or any other aspect of the License Action's Breach of License Count (I).  *See* License Action, D.I. 26 at 1-2.  ADC intends to show in the License Action that all 60 claims DexCom asserts in this action are licensed.  All of the currently asserted claims in this action are similar to those that DexCom initially asserted, ████████████████████████████

████████████████████████████. ███████████████████████████



DexCom still disputes its patent claims are licensed.  Resolving this dispute will narrow and simplify the remaining issues.  Every asserted claim that is licensed should be dropped from this infringement action.  *See Schering Corp.*, 104 F.3d at 344.  The invalidity, claim construction, infringement, fact and expert discovery, and damages disputes about those claims would all be unnecessary.  And if one claim in an asserted patent is determined to be licensed, the rest of the claims in that patent should too because their internal differences amount to minor, conventional elements.[5]  Entire patents should drop out.  And if the asserted claims are all licensed, as ADC contends, this action should be dismissed in its entirety.  *Id.*

Simplifying this action will save significant court and party resources.  This is a big patent infringement action in need of simplification.  DexCom accuses three versions of ADC's FreeStyle Libre continuous glucose monitoring products of infringement (all undisputedly covered by ADC's SLA license).  DexCom asserts 60 patent claims spanning five patents.  Those patents vary widely in their technology, ranging from simple mechanical "sealing members" to protect electronics from moisture, to calibration techniques.  Several scientific, regulatory, and financial experts are expected to be needed by each side.

---

[5]

DexCom's preliminary infringement contentions alone comprise 715 pages of claim charts. D.I. 78, Ex. BQ (DexCom's 1st Amended Preliminary Infringement Contentions Cover and Charts). Defendants' preliminary invalidity contentions comprise a 239-page cover document and 48 invalidity claim charts spanning almost 3,000 pages. D.I. 70, Ex. 11 (ADC's Preliminary Invalidity Contentions Cover); D.I. 116 at 2. And despite this action's very early stages, the parties have at least *seven* major, unresolved claim construction and indefiniteness disputes that alone filled 90 pages of briefing to the Texas court. D.I. 89; D.I. 98; D.I. 104; D.I. 108. If ADC has a license to DexCom's claims, none of these thousands of contentions, or any discovery or disputes about them, need to ever be developed or decided.

The License Action is a much simpler case that can moot this entire action. The License Action is focused on the scope of the licensed patents in the parties' July 2014 SLA, and the harm caused by DexCom's breaches of the SLA's terms. Discovery in the License Action will be different and minimal in comparison. It will be focused on comparing the asserted claims to certain patent disclosures. Discovery about the three FreeStyle Libre products accused of infringement in this action will be negligible in comparison, if it is needed at all. *Cf. Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 753, 767 (S.D. Ind. 2003) ("The case involved only one issue on the merits—Zenith's defense of invalidity for obviousness. The case did not present any question of damages, so there was no need for expensive discovery on such matters."). Depositions will be largely limited to individuals having knowledge of the SLA and the applications and events leading to the filing and issuance of DexCom's asserted patents. In contrast, this case will inevitably require extensive discovery relating to the accused ADC products, the definition of the relevant market, the DexCom products that DexCom will rely upon for its patent damages theories, the 12 Georgia-Pacific factors used to determine reasonable royalty

damages, non-infringing alternatives to the accused technologies, the value of the accused features relative to the accused products as a whole, and how any profits should properly be apportioned between patented and unpatented features.[6]

Win or lose, a stay would still simplify the issues.  If DexCom's asserted claims are not licensed, that would dispose of ADC's license defense for those claims.  That decision would streamline the case.  Significant simplification would occur, given the SLA's definition of DexCom Licensed Patents that the parties dispute.  ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  If the license dispute is not resolved first, before this infringement and invalidity action is litigated, it cannot moot this action and its associated work.  Worse, all of the license work will need to be layered ***on top*** of the complex infringement case.  There is no party, Court, or public interest in making this case unnecessarily larger, longer, more complex, and more expensive.  The simpler, License Action should be litigated first, and this action should be stayed.

A stay makes all the more sense given the pending IPR petitions challenging the validity of every single asserted claim of the asserted patents.  Should the USPTO grant institution as expected by November 6, ADC intends to file a motion to stay this case pending the parallel IPRs.  "[D]istrict courts have frequently issued stays in cases in which IPR proceedings have been instituted."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL

---

[6]     Indeed, in comparison to its forthcoming schedule proposal for a consolidated action absent a stay to be submitted pursuant to the Court's order (*see* 5/24/2022 Minute Entry), leading to a consolidated trial in August 2024, ADC believes that a reasonable schedule to trial of the License Action alone could save up to 8 months of litigation (*see* Ex. 10 (ADC's proposed schedule for the License Action alone, leading to a trial in December 2023)).

3943058, at *9 (D. Del. Aug. 21, 2019); *see also, e.g., CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, C.A. No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (granting stay pending IPR).  There is no Court, party, or public interest in hurrying up just to wait.  Staying this infringement case pending the License Action will maximize the efficiencies that co-pending IPRs create.[7]

### B.    Discovery Is in Its Infancy, With Fact Discovery Yet to Start

The second factor, "whether discovery is complete and a trial date has been set," also heavily favors a stay.  Courts in this District have consistently held that this factor favors a stay when the motion is filed early in the case.  *See, e.g., f'real Foods, LLC v. Welbilt, Inc.,* C.A. No. 19-1028-CFC, 2019 WL 5626857, at *2 (D. Del. Oct. 31, 2019) (granting stay where "discovery [] has barely begun"); *CG Tech. Dev.*, 2019 WL 4098002, at *1 (granting stay where defendant had not filed an answer, there was no scheduling order, the "parties ha[d] done minimal discovery and no trial date ha[d] been set.").  That could not be truer of ADC's motion to stay.  ADC is filing this motion to stay just three weeks after the Texas court rejected DexCom's contentions that ADC's license defense was "frivolous," and transferred this case to its proper venue so that license defense could be resolved.  ADC has not yet needed to answer DexCom's Complaint.  This Court has not yet issued a scheduling order, and no trial date has been set.  Fact discovery was prohibited before this case was transferred.  *See* D.I. 51 at 2; D.I. 61 at 2.

---

[7]    *See Fresenius USA, Inc. v. Baxter Int'l, Inc.,* 721 F.3d 1330, 1340 (Fed. Cir. 2013) (noting that when a claim is cancelled in a parallel proceeding before the USPTO, "the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot"); *SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*, C.A. No. 21-721-CFC, 2021 WL 7628181, at *2 (D. Del. Dec. 20, 2021) (granting stay pending resolution of IPRs and CBM before fact discovery started and before a trial date was set, noting a stay "at this early stage will advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims"); *Monterey Rsch., LLC v. Nanya Tech. Corp.*, C.A. No. 19-2090, 2021 WL 6502552, at *1 (D. Del. June 25, 2021) (same).

Effort the parties invested into this case to-date does not justify denying a stay. Every investment so far was caused by DexCom's decision to set aside the parties' binding agreement and continue litigating this action in a venue it should not have. DexCom forum-shopped and chose the Western District of Texas for tactical reasons. The local rules and practices there forced the parties to go through months of contentions, claim construction briefing, and venue discovery, before ADC had any chance of escaping. DexCom chose this venue even though it was far away from all parties' headquarters and places of incorporation, and far away from the Delaware venue the parties chose in their forum selection agreement. To "count" this improperly forced investment against ADC's motion to stay would reward DexCom for its breach and for the significant harm and waste that breach has already caused.

Moreover, courts have repeatedly found that a stay is favored even when the action to be stayed was significantly farther along than this action. For example, courts in this District granted stays in actions where "a trial date ha[d] been set" and fact discovery was underway, Ex. 8, *Stryker Corp. v. Microvention, Inc.*, C.A. No. 21-36-CFC, D.I. 73 at 3 (D. Del. Dec. 13, 2021), and a motion to stay was "filed late in the pretrial period" with "claim construction and fact discovery [] completed," *TC Tech. LLC v. Sprint Corp.*, C.A. No. 16-153-WCB, 2021 WL 4521045, at *7 (D. Del. Oct. 4, 2021); *see also Brit. Telecomms. PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2020 WL 5517283, at *5 (D. Del. Sept. 11, 2020) (granting stay where "claim construction and fact discovery have been completed"). Other courts, too, have granted stays of cases with "discovery complete, pretrial briefing submitted, and jury selection pending," *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00359-JRG, 2021 WL 465424, at *3 (E.D. Tex. Feb. 9, 2021), "substantial discovery [] conducted [] witness lists and three lengthy summary judgment motions [submitted]," *Ralph Gonnocci Revocable Living Tr. v. Three M Tool & Mach.,*

*Inc.*, No. 02-74796, 2003 WL 22870902, at *4 (E.D. Mich. Oct. 7, 2003), and "extremely voluminous summary judgment motions [] served," *Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000).

    **C.**    **A Stay Will Not Cause DexCom Undue Prejudice Or Tactical Disadvantage**

    The third "prejudice or tactical disadvantage" factor automatically favors a stay because DexCom has not (and cannot) "make[] a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Verinata Health*, 2015 WL 435457, at *4. In fact, when asked during the meet-and-confer in advance of this motion what harm DexCom would suffer from a stay, DexCom's counsel responded only that DexCom has initiated a patent infringement action with patents that it thinks are not licensed, and would like to have those claims heard at the same time as the license issues. But DexCom's interest in prompt enforcement alone is "insufficient [] to establish the undue prejudice necessary to defeat a stay motion." *Brit. Telecomms.*, 2020 WL 5517283, at *6.

    Also, any harm that DexCom might suffer from a delay is monetary. Multiple decisions show monetary harm, recoverable in damages, is "not unduly prejudic[ial]" and is "insufficient to defeat a motion to stay." *PACT XPP Schweiz AG*, 2020 WL 13119705, at *2; *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706-LPS, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) (holding that staying litigation "will not unduly prejudice" a plaintiff "which may still recover monetary damages"); Ex. 9, *Uniloc 2017 LLC v. Vudu, Inc.*, C.A. No. 19-183-CFC, D.I. 72 (D. Del. March 26, 2020) (holding that a plaintiff is not "unduly prejudiced by a stay" where "any alleged harm [] is purely monetary").

    DexCom has not sought a preliminary injunction. This alone favors a stay. *See Ever Win*, 902 F. Supp. 2d at 511 (holding the fact that plaintiff "never sought a preliminary injunction" weighed in favor of staying litigation). In fact, before filing this action, DexCom

reached out to ADC multiple times seeking an extension of the mutual covenant-not-to-sue contained in the SLA.  ADC Infringement Action, D.I. 94, Ex. 1 at ¶114.

Even if delay did present some cognizable, irreparable harm to DexCom, that could be addressed by tightening the License Action's schedule.  And no harm that DexCom could allege would outweigh the other factors favoring a stay, including the judicial and party resources that would be saved, or the harm and severe prejudice to ADC if a stay is not granted, discussed below. *See* Section D, *infra*.

Zebra is instructive.  Just like in this action, the plaintiffs in *Zebra* brought a patent infringement action despite the asserted patents being arguably licensed under a settlement and license agreement that settled prior litigation, and filed the action outside of the forum agreed to in that agreement.  2018 WL 6567076, at *3.  Like ADC, the defendant filed an action in the agreed-upon venue seeking a declaration that the plaintiffs had breached and that "the claims in [the infringement] case fall within the scope of the" agreement.  *Id.*  The court stayed the patent infringement action "in favor of" the declaratory judgment action filed by the defendant, over the plaintiffs' request that the court "consider the underlying merits" of the license agreement.  *Id.* The court reasoned that it need "not delve into this merits argument" because several independent factors justified staying the patent infringement action.  *Id.*

**First**, the court reasoned that resolving the application of the license agreement "amounts to a threshold issue that a court must [] resolve before addressing the merits of [the infringement] claims."  *Id.*  **Second**, the court observed that "resolution of the threshold issue" of whether the plaintiffs' asserted patents were licensed would "reduce the burden of litigation on both the parties and the Court" and would "narrow[] the discovery and motion practice here."  *Id.* at *4.  **Third**, the court noted that a stay would not "unduly prejudice or disadvantage" the plaintiffs

because the plaintiffs had "not sought a preliminary injunction to enjoin" the defendant, and "may collect monetary damages for any infringement that occurs while the case is stayed." *Id*. at *3. All of these rationales apply equally here.

*Fineline* is also instructive. There, the court stayed a patent infringement action pending resolution of a parallel state court action alleging that the asserted patents were licensed, holding that "[i]f the state court finds that [the defendant] did assume those [license rights] [] then [the plaintiff's] patent infringement claims in this case fail"—"***[t]his alone justifies staying the case***." *Mike Murphy's Enters., Inc. v. Fineline Indus., LLC*, No. 1:16-CV-784-LJO-SAB, 2016 WL 6441607, at *2 (E.D. Cal. Oct. 31, 2016) (emphasis added). The *Fineline* court noted that permitting the plaintiff's patent infringement action and the parallel state license action to proceed at the same time "would waste judicial resources," and any harm suffered by the plaintiff during the stay "may be remedied with monetary damages," such that there was no prejudicial effect by staying the infringement action. *Id.* at *3.

A stay should be granted here for these same reasons.

**D.  ADC Would Face Significant Inequity If Forced To Proceed With This Action**

Staying this infringement action until the license dispute is resolved is the only equitable choice. Another district court has already concluded "this lawsuit is likely covered by the SLA." (D.I. 105 at 9, 13.) Despite multiple opportunities, DexCom did not contest the license showing that ADC made in its claim charts. The Texas court did not credit the only arguments against the license interpretation that DexCom made. Even applying a conservative view, these facts mean this action likely never should have been filed the way it was.

To allow this action to proceed forward, together or in parallel with the License Action's claims, would necessarily defeat the point of the license, deprive ADC of the benefit of

its bargain, and cause ADC to suffer irreparable harm. Failure to stay would also encourage more licensors like DexCom to ignore their written promises to licensees and discourage future settlements.

The whole point of DexCom's license to ADC was suit avoidance. That is what licenses are—promises not to sue. And it could not be clearer from the SLA's terms that suit avoidance was what DexCom's promises were about. DexCom's collection of SLA promises were primarily about ensuring ADC would not have to worry about getting sued by DexCom on anything that could be found in DexCom's pre-2005 patents and applications. ADC got a license to all those patents and applications, ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. And if there was any dispute about whether some patent fell inside the license's scope, ADC would not need to face surprise, piecemeal litigation in cherry-picked venues of its competitor's choice. Instead, DexCom promised that it would first give notice and go through a months-long dispute resolution procedure, including a meeting between the company's presidents, and that if any litigation was ultimately filed, it would be filed "exclusively" in Delaware.

Despite all these litigation peace promises that DexCom gave ADC about its pre-2005 patent disclosures, here DexCom is, in federal court, accusing ADC's top-selling product line of infringing ███████████████████████████████. And it is doing so in a global patent litigation that it sprung on ADC with no prior notice in venues spread out far away from the one it agreed to. ADC has already suffered and "will suffer irreparable harm if [it is] forced to litigate [] this dispute. Even if [it] ultimately prevail[s,] … [it] will have lost the very

benefit of the" license, "which was to avoid litigation." *E.g.*, *WTA Tour*, 339 F. Supp. 3d at 406 (finding irreparable harm where party would be forced to litigate rather than arbitrate). DexCom agreed "money damages may not be an adequate remedy at law" to remedy any breach, and that ADC is "entitled to seek to compel specific performance" of its SLA obligations. SLA, ¶ J.3. But it is impossible to change the past. If this infringement action is not stayed, every day that passes in the License Action will be another day permanently stolen from ADC's license. ADC could never be made whole for DexCom's breach.

Licenses are very common settlement bargaining chips. In this case, they are the chips that finally resolved a nine-year litigation against DexCom. But if *this* infringement action gets to proceed before the License Action is fully resolved, then those chips turn to dust.

## VII.    CONCLUSION

For the foregoing reasons, ADC respectfully requests the Court grant its motion to stay this case in its entirety pending resolution of the License Action.

<div style="margin-left:40%">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

</div>

OF COUNSEL:

Ellisen Shelton Turner
Joshua P. Glucoft
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Benjamin A. Lasky
Jon R. Carter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Edward A. Mas II
Leland G. Hansen
Alexander M. Vogler
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 887-8000

May 26, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 26, 2022, upon the following in the manner indicated:

John W. Shaw, Esquire                          *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

David Nelson, Esquire                          *VIA ELECTRONIC MAIL*
Nathan Hamstra, Esquire
Jonathan Studer, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL  60606
*Attorneys for Plaintiff*

Valerie Lozano, Esquire                        *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Nina S. Tallon, Esquire                        *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, D.C.  20005
*Attorneys for Plaintiff*

Alexander Rudis, Esquire                               *VIA ELECTRONIC MAIL*
Cary E. Adickman, Esquire
Alex Zuckerman, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*


                                        */s/ Rodger D. Smith II*
                                        _____
                                        Rodger D. Smith II (#3778)