IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 22-605-KAJ |
| | ) | **CONSOLIDATED** |
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ABBOTT DIABETES CARE INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 21-1699-KAJ |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND [PROPOSED] ORDER REGARDING DOCUMENT DISCOVERY

The following Order (the "Discovery Order") shall apply to all discovery of Electronically-Stored Information ("ESI") and hard-copy documents in the first, non-stayed phase of this case—including the ADC Parties' defense and declaratory judgment counterclaim of non-infringement due to license and breach counterclaims, and DexCom's defenses and counter-counterclaim thereto—from the date of this Order forward, unless the parties agree in advance and in writing or if the Order is modified by the Court.[1]  The purpose of this Order is to facilitate the exchange of ESI and hard-copy documents in an efficient manner and in accordance with the Federal Rules of Civil Procedure. By stipulating to this Order and agreeing to produce documents, generally, in a

---

[1]   If the stay of DexCom's patent infringement claims, and the ADC Parties' non-license defenses and counterclaims thereto, is lifted, the parties shall meet-and-confer at that time to agree on a discovery order to apply to that phase of the case.

particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever. All terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition).

1.      **General Provisions**.

a.      **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36 and under the Local Rules Of Civil Practice And Procedure Of The United States District Court For The District Of Delaware (last amended August 1, 2016).

b.      **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[2] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

c.      **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(i)      Absent a showing of good cause by the requesting party as to specific categories of data or specific procedures, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and

---

[2]      Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

(ii)     Absent a showing of good cause by the requesting party as to specific categories of data identified in Schedule A, the categories of ESI identified in Schedule A attached hereto need not be preserved or produced.

(iii)     If good cause is agreed by the parties or ordered by the Court, failure to have modified the back-up and archiving procedure(s) at issue or to have preserved or produced from the Schedule A category/categories at issue before the date of such agreement or order shall not constitute violation of this Order or a basis for a spoliation allegation.

d.     **Confidentiality.** The parties' designations of confidentiality are governed by the Protective Order entered in this Action (D.I. 138, 139). Nothing herein precludes the parties from seeking changes to the Protective Order in accordance with its terms.

e.     **Privilege Logs & Redaction**.

(i)     A party that withholds or redacts ESI or documents on the grounds of attorney-client privilege and/or work-product protection shall provide a privilege log in a native Excel format that contains the following for each document withheld or redacted:

(1)     A document control number (which can be a Bates number in the case of redacted documents);

(2)     A description of the subject matter of the document (which does not reveal privileged or protected information);

(3)     File type (.msg, .doc, .pdf, etc.);

(4)     Date;

(5)     Author (or sender in the case of email);

(6)     Recipient(s) (or "TO" recipients in the case of email);

(7)     CC recipient(s);

3

       (8)      BCC recipient(s);

       (9)      An indication of the privilege and/or protection being asserted (ACP, AWP, etc.).

(ii)      In the case of email, any email family where the entire family is withheld in full based on privilege grounds may be logged as a single entry, provided that the privilege description includes sufficient information to identify both the parent email and its attachments;

(iii)      The parties shall identify on their privilege logs where an author or recipient of a withheld document is an attorney (e.g., with an asterisk or similar). Where counsel creating the privilege is not readily ascertainable from the author/recipient fields, the parties shall identify involved counsel in the privilege description column.

(iv)      **Timing.** The parties shall provide a privilege log within thirty (30) days after the deadline for substantial completion of document production.

(v)      **Exceptions.** Parties are not required to log documents withheld on the basis of privilege/protection in the following categories:

       (1)      Information generated after March 31, 2021.

       (2)      Communications between the parties and their respective outside counsel involved in litigation (including inter partes review, oppositions, etc.) between the parties (and affiliated companies), including Kirkland & Ellis LLP; McAndrews, Held & Malloy, Ltd.; Taylor Wessing; Tom Mitcheson QC; Daniel Alexander QC; James Abrahams QC; Boult Wade Tennant; Mathys & Squire; Kelly Hart & Hallman; and Morris, Nichols, Arsht & Tunnell LLP for Abbott, and including Shaw Keller LLP; Keker, Van Nest & Peters LLP; Quinn Emanuel Urquhart & Sullivan, LLP; Bird & Bird LLP; Klarquist Sparkman, LLP; Wolf, Greenfield & Sacks, P.C.; Hilgers Graben PLLC; and Parker, Bunt & Ainsworth, PC for Dexcom, Inc.

       (3)      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(vi)    The parties' Fed. R. Evid. 502(d) agreement is stated in the Protective Order.

**2.     Custodian and Non-Custodian Data Source Disclosures**. Within seven (7) days after the entry of this Order, each party shall disclose:

a.    **Custodians.** Up to ten (10) custodians most likely to have discoverable information in their possession, custody, or control, ordered from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information. The receiving party shall identify four (4) of those up to ten (10) custodians whose email—along with the custodian's other relevant documents—will be produced according to the procedures and formatting requirements in paragraph 4 below. For the remaining custodians, email does not need to be produced absent a showing of good cause.

b.    **Non-Custodial Data Sources.**[3] A list of the non-custodial data sources that are most likely to contain non-duplicative, discoverable information for preservation and potential production, ordered from the most likely to the least likely.

c.    **Notice**. The parties shall identify any issues relating to:

(i)    Any ESI (by type, date, custodian, electronic system or other criteria) other than those listed in Schedule A that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

---

[3]    That is, a system or container that stores ESI, but that an individual custodian does not organize, manage, or maintain the ESI in the system or container (e.g., an enterprise system or database). For example, a network attached file share directory that is used by multiple users in a department or work group is a non-custodial data source. A network attached file space that is normally accessed only by a single user, or a local disk drive associated with a user's local or portable computer, is a custodial data source.

(ii)    Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and that is subject to foreign laws.

(iii)    Notice shall be given under this provision without prejudice to the parties' right to supplement or amend such notice to reflect information that further investigation may uncover.

**3.    Initial Discovery in Patent Litigation.** The schedule and requirements for patent disclosures are stated in the Scheduling Order (D.I. 140). Absent a showing of good cause, subsequent discovery shall be limited to a term of six (6) years before the filing of the complaint, except that discovery related to asserted prior art, conception and reduction to practice of the inventions claimed in any patent-in-suit, or the parties' July 2014 Settlement and License Agreement ("SLA") or the negotiation thereof, shall not be so limited.

**4.    Specific e-Discovery Issues.**

a.    **On-Site Inspection of Electronic Media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.    **Search Methodology.**

(i)    The parties may apply TAR or other machine filtering strategies as a mechanism to identify responsive or potentially responsive documents, but are not required to do so.

(ii)    If a TAR method is used[4] to determine responsiveness for document production, the producing party shall identify the sources and characteristics of the collection(s)

---

[4]    TAR refers to a process for prioritizing or coding a collection of ESI using a computerized system that harnesses human judgments of subject matter expert(s) on a smaller set of documents and then extrapolates those judgments to the remaining documents in the collection.

to which TAR methods were applied, the specific TAR method used to filter the collection, and the metrics used to determine the endpoint of the TAR process.

(iii)    If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose to the requesting party both the search terms and a description of the repositories to which they are being applied, including the size and characteristics of the repository. Absent a showing of good cause, a requesting party may request no more than ten (10) additional terms to be used in connection with the electronic search, which shall be proposed within five (5) business days of the receipt of the producing party's disclosure of search terms.

(iv)    The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not proportional to the needs of the case under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit. The parties agree that in the event applying the combination of search terms proposed by the producing party and the receiving party produces results of more than five-thousand (5,000) electronically stored documents for a single individual custodian, emails and all attachments included, the receiving party must propose revised search terms or narrowed search parameters resulting in five-thousand (5,000) or fewer results.

(v)    If the producing party elects to use TAR or search terms to locate potentially responsive ESI in the data of any of the four (4) custodians identified in accordance with paragraph 2(a) or any given non-custodian data source, that shall not obligate the producing party to use TAR or search terms—including the requesting party's additional terms—on any other custodian or non-custodial data source.

7

(vi)     When a requesting party requests additional terms be used in connection with an electronic search under paragraph 4(b)(iii), focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed.

(vii)     The appearance of a search term in a particular email or document shall not be dispositive of whether that document is responsive or must be produced.

(viii)     Nothing in this Order shall alter the parties' obligations under Fed. R. Civ. P. 26 or otherwise to make reasonable, proportional, and good-faith efforts to locate responsive documents (including but not limited to ESI), and to produce responsive documents of which they are reasonably aware or become aware.

 c. **Production Format for ESI**.

(i) **General Provisions.** ESI and non-ESI shall be produced to the requesting party with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number documents corresponding to a set of TIFF files should be limited to one thousand (1,000) per folder. The parties shall produce their information in the following format: black-and-white single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information, including the metadata set forth in Schedule B (subject to paragraphs 4(h–i) below). A producing party that intends to rely upon a color version of the document in any filing, hearing, deposition, or at trial must produce the document in color as a single page TIFF image, JPEG, or native file (at the

producing party's discretion). In addition, the producing party shall also produce color or native versions of PowerPoint files to the extent they are reasonably available.  Finally, the producing party shall produce color or native versions of other types of documents in response to reasonable, good faith, and proportional requests for color or native versions.

(ii)     **Document Text.** All unredacted documents should be provided with complete document-level extracted text files. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to one thousand (1,000) files.

(iii)    **Parent-Child Relationships.** For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

(iv)     **Dynamic Fields.** Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

(v)      **Time Zone.** The parties contemplate collecting ESI from multiple time zones. Accordingly, where applicable, time and date will be processed using Central Standard Time ("CST") date and time.

(vi)     **Non-Redacted Spreadsheet Files.** Spreadsheet files—including without limitation Microsoft Excel files—that do not require redactions will be produced as native files showing comments and similar data. A UNC file path must be included in the ESI load file. Additionally, a Bates-stamped *.tiff placeholder matching the Bates number of the native file must

be included in the production and reflected in the image load file. To the extent parties prefer native file redaction of spreadsheet files, the parties will meet and confer to discuss the form of production.

(vii)   **Database Records and Structured Data.** To the extent that any party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the opposing party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden. Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting party, containing fields and reference points requested by producing party to the extent they exist, are responsive, and are reasonably accessible. To the extent this production format is not feasible or causes the producing party undue burden, the parties agree to meet and confer to discuss a different form of production.

(viii)   **Embedded Files.** Embedded files are produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

(ix)   **Bates Numbering.** Files will be named according to the Bates number of the corresponding *.tiff image. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image. The Bates number will:

(1)      be consistent across the production;

(2)      contain no special characters; and

(3)      be numerically sequential within a given document.

(x)      **Load File Formats.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

(xi)      **De-duplication.** The parties shall make reasonable efforts to de-duplicate ESI. ESI shall be globally de-duplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (*i.e.*, family or stand-alone file). The names of all custodians who were in possession of a document prior to deduplication will be populated in the ALL_CUSTODIANS metadata field.

d.      **Production Format for Hard-Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth on Schedule B. Hard copy documents that are not text-searchable shall be made searchable by Optical Character Recognition (OCR) prior to production at the cost of the producing party. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The parties will make their best efforts to unitize the documents correctly.

e.      **Native Files.** Files that are not easily converted to image format, such as Excel, Access and some PowerPoint files should be produced in native format. The parties will cooperate to identify non-proprietary viewers for proprietary application files.

f.      **Production Specifications For Native Files.** When producing a file in native format, a producing party shall:

(i)      Provide a corresponding single-page TIFF placeholder stating "Document Produced in Native." The placeholder shall be branded with a Bates number and confidentiality stamp, if applicable.

(ii)      Replace the file name of the produced version of the electronic file so that it is composed of the Bates number and confidentiality designation (if any) affixed to the TIFF placeholder corresponding to the electronic file (e.g., ABC000000001_AEO.xls).

(iii)      Provide the text and metadata, including the original file name of the underlying electronic file as required by this order.

g.      **Hidden Text, Track Changes, and Speaker Notes.** With respect to Word, PDF, PowerPoint, and similar documents that contain hidden text, track changes, annotations, comments, speaker notes, or other similar data, a producing party shall have the option to produce the document (i) as TIFF images as set forth in this order using industry-standard software that will make visible hidden text, track changes, annotations, comments, or other similar data, or (ii) in native format as set forth in this order.

h.      **Metadata Fields.** The parties are only obligated to provide the metadata listed on Schedule B (to the extent reasonably available).

i.      **Preservation of Metadata.** A producing party shall use industry-standard technology and processes to ensure that metadata specified by this order is preserved during the

collection, processing, and production of documents under this order. However, the parties acknowledge that in some circumstances it may be more efficient to collect electronically stored information informally, such as by making a simple electronic copy of a file discovered during the course of a witness interview. Accordingly, a producing party may collect and produce a reasonable number of documents utilizing informal collection methods even though such collection methods may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date). Similarly, the parties acknowledge that certain documents or data may exist in electronic form (e.g., data in a database or technical documents managed by document management software) yet they are more reasonably created or collected for review and/or production in a manner that may result in the loss or alteration of metadata (if there was original metadata to begin with) or that the documents and/or data are more appropriately produced as hard copy documents. If the original metadata associated with such data or documents (if any) becomes of material importance during the course of the litigation, the parties shall meet and confer regarding how to address that issue and will promptly raise any unresolved issues with the Court.

j.      **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

**5.      Third Parties**.

a.      A party that issues a third-party subpoena (the "Issuing Party") shall include a copy of this Discovery Order with the subpoena and request that third-parties produce data and documents in accordance with the specifications set forth herein.

b.      The Issuing Party shall immediately provide a copy of the subpoena to the opposing side. A party who receives documents from a third party pursuant to a subpoena served in this matter will reproduce those documents to the opposing side within five (5) business days where practicable. When reproduction of documents within five (5) business days is not practicable, the party that received the documents will provide prompt notice to the opposing side and will work in good faith to resolve the issue on a case-by-case basis. The Issuing Party shall not be obligated to modify the format in which the files were produced from the third-party to the party receiving those documents, but may, if it chooses, reproduce the documents in the format agreed upon by the parties for their own productions. If the third-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the third-party production and Bates numbers prior to producing them to the opposing party.

c.      Nothing in this Discovery Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

<table>
<tr><td>

/s/ Rodger D. Smith II

Jack B. Blumenfeld
Rodger D. Smith II
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Abbott Diabetes Care Inc.,*
*Abbott Diabetes Care Ltd., and Abbott*
*Diabetes Sales Corp.*

</td><td>

/s/ Andrew E. Russell

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for DexCom, Inc.*

</td></tr>
</table>

Dated: September 28, 2022

14

SO ORDERED this _____ day of _____ 2022.

_____
The Honorable Kent A. Jordan

## SCHEDULE A

1.      Deleted, slack, fragmented, or other data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.      Voice messages.

7.      Text messages and other instant messages (including messages from third-party applications such as Messenger and WhatsApp) that are not ordinarily printed or maintained by a party in a server dedicated to instant messaging.

8.      Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.      Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.     Logs of calls made from mobile devices.

11.     Server, system or network logs.

12.     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

**SCHEDULE B**

The metadata fields detailed in this Schedule should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field (such as subject line, document name, etc.) contains privileged information, that privileged information may be withheld.

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Prod Vol | Production volume number | X | X | X | X | ADC001 |
| Prod Beg | Start Bates (including prefix) - - No spaces or special characters | X | X | X | X | ADC0000001 |
| Prod End | End Bates (including prefix) - No spaces or special characters; Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails | X | X | X | X | ADC0000015 |
| Prod Beg Attach | First Bates number of attachment range | X | X | X | X | ADC0000001 |
| Prod End Attach | Last Bates number of attachment range | X | X | X | X | ADC0000015 |
| Author | Original composer of document or sender of email message | | X | X | X | John Smith |
| Confidentiality | Indicates if the document is designated confidential and if so, at what level. | X | X | X | X | No, or agreed codes based on levels in the Protective Order |
| Redacted | Whether the document contains redactions | X | X | X | X | Yes/No |

1

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Custodian | Custodian(s) / source(s) - format: *Last, First* or *ABC Dept* | X | X | X | X | Last, First or non-custodial source (*e.g.*, Project XYZ Sharepoint Site) |
| All Custodians | The names of all custodians who were in possession of a document prior to deduplication | | X | X | X | Last, First; Last, First; Last, First |
| File Name | Native: Name of the original native file, including extension | | X | X | X | BoardMeeting Minutes.docx |
| Document Author | Email: (empty) Native: Author of the document /Author field value extracted from the metadata of a native file | | | X | | John Smith |
| File Path | Full original file path of the document | | X | X | X | Outlook.pst\ In box |
| Email Subject | Email or calendar subject | | X | | X | |
| Email To | Main recipient(s) of the e-mail message | | X | | X | Coffman, Janice; LeeW[mailto: LeeW@MSN. com] |
| Page Count | Number of pages in imaged document | X | X | X | X | 1 |
| Email BCC | Names of the individuals who were blind-copied on the Email (as formatted on the original) | | X | | X | ADC0000001 |
| Email From | Author of the Email or Calendar item (as formatted on the original) | | X | | X | |

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Email CC | Names of the individuals who were copied on the Email (as formatted on the original) | | X | | X | Frank Thompson [mailto: frank_Thomp son@cdt.com |
| Sent | Email: Date the email was sent Native: (empty) | | X | | X | 10/12/2010 |
| Time Sent | Time Email was sent -- Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included) / Time the e-mail message was sent. Must be separate from DateSent field | | X | | X | 8:47 AM |
| Date Created | Email: (empty) Native: Date the document was created | | | X | | 10/10/2010 |
| Date Modified | File modification date. Format: MM/DD/YYYY | | X | X | X | 10/15/2010 |
| Time Modified | File modification time. Format: HH:MM:SS AM/PM | | X | X | X | 04:43:44 AM |
| MD5HASH | MD5 Hash value of the document | | X | X | X | d131dd02c5e 6eec4693d9a0 698aff95c2fca b58712467ea b4004583eb8f b7f89 |
| Doc Link | File path location to the current native file location on the delivery medium; linked file must be named per the FIRSTBATES number | | | X | | D:\001\ ADC0000001 .msg |

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| OCR Path | Path to extracted text of the native file | | | | | TEXT/001/ADC0000001.txt |
| Attachment IDs | Child document list: BEGDOC# of each child (populated ONLY in parent records) | X | X | X | X | ADC0000002; ADC0000014 |
| File Extension | File extension of native file | | X | X | X | MSG |
| Conversation Index | Email Thread Identification | | X | | X | |
| Attach Range | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document | X | X | X | X | ADC0000001 - ADC0000015 |
| Num Attach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | | | | | |
| Record Type | Displays the record type for each entry in the load file. | | | | | Hard Copy; Email; Attachment |
| File Size | Size of native file document/email in KB; File size in Bytes (integer value only - do not include unit of measure or decimal places - e.g., 568) | | X | X | X | 5,952 |
| Date Received | Date Email was received. | | X | | X | |
| Time Received | Time Email was received. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included) | | X | | X | |

4

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Time Zone | The TimeZone from which the native file was processed | | X | X | X | CST |
| SHA1HASH | Document SHA1 hash value (used for deduplication or other processing) | | X | X | X | |
| Parent ID | Parent record's BEGDOC#, including prefix (populated ONLY in child records) | | | | | |
| Application | Application used to create native file | | X | X | X | Excel |
| Date Hard Copy | Date of hard copy documents, if coded. | X | | | | |
| Doc Date | This is a multipurpose date field. Populate with: DATESAVED for E-Docs; DATESENT for Emails; DATEAPPTSTART for calendar appointments; DATE_HC for hard copy documents, if available. | X | X | X | X | |