IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-605 (KAJ) |
| | ) | CONSOLIDATED |
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |
| ABBOTT DIABETES CARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1699 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**THE ADC PARTIES' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR A CONTINUED STAY PENDING COMPLETION OF IPRS**

TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................... 1

II.     NATURE AND STAGE OF THE CASE AND FACTUAL BACKGROUND ............... 2

III.    SUMMARY OF THE ARGUMENT ................................................................. 6

IV.     LEGAL STANDARD........................................................................................ 8

V.      ARGUMENT.................................................................................................... 8

        A.      A Stay Would Simplify The Issues For Trial ........................................ 9

        B.      Discovery Remains In Its Early Stages And No Trial Date Has Been Set .......... 12

        C.      DexCom Will Not Suffer Any Undue Prejudice Or Clear Tactical
                Disadvantage by Maintaining the Status Quo....................................... 13

VI.     CONCLUSION................................................................................................ 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
  C.A. No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ....................................15, 16

*Bio-Rad Lab'ys Inc. v. 10X Genomics, Inc.*,
  2020 WL 2849989 (D. Del. June 2, 2020)................................................................................9

*Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*,
  C.A. No. 12-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014).........................11, 14, 15

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
  C.A. No. 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019)..................................7, 8

*CallWave Commc'ns, LLC v. AT&T Mobility LLC*,
  C.A. No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015)....................................7

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
  C.A. No. 18-533-RGA, 2019 WL 4098002 (D. Del. Aug. 29, 2019)....................................11

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  C.A. No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) .............................. *passim*

*IOENGINE LLC v. Paypal Holdings, Inc.*,
  No. 18-452-WCB, 2020 WL 6270776 (D. Del. Oct. 26, 2020)................................................10

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  C.A. No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019)............................ *passim*

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
  C.A. No. 14-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015)....................................10

*Monterey Rsch., LLC v. Nanya Tech. Corp.*,
  C.A. No. 19-2090-NIQA, 2021 WL 6502552 (D. Del. June 25, 2021) ...............10, 11, 12, 14

*PACT XPP Schweiz AG v. Intel Corp.*,
  C.A. No. 19-1006-JDW, 2020 WL 13119705 (D. Del. Nov. 5, 2020).....................6, 7, 11, 15

*Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*,
  C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ...............................8

*RetailMeNot, Inc. v. Honey Sci. LLC*,
  C.A. No. 18-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 23, 2020) .................................7

*Richdel, Inc. v. Sunspool Corp.*,
    714 F.2d 1573 (Fed. Cir. 1983)..............................................................................9

*SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*,
    C.A. No. 21-721-CFC, 2021 WL 7628181 (D. Del. Dec. 20, 2021)...................................9, 13

*Stryker Corp. v. Microvention, Inc.*,
    C.A. No. 21-36-CFC, D.I. 73 (D. Del. Dec. 13, 2021)..........................................13

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
    C.A. No. 16-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019) ......................................15

*Uniloc 2017 LLC v. Vudu, Inc.*,
    C.A. No. 19- 183-CFC, D.I. 72 (D. Del. March 26, 2020)....................................15

*WSOU Investments, LLC v. Netgear, Inc.*,
    C.A. No. 21-1117-MN-CJB, D.I. 97 (D. Del. Nov. 30, 2022) .................................9

**Statutes**

35 U.S.C. § 315(b) .................................................................................................3

35 U.S.C. § 315(e) ...............................................................................................10

35 U.S.C. § 315(e)(2)...........................................................................................10

35 U.S.C. § 316(a)(11).........................................................................................5

## I.     INTRODUCTION[1]

Now that the PTAB has instituted *inter partes* review of all the asserted claims in four of five of DexCom's asserted patents due to the likelihood that those claims are unpatentable, the current stay of DexCom's patent infringement claims should be extended until the PTAB's final decisions in those proceedings.

DexCom's patent infringement claims are already stayed until the ADC Parties' license-related defense and counterclaims are resolved.  D.I. 271 at 15.  The trial of those license-related issues is scheduled for July 2023.  Extending the stay until the IPRs are decided would extend the current stay until only four months later, November 2023.  And it would achieve all the benefits that IPR stays are typically intended to achieve.

Extending the current stay until the IPRs are decided would promote "Congress's purpose in creating an *inter partes* review procedure" by "simplify[ing] proceedings before the courts and [giving] the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 3943058, at *8 (D. Del. Aug. 21, 2019) (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015)).  Whether ADC wins or loses the IPRs, the PTAB's "assessment of the art will likely be instructive in the district court litigation" for all of the asserted patents—including the single patent for which no IPR was instituted.  *Id.* at *9.  That patent is in the same family and has similar claim elements to one of the other patents for which IPRs were instituted.

---

[1]     The "ADC Parties" refers to the Defendants Abbott Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corp.  "DexCom" refers to the Plaintiff DexCom, Inc.  "SLA" refers to the Settlement and License Agreement executed in July 2014 by DexCom and Abbott Diabetes Care Inc. "IPR" refers to *inter partes* review.

DexCom will suffer no unfair prejudice, and has known that this motion would be filed for months.  The ADC Parties told the Court and DexCom back in May that they intended to file a motion to stay this case pending the parallel IPRs if they were instituted, and that intent was discussed by both the ADC Parties and DexCom at the August hearing.[2]  "Additionally, any harm due to ongoing infringement that DexCom might suffer while the DexCom Infringement Action is stayed appears to be purely monetary."  D.I. 271 at 12.  All three factors courts consider — simplification of the issues, the stage of the litigation, and unfair prejudice to the non-movant — tip the scales toward granting a stay.

DexCom took the position in the parties' meet and confer that it is possible that the jury might decide the IPR-instituted claims are licensed, leaving only the uninstituted claims, and therefore a motion to stay pending IPRs is premature until the July 2023 trial on the license issue.  But the likelihood that DexCom is asserting licensed claims against the ADC Parties should not work to DexCom's benefit and cause the rest of DexCom's infringement claims to go faster.  It does not change the analysis of the stay factors.  And waiting to deal with a stay motion until the midst of trial or right before, when the time pressures associated with trial and the expiration of the current stay are the greatest, is not a better option.  Granting a stay sooner will provide more scheduling certainty and maximize the resource-saving benefits of a stay.  The parties and the Court should not have to spend any more time or resources than necessary on assertions of licensed or invalid patents.

## II.    NATURE AND STAGE OF THE CASE AND FACTUAL BACKGROUND

DexCom initiated this litigation by suing the ADC Parties on June 30, 2021 in Waco, Texas, alleging that the ADC Parties' "FreeStyle Libre" continuous glucose monitoring

---

[2]     Ex. 1, Aug. 18, 2022 Hr'g Tr. 36:4–16, 68:6–23.

technology infringes claims of five U.S. Patents: Nos. 11,000,213 ("'213 Patent"), 10,980,452 ("'452 Patent"), 10,702,215 ("'215 Patent"), 10,702,193 ("'193 Patent"), and 10,993,642 ("'642 Patent") (the "asserted patents"). D.I. 1. The next day, DexCom initiated German infringement actions asserting four foreign patents. DexCom has now filed nine infringement suits against ADC and its affiliates in Europe. D.I. 168 ¶ 152.

After determining that DexCom's asserted patents fell within the scope of the license DexCom granted to ADC in the parties' 2014 Settlement and License Agreement, ADC followed the dispute resolution clause by asking DexCom to meet to discuss the license issue and to dismiss or transfer the case, but DexCom refused to engage. *See* D.I. 244, Exs. A to G. DexCom also refused to withdraw its infringement suit or proceed in Delaware. The ADC Parties were thus forced to file a motion to transfer with the Texas court, under that court's deadlines and procedures, to get this dispute in the parties' agreed-upon forum. After DexCom failed to engage in the meetings required by the SLA's dispute resolution procedure, ADC filed a breach of contract complaint in this Court on December 1, 2021. C.A. No. 21-1699 ("License Action"), D.I. 2.

DexCom initially asserted over 300 patent claims against the ADC Parties. It refused to agree to narrow that number, so the ADC Parties had to pursue another motion with the Texas court. The Texas court granted that motion, D.I. 57, and on November 30, 2021 DexCom dropped over 240 claims, narrowing the number of asserted claims down to 60.

DexCom's Texas infringement action triggered ADC's statutory one-year deadline to file IPR challenges against the asserted patents. 35 U.S.C. § 315(b). In April 2022, within three months after DexCom narrowed its asserted claims, ADC filed eight petitions for IPR challenging only those asserted claims and the intervening claims from which those asserted claims depend.

3

The Texas court granted the ADC Parties' motion to transfer DexCom's infringement case to this Court on May 5, 2022.  D.I. 35, 105.  Three weeks later, after meeting and conferring with DexCom, the ADC Parties moved to stay DexCom's infringement action pending resolution of ADC's License Action.  On September 19, 2022, this Court orally granted the ADC Parties' requested stay.  *See* D.I. 171 at 33:11–13.  The Court followed this with a memorandum opinion on November 29, 2022.  D.I. 271.  In the meantime, ADC refiled its breach claims as counterclaims in this action on September 2, 2022, after DexCom represented that doing so would not otherwise affect the litigation.  D.I. 168, ¶¶ 113–196.  Accordingly, "DexCom's patent infringement claims ... and ADC's invalidity and unenforceability defenses and counterclaims ... in C.A. No. 22-605 (KAJ))" are already "stayed in their entirety," "pending resolution of ADC's license-related defense and counterclaims (*i.e.,* ADC's First Defense and First through Third Counterclaims in C.A. No. 22-605 (KAJ))."  D.I. 176, ¶ 2.  A four-day trial of the licensing disputes is scheduled to begin July 10, 2023.  *Id*., ¶ 18.

DexCom's patent infringement claims were stayed in their early stages.  The parties had briefed claim construction issues, but only because of the unique procedures of the Texas court in which this case was originally (and improperly) filed by DexCom; the parties' briefing therefore prioritized Texas caselaw over Delaware caselaw.  D.I. 89; D.I. 98; D.I. 104; D.I. 108.  No *Markman* hearing has occurred.  And due to Judge Albright's unique procedures in the Western District of Texas, "[e]xcept with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery [was] stayed until after the Markman hearing."  D.I. 51 at 2.  The parties have exchanged only initial, "preliminary" infringement and invalidity contentions.  Numerous Requests for Production and Interrogatories remain outstanding, and aside from

depositions of declarants for the Texas claim construction briefing, the parties have not taken any depositions, nor has expert discovery begun, on DexCom's patent infringement claims.

Between October 31 and November 3, 2022, the PTAB instituted six of ADC's eight IPR petitions challenging all asserted claims of four of DexCom's five asserted patents (the '193, '215, '642 and '213 patents), finding that ADC had shown a reasonable likelihood of demonstrating the invalidity of at least one claim from each of those four patents.  Ex. 2, IPR2022-00908, Paper 13 at 2; Ex. 3, IPR2022-00909, Paper 13 at 2; Ex. 4 IPR2022-00913, Paper 14 at 2; Ex. 5, IPR2022-00914, Paper 14, at 2; Ex. 6, IPR2022-00921, Paper 15, at 2; Ex. 7, IPR2022-00922, Paper 13 at 2.  The PTAB declined to institute IPRs of the asserted claims of DexCom's '452 patent.  Under 35 U.S.C. § 316(a)(11), the PTAB should issue its final written decision in an *inter partes* review "not later than 1 year after the date on which the Director notices the institution of a review under this chapter."  Thus, all the IPR final written decisions are expected by no later than November 2023.

A chart summarizing ADC's IPR petitions follows:

| IPR Number | Challenged Patent | Challenged Claims | Filing Date | Institution Decision | Final Written Decision Deadline |
|---|---|---|---|---|---|
| IPR2022-00908 | '193 patent | 1–3, 11–13 | 04/21/2022 | 10/31/2022 | 10/31/2023 |
| IPR2022-00909 | '215 patent | 1–5, 12, 19, 23 | 04/21/2022 | 11/02/2022 | 11/02/2023 |
| IPR2022-00913 | '213 patent | 1, 4–6, 8, 20, 21, and 23–26 | 04/23/2022 | 11/03/2022 | 11/03/2023 |
| IPR2022-00914 | '213 patent | 49, 80, 81, 85, 86, 105, and 106 | 04/23/2022 | 11/03/2022 | 11/03/2023 |
| IPR2022-00921 | '642 patent | 1, 5, 7, 8, 66, 67, 89, and 91 | 04/23/2022 | 11/03/2022 | 11/03/2023 |
| IPR2022-00922 | '642 patent | 10, 38, and 101 | 04/23/2022 | 11/03/2022 | 11/03/2023 |
| IPR2022-00917 | '452 patent | 1, 2, 4, 7, 10–12, 14, 18–20, 22, 23, 26–28, 62–64, and 66–68 | 04/23/2022 | 11/03/2022 | N/A - Institution denied |
| IPR2022-00918 | '452 patent | 41, 42, 44, 45, and 48–50 | 04/23/2022 | 11/03/2022 | N/A - Institution denied |

If successful, the IPRs will invalidate the majority of DexCom's 60 asserted claims.

## III.    SUMMARY OF THE ARGUMENT

All three factors upon which courts typically rely in determining whether a stay pending IPRs is appropriate strongly support extending the existing stay of this case until the IPRs are decided. *See Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019) (reciting factors).

**(i)    A stay will simplify the issues for trial.** "If the PTAB invalidates all, or even some, of the claims, it will eliminate them from this case, thereby making it simpler. But even if the PTAB does not eliminate some or any of the claims, its analysis might clarify or narrow issues to be litigated in this case." *PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-1006-JDW, 2020 WL 13119705, at *1 (D. Del. Nov. 5, 2020). Courts in this District have repeatedly found "that

the simplification-of-issue-for-trial factor weighs in favor of staying [the] litigation" under these circumstances. *Id.* (citing cases).

      **(ii)**    **Discovery is nowhere near complete, and a trial date has not been set.** DexCom's infringement claims are already stayed.  There is no schedule for discovery, and no trial date has been set for those claims.  And much of the work, including "completing [fact] discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie ahead." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2019 WL 4740156, at *4 (D. Del. Sept. 27, 2019).  Courts in this District have repeatedly found that the status-of-the-litigation factor favored a stay under these circumstances, even where the case was otherwise in progress.[3]

      **(iii)**    **A stay will neither unduly prejudice nor present a clear tactical disadvantage to DexCom.**  ADC filed its IPR petitions just three months after DexCom narrowed its asserted claims from 315 to 60, and the ADC Parties brought this motion soon after its IPR petitions were instituted and over six months prior to when the current stay may expire—depending on the outcome of the license action—in July 2023.  A further stay pending the completion of IPR proceedings will not prejudice DexCom because, as with the current stay, "any harm due to ongoing infringement that DexCom might suffer while the DexCom Infringement Action is stayed appears to be purely monetary."  D.I. 271 at 12.

---

[3]    *See, e.g.*, *RetailMeNot, Inc. v. Honey Sci. LLC,* C.A. No. 18-937-CFC-MPT, 2020 WL 373341, at *6 (D. Del. Jan. 23, 2020) (status favored a stay where identification of expert testimony was six weeks away); *CallWave Commc'ns, LLC v. AT&T Mobility LLC*, C.A. No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (status favored stay where "few depositions have been taken and expert discovery has not yet begun"); *Ethicon LLC v. Intuitive Surgical, Inc*., C.A. No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019) (granting stay where "fact discovery [was] complete, and expert discovery [was] nearly concluded.").

## IV.    LEGAL STANDARD

"District courts have broad discretion to stay a proceeding."  D.I. 271 at 10 (citing *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976)). This discretion extends to stays pending IPRs.  "'[A]fter the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed.'"  *IOENGINE, LLC*, 2019 WL 3943058, at *4 (quoting *NFC Tech.*, 2015 WL 1069111, at *7).  "[E]ven when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable, particularly when the claims that are before the PTAB in an IPR are similar to those that are not."  *Id.* at *9 (citing cases).

District courts typically consider three factors when determining whether to grant a stay pending IPRs of the asserted patents: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage."  *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases).  As part of the first factor, courts in this District have further considered whether a stay will reduce the burden of litigation on the parties and on the Court.  *Brit. Telecomms.*, 2019 WL 4740156, at *3.

## V.    ARGUMENT

The stay of DexCom's patent case should be continued pending resolution of ADC's IPR proceedings.  All three factors weigh heavily in favor of granting a stay.

A.      **A Stay Would Simplify The Issues For Trial**

"The most important factor bearing on whether to grant a stay" — simplification of the issues for trial — supports granting a stay pending ADC's IPRs. *IOENGINE LLC*, 2019 WL 3943058, at *8. "Claims may be invalidated. Or invalidity defenses that would otherwise be tried are no longer available due to the statutory estoppel." *Bio-Rad Lab'ys Inc. v. 10X Genomics, Inc.*, 2020 WL 2849989, at *1 (D. Del. June 2, 2020).   Either way, "there is the potential for simplification of issues for trial." *Id.*

Now that the PTAB has instituted ADC's IPRs, there is a "very meaningful chance that the PTAB will ultimately find" all but one patent that DexCom asserts "to be invalid."[4]  Ex. 9, *WSOU Investments, LLC v. Netgear, Inc.*, C.A. No. 21-1117-MN-CJB, D.I. 97, at 2 (D. Del. Nov. 30, 2022).  A final decision that the asserted claims are invalid based on the grounds in the IPRs would moot the need to address all the parties' other infringement and invalidity disputes about those same claims. *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is nothing to be infringed.").

There are many issues in this litigation that a final written decision of invalidity in the IPRs could moot.  DexCom's preliminary infringement contentions for the patents for which IPRs were instituted comprise 391 pages of claim charts.  D.I. 78, Ex. BQ (DexCom's 1st Amended Preliminary Infringement Contentions Cover and Charts).  The ADC Parties' preliminary invalidity contentions for those same patents comprise a 239-page cover document and 26

---

[4]      The PTAB reports that 77% of instituted claims reaching a final written decision were either "disclaimed" or found "unpatentable" from Sep. 2021 until Oct. 2022. Ex. 8, PTAB Trial Statistics FY22 End of Year Outcome Roundup IPR, PGR (2022) (*available at* https://www.uspto.gov/sites/default/files/documents/ptab__aia_fy2022_roundup.pdf).   "[M]ore than 80% of final written decisions issued by the PTAB as of September 2020 resulted in the cancellation of at least one claim." *SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*, C.A. No. 21-721-CFC, 2021 WL 7628181, at *1 (D. Del. Dec. 20, 2021).

invalidity claim charts spanning almost 2,634 pages.  D.I. 70, Ex. 11 (ADC Parties' Preliminary Invalidity Contentions Cover); D.I. 116 at 2.  The PTAB's decisions could moot thousands of pages of issues.

Even if the PTAB does not invalidate some (or any) of the claims, a stay will still simplify the issues.  Once the IPR petitions "result in a final written decision," ADC will be estopped from asserting invalidity "ground[s] that [it] raised or reasonably could have raised during that inter partes review."  35 U.S.C. § 315(e); *Monterey Rsch.*, 2021 WL 6502552, at *1 n.1; *IOENGINE LLC v. Paypal Holdings, Inc.*, No. 18-452-WCB, 2020 WL 6270776, at *2 (D. Del. Oct. 26, 2020) (recognizing "certain validity issues will be eliminated from the district court litigation" due to *inter partes* review estoppel).

"Simplification is very likely" because even if claims are "neither rejected nor modified," it is likely that the PTAB's decisions "will ga[rn]er additional prosecution history that may be relevant to claim construction."  *Miics & Partners Am. Inc. v. Toshiba Corp.*, C.A. No. 14-803-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015).  Moreover, the IPRs could themselves result in claim constructions that the parties will need to address.  *See Ethicon LLC*, 2019 WL 1276029, at *2; 35 U.S.C. § 315(e)(2).  For instance, DexCom has argued in the '642 and '213 patent IPRs that "[t]he Board must resolve" the meaning of "processor."  Ex. 10, IPR2022-00921, Paper 11 at 12; Ex. 11, IPR2022-00913, Paper 10 at 12.  And, in its briefing in the '193 patent IPR, DexCom has faulted ADC for not providing claim constructions as to numerous terms.  *See, e.g.*, Ex. 12, IPR2022-00908, Paper 10 at 1–2, 7, 21.  If the case is not stayed, discovery and claim construction proceedings may need to be supplemented—if not wholly redone—to account for new, potentially pertinent information that only came about during the IPR proceedings.

A stay will also further Congress's goals in creating the IPR framework.  In its executive summary appended to the enactment of rules of practice for IPR proceedings, the USPTO noted that the "purpose of the AIA and this final rule is to establish a more efficient and streamlined patent system that [would] improve patent quality and limit unnecessary and counterproductive litigation costs." 77 F. Reg. 48680-01 (Aug. 14, 2012).  Continuing the stay will further Congress's goal to "limit unnecessary and counterproductive litigation costs" by letting the PTAB quickly and efficiently vet the invalidity issues with the asserted claims presented in the petitions before the parties dive into further costly and court-taxing litigation over those same claims.

Although an IPR was not instituted on one of the five patents in suit (the '452 patent), the simplification factor still favors a stay of the whole case.  District courts have "frequently issued stays in cases in which IPR proceedings have been instituted," even where institution was on "fewer than all the claims asserted in the litigation."  *IOENGINE, LLC*, 2019 WL 3943058, at *9 (citing cases and granting stay where PTAB granted institution on only one out of three patents-in-suit, involving only five of the 20 claims); *PACT XPP Schweiz AG*, 2020 WL 13119705, at *1-*2 (granting stay when PTAB instituted IPR on ten of twelve asserted patents); *Ethicon LLC*, 2019 WL 1276029, at *1 (granting stay where PTAB instituted IPR with respect to six out of seven patents-in-suit); *Monterey Rsch., LLC v. Nanya Tech. Corp.*, C.A. No. 19-2090-NIQA, 2021 WL 6502552, at *1 n.1 (D. Del. June 25, 2021) (granting stay where PTAB instituted IPRs on four of the six patents-in-suit); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, C.A. No. 18-533-RGA, 2019 WL 4098002, at *1 (D. Del. Aug. 29, 2019) (granting stay where PTAB instituted IPRs on three out of four patents-in-suit); *Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*, C.A. No. 12-1107-GMS, 2014 WL 1369721, at *5–*7 (D. Del. Apr. 7, 2014) (granting stay where PTAB instituted IPRs on four of six patents-in-suit).

Here, IPRs on the majority of the asserted patents were instituted and similarities exist between the institued claims and the uninstituted claims.  The '452 patent and '642 patent are part of the same family.  ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  And their claims share similarities, too, as the comparison below illustrates:

| '642 Patent, Claim 5 | '452 Patent, Claim 18 |
|---|---|
| 5. The system of claim 1, wherein the prior sensitivity information **is derived at least in part from a predictive relationship between an in vitro sensor sensitivity to glucose and an in vivo sensor sensitivity to glucose**. | 18. The system of claim 1, further comprising a memory storing calibration information for the transcutaneous analyte sensor, wherein the calibration information **is derived at least in part from a predictive relationship between in vitro sensor sensitivity to the analyte and in vivo sensor sensitivity to the analyte**. |

*Compare* Ex. 14, U.S. Patent No. 10,980,452, *with* Ex. 15, U.S. Patent No. 10,993,642. A determination in the instituted IPR that claim 5 of the '642 patent is invalid is likely to bear on validity of uninstituted claim 18 of the '452 patent, simplifying the issues.

**B.      Discovery Remains In Its Early Stages And No Trial Date Has Been Set**

"[S]tays are favored when the most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *Monterey Rsch.*, 2021 WL 6502552, at *1.  That is the case here.  DexCom's infringement claims are already stayed.  Fact discovery is not complete and expert discovery has not begun as to those

claims. A trial date has not been set for those claims, and will likely not be set for at least six months. A stay "at this early stage will advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *SITO Mobile R&D IP*, 2021 WL 7628181, at *2.

Even where cases were much more advanced than this one, and still progressing while the motion was under consideration, courts in this District have granted stays pending IPRs. For example, in *TC Tech. LLC v. Sprint Corp.*, a court granted a stay "filed late in the pretrial period" with "claim construction and fact discovery [] completed."[5] C.A. No. 16-153-WCB, 2021 WL 4521045, at *7 (D. Del. Oct. 4, 2021); Ex. 16, *Stryker Corp. v. Microvention, Inc.*, C.A. No. 21-36-CFC, D.I. 73 at 3 (D. Del. Dec. 13, 2021) (granting stay where "a trial date ha[d] been set," and fact discovery was underway).

### C.   DexCom Will Not Suffer Any Undue Prejudice Or Clear Tactical Disadvantage by Maintaining the Status Quo

To analyze whether the non-movant would suffer undue prejudice if a stay were granted, four factors are often considered: (1) the timing of the request for a stay; (2) the status of the review proceedings; and (3) the timing of the request for review; and (4) the relationship of the parties. *See IOENGINE*, 2019 WL 3943058, at *5 (citations omitted). These all favor a stay.

*(1)   The timing of the request for a stay*. The present request was filed promptly, just over six weeks after the institution decisions, including the Thanksgiving holiday, and more than six months prior to July 2023, when the trial of the licensing issues is scheduled and the current stay may expire. No work is ongoing as to DexCom's patent claims in view of that stay. More than six months ago, the ADC Parties told DexCom that "[s]hould the USPTO grant institution as

---

[5]    The Court in *TC Tech.* noted that there was a possibility that the stay might be of "modest duration" (3 months). *Id*. at *8. So too here, a stay may last only four months.

expected by November 6, ADC intends to file a motion to stay this case pending the parallel IPRs." D.I. 118 at 12. The ADC Parties have done just that. DexCom cannot claim surprise or dilatory tactics. Indeed, DexCom acknowledged ADC's intent to file this motion at an August hearing before this court. Ex. 1, Aug. 18, 2022 Hr'g Tr. 68:6–23; *see also id*. 36:4–16. An earlier request may have been premature, as "courts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted." *IOENGINE*, 2019 WL 3943058, at *6; *see also Monterey Rsch.*, 2021 WL 6502552, at *1 (finding "the timing of the request for stay suggests no dilatory motive, as Defendants filed the underlying motion to stay two months after the PTAB instituted the IPR of the '134 Patent").

If, on the other hand, this motion were delayed until a decision in the license action is reached, the parties and Court would be faced with briefing and argument in the midst of trial and post-trial briefing. Seeking to avoid such overlap, the ADC Parties have brought their motion now.

*(2)*     ***The status of the review proceedings***.  The IPRs have been instituted on schedule, and a decision is expected by November 2023. The fact that the USPTO rendered its institution decisions on time (i.e., within three months of the patent owner's response), "suggests that the PTO is proceeding with all due haste, in compliance with its statutory obligation, and weighs in favor of granting the stay." *Bonutti*, 2014 WL 1369721, at *4.

*(3)*     ***The timing of the request for review***.  ADC filed all eight of its IPR petitions just a few months after DexCom narrowed its asserted claims. DexCom narrowed the number of asserted claims from 300 to 60 on November 30, 2021. ADC filed all eight of its IPR petitions within three months of that date. D.I. 78, Ex. BQ.

Courts in this District faced with similar facts have found the timing of IPR petitions reasonable. For example, in *Bonutti Skeletal Innovations*, 2014 WL 1369721, at *3, the Court

found IPR petitions filed between eight months to exactly a year after the complaint was served to be timely, where, "[d]espite the Defendants' requests for specificity," the patentee "did not clearly state before the IPR deadline which of the hundreds of claims in its multiple patents it intended to assert."  As the Court explained, "the Defendants' use of the year-long period to attempt to determine exactly which claims Bonutti would ultimately assert was reasonable."  *Id.*; *see also Ethicon LLC*, 2019 WL 1276029, at *3 (finding wait of 11 months not unreasonable, stating patentee's "delay in narrowing its asserted claims weigh in favor of" movant).

      *(4)    The relationship of the parties*.  DexCom previously argued to this Court that it was a competitor and "a stay of DexCom's infringement claims against Abbott would extend the time that Abbott could continue its infringement and allow Abbott's later-filed infringement claims against DexCom to move forward, giving Abbott undue advantage," (D.I. 127 at 4), but the Court did not agree.  In its November 29 Opinion granting the existing stay of DexCom's infringement claims that this motion seeks to extend, the Court held that "any harm due to ongoing infringement that DexCom might suffer while the DexCom Infringement Action is stayed appears to be purely monetary."  D.I. 271 at 12.  That will remain the case for the additional months that this motion requests the stay of the same claims to last.  Monetary harm is "insufficient to defeat a motion to stay."  *PACT XPP Schweiz AG*, 2020 WL 13119705, at *2; *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706-LPS, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) (holding that staying litigation "will not unduly prejudice" plaintiff "which may still recover monetary damages"); Ex. 17, *Uniloc 2017 LLC v. Vudu, Inc.*, C.A. No. 19- 183-CFC, D.I. 72 (D. Del. March 26, 2020) (holding that plaintiff is not "unduly prejudiced by a stay" where "any alleged harm [] is purely monetary").

DexCom has furthermore never sought to enjoin the ADC Parties from the marketplace. A plaintiff "ha[ving] not sought a preliminary injunction" "favors [a] motion to stay." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, C.A. No. 08-63-SLR, 2010 WL 3522327, at *3 (D. Del. Sept. 2, 2010).[6]

## VI.   CONCLUSION

The ADC Parties respectfully request that the Court grant its motion to continue the stay of DexCom's patent infringement claims, pending resolution of the IPRs.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

———————————————————

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

---

[6]     DexCom has previously cited *Belden* for the notion that "[t]he request for a preliminary injunction is simply one (non-dispositive) indicia of the presence of direct competition," (D.I. 127 at 18), but DexCom never disputed that it is relevant to the stay analysis.  This Court noted in its recent opinion that "only recently – over a year after filing its complaint – did DexCom file a motion for a preliminary injunction."  D.I. 271 at 12.  But even that motion does not seek to take ADC's products off the market.

Leland G. Hansen
Edward A. Mas II
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

December 19, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 19, 2022, upon the following in the manner indicated:

John W. Shaw, Esquire                                         *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Nathan Hamstra, Esquire                                      *VIA ELECTRONIC MAIL*
Jonathon Studer, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 North Wacker Drive, Suite 2700
Chicago, IL  60606
*Attorneys for Plaintiff*

Valerie Lozano, Esquire                                       *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Cary E. Adickman, Esquire                                    *VIA ELECTRONIC MAIL*
Brian P. Biddinger, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*

David Bilsker, Esquire                                        *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Kevin P.B. Johnson, Esquire                          *VIA ELECTRONIC MAIL*
Margaret Shyr, Esquire
Todd M. Briggs, Esquire
Dallas Bullard, Esquire
Cat Williams, Esquire
Zak Randell, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
*Attorneys for Plaintiff*

Gavin Frisch, Esquire                                *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02119
*Attorneys for Plaintiff*

Theodore Kwong, Esquire                              *VIA ELECTRONIC MAIL*
HILGERS GRABEN PLLC
10000 North Central Expy., Suite 400
Dallas, TX  75231
*Attorneys for Plaintiff*


                              */s/ Jack B. Blumenfeld*

                              _____
                              Jack B. Blumenfeld (#1014)