IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABBOTT DIABETES CARE, INC. and
ABBOTT DIABETES CARE LIMITED,       )
                                    )
              Plaintiffs,            )
                                    )
                                    )    Civil Action No. 21-1699 (KAJ)
        v.                          )    CONSOLIDATED
                                    )    **FILED UNDER SEAL**
DEXCOM, INC.,                       )
                                    )
              Defendant.            )
_____     )
DEXCOM, INC.,                       )
                                    )
              Plaintiff,            )
                                    )    Civil Action No. 22-605 (KAJ)
        v.                          )
                                    )
ABBOTT DIABETES CARE INC. and       )
ABBOTT DIABETES SALES CORP.,        )
                                    )
              Defendants.           )

MEMORANDUM OPINION

_____

Andrew Russell, John W. Shaw, and Nathan R. Hoeschen, SHAW KELLER LLP, 1105 N. Market Street, 12th Floor, Wilmington, DE 19801, *Counsel for DexCom, Inc.*
      Of Counsel:  Nathan Hamstra, Johnathon M. Studer, Theodore D. Kwong, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP 191 N. Wacker Dr. – Ste. 2700, Chicago, IL   60606
      Valerie A. Lozano, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, 865 S. Figuerroa St. – 10th Fl., Los Angeles, CA 90017
      Nina S. Tallon, Isabel Peraza, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, 1300 I St. NW - #900, Washington, DC 20005
      Alexander Rudis, Brian P. Biddinger, Cary E. Adickman, Alex Zuckerman, Brian P. Biddinger, QUINN, EMANUEL,

URQUHART & SULLIVAN, LLP, 41 Madison Avenue, 22nd Fl., New York, NY 10010

David Bilsker, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, 50 California St. - 22nd Fl., San Francisco, CA 94111

Kevin P.B. Johnson, Margaret Shyr, Todd M. Briggs, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, 555 Twin Dolphin Dr. – 5th Fl., Redwood Shores, CA 94065

Theodore D. Kwong, HILGERS GRABEN PLLC, 10000 N. Central Expy – Ste. 400, Dallas, TX 75231

Jack B. Blumenfeld, Rodger D. Smith, II, Anthony D. Raucci,, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, 1201 N. Market Street, Wilmington, DE 19801, *Counsel for Abbott Diabetes Care, Inc., Abbott Diabetes Care Sales Corp.*

Of Counsel:  Ellisen Shelton Turner, KIRKLAND & ELLIS LLP, 2049 Century Park East – Ste. 3700, Los Angeles, CA 90067

Amanda J. Hollis, KIRKLAND & ELLIS LLP, 300 North LaSalle, Chicago, IL 60654

Benjamin A. Lasky, Jon R. Carter, KIRKLAND & ELLIS LLP, 601 Lexington Ave., New York, NY 10022

Kristina R. Cary, KIRKLAND & ELLIS LLP, 200 Clarendon St., Boston, MA 02116

Edward A. Mas II, Leland G. Hansen, Alexander M. Vogler, McANDREWS, HELD & MALLOY, LTD., 500 West Madison St. – 34th Fl., Chicago, IL 60661

---

April 12, 2023
Wilmington, Delaware

2

JORDAN, *Circuit Judge*, sitting by designation.

## I.    INTRODUCTION

Pending before me are two motions in a consolidated lawsuit between DexCom, Inc. ("DexCom") and Abbott Diabetes Care, Inc., Abbott Diabetes Care Sales Corp., and Abbott Diabetes Care Limited (collectively "Abbott"). The consolidated suit consists of two actions, the first being, Civil Action No. 22-605 (KAJ) (the "DexCom Infringement Action"), in which DexCom is suing Abbott for patent infringement of sixty claims across five of its patents (the "Asserted Patents"). The second action is Civil Action No. 21-1699 (KAJ) (the "License Action"), in which Abbott is suing DexCom for violating a licensing agreement and is seeking a declaratory judgment of non-infringement of the Asserted Patents due to license and exhaustion.[1]

In the first pending motion, Abbott has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss in the License Action DexCom's first counter-counterclaim of breach of contract and to strike DexCom's second affirmative defense of unclean hands.[2] (DexCom Infringement Action D.I. 195.) In the second motion, primarily rooted

---

[1] Abbott's claims in Abbott's License Action have since been filed as counterclaims in the DexCom Infringement Action. (D.I. 176 at ¶ 1; D.I. 279 at ¶¶ 180–206.) Given that posture, DexCom has refiled its answer, affirmative defenses, and counterclaim in the License Action as an answer, affirmative defenses, and counter-counterclaim in the DexCom Infringement Action. (D.I. 295 at ¶¶ 356–61.)

[2] The following gives a flavor of the complicated dance between the parties. DexCom filed a new Answer and Affirmative Defenses to Defendants' Amended Counterclaims, and DexCom's Counter-Counterclaim, but its first counter-counterclaim

3

in the License Action, DexCom has moved for a preliminary injunction to prevent Abbott

from proceeding with inter partes review ("IPR") of the Asserted Patents (D.I. 204).[3]

For the reasons set forth below, I will deny both motions.

## II.    BACKGROUND

The parties – both incorporated in Delaware – are direct competitors that

manufacture continuous glucose monitoring systems ("CGMs"), which help patients

suffering from diabetes to constantly track their glucose levels.  DexCom makes the G6

CGM product line and Abbott the FreeStyle Libre CGM product line.  (Abbott

Infringement Action D.I. 108 at ¶¶ 1–4, 29–35; DexCom Infringement Action D.I. 19 at

¶¶ 10, 29, 34.)  Each party accuses the others' CGMs of infringing its patents.[4]

---

of breach of contract and second affirmative defense of unclean hands is identical to its
original answer. (DexCom Infringement Action D.I. 295.)  In response, Abbott has filed
a Renewed Motion to Dismiss DexCom's First Counter-Counterclaim, and to Strike
DexCom's Second Affirmative Defense, and that motion incorporates by reference the
briefing and arguments made in support of the original motion. (DexCom Infringement
Action D.I. 306.)  Similarly, DexCom responded by opposing that renewed motion and
incorporating by reference its own prior briefing and arguments. (DexCom Infringement
Action D.I. 313.)  As the parties' arguments remain the same, I do not distinguish
between the two motions and I deny the original motion as moot.

[3] Although not at issue here, the parties have other cases against each other
pending in this court, including *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, Civil Action
No. 21-977 (KAJ) (the "First Abbott Infringement Action"), and *Abbott Diabetes Care,
Inc. v. DexCom, Inc.*, Civil Action No. 23-239 (KAJ) (the "Second Abbott Infringement
Action").  In both of those cases, Abbott is claiming that DexCom has infringed patents
belonging to Abbott.

[4] The DexCom Infringement Action, originally filed in the U.S. District Court for
the Western District of Texas, asserts infringement of five patents, and the Abbott

4

The issues I deal with here have their beginning in a prior legal battle dating back to 2005 and involving the same field of technology. After nine years of litigation, the parties entered into a Settlement and License Agreement (the "SLA") in 2014, settling their lawsuits and licensing certain patents to each other. (DexCom Infringement Action D.I. 280 at Ex. B.) The SLA contained a temporary covenant not to sue, which protected DexCom, Abbott, and the parties' affiliates from a patent infringement lawsuit brought by the opposite party. (DexCom Infringement Action D.I. 280 Ex. B at D.1–D.5.) During the covenant period, which expired on March 31, 2021, the SLA expressly prohibited both DexCom and Abbott from attempting to "Challenge" each other's patents. (DexCom Infringement Action D.I. 280 Ex. B at F.1, F.2.) A "Challenge" would include disputing the validity or scope of a patent or initiating reexamination proceedings. (DexCom Infringement Action D.I. 280 Ex. B at A.7.) The SLA did,

---

Infringement Action, filed in the U.S. District Court for the District of Delaware, asserts infringement of twelve patents. (DexCom Infringement Action D.I. 19 at ¶¶ 35–93; Abbott Infringement Action D.I. 108 at ¶¶ 36–60.) As a defense to the DexCom Infringement Action, Abbott initiated the License Action, claiming that DexCom breached a contract between the two parties by filing its infringement action and seeking a declaratory judgment of non-infringement due to patent license and exhaustion. (DexCom Infringement Action D.I. 279 at ¶¶ 180–326.) In a previous order, I stayed "DexCom's patent infringement claims, and [Abbott]'s patent invalidity and unenforceability defenses and counterclaims ... until resolution of [Abbott]'s defense and declaratory judgment counterclaim of non-infringement due to license, and [Abbott]'s breach [of contract] counterclaim[.]" (DexCom Infringement Action D.I. 176 at ¶ 2.); (see DexCom Infringement Action D.I. 271 (discussing my reasoning for staying those claims).)

however, allow the parties to initiate a "Challenge" if one of the parties asserted its

patents against the other party in violation of the SLA, or if a statute, regulation, or rule

imposed a deadline to make a "Challenge." (DexCom Infringement Action D.I. 280 Ex.

B at F.3, F.4.)

The SLA also contains a dispute resolution clause, which requires the parties to

meet and confer according to specified procedures in the event of a "dispute(s) aris[ing]

from, under or relating to [the SLA.]" (DexCom Infringement Action D.I. 280 Ex. B at

J.1.) Under that provision, if the parties followed the outlined procedures but failed to

resolve their differences within thirty days, either party could "exercise any remedies

available under this [SLA] or under law ..., including instituting litigation subject to the

forum selection clause ..." (DexCom Infringement Action D.I. 280 Ex. B at J.1.) The

forum selection clause, in turn, vests in this Court "exclusive jurisdiction over any

dispute arising from or under or relating to [the SLA], to the extent permitted by law."

(DexCom Infringement Action D.I. 280 Ex. B at J.4.)

Shortly after expiration of the covenant not to sue, the parties again sued each

other. The DexCom Infringement Action was initiated on June 30, 2021, and, within a

year of that, Abbott filed its IPR challenges in accordance with 35 U.S.C. § 315(b).[5] The

_____

[5] Section 315(b) provides that "[a]n [IPR] may not be instituted if the petition
requesting the proceeding is filed more than 1 year after the date on which the petitioner
... is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b).

Patent Trial and Appeal Board ("PTAB") initiated review of four of the five asserted

patents, and its final written decisions are expected by November 3, 2023.  (D.I. 285 at

5.)

## II.    DISCUSSION[6]

### A.    Abbott's Motion to Dismiss DexCom's Counter-Counterclaim and to Strike DexCom's Second Affirmative Defense[7]

In its counter-counterclaim, DexCom alleges that Abbott breached the SLA's

dispute resolution clause in three ways: by filing IPR petitions; by initiating a

reexamination proceeding, i.e., the IPR petitions, outside of the forum agreed upon in the

---

[6] The Court has jurisdiction over the DexCom Infringement Action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the cause of action is for patent infringement.  The Court has original and supplemental jurisdiction over Abbott's counterclaims and DexCom's counter-counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a).

[7] "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (first citation omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "In considering a Rule 12(b)(6) motion, courts must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).
    Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense[.]"  Fed. R. Civ. P. 12(f).  "When a party fails to state a corresponding claim under Rule 12(b)(6), the court may strike the associated affirmative defense under Rule 12(f).  *Baxalta Inc. v. Bayer Healthcare, LLC*, No. 17-1316-RGA, 2021 WL 7441631, at *3 (D. Del. Apr. 22, 2021) (citing *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012)).

SLA; and by not following the SLA's dispute resolution procedure. (DexCom Infringement Action D.I. 295 at ¶ 370.) DexCom's second affirmative defense of unclean hands is predicated on those same allegations. (DexCom Infringement Action D.I. 295 at ¶¶ 328–37.) According to DexCom, because Abbott breached the SLA, Abbott is "not entitled to relief with respect to [its counterclaims] that DexCom allegedly breached the SLA." (DexCom Infringement Action D.I. 295 at ¶ 337.) Abbott argues that DexCom has failed to adequately plead its counter-counterclaim of breach of contract because the SLA expressly permits the IPR challenges, and therefore the defense of unclean hands must be struck as it is based on the same allegations as are in that counterclaim. (DexCom Infringement Action D.I. 196 at 7–15.)

"In order to survive a motion to dismiss for failure to state a breach of contract claim, the [claimant] must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damages … ." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). A court may grant a motion to dismiss when the unambiguous language of the contract contradicts the allegations in the breach-of-contract claim. *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015).

Abbott contends that its IPR filings cannot have breached the SLA because the "SLA's patent 'Challenge' provisions expressly authorize the parties to respond to a patent suit by filing IPRs challenging the asserted patents." (DexCom Infringement

Action D.I. 196 at 8.)  It points to Section F, the "No Challenge Covenants and

Exceptions Thereto" provision in the SLA.  (DexCom Infringement Action D.I. 196 at 8.)

Sections F.1 and F.2 contain identical language – except F.1 applies to Abbott and F.2 to

DexCom – and state that "[d]uring the Covenant Period, except as otherwise expressly set

forth in this Section F, [Abbott/DexCom] shall not Challenge any patent or patent

application that [Abbott/DexCom] currently owns or subsequently acquires, provided that

[Abbott/DexCom] continues to be in material compliance with ... this [SLA]."  (DexCom

Infringement Action D.I. 280 Ex. B at F.1, F.2.)  Sections F.3 and F.4 provide exceptions

to those prohibitions and state as follows:

> 3.  However, each party reserves its rights and is permitted to Challenge any
> patent or patent application that is being asserted (or threatened to be
> asserted) against it or its products.

> 4.  Further, each Party reserves its rights and is permitted to Challenge any
> of the patents of the other Party if there is a statute, regulation, or rule that
> sets a deadline to make the Challenge.

(DexCom Infringement Action D.I. 280 Ex. B at F.3, F.4.)  Section F.4 also contains

enumerated examples – "without limitation" – of the types of "Challenges" it

contemplates, like Post Grant Review proceedings and opposition proceedings before

foreign patent offices, but IPRs are not specifically mentioned in that section.  (DexCom

Infringement Action D.I. 280 Ex. B at F.4.)

        As the SLA defines "Challenge" to encompass IPR proceedings, (*see* DexCom

Infringement Action D.I. 280 Ex. B at A.7), Abbott argues that its IPRs meet both

exceptions in Sections F.3 and F.4. (DexCom Infringement Action D.I. 196 at 8–11.)

First, it claims that the exception in Section F.3 – the exception that permits a Challenge

to a patent being asserted against a party – is met because "[Abbott] filed IPRs

challenging five DexCom patents only *after* DexCom asserted those patents against

[Abbott] and its [CGMs] products in this action." (DexCom Infringement Action D.I.

196 at 8.) By Abbott's lights, DexCom's filing of its lawsuit also triggered the exception

in Section F.4 – the statutory deadline to make a Challenge exception – because 35

U.S.C. § 315(b) required Abbott to file its IPR petitions within one year of DexCom

serving its infringement complaint. (DexCom Infringement Action D.I. 196 at 8 (*see* 35

U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting

the proceeding is filed more than 1 year after the date on which the petitioner ... is served

with a complaint alleging infringement of the patent.")).)

DexCom views Section F differently. (DexCom Infringement Action D.I. 206 at

9–13.) It argues that "it is unambiguous that the exceptions in Paragraphs F.3 and F.4

*only apply during the SLA's Covenant period*" because Sections F.1 and F.2 "expressly

refer to and essentially incorporate the exceptions of Paragraphs F.3 and F.4 by

reference." (DexCom Infringement Action D.I. 206 at 9 (emphasis added).) According

to DexCom, the language "[d]uring the Covenant Period, except as otherwise expressly

set forth in this Section F," contained in Sections F.1 and F.2 indicates that the

proceeding exceptions apply only during the covenant period. (DexCom Infringement

Action D.I. 206 at 9.)  It asserts that Sections F.3 and F.4's use of the words "However"

and "Further" "emphasizes that they modify the scope of the SLA Paragraphs F.1 and

F.2." (DexCom Infringement Action D.I. 206 at 10.)

 DexCom does not interpret Sections F.3 and F.4 to permit Abbott's IPRs.  Rather,

DexCom refers to Section F.3 as the "all bets are off" provision, arguing that it allows a

party to "fire all [its] missiles wherever they can be fired" if the other party is a bad actor

and violates the covenant not to sue.  (DexCom Infringement Action D.I. 307 at 29–30.)

Conversely, it argues that Section F.4 is not meant to punish a bad actor; instead, it says,

the provision contemplates "situations where there are time periods that may run" and a

party must act to preserve its rights.  (DexCom Infringement Action D.I. 307 at 30.)

According to DexCom, IPR challenges are not specifically enumerated in Section F.4

because "there's no time trigger for an IPR unless somebody actually sues." (DexCom

Infringement Action D.I. 307 at 30–31.)  It says post-grant review is, by contrast,

captured by Section F.4 because "the clock starts running as soon as the patent issues ...

[and not] when someone actually files the infringement case like the IPR." (DexCom

Infringement Action D.I. 307 at 31.)

DexCom argues that "Abbott's position ... that these provisions should be read as

being perpetually applicable (*i.e.* outside the covenant period of the SLA)" is nonsensical

because the parties would not "need to reserve the rights claimed in SLA Paragraphs F.3

and F.4 upon the expiration of the SLA's covenant not to sue" as "they could freely

11

pursue the Challenges prohibited by SLA Paragraphs F.1 and F.2[.]" (DexCom Infringement Action D.I. 206 at 11.) Instead, it is DexCom's position that, during the covenant period, the forum selection clause does not apply, as litigation is prohibited, and IPRs are permitted if a party violates the covenant not to sue. (DexCom Infringement Action D.I. 206 at 11–12; *see also* DexCom Infringement Action D.I. 307 at 20–21.) After the covenant not to sue period has expired, however, the forum selection clause applies, and IPRs of licensed patents are prohibited, as any invalidity challenges to the Asserted Patents are subject to the forum selection clause and must be brought in Delaware. (DexCom Infringement Action D.I. 206 at 11–13.)

Abbott counters that DexCom's position "makes no sense" because "it requires a conclusion that the parties intended to permit IPRs during the Covenant Period when validity challenges were generally prohibited, and then to prohibit IPRs after the Covenant Period when validity challenges were generally permitted." (DexCom Infringement Action D.I. 244 at 11.) It claims that, just as Sections F.1 and F.2 contain the language "[d]ring the Covenant Period," that language would have been included in Sections F.3 and F.4 if it was the parties' intent that IPRs were only permitted during the covenant not to sue. (DexCom Infringement Action D.I. 244 at 11.)

Abbott urges the Court to "resolve this question of contract interpretation at the motion to dismiss stage[,]" (DexCom Infringement Action D.I. 196 at 10), as "[u]nder Delaware law, the proper interpretation of language in a contract is a question of law.

12

Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language." *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006); *see also Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1211–12 (Del. 2021) (dismissing a claim based on a "commercially unreasonable" interpretation of a contract). According to Abbott, DexCom's interpretation of the SLA is "commercially unreasonable" because "it is difficult to imagine" the parties "would draft a contractual provision that would allow the parties to file IPRs during the Covenant Period when infringement suits and non-time barred validity challenges were otherwise precluded, but then hamstring them from filing IPRs outside the Covenant Period when the SLA places no restriction on validity challenges[.]" (DexCom Infringement Action D.I. 196 at 11 (cleaned up).)

Contrary to Abbott's assertions, DexCom's position is not "commercially unreasonable." Furthermore, Abbott's interpretation – that Sections F.3 and F.4 apply after the covenant period – is not as clear as Abbott suggests, because that interpretation conflicts with the forum selection clause. To read Sections F.3 and F.4 as permitting IPR challenges after the covenant period would conflict with the forum selection clause because IPR challenges are filed before the PTAB but the forum selection clause vests exclusive jurisdiction in Delaware. As Abbott identifies, "[h]ow can the forum selection clause in the same agreement preclude all IPRs, when these provisions permit them. That's conflicting provisions." (DexCom Infringement Action D.I. 307 at 17.) Abbott

tries to rectify this discrepancy by adopting a theory that the forum selection clause does not apply to invalidity challenges, like IPRs. (DexCom Infringement Action D.I. 307 at 6–7.) In its words, "[its] theory is that the forum selection clause covers disputes arising from or relating to the agreement. Infringement disputes do fall under [the forum selection clause] because infringement disputes do relate to the agreement[,]" (DexCom Infringement Action D.I. 307 at 7), but IPRs, "a patent invalidity challenge[,]" "don't relate to [the SLA,]" (DexCom Infringement Action D.I. 307 at 11).

It cannot be the case that IPRs do not relate to the SLA. The forum selection clause contains very broad language as it applies to "any dispute arising from or under or relating to this Agreement, to the extent permitted by law." (DexCom Infringement Action D.I. 280 Ex. B. at J.4.) Abbott would have me hold that only infringement suits arise from or under or relate to the SLA, and it has cautioned that I would be "the first judge to conclude that" invalidity relates to the enforcement of a patent as "no Court has held that a challenge to validity of a patent alone is enough to relate to the license agreement covering that patent." (DexCom Infringement Action D.I. 307 at 14.) But, in fact, Federal Circuit precedent supports the opposite conclusion. *See Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1005–06 (Fed. Cir. 2022) (holding that IPR petitions violated a forum selection clause because that clause covers patent or other intellectual property disputes before a court or administrative agency); *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930, 934 (Fed. Cir. 2019) (holding that IPRs are

14

prohibited by a forum selection clause that governs "any dispute *arising out of or under this Agreement*" (emphasis added) (cleaned up)); *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000) ("Thus, the governing law clause" – which covers all disputes "which may *arise from, under, out of or in connection with* th[e] [a]greement" – "necessarily covers disputes concerning patent issues.").

Abbott relies only on *Kannuu Pty Ltd. v. Samsung Elec. Co.*, 15 F.4th 1101 (Fed. Cir. 2021), to support the proposition that its IPR petitions do not arise from or under or relate to the SLA (DexCom Infringement Action D.I. 196 at 12–13), but the case actually says that patent validity is a "patent-centric consideration[] that will necessarily impact the rights under a patent license agreement." *Id.* at 1108. In that case, Kannuu and Samsung entered into a non-disclosure agreement to protect business information while engaging in business discussions about Samsung licensing Kannuu's intellectual property. *Id.* at 1104. The non-disclosure agreement contained a forum selection clause, requiring that "[a]ny legal action, suit, or proceeding arising out of or relating to this Agreement ... must be instituted exclusively ... within the Borough of Manhattan[.]" *Id.* at 1104–05. Negotiations broke down and Kannuu sued Samsung for patent infringement, to which it responded by filing IPR petitions. *Id.* The Federal Circuit rejected Kannuu's argument that the forum selection clause prohibited the IPR petitions, explaining that "an invalidated patent or non-infringement determination does not

15

change, disrupt, or otherwise impact the parties' [non-disclosure agreement] obligations." *Id.* at 1107–08.

Significantly, *Kannuu* involved a non-disclosure agreement, not a licensing agreement like the SLA. *Id.* The court in *Kannuu* specifically commented on this distinction, noting that there is a "fundamental difference between the nature of a patent license agreement and [a non-disclosure agreement]." *Id.* It went on to reaffirm its holding in *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325 (Fed. Cir. 2000), that "the forum selection clause in a *license* agreement between the parties was not limited to issues like royalties and cross-licensing but also encompassed the patent infringement lawsuit between the parties because '[p]atent infringement disputes do arise from *license* agreements[.]'" *Id.* Thus, again, *Kannuu* recognized that "adjudication[s] of patent infringement allegations *or a patent's validity* are patent-centric considerations that will necessarily impact the rights under a patent license agreement." *Id.* (emphasis added).

The present dispute is very similar to one that the Federal Circuit decided in *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998 (Fed. Cir. 2022). In *Nippon*, the parties executed a mutual confidentiality agreement, which contained a temporary covenant not to sue that included filing IPR petitions. *Id.* at 1001–02. The agreement also contained a forum selection clause that required "all Potential Actions arising under U.S. law relating to patent infringement or invalidity" be brought in federal court in Delaware. *Id.* at 1002 (emphasis removed). When the covenant not to sue

16

expired, Sarepta immediately filed several IPR petitions. *Id.* Nippon responded by filing, among other things, a breach of contract claim, alleging that the IPR petitions violated the forum selection clause, which required Sarepta to contest patent validity in Delaware. *Id.* at 1002–03. It also sought a preliminary injunction to enjoin Sarepta from pursuing its IPR petitions, but the District Court denied that motion "based on a perceived 'tension' that would exist between [the covenant not to sue] and [the forum selection clause] of the [mutual confidentiality agreement] if the forum selection clause were interpreted to preclude IPRs." *Id.* at 1003. The Federal Circuit reversed, holding that there was no conflict or tension between the two provisions. *Id.* at 1006. It noted that, during the covenant period, the provision "broadly prohibited the parties from litigating any issue relating to patents, regardless of the forum." *Id.* at 1007. After the period expired, however, the "covenant not to sue was no longer in effect, and the parties were thus no longer prohibited from asserting claims relating to patent infringement or invalidity. At that point ... [the] forum selection clause merely required that [patent infringement or invalidity] claims ... be filed in ... Delaware." *Id.*

In light of those aforementioned cases, DexCom's interpretation of the SLA is not "commercially unreasonable." On the contrary, and on this record, it seems odd to say that the forum selection clause requires a patent infringement dispute to be brought in Delaware but it allows an invalidity challenge to be brought elsewhere. Yet it is plausible for the parties to have contemplated entering a contract that prohibited all lawsuits but

17

allowed IPR petitions to be filed if a party breached the contract, and then, after the prohibition ended, require any patent-related disputes to be brought in Delaware.[8]

Abbott seemingly recognizes that DexCom's position is not so unreasonable, as it first urged the Court to "resolve this question of contract interpretation at the motion to dismiss stage[,]" (DexCom Infringement Action D.I. 196 at 10), but then later cautioned the Court that "[a]t the very least, DexCom's interpretation is not 'indisputably clear,' and any doubt should not be resolved on an interlocutory motion[,]" (DexCom Infringement Action D.I. 244 at 12). On that later point, the Court agrees. Although I

---

[8] Abbott raises two additional arguments in support of its motion to dismiss, but both are without merit. In the first, raised at oral argument, Abbott asserts that "[i]f the forum selection clause really did mean that validity challenges to licensed patents under this agreement have to go to Delaware" then DexCom should not be filing "challenge after challenge" against Abbott's patents in the European Patent Office relating to overseas litigation between the two parties. (DexCom Infringement Action D.I. 307 at 48.) But the forum selection clause vests jurisdiction in Delaware "to the extent permitted by law[,]" (DexCom Infringement Action D.I. 280 Ex. B at J.4) and United States courts do not have the authority to make determinations of invalidity of foreign patents. *See Voda v. Cordis Corp.*, 476 F.3d 887, 899 (Fed. Cir. 2007) ("The Paris Convention thus clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents.") Thus, DexCom's foreign patent challenges could not be brought in Delaware, so their foreign patent challenges are not inconsistent with its reading of the SLA.

Second, Abbott asserts that DexCom's counter-counterclaim is predicated on a "conten[tion]" by Abbott, rather than whether Abbott has actually violated the SLA. (DexCom Infringement Action D.I. 196 at 14–15.) Not so. DexCom's counter-counterclaim notes Abbott's contentions about the SLA and states that the breach of contract claim is being brought "[u]nder [Abbott]'s interpretation of the SLA." (DexCom Infringement Action D.I. 206 at 17–18.) Alleging that, if Abbott's interpretation of the SLA is correct, then Abbott has breached the contract is a form of alternative pleading, and Abbott cites no cases stating that alternative pleading is a basis to dismiss a claim. (DexCom Infringement Action D.I. 196 at 14–15.)

agree that patent validity challenges, like IPRs, relate to the SLA, I will not resolve which parties' interpretation of Sections F.3 and F.4 of the SLA is correct on this interlocutory motion; rather, I hold that DexCom's position is not so "commercially unreasonable" that their breach of contract claim warrants dismissal.

As Abbott admits that its motion to strike DexCom's second affirmative defense of unclean hands "fall[s] together" with its motion to dismiss, the motion to strike is also denied. (DexCom Infringement Action D.I. 196 at 17 (*see also* DexCom Infringement Action D.I. 307 at 24 ("[I]f [the Court is] with [Abbott] that the breach claim is not plausible and must be dismissed, so must the affirmative defense, because it hinges on the same theory.")).)

### B.    DexCom's Motion for a Preliminary Injunction[9]

Relying on its same theory that the SLA prohibits the parties from filing IPRs, as discussed above, DexCom seeks a preliminary injunction to enjoin Abbott from pursuing its IPR petitions.[10]  (DexCom Infringement Action D.I. 205 at 1–2.)

---

[9] "Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'"  *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).  To obtain such relief, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[10] Abbott urges the Court to characterize DexCom's motion for a preliminary injunction as a mandatory injunction because the relief "DexCom seeks would change the status quo by commanding [Abbott] to take the affirmative … action of 'withdraw[ing]'

       1.     *DexCom Has Demonstrated a Likelihood of Success on the Merits*

DexCom must demonstrate that it is likely that the forum selection clause bars

Abbott's IPR petitions. *See Dodocase*, 767 F. App'x at 935 ("We therefore affirm the

district court's holding on the first preliminary injunction requirement that Dodocase was

likely to succeed on the merits of its claim that MerchSource violated the forum selection

clause of the [license agreement] by filing the PTAB petitions."); *Gen. Protecht Grp.,*

*Inc. v. Leviton Mfg. Co*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) (holding that "whether [the

movant] is likely to succeed on the merits of applying the forum selection clause depends

on whether" the dispute is covered by that clause); *Texas Instruments*, 231 F.3d at 1331–

32 (holding that the movant demonstrated a likelihood of success on the merits that a

governing law clause prohibited International Trade Commission proceedings).  On this

factor, DexCom and Abbott repeat the same two arguments discussed above: first,

whether challenges to patent validity relate to the License Agreement such that IPRs are

covered by the forum selection clause, and second, whether Sections F.3 and F.4 of the

---

its IPR petitions."  (DexCom Infringement Action D.I.244 at 8.)  "An injunction is
'mandatory' if such an injunction would 'alter the status quo by commanding some
positive act.'"  *Doe v. Delaware State Univ. Bd. of Trs.*, No. CV 20-1599 (MN), 2021
WL 2036670, at *2 (D. Del. May 21, 2021).  The party seeking a mandatory injunction
bears a "particularly heavy" burden, and their right to relief must be "indisputably clear."
*Id.*  I need not decide whether a heavier burden rests on DexCom, however, because I
will deny DexCom's motion under the ordinary and well-established preliminary
injunction standard.

SLA permit the IPR petitions.  *See supra* Part A.  (DexCom Infringement Action D.I. 205 at 7–11; D.I. 244 at 8–15.)

As stated above, I agree with DexCom that challenges to patent validity, such as IPRs, relate to the SLA, but decline to resolve at this time whether Sections F.3 and F.4 permit the IPR petitions.  I can assume, for the purpose of the preliminary injunction motion, that DexCom's interpretation of Sections F.3 and F.4 is correct, and that it has a likelihood of winning on the merits of the question of whether the forum selection clause prohibits Abbott's IPR petitions.

### 2.    *DexCom Cannot Demonstrate Irreparable Harm*

Absent a preliminary injunction, DexCom argues that it "will suffer irreparable harm because it will be deprived of its bargained-for benefit of the [forum selection clause], and because it will be forced to litigate the same issues on multiple fronts at the same time."  (DexCom Infringement Action D.I. 205 at 11.)  It points out that, given the scheduling in this case, it "will be unable to timely seek the relief sought in its breach of contract counter-counterclaim" because of the "very real possibility" that the PTAB issues its IPR decisions – which are due by November 2023 – before the scheduled July 2023 trial.  (DexCom Infringement Action D.I. 205 at 12–13.)  But Abbott asserts that "[t]he harms DexCom alleges are self-inflicted" because it "sat on its hands for ***over five months*** before raising its claim that those IPRs breached, and for ***over six months*** before moving for emergency relief."  (DexCom Infringement Action D.I. 244 at 15–16.)  In

21

Abbott's words, "[h]ow could [DexCom] voluntarily agree to let those types of IPRs happen and then suddenly it is irreparable harm a few months later after they voluntarily agreed to it ... they actively participated in the IPRs that they claim are so harmful during that period of delay." (DexCom Infringement Action D.I. 307 at 73–74.)

DexCom stresses that its delay "does not apply" to the irreparable harm analysis because the "harm comes in the PTAB making a decision on validity based on a lower standard [of proof] than we have [in the district court]." (DexCom Infringement Action D.I. 307 at 67.) Conversely, it argues that there was no delay because DexCom filed its preliminary injunction motion shortly after Abbott filed its motion to dismiss DexCom's breach of contract counter-counterclaim. (DexCom Infringement Action D.I. 261 at 6–7.)

While it is a close question, I think Abbott has the better of this argument. DexCom did delay in requesting a preliminary injunction. It litigated in the PTAB for half a year before declaring that it needed emergency relief. That goes a long way to "negat[ing] the idea of irreparability." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2002). Although DexCom says the harm it faces stems from the PTAB making a validity determination based on a lower standard of proof, DexCom obviously knew of that potential harm as soon as it learned about Abbott's IPR petitions, and it could have acted accordingly. Nothing about Abbott's motion to dismiss DexCom's counter-counterclaim changes that calculation. DexCom's assertion that it

22

will be irreparably harmed rings hollow, given its active and comparatively lengthy participation in the IPR proceedings.  In light of its inadequately explained delay in seeking injunctive relief, DexCom's assertions of irreparable harm are unpersuasive.

> 3.  *The Balance of Equities and Public Interest Favor Denying the Motion*

DexCom's undue delay in requesting a preliminary injunction is a sufficient basis to deny its motion for a preliminary injunction.  Nevertheless, I note additional reasons for why I believe DexCom is not entitled to injunctive relief.

First, Abbott is correct in pointing out that "DexCom's motion hinges on an internally inconsistent argument."  (DexCom Infringement Action D.I. 244 at 9.) DexCom's theory in support of its motion is that the SLA's forum selection clause applies to the Asserted Patents, and therefore those patents are licensed under the SLA. (DexCom Infringement Action D.I. 205 at 7; D.I. 244 at 9.)  Yet DexCom is simultaneously saying it "believes and continues to maintain its position that the claims of the [A]sserted [P]atents are not licensed, which would render the [forum selection clause] inapplicable."  (DexCom Infringement Action D.I. 205 at 7; D.I. 244 at 9.)  An injunction is a form of equitable relief, *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984), and it would be inequitable to preliminarily enjoin Abbott on the basis of a legal position that DexCom itself is aggressively arguing against in this court.  Moreover, it appears less than fair for DexCom to engage in the IPR

process for many months, absorbing the time, attention, and resources of the PTAB, and then demand that it should all be for nothing because the process breaches the SLA.

DexCom tries to turn the tables, asserting that Abbott "seeks an unfair tactical advantage [in maintaining its IPR petitions] that is wholly inconsistent with Abbott's positions in seeking to transfer and then stay DexCom's Infringement claims." (DexCom Infringement Action D.I. 205 at 14.) But Abbott's legal position is not as baldly inconsistent as DexCom's. While Abbott believes that the Asserted Patents are licensed, it argues that it is nevertheless justified in filing IPR petitions because the forum selection clause does not include validity challenges, and Sections F.3 and F.4 of the SLA likewise permit its IPRs. (DexCom Infringement Action D.I. 244 at 18–19.) I do not mean to imply that I agree with that position. I am not addressing that here. I mean only to say it is not on its face contradictory in the same manner that DexCom's position is. In light of DexCom's inconsistent legal positions, and its undue delay in seeking injunctive relief, the balance of equities weighs against enjoining Abbott.

Weighing the public interest does not alter that balance. DexCom contends that the public interest favors granting an injunction because "the public has an interest in enforcing contractual rights and obligations." (DexCom Infringement Action D.I. 205 at 15.) But, while "[t]here is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum[,]" *Gen. Protecht*, 651 F.3d at 1366, it is yet to be determined whether the IPRs, in fact, violate the

SLA. At this point, the public has an interest in both preventing the assertion of invalid patents and allowing the PTAB to finish the instituted petitions, to which it has already devoted considerable time and resources.

## IV.    CONCLUSION

For the foregoing reasons, Abbott's Motion to Dismiss DexCom's First Counter-Counterclaim, and to Strike DexCom's Second Affirmative Defense (D.I. 195) in Civil Action No. 22-605 (KAJ) is DENIED AS MOOT; Abbott's Renewed Motion to Dismiss DexCom's First Counter-Counterclaim, and to Strike DexCom's Second Affirmative Defense (D.I. 306) in Civil Action No. 22-605 (KAJ) is DENIED; and DexCom's Motion for Preliminary Injunction (D.I. 204) in Civil Action No. 21-1699 (KAJ) is DENIED.