# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, |  |
| v. | |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | C.A. No. 22-605 (KAJ) (CONSOLIDATED) |
| Defendants. | |

| | |
|---|---|
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | **REDACTED - PUBLIC VERSION** |
| v. | |
| DEXCOM, INC., | C.A. No. 21-1699 (KAJ) |
| Defendant. | |

## PROPOSED FINAL PRETRIAL ORDER

Jack B. Blumenfeld (No. 1014)
Rodger D. Smith II (No. 3778)
Anthony D. Raucci (No. 5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com
*Attorneys for Plaintiffs Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.*

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant DexCom, Inc.*

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure.  The parties are Abbott Diabetes Care Inc. ("Abbott Diabetes Care") and Abbott Diabetes Care Sales Corp. (collectively, "Abbott") and DexCom, Inc. ("DexCom") (together, the "Parties").  Pursuant to Local Rule 16.3, the Parties hereby submit for the Court's approval this proposed Final Pretrial Order governing the trial of the non-stayed aspects of C.A. Nos. 21-1699 and 22-605 (consolidated), currently scheduled to begin on July 10, 2023.

**Abbott's Counsel:**

<u>Morris, Nichols, Arsht & Tunnell LLP</u>

Jack B. Blumenfeld

Rodger D. Smith II

Anthony Raucci


<u>Kirkland & Ellis LLP</u>

Ellisen Shelton Turner

Amanda J. Hollis

Benjamin A. Lasky

Jason Wilcox

Christopher Jagoe

Ashley Ross

Kristina Cary

Kristen Reichenbach

Kourtney Baltzer

Dan Gross

Caroline Lourgos

McAndrews, Held & Malloy, Ltd.

Leland G. Hansen


**DexCom's Counsel:**

Shaw Keller LLP

John W. Shaw

Karen E. Keller

Andrew Russell

Nathan R. Hoeschen


Quinn Emanuel Urquhart & Sullivan, LLP

Kevin P.B. Johnson

David L. Bilsker

Todd M. Briggs

Brian P. Biddinger

Gavin Frisch

Nathan Hamstra

Valerie Lozano

Zak J.W. Randell

Margaret H.S. Shyr

Sara Pollock

Trevor Quist

Jonathon M. Studer

<u>Keker, Van Nest & Peters LLP</u>

Sophie A. Hood

I.      **Nature of the Case**

1.      This trial is a contract dispute that arose out of a patent infringement action filed by DexCom Inc. against Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp. (collectively, "Abbott").  In this trial, Abbott has counterclaimed for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for a declaratory judgment of non-infringement due to license and exhaustion.  Both companies sell medical devices known as "continuous glucose monitors" or "CGMs."  These CGMs monitor sugar levels in the body and can help people with diabetes who need to monitor those sugar levels.  Years ago, Abbott Diabetes Care and DexCom were engaged in a series of lawsuits in which Abbott Diabetes Care accused DexCom of infringing Abbott Diabetes Care's patents.  These patent disputes went on for approximately 9 years.

2.      On July 2, 2014, Abbott Diabetes Care and DexCom signed a contract called a Settlement and License Agreement ("SLA").  **[Abbott's proposal:** In that contract, DexCom promised among other things that Abbott Diabetes Care would receive a "royalty-free, worldwide ... license" to ███████████████████████████████████████ certain products.  In that contract, the parties promised each other that disputes relating to their Agreement would go through a dispute resolution procedure.  The contract also contains a so-called "forum selection clause" under which the parties promised each other that Delaware courts would have exclusive jurisdiction over any disputes relating to the Agreement."**]**

3.      Abbott claims that DexCom breached that contract.  Abbott also alleges that it suffered damages as a result of DexCom's alleged breach.  DexCom denies these allegations.

4.      DexCom claims that Abbott Diabetes Care also breached that contract and DexCom also alleges that it suffered damages as a result of Abbott's alleged breach.  Abbott denies these allegations.

**Litigation History and Pleadings**

5.      On June 30, 2021, DexCom filed suit in the Western District of Texas, alleging that Abbott is infringing claims of five patents: U.S. Patent No. 11,000,213, U.S. Patent No. 10,980,452, U.S. Patent No. 10,702,215, U.S. Patent No. 10,702,193, and U.S. Patent No. 10,993,642.   C.A. No. 21-1699, D.I. 1. DexCom subsequently initiated, directly or by counterclaim, actions against Abbott Diabetes Care and/or its affiliates in the United Kingdom (by counterclaim) and Germany (directly), asserting four European Patents: EP 3 435 866 B1; EP 2 829 224 B1, EP 2 914 159 B1, and EP 3 782 539 B1.

6.      **[DexCom's proposal:** On July 1, 2021, Abbott filed suit against DexCom in the District of Delaware, alleging that DexCom infringes claims of twelve patents.  Also in July of 2021, Abbott filed suit against DexCom and its foreign affiliates in Germany alleging that DexCom infringes six European Patents, and filed suit against DexCom and its foreign affiliates in the United Kingdom alleging that DexCom infringes eight European Patents.][1]

7.      On September 20, 2021, Abbott moved to transfer DexCom's U.S. patent action to this Court.  C.A. No. 22-605, D.I. 35. ███████████████████████████

███████████████████████████████████████████████████████

---

[1]     **[Abbott**: Abbott objects to DexCom's proposed language as irrelevant to the present litigation and likely to lead to juror confusion, should this form the basis of information to be provided to the jury.  Abbott's affirmative patent actions have nothing to do with any of the disputed license issues in this case.**]**

████████████████████████████████████████████

███████████

8. On December 1, 2021, Abbott Diabetes Care filed C.A. No. 21-1699 in this Court,

alleging that DexCom breached the SLA by:

- obtaining patent claims the SLA prohibited it from obtaining,

- initiating and maintaining U.S. and foreign patent litigations accusing activities of Abbott Diabetes Care and its affiliates involving Abbott Diabetes Care's FreeStyle Libre products of infringement even though it had licensed those activities under the SLA and/or exhausted its rights to accuse those activities of infringement,

- maintaining those litigations outside of the agreed-upon forum "exclusively" permitted by the SLA,

- failing to engage in the SLA's required dispute resolution process before initiating its U.S. and foreign patent litigations against Abbott Diabetes Care and Abbott Diabetes Care's affiliates, and

- failing to engage in the SLA's required dispute resolution process after Abbott Diabetes Care initiated that process, as a precursor to litigation.

C.A. No. 21-1699, D.I. 2. These allegations were brought as counterclaims in Abbott's December

13, 2022 answer and counterclaims to DexCom's first amended complaint in its patent

infringement suit.[4] C.A. No. 22-605, D.I. 279.



[4] In Abbott's December 13, 2022 answer and counterclaims to DexCom's first amended complaint in its patent infringement suit, Abbott also denied DexCom's claims for patent infringement and raised counterclaims for declaratory judgment of invalidity and non-infringement.

9.     In the December 1, 2021 suit, and its counterclaims to DexCom's patent infringement suit, Abbott also alleged that DexCom breached the implied covenant of good faith and fair dealing by bringing suit against Abbott's affiliates.  C.A. No. 21-1699, D.I. 2 (Second Cause of Action); C.A. No. 22-605, D.I. 279 (Third Counterclaim).  Abbott also sought a declaratory judgment that it and its affiliates had not infringed DexCom's patents due to license and/or exhaustion. *Id.*

10.    On May 5, 2022, the Texas court granted Abbott's motion to transfer DexCom's patent action to this Court.  C.A. No. 22-605, D.I. 105.

11.    Between April 21, 2022 and April 23, 2022, Abbott Diabetes Care filed eight petitions for *inter partes* review in front of the Patent Trial and Appeal Board challenging DexCom's asserted U.S. patents:

- IPR No. 2022-00908 (on the '193 Patent)

- IPR No. 2022-00909 (on the '215 Patent)

- IPR No. 2022-00913 (on the '213 Patent)

- IPR No. 2022-00914 (on the '213 Patent)

- IPR No. 2022-00917 (on the '452 Patent)

- IPR No. 2022-00918 (on the '452 Patent)

- IPR No. 2022-00921 (on the '642 Patent)

- IPR No. 2022-00922 (on the '642 Patent)

12.    On July 21, 2021, this Court issued a Scheduling Order, ordering that C.A. No. 22-605 shall be consolidated with C.A. No. 21-1699 for all purposes. C.A. No. 22-605, D.I. 140.

13.    On September 26, 2022, this Court issued an Amended Scheduling Order in which the Court ordered that "DexCom's patent infringement claims (i.e., Counts 1-V of DexCom's Amended Complaint), and ADC's invalidity and unenforceability defenses and counterclaims (i.e.,

ADC's Second through Tenth Defenses, and Fourth through Eighteenth Counterclaims, in C.A. No. 22-605 (KAJ)) shall be stayed in their entirety, including DexCom's deadline to answer or otherwise respond to the same, pending resolution of ADC's license-related defense and counterclaims (i.e., ADC's First Defense and First through Third Counterclaims in C.A. No. 22-605 (KAJ))." D.I. 176 ¶2.  The Court further ordered that "ADC's C.A. No. 21-1699 (KAJ) is hereby stayed pending resolution of" Abbott's counterclaims for declaratory judgment of noninfringement, breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at ¶3.

14.     On November 29, 2022, this Court issued a Memorandum Opinion, granting Abbott's request that DexCom's patent infringement claims be stayed pending resolution of Abbott's claims related to the SLA. C.A. No. 22-605, D.I. 271.  The Court also granted DexCom's motion to dismiss Abbott's claim and counter-claim for breach of the implied covenant of good faith and fair dealing without prejudice, with leave to amend. *Id.*

15.     On December 13, 2022, Abbott filed an Answer to DexCom's First Amended Complaint and Amended Counterclaims, once again alleging the foregoing claims.  C.A. No. 22-605, D.I. 279.

16.     On December 27, 2022, DexCom filed its amended answer and counter-counterclaim to Abbott's counterclaims.  C.A. No. 22-605, D.I. 295.  DexCom alleged that Abbott Diabetes Care breached the SLA by filing *inter partes* review petitions against the U.S. DexCom patents that are the subject of C.A. No. 22-605.

## II.     Jurisdiction

17.     This is a trial on counterclaims by Abbott for damages and declaratory judgment for breach of the SLA, as well as for injunctive relief and specific performance of the SLA.

18.     DexCom has also asserted a claim for damages and declaratory judgment for breach of the SLA and for specific performance of the SLA.

19.     **Abbott's Contention Regarding Subject Matter Jurisdiction:** The Parties agree that the Court may exercise supplemental jurisdiction over Abbott's counterclaims and defenses to the extent they are based on the filing of DexCom's U.S. infringement suit or assertion of U.S. Patents.  D.I. 160 at 10.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, because this action contains claims that arise under and depend on the patent laws of the United States, and presents substantial questions of U.S. patent law.  Abbott claims DexCom breached the SLA by, among other things, deliberately obtaining U.S. patent claims DexCom warranted and represented that it would not obtain and by asserting those and other licensed patent claims against Abbott and its affiliates, and by initiating litigation implicating the SLA outside of Delaware, the parties' agreed upon venue under the SLA.  Abbott also seeks declaratory judgment that the accused activities of Abbott and Abbott's affiliates involving Abbott's FreeStyle Libre line of continuous glucose monitors and associated products and accessories ("FSL Products") are licensed under the SLA and/or are protected from DexCom's infringement allegations by patent exhaustion.  As discussed further below, these claims require determining whether DexCom's asserted patent claims are "fully supported and enabled in the manner required under 35 U.S.C. § 112 (or equivalent standard in jurisdictions outside the United States)" by pre-2005 patents or patent applications.  This action thus raises substantial questions of federal patent law.  This Court also has supplemental jurisdiction over Abbott's claims pursuant to 28 U.S.C. § 1367.  Abbott claims that DexCom breached the SLA by obtaining foreign patent claims it warranted and represented it would not obtain, and by asserting those and other licensed foreign patent claims against Abbott and its affiliates.  Abbott also seeks declaratory judgment that the accused activities

of Abbott and Abbott's affiliates involving FSL Products in these foreign lawsuits are licensed under the SLA and/or are protected from DexCom's infringement allegations by patent exhaustion. These claims are so related to the claims in this action that are within the Court's original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution. This Court also has supplemental jurisdiction over DexCom's counter counterclaim for breach of contract under at least 28 U.S.C. § 1367. This Court furthermore has subject matter jurisdiction over Abbott's claims because those claims arise from and relate to DexCom's breach of the SLA, and therefore are properly brought before this Court per the SLA's Forum Selection Clause.

20.     **DexCom's Contention Regarding Subject Matter Jurisdiction**: For the reasons set forth in D.I. 160, Abbott's counterclaims, which are grounded in contractual obligations under state law, do not "arise under" federal patent law. As such, the Court does not have original subject matter jurisdiction over those counterclaims. DexCom does not dispute, however, that the Court may exercise supplemental jurisdiction over Abbott's counterclaims and defenses to the extent they are based on the filing of DexCom's U.S. infringement suit or assertion of U.S. Patents. D.I. 160 at 10. This Court has subject matter jurisdiction over DexCom's counter-counterclaim for the same reason. DexCom disputes that this Court has supplemental jurisdiction over Abbott's counterclaims to the extent they relate foreign patent assertions or defenses to assertion of foreign patents. Abbott's assertion that DexCom breached the SLA by filing infringement suits in Germany shares no facts with DexCom's U.S. patent infringement claims. The claims concern different patents, implicate different legal standards, and involve different litigation. *See id*. Finally, Abbott is incorrect that the Court has subject matter jurisdiction per the SLA's Forum Selection Clause. A forum selection clause cannot convey subject matter jurisdiction. "Where a

court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement."

*In re Resorts Int'l*, 372 F.3d 154, 161 (3d Cir. 2004).

21. This Court has personal jurisdiction over the Parties because, *inter alia*, DexCom and Abbott are incorporated in Delaware and thus reside in this District.

22. The parties do not dispute personal jurisdiction or venue for purposes of this action.

## III. Brief Statement of Intended Proofs

### A. Abbott's Brief Statement of Intended Proofs

23. Abbott intends to prove that DexCom has materially breached the SLA, including SLA Paragraphs H.3 ("Warranty Provision"), C.2 ("License Grant"), J.1 ("Dispute Resolution Clause"), and J.4 ("Forum Selection Clause"). Abbott also intends to prove that it and its affiliates that have been sued for infringement by DexCom either are protected by the SLA's licenses and rights granted to the asserted patents, or are protected from DexCom's suits by patent exhaustion to the extent DexCom's patent infringement claims are applied to their activities.

24. Abbott intends to prove that the following claims (the only claims of the below patents for which DexCom is asserting infringement) fall within the definition of DexCom Licensed Patents (collectively, the "Asserted Claims"):

- U.S. Patent No. 11,000,213: Claims 1, 6, 8, 21, 23, 26, 49, 80, 81, 85, 86, 105, and 106

- U.S. Patent No. 10,980,452: Claims 1, 4, 7, 10-12, 14, 18, 19, 22, 23, 26, 27, 28, 41, 44, 45, 48-50, 62, 63, and 66-68

- U.S. Patent No. 10,702,215: Claims 1, 3-5, 12, and 23

- U.S. Patent No. 10,702,193: Claims 1-3, 11-13

- U.S. Patent No. 10,993,642: Claims 1, 5, 8, 10, 38, 66, 67, 89, 91, and 101

- EP 2 829 224: Claim 1, 4, 5, 7, 10, 11

- EP 2 914 159: Claims 1, 2, 3, 4, 5, 6, 9, 11, 12

- EP 3 782 539: Claim 1

25.     Abbott intends to prove, in the alternative, that it has an implied license to the Asserted Claims of U.S. Patent No. 10,980,452 that are not expressly licensed but the assertion of which would interfere with Abbott's right to practice expressly licensed claims.

26.     Abbott intends to prove that DexCom breached the implied covenant of good faith and fair dealing attendant to the SLA.

27.     Abbott intends to prove that DexCom's breaches of the SLA and/or the implied covenant of good faith and fair dealing caused Abbott harm, as discussed further in Section XI below.

28.     Abbott intends to prove that Abbott should be awarded money damages sustained as a result of DexCom's material breaches.

29.     Abbott intends to prove that the FreeStyle Libre 3 system, FreeStyle Libre 2 system, FreeStyle Libre Pro system, FreeStyle Libre 14-Day system, and Libre Sense Glucose Sport Biosensor (the only products that DexCom has accused in its infringement claims) ███████

██████████████████████████████████

30.     Abbott intends to prove that the activities of Abbott accused of infringement by DexCom in C.A. No. 22-605 are protected from infringement by a license under the SLA or under the doctrine of exhaustion to the extent DexCom's patent infringement claims are applied to their activities.

31.     Abbott intends to prove that the activities of Abbott and its affiliates accused of infringement by DexCom in foreign litigations are protected from infringement by a license under the SLA or under the doctrine of exhaustion to the extent DexCom's patent infringement claims are applied to their activities.

32. Abbott intends to prove that Abbott and its affiliates should be awarded specific performance and injunctive relief, including:

- an order enjoining DexCom and its affiliates, agents, employees, and officers from participating in and pursuing its U.S. and foreign infringement actions against Abbott and its affiliates, and posting any bond or taking any steps to enforce any injunction or other relief it obtains through those actions,

- an order enjoining DexCom and its affiliates, agents, employees, and officers from ███████████████████████████████

- to the extent DexCom is not entirely enjoined from pursuing its U.S. and foreign infringement claims, an order requiring the infringement claims DexCom brought in the U.S. and foreign litigations to be brought exclusively in Delaware and/or only after DexCom first complies with the Dispute Resolution Clause.

33. Abbott intends to prove that Abbott should be awarded prejudgment and post-judgment interest and costs.

34. Abbott intends to rebut any assertions by DexCom that Abbott Diabetes Care breached the SLA, or that the SLA precluded Abbott Diabetes Care from filing the accused *inter partes* review petitions.

35. Abbott disputes that DexCom should be permitted to raise its defense of unclean hands with respect to Abbott's filing of *inter partes* review petitions against the asserted patents, because the Court already held on summary judgment that Abbott's filing of those petitions do not amount to "unclean hands" as a matter of law. *See* D.I. 483 at 5. To the extent that DexCom is permitted to rely on this defense, it is an equitable defense for resolution by the Court and should not be presented to the jury.

36. Further details regarding Abbott's intended proofs have been explained at length in Abbott Diabetes Care's Complaint (C.A. No. 21-1699, D.I. 2), Abbott's Answer and Counterclaims (C.A. No. 22-605, D.I. 279), Abbott's briefing in opposition to DexCom's Motion for a Preliminary Injunction (C.A. No. 22-605, D.I. 244), Abbott's briefing in support of its

Motions for Summary Judgment (C.A. No. 22-605, D.I. 324, 328, 331, 336, 341, 404, 406, 408, 410, 412), Abbott's briefing in opposition to DexCom's Summary Judgment motions (C.A. No. 22-605, D.I. 376, 381, 384, 3856, 386), Abbott's Statement of Disputed Facts, the Parties' Statement of Uncontested Facts, and Abbott's Statement of Issues of Law, submitted herewith.

37.     Abbott intends to rebut all of the below assertions that DexCom states it intends to prove.

**B.     DexCom's Brief Statement of Intended Proofs[5]**

38.     DexCom intends to rebut all of the above assertions that Abbott states it intends to prove.

39.     DexCom intends to rebut Abbott's allegations that DexCom has breached the SLA, including SLA Paragraphs H.3 ("Warranty Provision"), C.2 ("License Grant"), J.1 ("Dispute Resolution Clause") to the extent Abbott is permitted to maintain this claim, and J.4 ("Forum Selection Clause").

40.     DexCom intends to rebut Abbott's allegation that Abbott and its affiliates that have been sued for infringement by DexCom either are licensed under the asserted patents, or are protected from DexCom's suits by patent exhaustion.

41.     DexCom intends to rebut Abbott's allegations that the following claims fall within the definition of DexCom Licensed Patents (collectively, the "Asserted Claims"):

- U.S. Patent No. 11,000,213: Claims 1, 6, 8, 21, 23, 26, 49, 80, 81, 85, 86, 105, and 106

- U.S. Patent No. 10,980,452: Claims 1, 4, 7, 10-12, 14, 18, 19, 22, 23, 26, 27, 28, 41, 44, 45, 48-50, 62, 63, and 66-68

---

5     [**DexCom**: DexCom takes no positions in this section on whether these issues are properly for the jury to decide.  At least some of the issues, such as Abbott's defense of implied license, and the parties' claims for equitable relief, are issues that should be heard by the Court, not the jury.]

- U.S. Patent No. 10,702,215: Claims 1, 3-5, 12, and 23

- U.S. Patent No. 10,702,193: Claims 1-3, 11-13

- U.S. Patent No. 10,993,642: Claims 1, 5, 8, 10, 38, 66, 67, 89, 91, and 101

- EP 2 829 224: Claim 1, 4, 5, 7, 10, 11

- EP 2 914 159: Claims 1, 2, 3, 4, 5, 6, 9, 11, 12

- EP 3 782 539: Claim 1

42.     DexCom intends to rebut Abbott's allegations the FreeStyle Libre 3 system, FreeStyle Libre 2 system, FreeStyle Libre Pro system, FreeStyle Libre 14-Day system, and Libre Sense Glucose Sport Biosensor ███████████████████████████████████

███████

43.     DexCom intends to rebut Abbott's allegations that the activities of Abbott accused of infringement by DexCom are protected from infringement by license under the SLA or under the doctrine of exhaustion.

44.     DexCom intends to rebut that Abbott has an implied license to Asserted Claims of U.S. Patent No. 10,980,452.

45.     DexCom intends to rebut Abbott's allegations that DexCom breached the implied covenant of good faith and fair dealing.

46.     DexCom intends to rebut Abbott's allegations that any purported DexCom breach of the SLA or of the covenant of good faith and fair dealing caused Abbott harm.

47.     DexCom intends to rebut Abbott's allegations that it should be awarded money damages.

48.     DexCom intends to rebut Abbott's allegations that Abbott and its affiliates should be awarded specific performance and injunctive relief.

49.     DexCom intends to rebut Abbott's allegations that Abbott should be awarded prejudgment and post-judgment interest and costs.

50.     DexCom intends to prove that Abbott Diabetes Care breached the SLA by filing *inter partes* review petitions against the asserted patents at the USPTO.

51.     DexCom intends to prove that Abbott's breach of the SLA caused DexCom harm, as discussed further in Section XI below.

52.     DexCom intends to prove that DexCom should be awarded money damages sustained as a result of DexCom's material breaches.

53.     DexCom intends to prove that DexCom should be awarded specific performance and injunctive relief, including an order instruction Abbott to seek prosecution of, and withdraw, its petitions for *inter partes* review.

54.     DexCom intends to prove that DexCom should be awarded prejudgment and post-judgment interest and costs.

55.     DexCom intends to prove that Abbott's unclean hands with respect to its filing of *inter partes* review petitions against the asserted patents prohibit it from obtaining relief on its counterclaims.

## IV.     Agreements Regarding Presentation of Witnesses

56.     The presentation of evidence will follow the burdens of proof.

57.   The parties dispute whether each party will put on a reply case.[67]   The Parties'
respective positions on presentation order follow, with differences highlighted in bold and
underline:

58.   **[Abbott's proposal:**

(i)   Abbott's Opening Statement

(ii)   DexCom's Opening Statement

(iii)   Abbott's case-in-chief regarding its contract and license-related claims

(iv)   DexCom's rebuttal to Abbott's case-in-chief, and DexCom's case-in-chief regarding DexCom's contract-related claims

(v)   Abbott's rebuttal to DexCom's case-in-chief and **Abbott's reply to DexCom's rebuttal**

(vi)   **DexCom's reply to Abbott's rebuttal**

(vii)   Abbott's Closing Argument

(viii)   DexCom's Closing Argument]

---

6   **[Abbott**: Providing the Parties the opportunity to present a reply case is established practice. *See, e.g.*, *Personalized user Model, LLP v. Google Inc.*, C.A. No. 09-525-LPS, D.I. 627 at 212 at 1–2 (March 6, 2016); *Silvergate Pharmaceuticals, Inc. v. Amneal Pharmaceuticals, Inc.*, C.A. No. 19-678 (LPS) D.I. 143 at 2 (D. Del. Jan. 22, 2021).   A reply case would promote fairness, efficiency, and streamlining of issues in this trial because the Party with the burden of proof would have a way to address unexpected testimony during the rebuttal case and would not have to waste the jurors' time and attention pre-butting the most remote facts or theories that the opposing party may assert but never actually asserts. A reply case would not change the parties' respective trial time limits or increase the total trial time.**]**

7   **[DexCom**: Given the realities of a four day trial, Abbott's proposal to include reply arguments would render the trial unmanageable.   In addition, Abbott's experts received the benefit of reply reports.   D.I. 176 at 5.   Thus, there should not be any "unexpected" arguments raised that require Abbott's response.   To the extent a reply is permitted, any reply should be limited to rebutting such unexpected arguments. *Emerick v. US Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) ("It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof.").   But Abbott's proposal is not limiting to rebutting unanticipated arguments.]

59.    **[DexCom's proposal:**

      (i)    Abbott's Opening Statement

      (ii)    DexCom's Opening Statement

      (iii)    Abbott's case-in-chief regarding its contract and license-related claims

      (iv)    DexCom's rebuttal to Abbott's case-in-chief, and DexCom's case-in-chief regarding DexCom's contract-related claims

      (v)    Abbott's rebuttal to DexCom's case-in-chief

      (vi)    Abbott's Closing Argument

      (vii)    DexCom's Closing Argument]

60.    The Parties agree that the following issues will be decided by the Court outside the presence of the jury on a briefing and hearing schedule to be set by the Court after the jury trial concludes:

      (i)    Abbott's requests for specific performance and injunctive relief.

      (ii)    Abbott's requests for pre- and post-judgment interest and costs.

      (iii)    DexCom's requests for specific performance and injunctive relief.

      (iv)    DexCom's requests for pre-and post-judgment interest and costs.

      (v)    DexCom's unclean hands defense **[Abbott's proposal**: to the extent permitted to be presented**]**[8]

---

[8]    **[Abbott:** DexCom's "unclean hands" defense is based solely on Abbott's alleged bad faith in filing its IPRs against DexCom's patents. But the Court has already ruled at summary judgment that it does "not agree that Abbott's filing of IPR petitions constitutes bad faith" and "there is no evidence of bad faith this record." *See* D.I. 483 at 5.  That ruling precludes DexCom's unclean hands defense.  DexCom should not be permitted to reintroduce this issue at trial, given the claim-dispositive rulings made.**]**

61. **[Abbott proposal**: The amount of any fee-related damages award should also be decided by the Court outside the presence of the jury on a briefing and hearing schedule to be set by the Court after the jury trial concludes] [9,10]

## V.    Uncontroverted and Contested Facts

---

[9]    [**Abbott**:   A jury determination on whether either party is entitled to fees with the court determining the amount of fees is the most efficient way to resolve the parties' fee disputes and avoids potential prejudice.  Courts regularly evaluate the appropriate amount of fees under fee-shifting statutes and thus have a comparative advantage over a lay jury in deciding those issues.  *See, e.g.*, *Princeton Digital Image Corp. v. Nordstrom.com LLC*, C.A. No. 13-408-LPS, 2016 WL 4413145, at *1 (D. Del. Aug. 16, 2016) (after determination that attorneys' fees were warranted, requesting the parties to provide their positions "on how the Court should determine the appropriate amount [of attorneys' fees] to award" the prevailing party). Even if there is a Seventh Amendment right to a jury trial on the amount of damages, an issue "the Supreme Court has not specifically addressed," *J.R. Simplot v. Chevron Pipeline Co*., 563 F.3d 1102, 1116 (10th Cir. 2009), that does not eliminate the Rule 403 concerns with discussing fees in front of the jury.  A court determination on the amount of fees also avoids the risk that the jury will be improperly swayed by discussion of the rates and amounts charged by attorneys and law firms appearing in front of the jury at trial.  No party at trial should refer to the fees as "Kirkland & Ellis's fees," the hourly rates of Abbott's trial counsel, or discuss that some of the requested fees are fees for work performed by the same attorneys representing Abbott in the licensing trial.  *See* Fed. R. Evid. 403.]

[10]    [**DexCom response**: DexCom objects to Abbott's request that the Court, instead of the jury, decide the amount of any damages in the form of attorney's fees Abbott should be awarded.  There is no basis for Abbott's breach of contract damages in the form of attorney's fees to be decided post-trial by the Court.  Abbott chose to seek damages for breach of contract, a claim for which it demanded a jury trial, in the form of attorney's fees.  It is for the jury to determine whether to award, and if so what amount to award, Abbott these claimed damages (just as Abbott agrees that the jury should determine its other breach of contract damages to the extent it is allowed to present its actual loss damages (*see* DexCom MIL No. 4)).  *See In re Oakwood Homes Corp.*, 378 B.R. 59, 66 (Bankr. D. Del. 2007) ("claims seeking 'money damages for breach of express or implied contracts are clearly legal and the Seventh Amendment would require a jury trial as to them'"); *J.R. Simplot v. Chevron Pipeline Co*., 563 F.3d 1102, 1115-1117 (10th Cir. 2009) (holding party had "Seventh Amendment right to jury trial to determine the amount of costs and attorneys' fees [the opposing party] incurred in defending itself in [other] litigation, as damages for [party's] breach of contract"); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (in an action for breach of contract, parties have the "right to have the jury determine . . . whether the contract has been breached and the extent of the damages").  DexCom further objects on the ground that Abbott is seeking to raise an additional and untimely motion *in limine*.]

### A.      Uncontested Facts

62.      The Parties' statement of facts that are not disputed or have been agreed to or stipulated to by the Parties is attached as **Exhibit 1**.

63.      These facts are not disputed or have been agreed to or stipulated to by the Parties. These facts should become part of the evidentiary record in this action.  Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court and will be charged for the time used to do so.

### B.      Contested Facts

64.      Abbott's Statement of Contested Facts is attached as **Exhibit 2P**.

65.      DexCom's Statement of Contested Facts is attached as **Exhibit 2D**.

## VI.      Issues of Law

66.      Abbott's Statement of Issues of Law is attached as **Exhibit 3P**.

67.      DexCom's Statement of Issues of Law is attached as **Exhibit 3D**.

## VII.      Witnesses

### A.      **Abbott's Witnesses.**  Abbott expects to call the following witnesses, either live or by deposition

1.      Expert witnesses:

(A)      Abbott will call the following expert witnesses live:

(1)      Christopher Gerardi

(2)      Christopher Robertson

(3)      Eric Bensen

(4)      Garry Steil

(5)      John Smith

(6)      Matthew Schurman

(7)     Thomas Harrington

(B)     Abbott may call the following expert witnesses live:

(1)     Christopher Floyd

(2)     Eugene Wright

(3)     Peter Chrocziel

2.     Non-expert witnesses:

(A)     Abbott will call the following witnesses live:

(1)     Jason Pederson

(2)     Marc Taub

(3)     Scott Harper

(4)     Shannon Hansen (live or by deposition)

(5)     Todd York

(B)     Abbott may call the following witnesses live:

(1)     Adam Cate

(2)     Ben Feldman

(3)     Guy Ruttenberg

(4)     Susan Tall

(C)     Abbott will call the following witnesses by deposition:

(1)     Adam Noar

(2)     Apurv Kamath

(3)     James Brauker

(4)     John Lister

(5)     Laura Johnson

(6)     Peter Simpson

(7)     Rose Thiessen

(8)     Steve Pacelli

**B.     DexCom's Witnesses.** The list of fact and expert witnesses that Dexcom may call, either live or by deposition, is set forth in **Exhibit 4.**

**C.     Third parties.** Third parties are not expected to call witnesses at this time.

**D.     Abbott's Objections to DexCom's Witness List**

68.     Abbott objects to DexCom's identification of John Whealan, to the extent it would invade the province of the Court in instructing the jury as to matters of law, including the interpretation of the SLA.

69.     Abbott objects to DexCom's identification of Robin Jacob and Christoph Ann to the extent they solely offer opinions on foreign law that the Court determines are questions exclusively for the Court.  Fed. R. Civ. P. 44.1.

70.     Abbott reserves the right to object to other witnesses on DexCom's list of will call and may call witnesses, or to the scope of their testimony, at the time that their testimony is offered and/or once the scope of their intended testimony is known.

**E.     DexCom's Objections to Abbott's Witness List**

71.     DexCom objects to Abbott's identification of Eric Bensen, to the extent it would invade the province of the Court in instructing the jury as to matters of law, including the interpretation of the SLA.

72.     DexCom objects to Abbott's identification of Thomas Harrington and Christopher Robertson, as their opinions are duplicative and serve only to impermissibly bolster the opinions of Matthew Schurman.  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 2019 WL 5310220, at *3 (D. Del.) ("Roche intends to offer Dr. Crooks to testify that he agrees with Dr. Leventis that TPA does not extend the electric potential of an electrode . . . the Court will exclude

22

Dr. Crooks' testimony because it serves no purpose beyond improperly attempting to bolster the opinions of another expert").

73.     DexCom objects to Abbott's identification of Christopher Floyd and Peter Chrocziel to the extent they solely offer opinions on foreign law, which is a question exclusively for the Court.  Fed. R. Civ. P. 44.1.

74.     DexCom reserves the right to object to other witnesses on Abbott's list of will call and may call witnesses, or to the scope of their testimony, at the time that their testimony is offered and/or once the scope of their intended testimony is known.

### F.     Procedures For Witnesses

75.     The parties agree that fact witnesses will be sequestered. The parties agree that expert witnesses need not be sequestered. Notwithstanding the foregoing, the parties agree that a single corporate representative need not be sequestered even if the corporate representative may also be a fact witness.

76.     The parties will identify by email to the opposing party the witnesses they intend to call, in the order in which they intend to call them, and whether those witnesses will be called live or by deposition, by 9:00 p.m. two nights before the day on which such witness will be called to testify. (For example, if a party expects to conduct an examination on Thursday, notice is to be given to the opposing party by 9:00 p.m. on Tuesday.) This paragraph applies only to the identification of witnesses. Witnesses whose testimony will be presented via deposition must also be disclosed according to the schedule set forth below.

## VIII.   Exhibits

### A.     Documentary and Physical Exhibits

77.     As set forth in Local Rule 16.4(d)(6), the list of exhibits that the Parties may jointly offer at the jury trial which, subject to continued meeting and conferring in advance of and during

trial, may ultimately be offered jointly by Abbott and DexCom, is attached as **Exhibit 9**. Joint trial exhibits will be identified with JTX numbers, starting at JTX-1.

78.     Abbott's list of exhibits that it may offer at the jury trial, and DexCom's objections to Abbott's exhibits, is attached as **Exhibit 5P**. Abbott's trial exhibits will be identified with PTX numbers, starting at PTX-1. Abbott's physical exhibits will be identified with PPX numbers, starting at PPX-1.

79.     DexCom's list of exhibits that it may offer at the jury trial, and Abbott's objections to DexCom's exhibits, is attached as **Exhibit 5D**. DexCom's trial exhibits will be identified with DTX numbers, starting at DTX-1. DexCom's physical exhibits will be identified with DPX numbers, starting at DPX-1.

80.     A key to the objection codes used by both Abbott and DexCom for objections to exhibits is included in Exhibit 5D and Exhibit 5P, respectively.

81.     The Parties agree that exhibits to be used solely for impeachment or cross-examination need not be included on the lists of trial exhibits or disclosed in advance of being used at trial. Exhibits used [**Abbott's proposal:** on cross or] to impeach that are not on the lists of trial exhibits may subsequently be admitted into evidence, provided that they meet the requirements of the Federal Rules of Evidence and other applicable rules.

82.     The Parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

83.     The fact that a document appears on a party's exhibit list does not mean that it is admissible against that party; admission and use will be treated the same irrespective of which party's list the exhibit appears on.

84.     The pretrial order contains the maximum universe of exhibits to be used by any party (other than solely for impeachment [**Abbott's proposal:** or cross-examination]) as well as all objections to the admission of such exhibits.  Exhibits not listed will not be admitted unless good cause is shown.

### B.     Demonstrative Exhibits

85.     Exhibits that the Parties intend to use at trial solely for demonstrative purposes without admitting into evidence ("demonstrative exhibits") do not need to be specifically described on the Parties' respective exhibit lists that are part of this Final Pretrial Order.   Abbott's demonstrative exhibits will be identified with PDX numbers, starting with PDX-1.   DexCom's demonstrative exhibits will be identified with DDX numbers, starting with DDX-1.

86.     The Parties shall exchange demonstratives (*e.g.*, PowerPoint slides and magnetic boards) to be used in opening statements by 7:00 p.m. the calendar day before opening statements. Any objections shall be provided no later than 8:30 p.m. the calendar day before their intended use.  The parties are to meet and confer to resolve any objections to the demonstratives for opening statements at 9:00 p.m. the calendar day before opening statements.

87.     The Parties shall provide demonstrative exhibits to be used in connection with direct examination of live witnesses by 7:00 p.m. the calendar day before their intended use.  Any objections shall be provided no later than 9:00 p.m. the calendar day before their intended use. The Parties are to meet and confer to resolve any objections at 10:00 p.m. the calendar day before the demonstratives' intended use.

88.     If good-faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention in the morning of the opening statement or the day the witness is being called to the witness stand.

89.     If any of the demonstratives change after the deadline, the party intending to use the demonstrative shall promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the change(s) before the demonstratives are presented to the jury.

90.     The party seeking to use a demonstrative shall provide a color representation of the demonstrative to the other side in PDF form.  However, for a demonstrative containing video animations, the party seeking to use the animation shall provide it to the other side via a secure file share.

91.     For irregularly sized physical demonstratives, the party seeking to use the demonstratives shall provide a color representation as a PDF of 8.5" x 11" copies of the demonstratives.

92.     For physical demonstratives for which a color representation as a PDF is not feasible, the party seeking to use the demonstratives shall identify them in writing with specificity by the 7:00 p.m. deadline and make them available for inspection.

93.     These provisions do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.

94.     A demonstrative that is merely a blow-up or highlight of a single exhibit or part thereof, or of single piece of continuous testimony, is not required to be provided to the other side in advance of their use.

95.     Demonstrative exhibits may be admitted only by agreement of the Parties.

**C.     Exchange of Exhibits for Use With a Witness**

96.     Each Party shall identify by number the exhibits it expects to use on direct

examination of a witness by 9:00 pm two calendar days before the witness will testify live or by deposition. The party receiving the list of exhibits shall provide the identifying party any objections to the listed exhibits by 9:00 pm via electronic mail to counsel of record on the following day. The parties shall then meet and confer as soon as possible to resolve any objections, in no event later than 10:00 pm that day. This notice provision does *not* apply to exhibits used on cross examination.

### D.      Testimony by Deposition

97.      Abbott identifies the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 6P**.  DexCom's objections to the designations, DexCom's counter designations, and Abbott's objections to the counter designations are listed in Exhibit 6P.

98.      DexCom identifies the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 6D**.  Abbott's objections to the designations, Abbott's counter designations, and DexCom's objections to the counter designations are listed in Exhibit 6D.

99.      A key to the objection codes used by both Abbott and DexCom for objections to deposition testimony is included in Exhibit 6D and Exhibit 6P, respectively.

100.     The pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony, unless good cause is shown.

101.     For any witnesses whose testimony the Parties intend to present at trial by deposition, the Parties shall identify a final list of deposition designations to be played or read to the jury, whether the testimony will be played by video or read, and the proposed exhibits used in the designations, by [**Abbott's proposal**: 6:00 p.m. **three (3)** calendar days before designations to be player or read] [**DexCom's proposal**: 6:00 pm **two (2)** calendar days before designations to be player or read].  Final objections to the testimony and/or exhibits and final counter-designations

with proposed exhibits shall be provided by 9:00 p.m. two (2) calendar daysbefore designations are to be played or read.  The Parties shall meet and confer at 10:00 p.m. the same day.

102.    If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than one (1) calendar day before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.

103.    The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony played in the same order it appears in the full transcript, minus any attorney objections, and shall provide a final version of the video and clip report with time allocations to all parties by 8:00 p.m. the day before it is to be shown to the jury or state in writing that the deposition testimony will instead be read into the record.

104.    Colloquy between counsel and objections will be eliminated when the deposition is read or played at trial.

105.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  An additional copy shall be provided to the court reporter. The Parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the Parties.

106.    If a party decides to play less than all of the designated testimony for a witness at trial, or to include less than all of its counter-designations, the opposing party may use such

dropped testimony as counter-designations to the extent the usage of such testimony in such manner is otherwise consistent with Fed. R. Evid. 106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

### IX.    Discovery Designations

107.    Abbott provides the following discovery designations:

- DexCom's 7/11/2022 Response to Interrogatory No. 2 including all supplemental responses.

- DexCom's 7/11/2022 Response to Interrogatory No. 4 including all supplemental responses.

- DexCom's 7/11/2022 Response to Interrogatory No. 5 including all supplemental responses.

- DexCom's 7/11/2022 Response to Interrogatory No. 6 including all supplemental responses.

- DexCom's 10/27/2022 Response to Interrogatory No. 18 including all supplemental responses.

- DexCom's 10/27/2022 Response to Interrogatory No. 22 including all supplemental responses.

- DexCom's 10/27/2022 Response to Interrogatory No. 23 including all supplemental responses

- DexCom's 4/28/2023 responses to Request for Admissions Nos. 1-13.

108.    DexCom provides the following discovery designations:

- Abbott's 11/14/2022 Response to Request for Admission 10

- Abbott's 7/5/2022 Response to Interrogatory No. 5

- Abbott's 7/5/2022 Response to Interrogatory No. 6

- Abbott's 12/5/2022 Response to Interrogatory No. 9, including all supplemental responses and Exhibits A-L thereto dated 7/5/2022 and 10/28/2022

- Abbott's 12/5/2022 Response to Interrogatory No. 11, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 12, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 13, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 14, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 15, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 16, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 17, including all supplemental responses

- Abbott's 12/5/2022 Response to Interrogatory No. 18, including all supplemental responses

## X.      Opinion Testimony

109.    Abbott provides its summary of the opinions to be offered by any witness to be called to offer opinion testimony as Exhibit 7P.

110.    DexCom provides the summary of the opinions to be offered by any witness to be called to offer opinion testimony as Exhibit 7D.

## XI.     Damages

111.    **Abbott's Itemized Statement of Damages:** Abbott respectfully submits the following itemized statement of damages[11]:



---

[11]    [**Abbott:** This itemized statement of damages includes current damages through December 2022.  Fees and costs are current through August 2022.  Abbott's damages are ongoing and Abbott reserves the right to supplement its itemized damages through trial.]



112.   **DexCom's Itemized Statement of Damages:** DexCom respectfully submits the following itemized statement of damages:

## XII.   **Bifurcated Trial**

113.   The Court has already ruled that DexCom's patent infringement claims (*i.e.,* Counts I-V of DexCom's Amended Complaint), and Abbott's invalidity and unenforceability defenses and counterclaims (*i.e.,* Abbott's Second through Tenth Defenses, and Fourth through Eighteenth Counterclaims, in C.A. No. 22-605) shall be stayed in their entirety, including DexCom's deadline to answer or otherwise respond to the same, pending resolution of Abbott Diabetes Care's license-related defense and counterclaims (*i.e.,* Abbott Diabetes Care's First Defense and First through Third Counterclaims in C.A. No. 22-605), or until otherwise ordered by the Court. C.A. No. 22-605, D.I. 176.  No further bifurcation is necessary at this juncture.

## XIII.   **Trial Briefs**

---

[12]   **[Abbott:** DexCom apparently objects that Abbott's expert sometimes rounded numbers for readability.  The numbers in Abbott's itemized statement of damages are consistent with the numbers in the schedules accompanying its expert's reports and the underlying documents its expert relied upon.**]**

[13]   **[DexCom:** DexCom objects to Abbott's numbers for the following categories on the grounds that these numbers differ from the damages numbers opined to by Abbott's damages expert as set forth in his expert reports: ██████████████████████████████████████
████████████   D.I. 333-1 ¶¶ 47-49, 74, 88-91, 96-99; D.I. 333-2 ¶¶ 97-109, 120-127, 130, 138.**]**

114.    Abbott's motions *in limine*, including the supporting memoranda, and DexCom's responses thereto, are attached as **Exhibit 8P**.

115.    DexCom's motions *in limine*, including the supporting memoranda, and Abbott's responses thereto, are attached as **Exhibit 8D**.

## XIV.  Limitations, Reservations and Other Matters

### A.     Length of Trial.

116.    The probable length of trial is 4 days. The case will be listed on the trial calendar to be tried when reached.

Mark appropriate box:      Jury           ☒
                           Non-jury       ☐

### B.     Number of Jurors.

117.    There shall be eight jurors.

### C.     Jury Voir Dire.

118.    The Court will conduct voir dire.

119.    The Parties' proposed voir dire will be submitted three days prior to the pretrial conference in accordance with the Court's Scheduling Order (D.I. 176).

## XV.   Juror Binders

120.    At the outset of trial, jury members may be provided with binders containing the following material:

- A glossary of terms, if and to the extent agreed upon by the Parties;

- The claim constructions to be applied for the license phase of the case;

- A blank pad of paper;

- A pencil or pen

- **[Abbott's proposal:** A chart of the Asserted Claims and the corresponding applications and disclosures that Abbott contends show the Asserted Claims are

fully supported and enabled in the manner required under 35 U.S.C. § 112 (or equivalent standard in jurisdictions outside the United States) by a pre-2005 DexCom patent or patent application**].**

## XVI.   Post-Trial Briefing

121.   The parties request that the Court defer adoption of a post-trial briefing schedule at this time and instead order the parties to meet and confer and then submit positions on a post-trial briefing schedule 14 days after the verdict is rendered in the first trial.

122.   The Parties agree that at least the following issues shall be addressed, if necessary, in post-trial briefing only and not presented to the jury:

- Abbott's requests for specific performance and injunctive relief;

- Abbott's request for pre and post-judgement interest and costs.

- DexCom's requests for specific performance and injunctive relief;

- DexCom's request for pre and post-judgement interest and costs.

123.   As noted above in paragraph 61, Abbott additionally contends that the amount of fee-related damages award shall be addressed in post-trial briefing only and not presented to the jury.  DexCom objects to Abbott's request, as set forth above in paragraph 61.

## XVII.  Certification of Good Faith Efforts as to Settlement

124.   The Parties certify that they have engaged in good faith efforts to explore the resolution of the controversy by settlement. At this time, the Parties have been unable to resolve this controversy by settlement.

## XVIII. Other Issues

125.   The parties respectfully request that the Court provide guidance on at least the following issues at the pretrial conference:

(i)   How much time each party has for its case (opening, all presentations of evidence, and closing).  The Parties have agreed to an even allocation of time.  **[Abbott's**

**proposal:** Abbott respectfully suggests that the Parties each receive 12 hours for their respective cases.**]**

(ii)    How the Court will allocate time spent arguing during trial.  The Parties propose that time is allocated to the losing party on any objection made during trial.

(iii)    How the Court will approach resolving any disputed issues of interpretation of foreign law.

(iv)    **[DexCom's proposal**: How the Court will approach resolving any disputed issues of interpretation of the SLA including determining whether any disputed provisions of the SLA are ambiguous.**]**

(v)     **[Abbott's proposal:** Whether DexCom's Second Affirmative Defense (Unclean Hands) is moot in view of the Court's ruling on summary judgment that it does "not agree that Abbott's filing of IPR petitions constitutes bad faith" and "there is no evidence of bad faith this record." *See* D.I. 483 at 5.**]** [**DexCom**: Abbott did not move for summary judgment on DexCom's Second Affirmative Defense.  *See* D.I. 330 (moving only on DexCom's Fourth and Eight Affirmative Defenses.]

(vi)    [**Abbott's proposal:**  Whether DexCom should be allowed to present testimony through non-expert fact witnesses "about the development of their [alleged] inventions, including the problems they faced, how [those alleged] inventions solved those problems, and what they possessed at the relevant times," as it proposed in DexCom's MIL Oppositions at p.7 (Exhibit 8P, p. 7), when DexCom did not disclose those facts or its intention to rely on them in response to Abbott's license contention interrogatory. DexCom's initial disclosures did not identify any fact witness who would testify about when anyone was in possession of claimed subject matter of the patents in suit, no DexCom 30(b)(6) witness testified to any date of possession, and no DexCom expert is relying on testimony of DexCom's fact witnesses to support an opinion on how a POSITA would understand the pre-2005 references (nor would it be proper). It is undisputed that DexCom's response to Abbott's relevant contention interrogatory does not include any reliance on the knowledge of the proffered fact witnesses or any theory that would make their testimony relevant to issues still in the case.  Abbott also served an interrogatory asking DexCom to identify the conception and reduction to practice date for the asserted patents, and all work or tests done leading to or involving the inventions, but DexCom did not provide the requested information. ] [**DexCom**: In a case about patents, inventors can talk about their inventions.  DexCom plainly disclosed that the inventors would testify both about their inventions, and about the disclosures of their earlier applications, including in DexCom's initial disclosures and in DexCom's designation of topics on which the witness would provide corporate testimony, which testimony was extensively addressed by the parties' experts in their reports.  For example, DexCom's initial disclosures identify Mr. Simpson and Mr.. Kamath as having knowledge regarding the "conception and reduction to practice of the inventions" claimed in the asserted patents, as well as the pre-2005 references "references for which he is a named inventor," and they were designated

on 30(b)(6) topics on the same areas, about which they were questioned at length, These topics squarely subsume "development of their [alleged] inventions, including the problems they faced, how [those alleged] inventions solved those problems, and what they possessed at the relevant times." And DexCom timely disclosed which elements of the asserted claims were not disclosed by the pre-2005 DexCom references. Abbott also spent nearly fourteen hours deposing these two individuals on these very topics. Abbott did not elect the interrogatory it references above for the license phase of the case. *See* D.I. 176 § 7(e), at 4 ("While the stay in C.A. 22-605 (KAJ) is in effect, the receiving party does not need to supplement its responses to discovery requests that the requesting party has not identified pursuant to this paragraph.") Abbott had full knowledge of this and is merely seeking to raise an additional and untimely motion *in limine*.]

(vii)    **[DexCom's proposal**: Whether Abbott may maintain its claim alleging breach of the SLA's dispute resolution clause in view of the Court's finding that Abbott has failed to show how any such breach "provides an independent basis for damages separate from the forum selection clause." *See* D.I. 483 at 3-4.] **[Abbott**: Abbott objects to this request as an improper motion for summary judgment and judgment as a matter of law, and also as a misreading of the Court's opinion at D.I. 483 for the reasons discussed in Abbott's opposition to DexCom's fourth motion in limine. *See* Ex. 8D at 31-35.]

(viii)   **[DexCom's proposal**: Whether the Court has determined that the scope of the Sections F.3 and F.4 of the SLA are ambiguous and thus, whether their interpretation will be a question for the jury.]   **[Abbott**: Abbott objects to DexCom's proposed issue as an improper attempt to re-argue summary judgment at the pretrial conference, when the Court has already indicated that this issue should go to the jury. In its summary judgment opinion, the Court agreed that DexCom's interpretation of Sections F.3 and F.4 of the SLA are "not 'indisputably clear,' and any doubt should not be resolved on an interlocutory motion," and subsequently held that the Court "will not resolve which parties' interpretation of Sections F.3 and F.3 of the SLA is correct on this interlocutory motion." D.I. 482 at 18-19.**]**

/s/ Anthony D. Raucci

Jack B. Blumenfeld (No. 1014)
Rodger D. Smith II (No. 3778)
Anthony D. Raucci (No. 5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com
*Attorneys for Plaintiffs Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.*

/s/ Nathan R. Hoeschen

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant DexCom, Inc.*

Dated:  May 10, 2023


IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the Parties or on motion of the Court.


Dated: _____

_____
UNITED STATES CIRCUIT JUDGE
Sitting by designation

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on May 10, 2023, this document was served

on ADC-MNAT@morrisnichols.com, MHM-ADC@mcandrews-ip.com,

abbottdexcomdelitigation@kirkland.com, and on the persons listed below in the manner

indicated:

**BY EMAIL**

Jack B. Blumenfeld
Rodger D. Smith II
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
amanda.hollis@kirkland.com

Benjamin A. Lasky
Ashley Ross
Christopher T. Jagoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
benjamin.lasky@kirkland.com
ashley.ross@kirkland.com
christopher.jagoe@kirkland.com

Leland G. Hansen
Alexander M. Vogler
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 887-8000
lhansen@mcandrews-ip.com
avogler@mcandrews-ip.com

Ellisen Shelton Turner
Joshua P. Glucoft
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200
ellisen.turner@kirkland.com
josh.glucoft@kirkland.com

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
kristina.cary@kirkland.com

Jason M. Wilcox P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
jason.wilcox@kirkland.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant DexCom, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

## EXHIBIT 1 TO PROPOSED FINAL PRETRIAL ORDER
### JOINT STATEMENT OF UNCONTESTED FACTS

**EXHIBIT 1**
JOINT STATEMENT OF UNCONTESTED FACTS

## I.     THE PARTIES

1.      Abbott Diabetes Care Inc. ("Abbott Diabetes Care") is a corporation.  Its principal place of business is in California.

2.      Abbott Diabetes Care Sales Corp. is a corporation.  Its principal place of business is in California.

3.      DexCom, Inc. ("DexCom") is a corporation.  Its principal place of business is in California.

## II.    THE SLA

4.      Abbott Diabetes Care and DexCom entered into a Settlement and License Agreement ("SLA") on July 2, 2014.  The SLA settled patent infringement suits Abbott Diabetes Care had brought against DexCom prior to July 2, 2014.

## III.   DEXCOM AND ABBOTT PATENT INFRINGEMENT SUITS, AND ABBOTT DIABETES CARE'S IPRS

5.      On June 30, 2021, DexCom filed this patent infringement suit against Abbott Diabetes Care and Abbott Diabetes Care Sales Corp. asserting that Abbott Diabetes Care and Abbott Diabetes Care Sales Corp.'s FreeStyle Libre, FreeStyle Libre 2, and FreeStyle Libre 3 infringed claims from five DexCom United States patents: U.S. Patent Nos. 11,000,213; 10,980,452; 10,702,215; 10,702,193; and 10,993,642.

6.      Between April 21, 2022 and April 23, 2022, Abbott Diabetes Care filed eight petitions for *inter partes* review challenging DexCom's asserted U.S. patents:

- IPR No. 2022-00908 (on the '193 Patent)

- IPR No. 2022-00909 (on the ''215 Patent)

- IPR No. 2022-00913 (on the '213 Patent)

- IPR No. 2022-00914 (on the '213 Patent)

2

**EXHIBIT 1**
JOINT STATEMENT OF UNCONTESTED FACTS

- IPR No. 2022-00917 (on the '452 Patent)

- IPR No. 2022-00918 (on the '452 Patent)

- IPR No. 2022-00921 (on the '642 Patent)

- IPR No. 2022-00922 (on the '642 Patent)

7.     In July 2021, DexCom filed six patent infringement suits against Abbott Diabetes Care and its foreign affiliates in Germany.   In those cases, DexCom asserted that Abbott's Freestyle Libre 2 and Freestyle Libre 3 infringe German patents EP 2 914 159 B1, and EP 3 782 539 B1, and DexCom asserted that Abbott's Freestyle Libre 2 infringed German patents EP 3 435 866 B1 and EP 2 829 224 B1.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 2D TO PROPOSED FINAL PRETRIAL ORDER
<u>DEXCOM'S STATEMENT OF CONTESTED FACTS</u>**

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

Pursuant to Delaware Local Rule 16.3(c)(4), DexCom hereby submits the following statement of issues of fact that remain to be litigated.

This statement is based on the current status of the case and the Court's rulings to date. DexCom reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments. The following statement of issues of fact is not exhaustive, and DexCom reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. DexCom intends to offer evidence as to the issues of fact and issues of law identified in this Pretrial Order. DexCom further intends to offer evidence to rebut evidence offered by Abbott. To the extent that DexCom's Statement of Issues of Law to be Litigated set forth in Exhibit 3D contains issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of law, DexCom incorporates such issue by reference in Exhibit 3D. DexCom does not assume the burden of proof with regard to any of the below-listed issues of fact. DexCom also incorporates by reference its expert reports to identify the issues to be resolved at trial.

## I.   ABBOTT'S COUNTERCLAIMS FOR BREACH OF CONTRACT

1.   Whether Abbott has proven by a preponderance of the evidence that DexCom has materially breached ¶H.3 of the Settlement and License Agreement ("SLA") by obtaining issuance of any of the following claims because the claim is ███████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

- U.S. Patent No. 11,000,213: Claims 1, 6, 8, 21, 23, 26, 49, 80, 81, 85, 86, 105, and 106

- U.S. Patent No. 10,702,215: Claims 1, 3-5, 12, and 23

- U.S. Patent No. 10,702,193: Claims 1-3, 11-13

- EP 2 829 224: Claim 1, 4, 5, 7, 10, 11

- EP 2 914 159: Claims 1, 2, 3, 4, 5, 6, 9, 11, 12

- EP 3 782 539: Claim 1.

2.     Whether Abbott has proven by a preponderance of the evidence that its FreeStyle Libre 3 system, FreeStyle Libre 2 system, FreeStyle Libre Pro system, FreeStyle Libre 14-Day system, and Libre Sense Glucose Sport Biosensor meet the definition of ████████████ ███████████

3.     Whether Abbott has proven by a preponderance of the evidence that DexCom has materially breached SLA ¶C.2 by asserting claims against products that meet the definition of a ██████████████████████████████████████████████████████ or H.3(i) of the SLA?

4.     Whether Abbott has proven by a preponderance of the evidence that DexCom has materially breached SLA ¶J.4 by filing suit against Abbott for infringement of the asserted claims of the asserted patents in the Western District of Texas?

## II.     ABBOTT'S COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAITH DEALING

5.     Whether Abbott has proven by a preponderance of the evidence that DexCom breached the implied covenant of good faith and fair dealing in bringing suit in Germany on the EP 224, EP 159, and EP 539 Patents against Abbott's affiliates?

## III.     ABBOTT'S COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT BASED ON ALLEGED LICENSE

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

6.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

7.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 6 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

8.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 8 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

9.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 21 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

10.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 23 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

11.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 26 of U.S. Patent No. 11,000,213 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

12.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 49 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

13.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 80 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

14.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 81 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

15.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 85 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

16.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 86 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,764?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

17.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 105 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

18.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 106 of U.S. Patent No. 11,000,213 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

19.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

20.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

21.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

22.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of U.S. Patent No. 10,980,452 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

23.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

24.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

25.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 14 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

26.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 18 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

27.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 19 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,683?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

28.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 22 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ██████████████ by U.S. Provisional Application No. 60/614,683?

29.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 23 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ██████████████ by U.S. Provisional Application No. 60/614,683?

30.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 26 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ██████████████ by U.S. Provisional Application No. 60/614,683?

31.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 27 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ██████████████ by U.S. Provisional Application No. 60/614,683?

32.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 28 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ██████████████ by U.S. Provisional Application No. 60/614,683?

33.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 41 of U.S. Patent No. 10,980,452 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶A.13(c) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,683?

34.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 44 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,683?

35.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 45 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,683?

36.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 48 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,683?

37.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 49 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is █████████████████ U.S. Provisional Application No. 60/614,683?

38.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 50 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ████████████████ by U.S. Provisional Application No. 60/614,683.?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

39.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 62 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

40.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 63 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

41.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 66 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

42.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 67 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

43.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 68 of U.S. Patent No. 10,980,452 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

44.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,702,215 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

45.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 3 of U.S. Patent No. 10,702,215 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

46.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 4 of U.S. Patent No. 10,702,215 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

47.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 5 of U.S. Patent No. 10,702,215 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

48.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,702,215 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

49.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 23 of U.S. Patent No. 10,702,215 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by U.S.

Provisional Application No. 60/614,764?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

50.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,702,215 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Patent No. 8,282,549?

51.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 3 of U.S. Patent No. 10,702,215 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Patent No. 8,282,549?

52.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of U.S. Patent No. 10,702,215 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Patent No. 8,282,549?

53.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of U.S. Patent No. 10,702,215 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Patent No. 8,282,549?

54.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,702,215 because that claim is licensed under ¶H.3(i) of the SLA because it is "███████████████████ by U.S. Patent No. 8,282,549?

55.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 23 of U.S. Patent No. 10,702,215 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by U.S.

Patent No. 8,282,549?

56.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,702,193 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by

International Patent Publication No. WO 2005/010518?

57.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 2 of U.S. Patent No. 10,702,193 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by

International Patent Publication No. WO 2005/010518?

58.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 3 of U.S. Patent No. 10,702,193 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by

International Patent Publication No. WO 2005/010518?

59.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 11 of U.S. Patent No. 10,702,193 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by

International Patent Publication No. WO 2005/010518?

60.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,702,193 because that

claim is licensed under ¶H.3(i) of the SLA because it is ████████████ by

International Patent Publication No. WO 2005/010518?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

61.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 13 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by International Patent Publication No. WO 2005/010518?

62.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by International Patent Publication No. WO 2005/019795?

63.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 2 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by International Patent Publication No. WO 2005/019795?

64.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 3 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by International Patent Publication No. WO 2005/019795?

65.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ████████████████ by International Patent Publication No. WO 2005/019795?

66.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,702,193 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by International Patent Publication No. WO 2005/019795?

67.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 13 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by International Patent Publication No. WO 2005/019795?

68.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

69.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 2 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

70.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 3 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

71.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,683?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

72.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 12 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,683?

73.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 13 of U.S. Patent No. 10,702,193 because that claim is licensed under ¶H.3(i) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,683?

74.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

75.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

76.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 8 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████████ by U.S. Provisional Application No. 60/614,764?

77.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of U.S. Patent No. 10,993,642 because that

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

78.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 38 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

79.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 66 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

80.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 67 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

81.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 89 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

82.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 91 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████████ by U.S. Provisional Application No. 60/614,764?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**



83.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 101 of U.S. Patent No. 10,993,642 because that claim is licensed under ¶A.13(c) of the SLA because it is ███████████ by U.S. Provisional Application No. 60/614,764?

84.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ██████████ to ███████████ ████ in the UK based on U.S. Provisional Application No. 60/614,683?

85.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ██████████ to ███████████ ████ in the UK based on U.S. Provisional Application No. 60/614,683?

86.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ██████████ to ███████████ ████ in the UK based on U.S. Provisional Application No. 60/614,683?

87.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ██████████ to ███████████ ████ the UK based on U.S. Provisional Application No. 60/614,683?

88.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 829 224 because that claim is

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████

███████ in the UK based on U.S. Provisional Application No. 60/614,683?

89.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 11 of EP 2 829 224 because that claim is

licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████

███████ in the UK based on U.S. Provisional Application No. 60/614,683?

90.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of EP 2 829 224, as DexCom proposes it be

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

███████ to ███████████ the UK based on U.S. Provisional Application No.

60/614,683?

91.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 4 of EP 2 829 224, as DexCom proposes it be

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

███████ to ███████████ the UK based on U.S. Provisional Application No.

60/614,683?

92.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 5 of EP 2 829 224, as DexCom proposes it be

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

███████ to ███████████ in the UK based on U.S. Provisional Application No.

60/614,683?

93.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 7 of EP 2 829 224, as DexCom proposes it be

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

██████ to ████████████████ in the UK based on U.S. Provisional Application No.

60/614,683?

94.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 10 of EP 2 829 224, as DexCom proposes it be

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

██████ to ████████████████ in the UK based on U.S. Provisional Application No.

60/614,683?

95.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 11 of EP 2 829 224, as DexCom proposes it be

amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████

██████ to ████████████████ in the UK based on U.S. Provisional Application No.

60/614,683?

96.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of EP 2 829 224 because that claim is licensed

under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████

████████ in Germany based on U.S. Provisional Application No. 60/614,683?

97.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 4 of EP 2 829 224 because that claim is licensed

under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████

████████ in Germany based on U.S. Provisional Application No. 60/614,683?

98.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 5 of EP 2 829 224 because that claim is licensed

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ████ in Germany based on U.S. Provisional Application No. 60/614,683?

99.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ████ in Germany based on U.S. Provisional Application No. 60/614,683?

100.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ████ in Germany based on U.S. Provisional Application No. 60/614,683?

101.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of EP 2 829 224 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ████ in Germany based on U.S. Provisional Application No. 60/614,683?

102.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 829 224, as DexCom proposes it be amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████ ████ to ████████████ in Germany based on U.S. Provisional Application No. 60/614,683?

103.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 829 224, as DexCom proposes it be amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

█████ to ████████████████ in Germany based on U.S. Provisional Application No. 60/614,683?

104.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 829 224, as DexCom proposes it be amended, because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████ ███████ to ████████████████ in Germany based on U.S. Provisional Application No. 60/614,683?

105.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ███████ in the UK based on U.S. Provisional Application No. 60/614,764?

106.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ███████ in the UK based on U.S. Provisional Application No. 60/614,764?

107.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ███████ in the UK based on U.S. Provisional Application No. 60/614,764?

108.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████████ ███████ in the UK based on U.S. Provisional Application No. 60/614,764?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

109.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████ ███████████ in the UK based on U.S. Provisional Application No. 60/614,764?

110.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████ ███████████ in the UK based on U.S. Provisional Application No. 60/614,764?

111.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████ ███████████ in Germany based on U.S. Provisional Application No. 60/614,764?

112.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████ ███████████ in Germany based on U.S. Provisional Application No. 60/614,764?

113.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ███████████ ███████████ Germany based on U.S. Provisional Application No. 60/614,764?

114.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 914 159 because that claim is licensed

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ in Germany based on U.S. Provisional Application No. 60/614,764?

115.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ in Germany based on U.S. Provisional Application No. 60/614,764?

116.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ in Germany based on U.S. Provisional Application No. 60/614,764?

117.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ the UK based on U.S. Patent No. 8,282,549?

118.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ in the UK based on U.S. Patent No. 8,282,549?

119.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ███████████ to ████████ ████ in the UK based on U.S. Patent No. 8,282,549?

24

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

120.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to '████████████ ████████ the UK based on U.S. Patent No. 8,282,549?

121.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████ ████████ the UK based on U.S. Patent No. 8,282,549?

122.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████ ████████ in the UK based on U.S. Patent No. 8,282,549?

123.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████ ████████ in Germany based on U.S. Patent No. 8,282,549?

124.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 4 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████████ to ████████ ████████ in Germany based on U.S. Patent No. 8,282,549?

125.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 5 of EP 2 914 159 because that claim is licensed

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮▮ to ▮▮▮▮▮▮ ▮▮▮ in Germany based on U.S. Patent No. 8,282,549?

126.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 7 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮▮ to ▮▮▮▮▮ ▮▮▮ in Germany based on U.S. Patent No. 8,282,549?

127.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 10 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮▮ to "fully supported and enabled" in Germany based on U.S. Patent No. 8,282,549?

128.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 11 of EP 2 914 159 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮▮ to ▮▮▮▮ ▮▮▮ in Germany based on U.S. Patent No. 8,282,549?

129.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1 of EP 3 782 539 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮▮ to ▮▮▮▮▮ ▮▮▮ in the UK based on U.S. Provisional Application No. 60/614,764?

130.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of claim 1, as DexCom proposes it be amended, of EP 3 782 539 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ▮▮▮▮▮ to ▮▮▮▮▮▮ in Germany based on U.S. Provisional Application No. 60/614,764?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

131.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of EP 3 782 539 because that claim is licensed

under ¶H.3(i) of the SLA because it meets the ███████████ to ████████████

████████ the UK based on U.S. Provisional Application No. 60/614,764?

132.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of EP 3 782 539 because that claim is licensed

under ¶H.3(i) of the SLA because it meets the ███████████ to ████████████

████████ in the UK based on U.S. Patent No. 8,282,549?

133.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1, as DexCom proposes it be amended, of EP 3

782 539 because that claim is licensed under ¶H.3(i) of the SLA because it meets the ████████

████████ to ███████████████ in Germany based on U.S. Patent No. 8,282,549?

134.    Whether Abbott has proven by a preponderance of the evidence that it is entitled to

declaratory judgment of noninfringement of claim 1 of EP 3 782 539 because that claim is licensed

under ¶H.3(i) of the SLA because it meets the ███████████ to ████████████

████████ the UK based on U.S. Patent No. 8,282,549?

135.    Whether Abbott has proven by a preponderance of the evidence that each Abbott

entity accused of infringement in the UK is authorized to sell and distribute the Abbott accused

products by ¶C.2 of the SLA?

136.    Whether Abbott has proven by a preponderance of the evidence that each Abbott

entity accused of infringement in Germany is authorized to sell and distribute the Abbott accused

products by ¶C.2 of the SLA?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

137.   Whether Abbott has proven by a preponderance of the evidence that Abbott Diabetes Care Sales Corp. is authorized to sell and distribute the Abbott accused products by ¶C.2 of the SLA?

## IV.   ABBOTT'S EXHAUSTION DEFENSE

138.   Whether Abbott has proven by a preponderance of the evidence that its activities accused of infringement by DexCom in C.A. No. 22-605 and foreign litigations are protected from infringement by license under the SLA or under the doctrine of exhaustion?

139.   Whether Abbott has proven by a preponderance of the evidence that its Abbott Freestyle 14-day sensor kits that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

140.   Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 sensor kits that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

141.   Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 sensor kits that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

142.   Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 14-day sensor kits that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

143.   Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 sensor kits that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

144.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 sensor kits that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

145.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 14-day sensor kits that are sold in the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

146.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 sensor kits that are sold in the UK the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

147.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 sensor kits that are sold in the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

148.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 14-day receivers that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

149.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 receivers that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

150.     Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 receivers that are sold in the U.S. were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

151.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 14-day receivers that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

152.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 receivers that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

153.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 receivers that are sold in Germany were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

154.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 14-day receivers that are sold in the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

155.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 2 receivers that are sold in the UK the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

156.    Whether Abbott has proven by a preponderance of the evidence that its sales of its Abbott Freestyle 3 receivers that are sold in the UK were, at some point during their distribution, sold by an entity authorized to do so under ¶C.2 of the SLA?

157.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

158.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

159.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

160.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

161.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

162.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of EP 2 829 224?

163.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of EP 2 914 159?

164.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day sensor kit substantially embodies the asserted claims of EP 3 782 539?

165.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

166.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

167.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

168.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

169.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

170.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of EP 2 829 224?

171.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of EP 2 914 159?

172.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 sensor kit substantially embodies the asserted claims of EP 3 782 539?

173.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

174.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

175.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

176.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

177.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

178.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of EP 2 829 224?

179.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of EP 2 914 159?

180.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 sensor kit substantially embodies the asserted claims of EP 3 782 539?

181.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

182.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

183.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

184.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

185.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

186.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of EP 2 829 224?

187.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of EP 2 914 159?

188.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 14 day receiver substantially embodies the asserted claims of EP 3 782 539?

189.     Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

190.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

191.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

192.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

193.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

194.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of EP 2 829 224?

195.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of EP 2 914 159?

196.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 2 receiver substantially embodies the asserted claims of EP 3 782 539?

197.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of U.S. Patent No. 11,000,213?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

198.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of U.S. Patent No. 10,980,452?

199.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,215?

200.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of U.S. Patent No. 10,702,193?

201.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of U.S. Patent No. 10,993,642?

202.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of EP 2 829 224?

203.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of EP 2 914 159?

204.    Whether Abbott has proven by a preponderance of the evidence that the Abbott FreeStyle Libre 3 receiver substantially embodies the asserted claims of EP 3 782 539?

**V.    ABBOTT'S CLAIMS FOR RELIEF**

205.    Whether Abbott has proven by a preponderance of the evidence that it has suffered harm due to DexCom's alleged breach of SLA ¶C.2?

206.     Whether Abbott has proven by a preponderance of the evidence that it has suffered harm due to DexCom's alleged breach of SLA ¶J.4?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

207.    Whether Abbott has proven by a preponderance of the evidence that it has suffered harm due to DexCom's alleged breach of the implied covenant of good faith and fair dealing?

208.    Whether Abbott has proven by a preponderance of the evidence that DexCom's alleged breach of SLA ¶C.2 has caused Abbott harm?

209.    Whether Abbott has proven by a preponderance of the evidence that DexCom's alleged breach of SLA ¶J.4 has caused Abbott harm?

210.    Whether Abbott has proven by a preponderance of the evidence that DexCom's alleged breach of the implied covenant of good faith and fair dealing has caused Abbott harm?

211.    Whether Abbott has proven by a preponderance of the evidence and with reasonable certainty the amount of monetary damages it is owed due to due to DexCom's alleged breach of SLA ¶C.2?

212.    Whether Abbott has proven by a preponderance of the evidence and with reasonable certainty the amount of monetary damages it is owed due to due to DexCom's alleged breach of SLA ¶J.4?

213.

214.    Whether Abbott has proven by a preponderance of the evidence and with reasonable certainty the amount of monetary damages it is owed due to DexCom's alleged breach of the implied covenant of good faith and fair dealing?

215.

216.    Whether Abbott has proven by a preponderance of the evidence that it is ready, willing, and able to perform under the SLA?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

217.     Whether Abbott has proven by a preponderance of the evidence that the balance of equities tips in Abbott's favor to require DexCom to bring any claims "arising from or under or relating to" the SLA be filed in Delaware, and only after DexCom has complied with the dispute resolution clause?

## VI.     DEXCOM'S CLAIM FOR BREACH OF CONTRACT

218.     Whether DexCom has proven by a preponderance of the evidence that Abbott has breached ¶J.4 of the SLA by filing *inter partes* review petitions at the USPTO against the Asserted Patents, rather than bringing its invalidity challenges solely in District Court in the District of Delaware?

## VII.     DEXCOM'S CLAIMS FOR RELIEF

219.     Whether DexCom is entitled to monetary damages for Abbott's alleged breach.

220.     Whether DexCom has proven by a preponderance of the evidence that it has suffered harm due to Abbott's alleged breach of SLA ¶J.4?

221.     Whether DexCom has proven by a preponderance of the evidence that Abbott's alleged breach of SLA ¶J.4 has caused Abbott harm?

222.     Whether DexCom has proven by a preponderance of the evidence and with reasonable certainty the amount of monetary damages it is owed due to due to Abbott's alleged breach of SLA ¶J.4?

223.     Whether DexCom has proven by a preponderance of the evidence that Abbott's alleged breach of SLA ¶J.4 has caused DexCom irreparable injury?

224.     Whether DexCom has proven by a preponderance of the evidence that remedies available at law, such as monetary damages, are inadequate to compensate DexCom for its injury due to Abbott's alleged breach of SLA ¶J.4?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

225.     Whether DexCom has proven by a preponderance of the evidence in considering the balance of hardships between Abbott and DexCom, such hardships favor DexCom and a remedy in equity, due to Abbott's alleged breach of SLA ¶J.4 is warranted?

226.     Whether DexCom has proven by a preponderance of the evidence that, due to Abbott's alleged breach of SLA ¶J.4 , the public interest would not be disserved by a permanent injunction in its favor?

227.     Whether DexCom has proven by a preponderance of the evidence that it is ready, willing, and able to perform under the SLA?

228.     Whether DexCom has proven by a preponderance of the evidence that the balance of equities tips in DexCom's favor to require Abbott to pursue its challenge to the validity of the asserted patents only in District Court in the District of Delaware?

## VIII.   DEXCOM'S AFFIRMATIVE DEFENSES

229.     Whether DexCom has proven by a preponderance of the evidence that Abbott has failed to mitigate any damages (to the extent there are any)?

230.     Whether DexCom has proven by a preponderance of the evidence that Abbott's damages (to the extent there are any) should be offset by monetary gains and/or benefits Abbott received?

231.     Whether DexCom has proven by a preponderance of the evidence that Abbott is guilty of conduct involving fraud, deceit, unconscionability, or bad faith?

232.     Whether DexCom has proven by a preponderance of the evidence that Abbott's conduct (involving fraud, deceit, unconscionability, or bad faith) is directly related to Abbott's breach of contract or breach of the implied covenant of good faith and fair dealing claims asserted in this matter?

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

233.    Whether DexCom has proven by a preponderance of the evidence that Abbott's conduct involving fraud, deceit, unconscionability, or bad faith has injured DexCom?

234.    Whether DexCom has proven by a preponderance of the evidence that Abbott's conduct involving fraud, deceit, unconscionability, or bad faith affects the balance of equities between Abbott and DexCom?

OF COUNSEL:
David Bilsker
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(213) 443-3000

Kevin P.B. Johnson
Todd M. Briggs
Margaret Shyr
Zak Randell
Cat Williams
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Brian P. Biddinger
Cary E. Adickman
Alex Zuckerman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Nathan Hamstra
Jonathon Studer
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for DexCom, Inc.*

**EXHIBIT 2D**
**DEXCOM'S STATEMENT OF CONTESTED FACTS**

Valerie Lozano
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Isabel Peraza
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St. NW #900,
Washington, DC 20005
(202) 538-8000

Gavin Frisch
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Ave., Suite 520
Boston, MA 02119
(617) 712-7100

Theodore Kwong
HILGERS GRABEN PLLC
10000 N. Central Expy., Suite 400
Dallas, TX 75231
(972) 645-3097

Sophie A. Hood
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

Dated: May 2, 2023

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

DEXCOM, INC.,

               Plaintiff,

v.

ABBOTT DIABETES CARE INC., and
ABBOTT DIABETES CARE SALES CORP.

               Defendants.

Civil Action No. 22-605 (KAJ)

(CONSOLIDATED)

ABBOTT DIABETES CARE INC.,

               Plaintiff,

v.

DEXCOM, INC.,

               Defendant.

Civil Action No. 21-1699 (KAJ)

**EXHIBIT 2P TO PROPOSED FINAL PRETRIAL ORDER**
**ABBOTT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 2P TO PROPOSED FINAL PRETRIAL ORDER**
**ABBOTT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

Pursuant to Local Rule 16.3(c)(4), Abbott Diabetes Care Inc. ("Abbott Diabetes Care") and Abbott Diabetes Care Sales Corp. (collectively, "Abbott") respectfully submit the following issues of fact that remain to be presented and litigated. Further details regarding these issues have been explained at length in Abbott's pleadings and discovery responses, including in its contentions, interrogatory responses, expert reports, and by experts at depositions, which Abbott incorporates by reference.

Abbott's identification of the issues of fact that remain to be litigated is based upon its current understanding of the arguments DexCom, Inc. ("DexCom") is likely to make, based on DexCom's pleadings and discovery responses, including in its contentions, interrogatory responses, expert reports, and by experts at depositions, in the action to date. To the extent that

1

## EXHIBIT 2P
## ABBOTT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED

DexCom introduces different or additional facts or alleged facts, Abbott reserves the right to contest such facts or alleged facts, and to present any and all rebuttal evidence in response. By including a fact herein, Abbott does not assume the burden of proof or production with regard to that fact.

Should the Court determine that any issue identified in this list is more properly considered an issue of law, it shall be so considered and Abbott incorporates such issue into Abbott's Statement of Issues of Law to be Litigated. Likewise, to the extent that Abbott's Statement of Issues of Law to be Litigated contains issues that are deemed to be issues of fact, those issues are incorporated herein by reference.

Abbott reserves the right to revise, modify, supplement, or change the issues of fact to be litigated in light of the Court's rulings and in light of DexCom's identification of issues of law and fact to be litigated.

## I.    LIABILITY

Abbott submits that the following issues remain to be litigated at trial with respect to DexCom's liability for breach of contract:

### A.    Contract Interpretation

1.    Whether the Challenge clauses in the SLA (¶ F.3 and F.4) continued to apply following expiration of the Covenant Period.

2.    Whether the Challenge clauses in the SLA (¶ F.3 and F.4) authorized Abbott to file petitions for *inter partes* review of DexCom's asserted patents.

### B.    Technical Application of the SLA's Provisions

3.    Whether Abbott has shown, by a preponderance of the evidence, that the asserted claims of DexCom's asserted patents meet the SLA's definition of DexCom Licensed Patents (¶ A.13), or were obtained in breach of DexCom's Warranty (¶ H.3).

2

**EXHIBIT  2P**
**ABBOTT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

4.       Whether Abbott has shown, by a preponderance of the evidence, ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████

**C.       Licensed Activities**

5.       Whether Abbott has shown, by a preponderance of the evidence, that the accused activities of Abbott Diabetes Care and its affiliates are protected from DexCom's infringement claims due to an express or implied license, exhaustion, or an implied covenant of good faith and fair dealing.

**D.       DexCom's Breaches of the SLA**

6.       To the extent not already resolved by the Court on summary judgment, whether Abbott has shown, by a preponderance of the evidence, that DexCom has breached the SLA by (a) obtaining the asserted patent claims in violation of SLA Section H.3, and/or (b) filing and maintaining patent infringement suits against Abbott Diabetes Care Sales Corp., Abbott GmbH, Abbott Laboratories, Abbott Diabetes Care Ltd., and/or Abbott Laboratories Ltd. in violation of SLA Sections C.2 (license), H.3 (representations and warranties), J.1 (dispute resolution) and/or J.4 (choice of forum).

**E.       DexCom's Breach of the Covenant of Good Faith and Fair Dealing**

7.       Whether Abbott has shown, by a preponderance of the evidence, that DexCom breached the implied covenant of good faith and fair dealing inherent in the SLA by filing and maintaining patent infringement suits against Abbott Diabetes Care Sales Corp., Abbott GmbH, Abbott Laboratories, Abbott Diabetes Care Ltd., and/or Abbott Laboratories Ltd.

**F.       Abbott's Alleged Breaches**

8.       Whether DexCom has shown, by a preponderance of the evidence, that Abbott has breached the Forum Selection Clause of the SLA (¶ J.4) by filing petitions for *inter partes* review

**EXHIBIT 2P**
**ABBOTT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

of patent claims asserted by DexCom in this action.

9.      Whether DexCom has shown, by a preponderance of the evidence, that Abbott breached the Dispute Resolution Clause of the SLA (¶ J.1) by failing to engage in the SLA's dispute resolution process before filing petitions for *inter partes* review of patent claims asserted by DexCom in this action.

## II.      REMEDIES

### A.      Abbott's Remedies

10.      Whether Abbott has shown, by a preponderance of the evidence, that it is entitled to damages and if so, the amount of those damages.

### B.      DexCom's Remedies

11.      Whether DexCom has shown, by a preponderance of the evidence, that it is entitled to damages, and if so, the amount of damages.

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 3D TO PROPOSED FINAL PRETRIAL ORDER
<u>DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED</u>**

**EXHIBIT 3D**

**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

Pursuant to Delaware Local Rule 16.3(c)(5), Plaintiff and Counterclaim-Defendant DexCom Inc. ("DexCom") hereby submit the following statement of issues of law that remain to be litigated with citations to authorities relied upon.

This statement is based on the current status of the case and the Court's rulings to date. DexCom reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments. The following statement of issues of law is not exhaustive, and DexCom reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. DexCom intends to offer evidence as to the issues of fact and issues of law identified in this Pretrial Order. DexCom further intends to offer evidence to rebut evidence offered by Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corp. (collectively "Abbott"). To the extent that DexCom's Statement of Issues of Fact to be Litigated set forth in Exhibit 2D contains issues of law, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of fact, DexCom incorporates such issue by reference in Exhibit 2D. DexCom does not assume the burden of proof with regard to any of the below-listed issues of law for which Abbott bears the burden of proof.

**I.     ISSUES OF CONTRACT INTERPRETATION**

1.     What is the ████████████████████████████ to the requirement in ¶A.13(c)(i) and ¶H.3(i) of the Settlement and License Agreement ("SLA") that a claim be ████ ████████████████████████████

**EXHIBIT 3D**

**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

<u>Relevant Authority</u>: "The proper construction of any contract . . . is purely a question of law." *Rhone Poulenc Basic Chemicals Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). Where a contract is clear and unambiguous, "interpretation of [the] written agreement is a task to be performed by the court rather than a jury." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). While the fact finder may have a role to play in the interpretation of ambiguous contracts, the interpretation and application of unambiguous contractual provisions is a question of law for the court. *Id.*; *see also L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 274-76 (3d Cir. 2013). If a court finds contract language ambiguous, the court will consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

Under Federal Rule of Civil Procedure 44.1, "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." "The parties must carry 'the burden of adequately proving foreign law to enable the court to apply it.'" *Path to Riches, LLC on behalf of M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 289 (D. Del. 2018) (quoting *Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)).

2.      Whether EP or U.S. law applies to the question of whether any of DexCom's rights to enforce DexCom's asserted EP patents against Abbott have been exhausted?

<u>Relevant Authority</u>: "The proper construction of any contract . . . is purely a question of law." *Rhone Poulenc Basic Chemicals Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1195 (Del.

2

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

1992). Where a contract is clear and unambiguous, "interpretation of [the] written agreement is a task to be performed by the court rather than a jury." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). While the fact finder may have a role to play in the interpretation of ambiguous contracts, the interpretation and application of unambiguous contractual provisions is a question of law for the court. *Id.*; *see also L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 274-76 (3d Cir. 2013). If a court finds contract language ambiguous, the court will consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

Exhaustion is "a limit on 'the scope of the patentee's rights,'" which "extinguishes [the] exclusionary power" conferred by a patent. *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374 (2017) (citation omitted).

3.      Whether Paragraphs F.3 and F.4 of the SLA apply only during the Covenant Period?

Relevant Authority: "The proper construction of any contract . . . is purely a question of law." *Rhone Poulenc Basic Chemicals Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). Where a contract is clear and unambiguous, "interpretation of [the] written agreement is a task to be performed by the court rather than a jury." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). While the fact finder may have a role to play in the interpretation of ambiguous contracts, the interpretation and application of unambiguous contractual provisions is a question of law for the court. *Id.*; *see also L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 274-76 (3d Cir. 2013). If a court finds contract language ambiguous, the court will consider evidence of prior agreements and communications of the parties as well as trade usage or

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

course of dealing. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

## II.  ABBOTT'S COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT BASED ON ALLEGED LICENSE

4.      Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of noninfringement of any of the asserted claims of the '213 Patent, '452 Patent, '215 Patent, '193 Patent, '642 Patent, EP 224 Patent, EP 159 Patent, or EP 539 Patent because those claims are allegedly licensed to Abbott pursuant to the SLA?

Relevant Authority: "The patent law defines infringement as making, using, or selling any patented invention without authority of the patent owner. 35 U.S.C.A. § 271(a).  A patent therefore confers upon its owner a bundle of rights relating to the patented invention including the rights to exclude others from making, using, or selling the subject of the patent.  Patent license agreements allow third party licensees to have partial or complete access to the patented invention by providing immunity from an infringement suit on the licensed patent.  A patent license is essentially a waiver of the patent owner's right to sue; the parties agree that the patent owner will allow the licensee either to make, to use, to sell (or some combination of, or derivative of, these three rights) without subjecting the licensee to an infringement suit. It is thus well settled that a valid license is a complete defense to infringement." *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 218 (D. Del. 2001).  "A 'have made' right, which is a right carved from the term 'to make' in 35 U.S.C. § 271(a), provides a licensee with the right to request an unlicensed third-party to manufacture a licensed good for the licensee." *Id.* at 228.

## III.  ABBOTT'S COUNTERCLAIMS FOR ALLEGED BREACH OF CONTRACT

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

5.     Whether Abbott has proven by a preponderance of the evidence that DexCom breached ¶H.3 of the SLA by obtaining patent claim(s) that were ███████████████████████████ ████████████████████████████████████████████████████████ ████████████ by a patent or patent application captured in subsection (a) of ¶A.13 and excluded from the definition of DexCom Licensed Patents in ¶A.13?

6.     Whether Abbott has proven by a preponderance of the evidence that DexCom breached ¶C.2 of the SLA by suing Abbott for infringement of the asserted claims of the patents-in-suit?

       <u>Relevant Authority:</u> For breach of contract, the party asserting breach of contract bears the burden of proving its claim by a preponderance of the evidence.  *LM Ins. Corp. v. Wilkinson Roofing & Siding, Inc.*, 2017 WL 4299823, at *6 (Del. Super. Sept. 27, 2017).  "Under Delaware law, a party claiming breach of contract must prove three elements: (1) the existence of a contractual obligation, express or implied; (2) a breach of that obligation; and (3) resulting damages to the complaining party."  *Id.* at 5.

**IV.    ABBOTT'S COUNTERCLAIM FOR ALLEGED BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

7.     Whether Abbott has proven by a preponderance of the evidence that DexCom breached the implied covenant of good faith and fair dealing by filing and maintaining the litigations in Germany and the United Kingdom against ADC Inc.'s affiliates and seeking damages and injunctions in those litigations?

       <u>Relevant Authority:</u> "Under Delaware law, 'every contract includes an implied covenant of good faith and fair dealing—a promise of faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.'"  *Carrow v. Slaughter*, 2010 WL

**EXHIBIT 3D**

**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

5550679, at *4 (Del. Com. Pl. Dec. 2, 2010) (quoting *Superior Vision Servs., Inc. v. Reliastar Life Ins. Co., Noble, V.C.*, 2006 WL 4782393, at *5 (Del. Ch. 2006)).  The party asserting a claim based on a breach of the implied covenant and good faith and fair dealing bears the burden of proving its claim by the preponderance of the evidence.  *Id.* at *5.  A claim for breach of the implied covenant of good faith and fair dealing requires the plaintiff to show "a specific obligation implied in the contract, a breach of that obligation, and resulting damages."  *CMS Inv. Holdings, LLC v. Castle*, No. CV 9468-VCP, 2015 WL 3894021, at *15 (Del. Ch. June 23, 2015)

To determine whether the implied covenant of good faith and fair dealing has been breached, the factfinder must "assess the 'parties' reasonable expectations' at the time of contracting." *Carrow v. Slaughter*, 2010 WL 5550679, at *5 (Del. Com. Pl. Dec. 2, 2010) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010)).  "The implied covenant only applies to circumstances that 'could not have been anticipated, not developments that the parties simply failed to consider.'"  *Id.*

## V.     ABBOTT'S DEFENSE OF IMPLIED LICENSE

8.     Whether Abbott has proven by a preponderance of the evidence that it is entitled to declaratory judgment of non-infringement of the asserted claims of the '452 patent based on an implied license?

Relevant Authority: Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  "Where ... continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well."  *General Protecht Group Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011) ).  "[P]arties could contract around the presumption of an implied license if it did not 'reflect their intentions' but that it was the parties'

**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

burden to 'make such intent clear in the license.'"  *Cheetah Omni, LLC v. AT&T Services, Inc.*, 949 F.3d 691 (Fed. Cir. 2020).

## VI.    ABBOTT'S DEFENSE OF PATENT EXHAUSTION

9.      Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the '213 patent have been exhausted?

10.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the '215 patent have been exhausted?

11.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the '452 patent have been exhausted?

12.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the '193 patent have been exhausted?

13.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the '642 patent have been exhausted?

14.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the EP 224 patent have been exhausted?

15.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the EP 159 patent have been exhausted?

16.     Whether Abbott has proven by a preponderance of the evidence that DexCom's rights to assert infringement of the asserted claims of the EP 539 patent have been exhausted?

<u>Relevant Authority:</u>   Under U.S. exhaustion principles, "the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Comput., Inc. v. LG Elec., Inc.*, 553 U.S. 617, 625 (2008).  A "sale" sufficient to trigger exhaustion occurs "when the patented product 'passes' to the hands' of a transferee and when he 'legally acquires a title' to it." *LifeScan Scotland,*

7

**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

*Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1374 (Fed. Cir. 2013) (citation omitted).  Importantly,

however, "[e]xhaustion is triggered only by a sale authorized by the patent holder." *Quanta*, 553

U.S. at 636.  "[A] sale will not exhaust the patentee's rights unless the product sold 'substantially

embodies' the patent."  *Id*. at 638.

## VII.   DEXCOM'S AFFIRMATIVE DEFENSES

17.    Whether Abbott's claims and/or defenses are barred to the extent Abbott failed to mitigate

damages?

Relevant Authority:  Under Delaware law, the Plaintiff has a duty to mitigate damages in

any breach of contract action.  *Tussey v. Finnegan*, No. CV CPU4-09-007778, 2011 WL

13175049, at *16 (Del. Com. Pl. Apr. 21, 2011).

18.    Whether Abbott's damages (to the extent there are any) are offset by monetary gains and/or

benefits Abbott received?

Relevant Authority:  Contract damages are designed to place the injured party in the same

place as he would have been if the contract had been performed.  Such damages should not act as

a windfall. *Fishman Org., Inc. v. Frick Transfer, Inc.*, 564 F. App'x 649, 651 (3d Cir. 2014); *Vici

Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 294 (3d Cir. 2014); *Paul v. Deloitte & Touche*,

LLP, 974 A.2d 140, 146-47 (Del. 2009).

19.    Whether Abbott's license defense is barred by the doctrine of unclean hands?

Relevant Authority:  To prove unclean hands, DexCom must establish: "(1) [Abbott] (2) is

guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to

matter in issue (4) that injures [DexCom] (5) and affects balance of equities between litigants."

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, C.A. No. 19-1727-RGA, 2022 WL 16921800, at *2

(D. Del. Nov. 14, 2022)

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

### VIII.   ABBOTT'S CLAIMS FOR RELIEF

#### A.   Damages

20.   What amount of damages, if any, Abbott has proven by a preponderance of the evidence it is entitled to for DexCom's alleged breach of contract?

21.   What amount of damages, if any, Abbott has proven by a preponderance of the evidence it is entitled to for DexCom's alleged breach of the implied covenant of good faith and fair dealing?

Relevant Authority:  Under Delaware law, "[d]amages are an essential element of breach of contract [and the] breach of the implied covenant of good faith and fair dealing." *Batchelor v. Alexis Properties, LLC*, 2018 WL 1053016, at *3 (Del. Super. Ct. Feb. 23, 2018).  "[T]he non-breaching party is entitled to recover damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (citation omitted).  "Contract damages are designed to place the injured party in an action for breach of contract in the same place as he would have been if the contract had been performed." *Id.*  "Such damages should not act as a windfall." *Id.*  "Expectation damages are measured by the losses caused and gains prevented by defendant's breach." *Id.* at 146-47.

A party seeking damages for a breach of contract must prove the existence and amount of damages by a preponderance of the evidence.  *LM Ins. Corp. v. Wilkinson Roofing & Siding, Inc.*, 2017 WL 4299823, at *6 (Del. Super. Sept. 27, 2017).

#### B.   Pre-judgment and Post-judgment Interest

22.   Whether Abbott is entitled to prejudgment and post-judgment interest on any damages that it proves at trial?

Relevant Authority:  "In Delaware a successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues." *Preferred Inv. Servs., Inc. v. T & H*

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

*Bail Bonds, Inc.*, No. CV 5886VCP, 2013 WL 3934992, at *28 (Del. Ch. July 24, 2013), *aff'd sub nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015) (internal citation and quotation marks omitted).

   C.   **Specific Performance**

23. Whether Abbott is entitled to specific performance requiring that DexCom bring any claims "arising from or under or relating to" the SLA be filed in Delaware?

   Relevant Authority: "A claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties." *MirTech Inc. v. AgroFresh Inc.*, 561 F. Supp. 3d 447, 457 (D. Del. 2021). "A party seeking specific performance must establish that (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Osborn*, 991 A.2d at 1158.   Moreover, "[s]pecific performance is a remedy available when damages may not be accurately ascertained or would not adequately compensate the plaintiff." *Klita v. Cyclo3pss Corp.*, No. CIV.A. 15374, 1997 WL 33174421, at *1 (Del. Ch. Apr. 8, 1997).   In other words, "specific performance is only available where the remedy at law (damages) is inadequate." *Id.*

IX.   **DEXCOM'S CLAIM FOR BREACH OF CONTRACT**

24.   Whether DexCom has proven by a preponderance of the evidence that Abbott breached ¶J.4 of the SLA by filing and maintaining IPRs outside of Delaware?

   Relevant Authority:   For breach of contract, the party asserting breach of contract bears the burden of proving its claim by the preponderance of the evidence.   *LM Ins. Corp. v. Wilkinson Roofing & Siding, Inc.*, 2017 WL 4299823, at *6 (Del. Super. Sept. 27, 2017).   "Under Delaware law, a party claiming breach of contract must prove three elements: (1) the existence of a contractual obligation, express or implied; (2) a breach of that obligation; and (3) resulting damages to the complaining party." *Id.* at 5.

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

## X.    DEXCOM'S CLAIMS FOR RELIEF

### A.    Damages

25.    What amount of damages, if any, DexCom has proven by a preponderance of the evidence
it is entitled to for Abbott's alleged breach of contract?

Relevant Authority:  Under Delaware law, "[d]amages are an essential element of breach
of contract [and the] breach of the implied covenant of good faith and fair dealing." *Batchelor v.
Alexis Properties, LLC*, 2018 WL 1053016, at *3 (Del. Super. Ct. Feb. 23, 2018).  "[T]he non-
breaching party is entitled to recover damages that arise naturally from the breach or that were
reasonably foreseeable at the time the contract was made." *Paul v. Deloitte & Touche, LLP*, 974
A.2d 140, 146 (Del. 2009) (citation omitted).  "Contract damages are designed to place the injured
party in an action for breach of contract in the same place as he would have been if the contract
had been performed." *Id.*  "Such damages should not act as a windfall." *Id.*  "Expectation damages
are measured by the losses caused and gains prevented by defendant's breach." *Id.* at 146-47.

A party seeking damages for a breach of contract must prove the existence and amount of
damages by a preponderance of the evidence. *LM Ins. Corp. v. Wilkinson Roofing & Siding, Inc.*,
2017 WL 4299823, at *6 (Del. Super. Sept. 27, 2017).

### B.    Pre-judgment and Post-judgment Interest

26.    Whether DexCom is entitled to prejudgment and post-judgment interest on any damages
that it proves at trial?

Relevant Authority:  "In Delaware a successful plaintiff is entitled to interest on money
damages as a matter of right from the date liability accrues." *Preferred Inv. Servs., Inc. v. T & H
Bail Bonds, Inc.*, No. CV 5886VCP, 2013 WL 3934992, at *28 (Del. Ch. July 24, 2013), *aff'd sub
nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015) (internal
citation and quotation marks omitted).

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

### C. Injunctive Relief

27. Whether DexCom is entitled to a permanent injunction preventing Abbott from maintaining IPRs against the asserted patents in the USPTO?

Relevant Authority: "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982)). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

### D. Specific Performance

28. Whether DexCom is entitled to specific performance requiring Abbott to pursue its challenge to the validity of the asserted patents only in District Court in the District of Delaware?

Relevant Authority: "A claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties." *MirTech Inc. v. AgroFresh Inc.*, 561 F. Supp. 3d 447, 457 (D. Del. 2021). "A party seeking specific performance must establish that (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Osborn*, 991 A.2d at 1158. Moreover, "[s]pecific performance is a remedy available when damages may not be accurately ascertained or would not adequately compensate the plaintiff." *Klita v. Cyclo3pss*

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**


*Corp.*, No. CIV.A. 15374, 1997 WL 33174421, at *1 (Del. Ch. Apr. 8, 1997). In other words,

"specific performance is only available where the remedy at law (damages) is inadequate." *Id.*

<table>
<tr><td>

OF COUNSEL:
David Bilsker
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(213) 443-3000

Kevin P.B. Johnson
Todd M. Briggs
Margaret Shyr
Zak Randell
Cat Williams
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Brian P. Biddinger
Cary E. Adickman
Alex Zuckerman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Nathan Hamstra
Jonathon Studer
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Valerie Lozano
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

</td><td>

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for DexCom, Inc.*

</td></tr>
</table>

**EXHIBIT 3D**
**DEXCOM'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

Isabel Peraza
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St. NW #900,
Washington, DC 20005
(202) 538-8000

Gavin Frisch
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Ave., Suite 520
Boston, MA 02119
(617) 712-7100

Theodore Kwong
HILGERS GRABEN PLLC
10000 N. Central Expy., Suite 400
Dallas, TX 75231
(972) 645-3097

Sophie A. Hood
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

Dated: May 2, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 3P TO PROPOSED FINAL PRETRIAL ORDER
<u>ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW</u>**

**EXHIBIT 3B**

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

Pursuant to Local Rule 16.3(c)(5), Abbott Diabetes Care Inc. ("Abbott Diabetes Care") and Abbott Diabetes Care Sales Corp. (collectively, "Abbott") respectfully submit the following issues of law that remain to be presented and litigated.  Further details regarding these issues have been explained at length in Abbott's pleadings and discovery responses, including in its contentions, interrogatory responses, expert reports, and by experts at depositions, which Abbott incorporates by reference.

Abbott's identification of the issues of law that remain to be litigated is based upon its current understanding of the arguments DexCom, Inc. ("DexCom") is likely to make, based on DexCom's pleadings and discovery responses, including in its contentions, interrogatory responses, expert reports, and by experts at depositions, in the action to date.  To the extent that DexCom introduces different or additional legal issues, Abbott reserves the right to contest such legal issues, and to present any and all rebuttal evidence and argument in response.  By including a legal issue herein, Abbott does not assume the burden of proof or production with regard to that legal issue.

Should the Court determine that any issue identified in this list is more properly considered an issue of fact, it shall be so considered and Abbott incorporates such issue into Abbott's Statement of Issues of Fact to be Litigated.  Likewise, to the extent that Abbott's Statement of Issues of Fact to be Litigated contains issues that are deemed to be issues of law, those issues are incorporated herein by reference.

Abbott reserves the right to revise, modify, supplement, or change the issues of law to be litigated in light of the Court's rulings and in light of DexCom's identification of issues of fact and law to be litigated.

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

## I.    CONTRACT INTERPRETATION

1.      To the extent not already resolved by the Court, what are the meanings of the disputed terms of the SLA?

Relevant Authority: In determining the scope of a contractual obligation under Delaware law, one must "give priority to the parties' intentions as reflected in the four corners of the agreement." *U.S. Gypsum Co. v. Quigley Co. (In re G-I Holdings, Inc.)*, 755 F.3d 195, 202 (3d Cir. 2014) (quoting *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012)). "In upholding the intentions of the parties, [one] must construe the agreement as a whole, giving effect to all provisions therein." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985)); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) (observing that "the role of a court is to effectuate the parties' intent"); *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (noting that, absent ambiguity, the court applying Delaware contract law "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions").

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *NBC Universal v. Paxson Commc'ns*, No. Civ.A. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005). "When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010). A contract is ambiguous when the court "may reasonably ascribe multiple and different interpretations to [that] contract." *Id.* at 1160. When contract language is found to be ambiguous, "all objective extrinsic evidence is considered: the overt statements and acts of the parties, the

2

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

business context, prior dealings between the parties, and the business customs and usage in the industry." *In re Marrow Park Holding LLC*, No. 2017-0036-PAF, 2022 WL 3025780, at \*17 (Del. Ch. Aug, 1, 2022) (quoting *Bell Atl. Meridian Sys. v. Octel Commc'ns Corp.*, 1995 WL 707916, at \*6 (Del. Ch. Nov. 28, 1995)). For example, "[t]he parties' course of performance under a contract is a powerful indication of what the correct interpretation of that contract is." *Id.* (quoting *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at \*31 (Del. Ch. May 13, 2013)). As such, "the court may look to the actions of the parties following the contract's formation to determine their original intent." *Id.*

Under Delaware law, a contract should be read "as a whole," giving "each provision and term effect, so as not to render any part of the contract mere surplusage" and not "in such a way as to [] render any of its provisions illusory or meaningless." *Kuhn Const., Inc. v. Diamond State Port Corp.*, No. 124, 2009, 2010 WL 779992, at \*2 (Del. Mar. 8, 2010); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992). Any "interpretations that are commercially unreasonable or that produce absurd results must be rejected." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1211 (Del. 2021).

## II.    SCOPE OF LICENSED PATENTS

2.    Whether the asserted claims of DexCom's patents meet the definition of "DexCom Licensed Patents" ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████

████████████████████████████

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

**EXHIBIT 3B**

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

**EXHIBIT 3B**

## ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

**EXHIBIT 3B**
**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

**EXHIBIT 3B**

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**





### III.    LICENSED ACTIVITIES

3.    To the extent not already resolved by the Court, what is the scope and effect of the license granted by DexCom to ADC in ¶ C.2 of the SLA and/or the license resulting from DexCom's breach of the warranty in ¶ H.3 of the SLA?

<u>Relevant Authority</u>: The SLA states that "[s]ubject to ADC's material compliance with the terms and conditions of this Agreement, DexCom hereby grants ADC a royalty-free, worldwide, non-exclusive, non-sublicensable license under DexCom Licensed Patents to make, have made, use, offer for sale, sell, distribute, import, and have imported ADC Products" and "[s]ubject to DexCom's material compliance with the terms and conditions of this Agreement, ADC hereby grants DexCom a royalty-free, worldwide, non-exclusive, non-sublicensable license under ADC Licensed Patents to make, have made, use, offer for sale, sell, distribute, import, and have imported DexCom Products." SLA ¶¶ C.1, C.2.

"A patent license is essentially a waiver of the patent owner's right to sue; the parties agree that the patent owner will allow the licensee either to make, to use, to sell (or some combination of, or derivative of, these three rights) without subjecting the licensee to an infringement suit. It is thus well settled that a valid license is a complete defense to infringement." *Intel Corp. v. Broadcom Corp.* 173 F. Supp. 2d 201, 228 (D. Del. 2001) (citing *Unidisco, Inc. v. Schattner*, 824

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

F.2d 965, 968 (Fed. Cir. 1987); *Lisle Corp. v. Edwards*, 777 F.2d 693, 695 (Fed. Cir. 1985). "[I]t is well settled that rights to a third party can nonetheless be conferred through the valid exercise of a licensee's 'have made rights.'" *Id.* at 231 (citing *Southwire Co. v. United States Int'l Trade Comm'n*, 629 F.2d 1332, 1339 (C.C.P.A. 1980) (quoting *Carey v. United States*, 326 F.2d 975, 979–80 (Ct. Cl. 1964)). "A 'have made' right, which is a right carved from the term 'to make' in 35 U.S.C. § 271(a), provides a licensee with the right to request an unlicensed third-party to manufacture a licensed good for the licensee." *Id.* at 228 (citing *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1386 (Fed. Cir. 1996)).

"[A] licensed party that has the right to 'have [products] made,' can exercise that right by requesting an unlicensed third party to make and sell products for it, which the licensee either uses or ultimately sells to its customers. ... Under that arrangement, to the extent the unlicensed party makes products for the licensee, the licensor/patent owner cannot sue the unlicensed party for patent infringement." *Id.* at 229 (citation omitted).

"The unfettered 'have made' right gives the licensee the right to designate a third party to make the product for it. Thus, when exercised, the 'have made' right passes on certain protections to the third party. That third party's actions in making the product and selling the product back to the licensee become impliedly licensed." *Id.* at 233.

An exclusive license to produce, use, and sell "is not restricted to production by the licensee personally or use by him personally or sales by him personally. It permits him to employ others to assist him in the production, and in the use and in the sale of the invention. Nor need he take any personal part in the production." *Carey*, 326 F.2d at 979.

Exhaustion is a "borderless common law principle" that "marks the point where patent rights yield to the common law principle against restraints on alienation." *Impression Prods., Inc.*

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

*v. Lexmark Int'l, Inc.*, 581 U.S. 360, 370-71, 378 (2017).  Under exhaustion principles, "the initial authorized sale of a patented item terminates all patent rights to that item." *See, e.g.*, *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008); *Canon, Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 580 (S.D.N.Y. 2015) (sale of licensed articles to an affiliate exhausted licensor's patent rights in article such that affiliate's resale was non-infringing). "The authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article." *Quanta*, 553 U.S. at 638.  "When a patentee sells one of its products ... the patentee can no longer control that item through the patent laws—its patent rights are said to 'exhaust.'" *Impression Prods.*, 581 U.S. at 366.

"An authorized sale outside the United States, just as one within the United States, exhausts all rights under the Patent Act." *Impression Prods.*, 581 U.S. at 377. "An authorized sale includes a sale made by a licensee acting with the scope of a license. *Id.* at 2121–22. The patented article need only 'substantially embod[y]' the invention. *Id.* at 2120." *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 5671886, at *1 (N.D.N.Y. Aug. 1, 2008) (Rader, J.).

"Although the Supreme Court has often discussed exhaustion in terms of a 'sale' and a 'purchaser,' the Court has never confined the application of patent exhaustion to that context." *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1374 (Fed. Cir. 2013) (citations omitted).  "[E]xhaustion can occur by a transfer 'from any other person ... authorized [by the patentee] to convey it.'" *Id.* (citation omitted). "The implied right to grant to [an] otherwise unlicensed third party the right 'to make' and 'to sell' the product for the licensed party (i.e. to act as a foundry) is an intrinsic part of that licensees 'have made' right." *Intel Corp.*, 173 F. Supp. 2d at 233.

**EXHIBIT 3B**

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

An "implied license . . . signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention." *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F. 3d 1571, 1580 (Fed. Cir. 1997). Implied licenses may arise through (1) acquiescence; (2) conduct; (3) equitable estoppel; or (4) legal estoppel. *Id.* (citing *AMP, Inc. v. United States*, 389 F. 2d 448, 452 nn. 4–5 (1968)).

"Legal estoppel refers to a . . . category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *Id.* at 1581; *see also Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F. 3d 1355, 1361 (Fed. Cir. 2011) ("[Legal estoppel] prohibits a patent licensor from derogating from rights granted under the license by 'taking back in any extent that for which it has already received consideration.'").   Under the doctrine of legal estoppel, where a licensee is accused of infringing a later issued patent that is "related [to] . . . broader than and necessary to practice an expressly licensed patent," an implied license is created in favor of the licensee absent a "clear mutual intent to exclude" the later issued patent from the licenses scope. *Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F. 3d 691, 695–96 (Fed. Cir. 2020) (finding an implied license to a later issued patent where said patent disclosed "the same inventive subject matter . . . [found] in the expressly licensed patents."); *see also Gen. Protecht Grp., Inc.*, 651 F. 3d at 1361 ("[W]here . . . continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well.") (internal quotations omitted); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F. 3d 1271, 1278–79 (Fed. Cir. 2009) (holding that, where a "later-issued . . . patent was broader than, and necessary to practice" a licensed patent, the accused

14

infringer, "to obtain the benefit of its bargain," "must be permitted to practice" the later issued patent "to the same extent it may practice" the licensed patent.)

## IV.  BREACH OF CONTRACT

4.      Whether Abbott has shown, by a preponderance of the evidence, that DexCom breached the license granted by DexCom to ADC in ¶ C.2 of the SLA and/or the license resulting from DexCom's breach of the warranty in ¶ H.3 of the SLA?

Relevant Authority: Proving breach of contract requires showing (1) contractual obligation; (2) breach of that obligation; and (3) resulting damage. *See Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011).

A non-exclusive patent license is "a promise by the licensor not to sue the licensee." *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 987 (Fed. Cir. 2009) (citing *TransCore,* 563 F.3d at 1275); *Cornell Univ. v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, 2014 WL 12601516, *5 (D. Del. Sept. 29, 2014) ("[A] non-exclusive license and a covenant not to sue can effectively be the same thing.").

Filing suit after contractually "promis[ing] not to sue" is a breach. *Edge of the Woods v. Wilmington Savs. Fund Soc'y, FSB*, No. CIV.A.97C-09-281-JEB, 2001 WL 946521, at *7 (Del. Super. Aug. 16, 2001) (finding that the plaintiff "breach[ed] … the contracts to release Defendant from liability" by "instituti[ng] and maint[aining]" an action on the released claims; *see also Edge of the Woods, Ltd. v. Wilmington Savs. Fund Soc'y, FSB*, No. C.A. 97C-09-281-JEB, 2000 WL 305448, at *3-4 (Del. Super. Feb. 7, 2000) (release contained no express promise not to sue). Suing on licensed patents breaches a license agreement. *See, e.g.*, *Sanitec Indus. v. Micro-Waste Corp.*, No. H-04-3066, 2006 WL 3455000, at *39-40 (S.D. Tex. Nov. 28, 2006) (licensor "as a matter of law committed a material breach of the License Agreement" by filing suit on licensed patent);

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

*STMicroelectronics N.V. v. Agere Sys., Inc*., C.A. No. 08C-09-099-MMJ, 2009 WL 1444405, at

*4 (Del. Super. Ct. May 19, 2009) (finding breach pled where plaintiff alleged patent license was

granted but patentee sued licensor's affiliates for infringement anyway).

     5.     To the extent not already resolved by the Court, whether Abbott has shown, by a

preponderance of the evidence, that DexCom breached the forum selection clause in ¶ J.4 of the

SLA?

     <u>Relevant Authority</u>: Bringing claims covered by a forum selection clause outside the

chosen forum is a breach. *See Monster Daddy, LLC v. Monster Cable Prods., Inc.*, 483 F. App'x

831, 836 (4th Cir. 2012) (Defendant "committed a breach of the forum selection clause by filing

the California action."); *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 148 F. Supp. 3d 1169,

1178-1179 (D. Colo. 2015) ("[T]he Court finds as a matter of law that Defendant [] breached the

[Colorado] Forum Selection Clause by filing the Kentucky Action" where plaintiff raised contract

as a colorable defense to Kentucky claims); *Fuller Co. v. Brown Minneapolis Tank and

Fabricating Co.*, 678 F. Supp. 506, 515 (E.D. Pa. 1987) ("defendant breached the [Pennsylvania]

forum selection clause ... by instituting suit … in … Minnesota"); *Versatile Housewares &

Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011) (plaintiff

"breached [New York forum selection clause] by bringing this action in Wisconsin"). The

Delaware "Supreme Court [has] implied that damages may be obtained for a breach of a [FSC]."

*See Cornerstone Brands, Inc. v. O'Steen,* C.A. No. 1501-N, 2006 WL 2788414, at *4 (Del. Ch.

Sept. 20, 2006); *see also El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36,

40 (Del. 1995).

     Patent infringement claims trigger forum selection clauses in license agreements where (1)

the clause "is not limited to license related issues," and (2) the defendant argues a "non-frivolous"

license defense to infringement. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). "[C]ourts will not tolerate 'artful pleading' of non-contract claims to avoid a forum selection clause," thus the FSC "can apply even when the contract … is raised only as a defense." *MPVF*, 148 F. Supp. 3d at 1179 (citation omitted); *see, e.g., Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1662, 2006 WL 8455598, at *5 (S.D. Cal. Feb. 13, 2006).

6. Whether Abbott has shown, by a preponderance of the evidence, that DexCom breached the dispute resolution clause in ¶ J.1 of the SLA?

Relevant Authority: The "purpose of a dispute resolution clause [is] to avoid drawn out, expensive litigation whenever possible." *U.S.A. Fanter Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 20-cv-00003, 2020 WL 1942314, at *3 (D.N. Mar. Is. Apr. 23, 2020). "[T]he failure to follow contractually mandated dispute resolution procedures constitutes a material breach of the contract." *Lennox Indus. Inc. v. All. Compressors LLC*, C.A. No. N19C-03-045 AML, 2020 WL 4596840, at *3 (Del. Super. Aug. 10, 2020) (citations omitted); *see Olyphant, Pa. v. PP & L, Inc.*, CIV.A. 03-4023, 2004 WL 1858045, at *9 (E.D. Pa. Aug. 19, 2004) (granting summary judgment that party breached dispute resolution provision).

"[T]he subject of litigation" is a "dispute" and can "'arise[]' when it 'comes about.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 140 (2d Cir. 2000) (citations omitted).

## V.   BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

7. Whether Abbott has shown, by a preponderance of the evidence, that DexCom breached the covenant of good faith and fair dealing implied in the SLA?

Relevant Authority: Delaware law imputes in every contract an implied covenant of good faith and faith dealing. *See Templeton v. EmCare, Inc.*, 868 F. Supp. 2d 333, 339–40 (D. Del. 2012). This duty is violated where one party to a contract prevents the other party from receiving

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

the fruits of the contract. Id. at 340. "Under Delaware law, '[w]hen interpreting a contract, the role of a court is to effectuate the parties' intent.'" *Bus Air, LLC v. Woods*, C.A. No. 19-1435-RGA-CJB, 2022 WL 2666001, at *3 (D. Del. July 11, 2022) (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)). "[A]ny argument by a party that another party breached an implied term invites consideration of evidence of the parties' bargaining history." *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 897–98 (Del. 2015).

"To sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) a specific obligation implied in the contract, (2) a breach of that obligation, and (3) resulting damages." *OC Tint Shop, Inc. v. CPFilms, Inc.*, C.A. No. 17-1677-RGA, 2018 WL 4658211, at *4 (D. Del. Sep. 27, 2018). "[A] claim for violation of the implied covenant of good faith and fair dealing can survive if, notwithstanding contractual language on point, the defendant failed to uphold the plaintiff's reasonable expectations under that provision." *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, C.A. No. 7668-VCN, 2015 WL 394011, at *6 (Del. Ch. Jan. 29, 2015).

## VI. REMEDIES

### A. Damages

#### 1. Breach of Contract Damages

8.     Whether Abbott has shown, by a preponderance of the evidence, that it is entitled to damages for DexCom's breach(es) of the SLA and, if so, in what amount?

<u>Relevant Authority</u>:  Under Delaware law, a party is entitled to recover its actual damages that result from a breach of contract. *WSFS Fin. Corp. v. Great Am. Ins. Co.*, C.A. No: N18C-09-088 EMD CCLD, 2019 WL 2323839, at *4–5 (Del. Super. May 31, 2019). "The term 'actual damages' encompasses both 'direct' and 'consequential' damages." *Id.* "Direct damages are those

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

which follow immediately from the breach or occurrence." *Mass. Mut. Life. Ins. v. Certain Underwriters at Lloyd's of London*, C.A. No. 4791–VCL, 2010 WL 2929552, *21 (Del. Ch. Jul. 23, 2010). "Consequential damages are those which are reasonably foreseeable, but which do not result directly from the act of a party; rather from the consequences of the act." *Murphy Marine Servs. of Del., Inc. v. GT USA Wilmington, LLC*, C.A. No. 2018-0664-LWW, 2022 WL 4296495, at *16 (Del. Ch. Sept. 19, 2022) (quoting *Mass. Mut.*, 2010 WL 2929552, at *21). They are "the actual, but not the necessary, result of the injury complained of and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or conditions." *Id.* (citing *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, C.A. No. 5688–VCS, 2011 WL 549163, at *6 (Del. Ch. Feb. 16, 2011)).

"[T]he standard remedy for breach of contract is based upon the reasonable expectations of the parties *ex ante*," which "is measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract." *Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1130 (Del. 2015) (quoting *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001)); *see also Cobalt Operating, LLC v. James Crystal Enters.*, C.A. No. 714-VCS, 2007 WL 2142926, at *29 (Del. Ch. Jul. 20, 2007) ("In Delaware, the traditional method of computing damages for a breach of contract claim is to determine the reasonable expectations of the parties."). "Expectation damages are calculated as the amount of money that would put the non-breaching party in the same position that the party would have been in had the breach never occurred." *Cobalt*, 2007 WL 2142926, at *29; *see also Siga*, 132 A.3d at 1130; *Leaf Invenergy v. Invenergy Renewables*, 210 A.3d 688, 695 (Del. 2019).

"To receive consequential damages, the plaintiff must establish with reasonable certainty that those damages result directly from defendant's wrongdoing." *Heritage Handoff Holdings v.*

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

*Fontanella*, No. 1:16-cv-00691-RGA, 2019 WL 1056270, at *10 (D. Del. Mar. 6, 2019) (internal citations omitted). Business decisions, such as "capital contributions and other expenses of attempting to save [the business] may be recoverable." *Id.* (alteration in original).

"Where the injured party has proven the *fact* of damages—meaning that there would have been some profits from the contract—less certainty is required of the proof establishing the *amount* of damages." *Siga*, 132 A.3d at 1131 (emphasis in original). Damages calculations based on "estimates [that] were actually used in the course of business and incorporated actual sales data" are admissible, *Insight Equity v. Transitions Optical*, 252 F. Supp. 3d 382, 396 (D. Del. 2017), because businesses "have incentives to develop accurate projections," *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012). "Public policy has led Delaware courts to show a general willingness to make a wrongdoer bear the risk of uncertainty of a damages calculation." *Beard Rsch. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) (internal quotations omitted).

### 2.   Attorney's Fees as Direct or Consequential Damages

9.      To the extent not already resolved by the Court, whether Abbott has shown, by a preponderance of the evidence, that it is entitled to attorneys' fees as direct or consequential damages for DexCom's breach(es) of the SLA and, if so, in what amount?

Relevant Authority:  Delaware courts recognize "attorneys' fees" can be "direct damages" or "consequential damages" for breach of contract. *WSFS Fin.*, 2019 WL 2323839, at *8; *see also Bolton v. McKinney*, 299 Va. 550, 554-55 (Va. 2021) (collecting cases and finding "damages stemming from the breach [of covenant not to sue] may be the attorney's fees incurred"); *Paper, Allied, Chem. and Energy Workers Int'l Union, Loc. 5-508, AFL--CIO v. Slurry Explosive*, 107 F. Supp. 2d 1311, 1331 (D. Kan. 2000) (awarding fees "not sought as incidental to the claim, but rather [] sought as actual damages in the suit itself"); *Acushnet v. G.I. Joe's*, No. CV 05–764–HU,

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

2006 WL 2729555, at *7 (D. Or. Sept. 22, 2006) (finding attorneys' fees recoverable as consequential damages where defendant's breach of contract resulted in plaintiff incurring attorneys' fees defending a third-party action); *Hartwig Farms, Inc. v. Pac. Gamble Robinson Co.*, 28 Wash. App. 539, 547-48 (Wash. Ct. App. 1981) (awarding attorneys' fees incurred when party to contract was exposed to separate litigation with third party resulting from breach of contract).

Where "a defendant in an action brought in violation of a covenant not to sue bargained to receive, and exchanged consideration for, the opposing party's promise that it would forbear from bringing suit," the district court found "the lawsuit itself is the object that the bargain intended to prohibit." *Pro Done v. Basham*, 172 N.H. 138, 151 (N.H. 2019). "[C]onsequential damages resulting from a breach of a covenant not to sue may include, but are not limited to, attorney's fees and costs in defending the action," because "under these circumstances, attorney's fees and costs help to put the non-breaching party in the position it would have been in had the breach not occurred." *Id.* "To prevent [a party] from obtaining direct damages from the breach of an express term of the contract simply because they happen to also be attorney's fees would rob them of the benefit of their bargain." *Bolton*, 299 Va. at 556; *see also Microsoft v. Motorola*, 795 F.3d 1024, 1049 (9th Cir. 2015) ("As losses independent of the current litigation and triggered by the contract-breaching conduct, [the fees at issue] are best characterized as recoverable consequential damages.").

Like other provisions in a contract, an attorney's fees provision "is to be given its plain and ordinary meaning." *Ace Cap. v. Caradam Found.*, 392 F. Supp. 2d 671, 674 (D. Del. 2005) (quoting *Universal Studios, Inc. v. Viacom, Inc.*, 705 A.2d 579, 589 (Del. Ch. 1997). The terms "arising under," "arising in," and "relating to" are different terms that must have different meanings. To "arise under" a contract, the contract must create the dispute and the underlying

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

legal claim.  *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (holding a case "arises under" the bankruptcy code (title 11) only "if it invokes a substantive right provided by title 11").  In *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, the Third Circuit held that "arising in relation to" merely requires that "the origin of the dispute has some 'logical or causal connection' to the [Agreement]." 119 F.3d 1070, 1074 (3d Cir. 1997); *see also Stoe*, 436 F.3d at 216 (holding a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy").  "[T]he term 'under,'" on the other hand, "suggests a tighter nexus between the agreement and the dispute."  *Mimm v. Vanguard Dealer Servs., LLC*, No. 11–736 GMS, 2012 WL 4963315, at *6 n.3 (D. Del. Oct. 16, 2012).  This interpretation is consistent with the well-established rule that a claim does not arise under federal law merely because "a federal question is or may be raised as a defense."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 628 (D. Del. 2022).  The Federal Circuit has held "[p]atent infringement disputes" can "*arise from* license agreements," *Texas Instruments, Inc. v. Tessera Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000), but has never held that such disputes *arise under* such agreements.

    **B.**    **Costs**

    10.    Whether Abbott is entitled to costs as the prevailing party in this action and, if so, in what amount?

    <u>Relevant Authority</u>:  Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Section 1920 of Title 28 of the United States Code includes the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. L.R. 54.1. An award of costs should include reasonable expenses and costs incurred in providing legal services related to the suit. *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Mathis v. Spears*, 857 F.2d 749, 757-61 (Fed. Cir. 1988).

### C. Prejudgment Interest

11.     Whether Abbott is entitled to prejudgment interest and, if so, in what amount?

Relevant Authority: "In Delaware, a successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues." *Cobalt*, 2007 WL 2142926, at *31 (citing *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988)). "In determining the interest rate to be applied, courts have broad discretion, subject to the principles of fairness, in fixing an appropriate rate." *Id.*

### D. Post-judgment Interest

12.     Whether Abbott is entitled to post-judgment interest and, if so, in what amount?

Relevant Authority: "Postjudgment interest is awarded on monetary judgments recovered in all civil cases." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999); 28 U.S.C. § 1961(a). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

**ABBOTT'S STATEMENT OF DISPUTED ISSUES OF LAW**

### E.    Permanent Injunction

13.    Whether Abbott is entitled to a permanent injunction to prevent DexCom's continuing breach(es) of the SLA?

Relevant Authority: "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982)). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*  "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

### F.    Specific Performance

14.    Whether Abbott is entitled to specific performance requiring DexCom to perform its obligations under the SLA?

Relevant Authority: "A claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties." *MirTech Inc. v. AgroFresh Inc.*, 561 F. Supp. 3d 447, 457 (D. Del. 2021). "A party seeking specific performance must establish that (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Osborn*, 991 A.2d at 1158.

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| | |
| ABBOTT DIABETES CARE INC., | |
| | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 4 TO PROPOSED FINAL PRETRIAL ORDER**
**DEXCOM'S LIST OF WITNESSES**

**EXHIBIT 4**
**DEXCOM'S LIST OF WITNESSES**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEXCOM, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>ABBOTT DIABETES CARE INC., and<br>ABBOTT DIABETES CARE SALES CORP.,<br><br>             Defendants. | C.A. No. 22-605-KAJ |

## DEXCOM'S PRELIMINARY TRIAL WITNESS LIST

**EXHIBIT 4**
**DEXCOM'S LIST OF WITNESSES**

      Pursuant to Local Rule 16.3 and Federal Rule of Civil Procedure 16(a)(3)(A)(i) and (ii), DexCom provides below an identification of the witnesses whose testimony it may present at trial. The inclusion of a witness on this list does not require DexCom to call that witness to testify, and does not imply or establish that DexCom has the power to compel the live testimony of that witness or make that witness available to the opposing party.

      DexCom has identified these witnesses based on the current understanding of ADC's case-in-chief.  DexCom reserves the right to revise or supplement this listing. DexCom expressly reserves the right to call any witness identified by Abbott at any point before or during trial, whether or not listed on DexCom's list below, live or by deposition designations.  DexCom also expressly reserves the right to call any witness live or by deposition designations (or to offer additional deposition designations from witnesses identified herein) for purposes of rebuttal, impeachment, or authentication of a document or as required by any of the Court's pretrial or trial rulings.  DexCom also reserves its right to change or modify this list as permitted by the Federal Rules of Civil Procedure, Local Rules, or Orders of the Court.

## I.     DEXCOM'S WILL CALL WITNESSES

DexCom expects to call the following witnesses at trial:

### A.     Fact Witnesses

Apurv Kamath (Live)

Peter Simpson (Live)

### B.     Expert Witnesses

Kenneth Gall (Live)

Roozbeh Jafari (Live)

Patrick Kennedy (Live)

## II.     DEXCOM'S MAY CALL WITNESSES

DexCom may call the following witnesses at trial, live or by deposition:

**EXHIBIT 4**
**DEXCOM'S LIST OF WITNESSES**

A.    **Fact Witnesses**

Adam Cate (by Deposition)

Ben Feldman (by Deposition)

Shannon Hansen (by Deposition)

Scott Harper (by Deposition)

Laura Johnson (Live or by Deposition)

John Lister (Live)

Steven Pacelli (Live)

Jason Pederson (by Deposition)

William Schwartz (Live)

Susan Tall (by Deposition)

Marc Taub (by Deposition)

Rose M. Thiessen (by Deposition)

Todd York (by Deposition)

Any Abbott representatives at trial (Live)

Any witnesses called by Abbott

B.    **Expert Witnesses**

Christoph Ann (Live)

Lori Laffel (Live)

Robin Jacob (Live)

John Whealan (Live)

**EXHIBIT 4**
**DEXCOM'S LIST OF WITNESSES**

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for DexCom, Inc.*

OF COUNSEL:
David Bilsker
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(213) 443-3000

Kevin P.B. Johnson
Todd M. Briggs
Margaret Shyr
Dallas Bullard
Zak Randell
Cat Williams
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Brian P. Biddinger
Cary E. Adickman
Alex Zuckerman
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Nathan Hamstra
Jonathon Studer
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Valerie Lozano
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

**EXHIBIT 4**
**DEXCOM'S LIST OF WITNESSES**

(213) 443-3000

Isabel Peraza
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St. NW #900,
Washington, DC 20005
(202) 538-8000

Gavin Frisch
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Ave., Suite 520
Boston, MA 02119
(617) 712-7100

Theodore Kwong
HILGERS GRABEN PLLC
10000 N. Central Expy., Suite 400
Dallas, TX 75231
(972) 645-3097

Sophie A. Hood
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

Dated: April 18, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 5D TO PROPOSED FINAL PRETRIAL ORDER
DEXCOM'S LIST OF CONTESTED TRIAL EXHIBITS**

# REDACTED IN ITS ENTIRETY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 5P TO PROPOSED FINAL PRETRIAL ORDER
<u>ABBOTT'S LIST OF CONTESTED TRIAL EXHIBITS</u>**

# REDACTED IN ITS ENTIRETY

Exhibit 6D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 6D TO PROPOSED FINAL PRETRIAL ORDER
<u>DEXCOM'S DEPOSITION DESIGNATIONS</u>**

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 7:25-8:10 | | | | | |
| 9:25-10:3 | | | | | |
| 10:9-10:12 | | | | | |
| 10:16-10:21 | | | | | |
| 11:5-11:8 | | | | | |
| 12:9-12:19 | | | | | |
| 12:20-13:2 | | | | | |
| 13:3-13:12 | 401/402; 403 | | | | |
| 13:13-14:1 | 401/402; 403 | | | | |
| 14:17-14:24 | 401/402; 403 | | | | |
| 15:7-15:17 | | | | | |
| 15:18-15:23 | Scope; 401/402; 403 | 16:8-16:10; 16:13-16:19; 16:22-16:24 | 403, 611(a), R | | |
| 15:24-16:7 | Scope; 401/402; 403 | 16:8-16:10; 16:13-16:19; 16:22-16:24 | 403, 611(a), R | | |
| 18:1-18:6 | | | | | |
| 18:7-18:13 | Motion; 401/402; 403 | | | | |
| 18:14-19:4 | Scope; Motion; 401/402; 403 | | | | |
| 20:24-21:5 | Scope; Motion; 401/402; 403 | | | | |
| 21:6-21:15 | | | | | |
| 21:16-22:2 | | | | | |
| 22:9-22:17 | | | | | |
| 22:18-22:25 | Form; 401/402; 403 | 23:1-5 | 403, 611(a), R | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 23:6-23:12 | Form; 401/402; 403 | | | | |
| 23:13-23:18 | 401/402; 403 | | | | |
| 23:19-23:21 | Form; 401/402; 403 | | | | |
| 24:3-24:7 | Form; 401/402; 403 | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19; 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 27:8-27:21 | | | | | |
| 28:11-28:21 | | | | | |
| 28:25-29:12 | | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19; 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 31:7-31:10 | 401/402; 403 | 31:18-31:20; 31:22-32:1 | 403, 611(a), R, F, 602 | | |
| 32:2-32:9 | Form; 401/402; 403 | | | | |
| 32:18-33:2 | | | | | |
| 33:3-33:9 | | | | | |
| 33:20-34:5 | 401/402; 403 | | | | |
| 34:6-34:20 | Form | | | | |
| 35:7-35:14 | Scope; Motion; Assumes; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
|---|---|---|---|---|---|
| **Witness: Adam Cate** | | | | | |
| **Date of Deposition: 11/11/22** | | | | | |
| 35:17-36:2 | Scope; Motion; Foundation; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |
| 36:3-36:17 | Scope; Motion; Foundation; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |
| 36:18-37:4 | Scope; Motion; Assumes; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |
| 37:16-38:7 | Scope; Motion; Assumes; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |
| 38:8-39:2 | Scope; Motion; Foundation; 401/402; 403 | 37:5-37:7; 37:10-37:15 | 403, 611(a), NR, 602 | | |
| 39:23-40:17 | Scope; Motion; Foundation; 401/402; 403 | 41:1-41:4; 41:7-41:10 | 403, 611(a), NR, 602 | | |
| 41:11-41:18 | Scope; Motion; Foundation; 401/402; 403 | 41:1-41:4; 41:7-41:10 | 403, 611(a), NR, 602 | | |
| 43:6-43:22 | Scope; Motion; Foundation; 401/402; 403 | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/11/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 43:23-44:4 | Scope; Motion; Foundation; 401/402; 403 | | | | |
| 45:6-45:22 | Scope; Motion; Foundation; Assumes; 401/402; 403 | | | | |
| 45:23-46:3 | Scope; Motion; Foundation; 401/402; 403 | | | | |
| 47:16-47:21 | Scope; 401/402; 403 | | | | |
| 47:22-48:3 | Scope; Foundation | | | | |
| 50:8-50:22 | Form; Scope; 401/402; 403 | 49:19-49:20; 49:23-50:7 | 403, 611(a), NR, 602, BSD, F | | |
| 50:23-51:3 | Form; Scope; 401/402; 403 | | | | |
| 52:15-52:19 | Form; Scope | | | | |
| 53:16-54:5 | Form; Scope; 401/402; 403 | | | | |
| 54:12-54:17 | Form; Scope; 401/402; 403 | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 54:18-54:24 | Form; Scope; 401/402; 403 | 54:25-55:4 | 403, 611(a) | | |
| 59:5-59:14 | Form; 401/402; 403 | | | | |
| 59:15-60:7 | Form; 401/402; 403 | | | | |
| 62:12-63:2 | Form; 401/402; 403 | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 64:12-64:18 | Form; 401/402; 403 | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 65:9-65:19 | Form; Scope; 401/402; 403 | 66:5-66:8; 66:11-66:16; 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 65:20-66:4 | Form; Scope; 401/402; 403 | 66:5-66:8; 66:11-66:16; 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 68:10-68:21 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| **Witness: Adam Cate** | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/11/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 70:6-70:13 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |
| 71:9-71:20 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |
| 71:25-72:12 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |
| 72:13-72:24 | Form; Hearsay; Foundation; 401/402; 403 | 68:22-69:17; 73:25-74:7 | 403, 611(a), BSD | | |
| 77:9-77:25 | Scope; Hearsay; Foundation; 401/402; 403 | 68:22-69:17; 78:13-78:15; 78:18-78:25 | 403, 611(a), BSD | | |
| 79:12-79:20 | Scope; 401/402; 403 | 68:22-69:17; 51:4-51:5; 51:8-51:11; 78:13-15; 78:18-25; 79:1-3; 79:6-79:11 | 403, 611(a), BSD, NR, O, F | | |
| 84:24-85:3 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |
| 85:12-85:22 | Form; Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |
| 86:7-86:16 | Form; Hearsay; Foundation; 401/402; 403 | 68:22-69:17 | 403, 611(a), BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
|---|---|---|---|---|---|
| **Witness: Adam Cate** | | | | | |
| **Date of Deposition: 11/11/22** | | | | | |
| 86:23-87:19 | Scope; Hearsay; Foundation; 401/402; 403 | 68:22-69:17; 86:17-86:19; 86:22; 87:20-88:1; 88:8:-88:10; 88:13-89:1 | 403, 611(a), BSD | | |
| 88:2-88:7 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17; 86:17-86:19; 86:22; 87:20-88:1; 88:8:-88:10; 88:13-89:1 | 403, 611(a), BSD | | |
| 89:2-89:14 | Hearsay; Foundation; 401/402; 403 | 68:22-69:17; 88:8:-88:10; 88:13-89:1; 89:15-90:7 | 403, 611(a), BSD | | |
| 90:8-90:18 | | 68:22-69:17; 88:8:-88:10; 88:13-89:1; 89:15-90:7 | 403, 611(a), BSD | | |
| 91:19-92:14 | Scope; 401/402; 403 | | | | |
| 92:24-93:9 | 401/402; 403 | 93:10-93:12; 93:14-93:25 | 403, 611(a) | | |
| 94:1-94:7 | 401/402; 403 | 93:10-93:12; 93:14-93:25; 95:14-95:18; 95:21-96:5 | 403, 611(a), O, S | | |
| 94:8-95:3 | 401/402; 403 | 93:10-93:12; 93:14-93:25; 95:14-95:18; 95:21-96:5 | 403, 611(a), O, S | | |
| 95:4-95:13 | 401/402; 403 | | | | |
| 96:6-96:17 | 401/402; 403 | 95:14-95:18; 95:21-96:5 | 403, 611(a), O, S | | |
| 96:18-97:2 | 401/402; 403 | 95:14-95:18; 95:21-96:5 | 403, 611(a), O, S | | |
| 98:23-99:3 | Scope | | | | |
| 100:23-101:2 | Foundation | 101:3-101:11 | 403, 611(a) | | |
| 103:19-104:13 | Form; Foundation; 401/402; 403 | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| **Witness: Adam Cate** | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/11/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 105:11-106:1 | Form; Scope; Motion; 401/402; 403 | | | | |
| 106:10-106:23 | Scope; Foundation; 401/402; 403 | | | | |
| 107:1-107:14 | Scope; Foundation; 401/402; 403 | | | | |
| 107:15-108:5 | Scope; Form; 401/402; 403 | | | | |
| 108:6-108:13 | Scope; 401/402; 403 | | | | |
| 109:15-109:19 | Scope | | | | |
| 114:22-115:5 | Scope; Foundation; 401/402 403; Motion | | | | |
| 115:6-115:11 | Scope; Foundation; 401/402 403; Motion | | | | |
| 115:18-116:3 | Foundation; 401/402; 403 | | | | |
| 117:23-118:14 | Form; 401/402; 403 | | | | |
| 121:15-122:20 | 401/402; 403 | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 122:21-123:8 | 401/402; 403 | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 123:9-124:2 | 401/402; 403 | 124:3-5; 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 131:6-131:18 | | | | | |
| 135:11-135:23 | Foundation; 401/402; 403 | 136:8-136:10; 136:12-136:25; 137:2-137:7 | 403, 611(a), BSD, F, O,S | | |
| 135:24-136:7 | Form; 401/402; 403 | 136:8-136:10; 136:12-136:25; 137:2-137:7 | 403, 611(a), BSD, F, O, S | | |
| 140:11-140:21 | Form; Scope; 401/402; 403 | | | | |
| 140:22-141:7 | Form; Scope; 401/402; 403 | | | | |
| 141:24-142:2 | 401/402; 403 | 141:8-141:10; 141:13-141:18; 142:3-17 | 403, 611(a), F, O, S | | |
| 142:18-143:7 | Scope; Foundation; 401/402; 403 | | | | |
| 144:1-144:13 | 401/402; 403 | | | | |
| 144:14-144:23 | Scope; 401/402; 403 | | | | |
| 145:11-145:22 | Scope | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 146:23-147:6 | Scope; Foundation; 401/402; 403 | | | | |
| 148:13-149:4 | Scope; 401/402; 403 | | | | |
| 151:11-151:20 | Form; Scope; 401/402; 403 | | | | |
| 151:21-152:6 | Form; Scope; 401/402; 403 | | | | |
| 153:3-153:19 | Form; Scope; 401/402; 403 | | | | |
| 154:15-154:20 | Form; Scope; 401/402; 403 | | | | |
| 156:6-156:13 | Form; Scope; 401/402; 403 | | | | |
| 158:11-158:22 | Scope; Foundation | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19; 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 159:4-159:18 | Scope | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19; 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Adam Cate | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/11/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 161:8-161:13 | Form; 401/402; 403 | 125:16-19; 125:22-126:4; 126:7-16; 126:19-24; 127:2-10; 127:13-23; 128:1-7; 128:10-19: 128:22-129:13; 129:16-19 | 403, 611(a), R, BSD, 602, F, H, O | | |
| 162:6-162:19 | | | | | |
| 166:8-166:23 | Scope; Foundation; 401/402; 403; Incomplete | 163:3-7 | 403 | | |
| 166:24-167:6 | Scope; Form; 401/402; 403 | 51:4-51:5; 51:8-51:11; 78:13-15; 78:18-25 | 403, 611(a), BSD, 602, S, H, O | | |
| 167:7-167:13 | Scope; Form; 401/402; 403 | 51:4-51:5; 51:8-51:11; 78:13-78:25 | 403, 611(a), BSD, 602, S, H, O | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Dr. Ben Feldman | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/08/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 13:22-14:6 | | | | | |
| 15:17-15:22 | | | | | |
| 16:7-16:12 | | | | | |
| 44:20-45:1 | Form; Lay Opinion | 19:20-20:12; 20:13-16; 20:17-21:6; 24:7-25:15; 56:4-11 | H; I; BSD; S; R; 403; O | | |
| 55:13-55:16 | 401/402 | 19:20-20:12; 20:13-16; 20:17-21:6; 24:7-25:15; 56:4-11; 64:12-65:1; 68:18-23; 69:23-70:6; 71:18-23; 78:19-79:17 | H; I; BSD; S; R; 403; O | 78:5-18 | BSD; NR |
| 55:21-56:3 | 401/402 | 19:20-20:12; 20:13-16; 20:17-21:6; 24:7-25:15; 56:4-11; 64:12-65:1; 68:18-23; 69:23-70:6; 71:18-23; 78:19-79:17 | H; I; BSD; S; R; 403; O | 78:5-18 | BSD; NR |
| 61:15-62:5 | Incomplete; Lay Opinion | 57:6-58:10 | H; BSD; R; 403 | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

**Witness: Shannon Hansen, Esq.**

**Date of Deposition: 11/18/22**

| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
|---|---|---|---|---|---|
| 11:7-12:3 | | | | | |
| 21:12-22:3 | 401/402, 403 | 23:15-24:8 | BSD, R | | |
| 24:11-25:2 | | | | | |
| 27:22-28:6 | | | | | |
| 29:22-30:1 | 401/402, 403, MIL | 28:18-29:6, 29:18-21 | BSD, R, 403 | | |
| 30:3-31:1 | 401/402, 403, MIL | 28:18-29:6, 29:18-21 | BSD, R, 403 | | |
| 31:16-32:4 | | 34:1-16 | BSD, R, 403, H | | |
| 32:6-32:25 | | 34:1-16 | BSD, R, 403, H | | |
| 33:1-33:3 | | 34:1-16 | R, 403, H | | |
| 33:7-33:25 | | 34:1-16 | R, 403, H | | |
| 34:17-34:19 | | 34:1-16 | R, 403, H | | |
| 34:21-35:1 | | 34:1-16, 36:6-8, 36:13-17 | BSD, R, 403, H | | |
| 35:3-35:5 | | 36:6-8, 36:13-17 | BSD, R, 403 | | |
| 35:7-35:9 | 401/402 | 36:6-8, 36:13-17 | BSD, R, 403 | | |
| 35:10-35:15 | 401/402 | 36:6-8, 36:13-17 | BSD, R, 403 | | |
| 36:2-36:5 | 401/402 | 36:6-8, 36:13-17 | BSD, R, 403 | | |
| 36:22-37:10 | 401/402, 403 | | | | |
| 38:22-39:12 | 401/402, 403 | 42:15-43:9 | BSD, R, 403, H | | |
| 40:22-41:13 | 401/402, 403, H, Foundation, Form | 42:15-43:9 | BSD, R, 403, H | | |
| 41:16-42:8 | 401/402, 403, H, Form | 42:15-43:9 | BSD, R, 403, H | | |
| 65:16-67:11 | 401/402, 403, H, Foundation, Ruling | | | | |
| 74:7-74:12 | 401/402, 403, LC, Form | | | | |
| 74:14-74:16 | 401/402, 403, LC, Form | | | | |
| 74:19-75:5 | 401/402, 403, LC, Form | | | | |
| 75:8-75:19 | 401/402, 403, LC, Form | | | | |
| 75:22-75:24 | 401/402, 403, LC, Form | | | | |
| 97:24-98:3 | 401/402, 403, LC, Foundation, Form | 98:15-21, 99:24-99:12, 119:2-4, 119:6-120:4, 120:6-16 | I, BSD, R, 403, LC, MIL | | |

13 of 43

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Shannon Hansen, Esq. | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/18/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 98:6-98:8 | 401/402, 403, LC, Foundation, Form | 98:15-21, 99:24-99:12, 119:2-4, 119:6-120:4, 120:6-16 | I, BSD, R, 403, LC, MIL | | |
| 105:10-105:19 | 401/402, 403 | 106:23-107:18 | BSD, R, 403, MIL | | |
| 105:21-106:22 | 401/402, 403 | 106:23-107:18 | BSD, R, 403, MIL | | |
| 107:19-108:6 | 401/402, 403, MIL, Ruling | 106:23-107:18 | BSD, R, 403, MIL | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Scott Harper | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/21/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 16:24-18:5 | | | | | |
| 23:19-23:25 | | | | | |
| 24:23-25:22 | 401/402, Speculation/Foundation, Form | 25:23-25; 26:2-3 | 403, 611(a) | | |
| 46:19-47:17 | 401/402, 403, Speculation/Foundation, Form | 25:23-25; 26:2-3, 47:18-48:3 | 403, 611(a), BSD | | |
| 48:4-48:5 | 401/402, 403, Form | 47:18-23; 48:1-3 | 403, 611(a) | | |
| 48:7-48:24 | 401/402, 403, Form | 47:18-23; 48:1-3 | 403, 611(a) | | |
| 49:3-49:6 | 401/402, 403, Speculation/Foundation, Form | 49:22-50:6; 50:8-15 | 403, 611(a) | | |
| 49:9-49:21 | 401/402, 403, 701, Speculation/Foundation, Form | 49:22-50:6; 50:8-15 | 403, 611(a) | | |
| 50:20-50:21 | 401/402, 403, Speculation/Foundation, Form | | | | |
| 50:23-51:5 | 401/402, 403, Speculation/Foundation, Form | | | | |
| 51:7-53:3 | 401/402, 403, Speculation/Foundation, Form | | | | |
| 53:7-53:12 | 401/402, 403, Speculation/Foundation, Form | 58:25-59:1, 59:3-17 | 403, 611(a), BSD | | |
| 53:15-53:17 | 401/402, 403, Speculation/Foundation, Form | 58:25-59:1, 59:3-17 | 403, 611(a), BSD | | |
| 54:8-55:2 | 401/402, 403 | 58:25-59:1, 59:3-17 | 403, 611(a), BSD | | |
| 59:18-60:1 | 401/402, 403, Speculation/Foundation, Form | | | | |
| 60:4-60:9 | 401/402, 403, Speculation/Foundation, Form | | | | |
| 62:1-62:3 | 401/402, 403, Form | | | | |
| 62:5-63:4 | 401/402, 403, Form | | | | |
| 93:3-93:16 | Incomplete, 401/402, 403, Speculation/Foundation | 90:24-91:1, 91:3-18, 91:20-92:25 | 403, 611(a) | | |
| 98:14-98:19 | 401/402, 403 | | | | |
| 99:22-100:6 | 401/402, 403 | 60:4-9, 99:1-21, 100:7-8, 100:10-12, 107:4-15 | 403, 611(a), BSD | | |
| 109:20-109:22 | 401/402, 403, Speculation/Foundation, Form | 107:16-17, 107:19-108:5, 108:7-16, 110:4-7 | 403, 611(a), BSD | | |
| 109:24-110:3 | 401/402, 403, Speculation/Foundation | 107:16-17, 107:19-108:5, 108:7-16, 110:4-7 | 403, 611(a), BSD | | |
| 110:8-110:9 | 401/402, 403, Speculation/Foundation, Form | 110:15-17, 110:20-111:2 | 403, 611(a), BSD | | |
| 110:11-110:14 | 401/402, 403, Speculation/Foundation, Form | 110:15-17, 110:20-111:2 | 403, 611(a), BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Laura Johnson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/09/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 7:11-7:13 | | | | | |
| 20:16-21:8 | | | | | |
| 21:24-22:7 | | 9:7-21, 9:24-10:16, 10:19-11:3, 22:8-10, 27:2-13 | BSD, R, 403 | | |
| 22:21-23:1 | Incomplete | 9:7-21, 9:24-10:16, 10:19-11:3, 22:8-10, 27:2-13 | BSD, R, 403 | | |
| 24:18-24:21 | | 9:7-21, 9:24-10:16, 10:19-11:3, 22:8-10, 27:2-13 | BSD, R, 403 | | |
| 24:25-25:6 | | 9:7-21, 9:24-10:16, 10:19-11:3, 22:8-10, 27:2-13 | BSD, R, 403 | | |
| 26:2-26:5 | | 9:7-21, 9:24-10:16, 10:19-11:3, 22:8-10, 27:2-13 | BSD, R, 403 | | |
| 26:9-26:10 | | | | | |
| 40:1-40:3 | | | | | |
| 42:5-42:14 | 401/402, 403 | 42:15-18 | | | |
| 44:2-44:16 | | | | | |
| 46:16-47:3 | | 45:3-45:14, 46:1-3, 47:12-14, 47:16, 47:18-48:11, 49:25-50:5 | BSD, H, R, 403, MIL | | |
| 47:5-47:11 | | 45:3-45:14, 46:1-3, 47:12-14, 47:16, 47:18-48:11, 49:25-50:5 | BSD, H, R, 403, MIL | | |
| 48:19-49:7 | 401/402, 403 | 45:3-45:14, 46:1-3, 47:12-14, 47:16, 47:18-48:11, 49:25-50:5 | BSD, H, R, 403, MIL | | |
| 52:19-52:24 | | | | | |
| 53:11-53:15 | 401/402 | | | | |
| 53:22-53:24 | 401/402 | | | | |
| 54:13-54:16 | 401/402 | | | | |
| 54:20-54:23 | | | | | |
| 54:25-55:2 | | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Laura Johnson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/09/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 56:1-56:11 | 401/402 | | | | |
| 57:7-57:22 | 401/402, Ruling | | | | |
| 57:25-58:12 | | 58:13-22, 59:10-25, 117:17-118:6 | BSD, H, R, 403, MIL | | |
| 61:18-62:18 | 401/402, 403 | | | | |
| 65:9-66:9 | 401/402, 403 | | | | |

17 of 43

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Jason Pederson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/15/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 7:17-7:22 | | | | | |
| 9:9-10:3 | | | | | |
| 10:8-11:2 | | | | | |
| 11:25-12:3 | | 12:4-5 | | | |
| 13:4-14:4 | | | | | |
| 14:8-14:15 | | | | | |
| 14:24-15:7 | | 15:8-10; 15:14-17:1; 29:3-8; 29:10-25 | BSD, H, R, 403, 602, F | | |
| 17:2-17:7 | | | | | |
| 17:12-17:19 | | | | | |
| 24:4-24:13 | | | | | |
| 24:19-24:20 | | | | | |
| 27:7-27:13 | Form | | | | |
| 27:15-27:17 | Form | | | | |
| 28:20-28:23 | Scope, Form 401/402, 403, Foundation, IEO | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25 | BSD, I, H, 602, F | | |
| 28:25-29:1 | Scope, Form, 401/402, 403, Foundation, IEO | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25 | BSD, I,H, 602, F | | |
| 34:11-34:13 | Form | 35:8-16 | | | |
| 34:15-35:7 | Form | 35:8-16 | | | |
| 41:19-41:20 | Scope | | | | |
| 41:22-41:23 | Scope | | | | |
| 54:15-54:23 | Scope, Form 401/402, 403, Foundation, IEO | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25; 53:23-54:14;  71:17-72:11 | BSD, I, H, 602, F, R, 403 | | |
| 73:13-73:16 | Scope | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25; 71:17-72:11 | BSD, I, H, 602, F, R, 403 | | |
| 73:18-73:23 | Scope | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25; 71:17-72:11 | BSD, I, H, 602, F, R, 403 | | |
| 74:10-74:11 | Scope, Form 401/402, 403, Foundation | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25; 74:20; 74:23-24 | BSD, I, H, 602, F | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Jason Pederson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/15/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 74:18-74:18 | Scope, Form 401/402, 403, Foundation | 26:24-27:1; 27:3-5; 27:19-21; 27:23-25; 74:20; 74:23-24 | BSD, I, H, 602, F | | |
| 76:15-76:20 | Form | | | | |
| 76:22-76:23 | Form | | | | |
| 79:23-80:11 | | 79:1-22; 80:12-25; 81:2-18; 82:1-8 | BSD, H | | |
| 84:6-84:12 | | 84:13-16 | | 84:17, 84:19-22 | Form; Assumes |
| 92:18-92:20 | | | | | |
| 98:7-98:14 | | 97:17-98:2; 98:15-100:24 | F, 602, H, R | | |
| 110:11-110:12 | Scope, Form | 110:18-20; 110:23-25 | BSD, F | | |
| 110:15-110:16 | Scope, Form | 110:18-20; 110:23-25 | BSD, F | | |
| 111:2-111:3 | Scope, Form | | | | |
| 111:5-111:10 | Scope, Form | | | | |
| 111:13-111:22 | Scope, Form | | | | |
| 111:24-112:2 | Scope, Form | 112:4-12 | BSD | | |
| 112:13-112:14 | Scope, Form | | | | |
| 112:17-112:21 | Scope, Form | | | | |
| 114:6-114:23 | | | | | |
| 115:9-115:14 | | | | | |
| 117:15-117:20 | Speculation, 401/402, 403 | | | | |
| 121:4-121:21 | | | | | |
| 122:1-122:21 | Scope, Form | 123:2-4; 123:6-21; 123:23-124:3; 124:13-17; 124:20-25 | BSD, H, 602, F | | |
| 122:23-122:24 | Scope, Form | 123:2-4; 123:6-21; 123:23-124:3; 124:13-17; 124:20-25 | BSD, H, 602, F | | |
| 124:5-124:7 | Scope, Form | 123:2-4; 123:6-21; 123:23-124:3; 124:13-17; 124:20-25 | BSD, H, 602, F | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
|---|---|---|---|---|---|
| **Witness: Jason Pederson** | | | | | |
| **Date of Deposition: 11/15/22** | | | | | |
| 124:10-124:11 | Scope, Form | 123:2-4; 123:6-21; 123:23-124:3; 124:13-17; 124:20-25 | BSD, H, 602, F | | |
| 126:7-126:9 | Scope, Form | 71:17-72:11 | BSD, H, 602, F, R, 403 | | |
| 126:12-126:17 | Scope, Form | 71:17-72:11 | BSD, H, 602, F, R, 403 | | |
| 126:20-126:20 | Scope, Form | 71:17-72:11 | BSD, H, 602, F, R, 403 | | |
| 127:7-127:8 | Scope, Form | 126:22-23; 127:1-5 | NR, R, 403, H, 602, F | | |
| 127:10-127:10 | Scope, Form | 126:22-23; 127:1-5 | NR, R, 403, H, 602, F | | |
| 127:20-128:8 | | 128:9-14 | | | |
| 128:15-129:16 | Form | 128:9-14;  192:7-11; 192:13-193:6; 193:8-14 | BSD, 602, F, H | | |
| 129:18-130:6 | Form | 192:7-11; 192:13-193:6; 193:8-14 | BSD, 602, F, H | | |
| 130:9-130:15 | Form | 130:16-25 | BSD, H, 602, F | | |
| 131:1-131:5 | Scope, Form | | | | |
| 131:8-131:14 | Scope, Form | 131:18-132:1; 132:3-6; 134:3-5; 134:8-11; 134:13-17 | BSD, H, 602, F | | |
| 131:16-131:16 | Scope, Form | 131:18-132:1; 132:3-6; 134:3-5; 134:8-11; 134:13-17 | BSD, H, 602, F | | |
| 132:7-132:24 | Form | 134:3-5; 134:8-11; 134:13-17 | BSD, H, 602, F | | |
| 133:1-133:2 | Form | 134:3-5; 134:8-11; 134:13-17 | BSD, H, 602, F | | |
| 133:17-134:2 | | | | | |
| 148:18-148:22 | | | | | |
| 149:2-150:9 | Form | 147:19-148:1; 148:3-15; 148:17 | BSD, F, 602 | | |
| 150:11-150:22 | Form | 147:19-148:1; 148:3-15; 148:17 | BSD, F, 602 | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Jason Pederson | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/15/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 150:25-151:3 | Form | 147:19-148:1; 148:3-15; 148:17 | BSD, F, 602 | | |
| 152:9-152:14 | Form | | | | |
| 152:16-152:23 | Scope, Form | | | | |
| 153:1-153:8 | Scope, Form | 153:9-12 | | | |
| 163:5-163:18 | | | | | |
| 164:2-164:11 | 401/402, 403 | 164:12-18 | O, BSD | | |
| 165:12-165:19 | Form, Scope | | | | |
| 165:21-165:22 | Form, Scope | | | | |
| 166:7-166:8 | Form, 401/402, 403 | | | | |
| 166:10-166:17 | Scope, Form, 401/402, 403 | | | | |
| 166:19-166:24 | | | | | |
| 171:1-172:1 | Foundation, 401/402, 403 | | | | |
| 178:3-178:6 | | | | | |
| 178:11-178:19 | Scope | | | | |
| 178:23-178:24 | Scope | | | | |
| 182:25-183:14 | Scope, Foundation, 401/402 , 403 | | | | |
| 183:16-183:20 | Scope, Foundation, Form 401/402, 403 | | | | |
| 183:22-183:23 | Scope, Foundation, Form 401/402, 403 | | | | |
| 184:13-184:21 | Scope, Foundation, 401/402, 403 | 184:22-184:24; 185:1-9; 185:11-20; 185:22-186:2; 186:4-8 | R, 403, NR | | |
| 186:23-187:4 | Scope, Foundation | 184:22-184:24; 185:1-9; 185:11-20; 185:22-186:2; 186:4-8 | R, 403, NR | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Jason Pederson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/15/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 187:6-187:13 | Scope, Foundation, 401/402, 403 | 184:22-184:24; 185:1-9; 185:11-20; 185:22-186:2; 186:4-8 | R, 403, NR | | |
| 187:16-187:21 | | 184:22-184:24; 185:1-9; 185:11-20; 185:22-186:2; 186:4-8; 187:23-25; 188:3-4 | R, 403, NR, H, F, 602 | | |
| 188:6-188:12 | Scope, Foundation | | | | |
| 188:15-189:12 | Scope, Foundation | | | | |
| 189:14-189:15 | | | | | |
| 193:15-194:1 | Form | | | | |
| 194:3-195:5 | Form | 195:6-195:17; 195:19-196:4; 196:6-9 | BSD, F, 602 | | |
| 197:23-197:24 | Form, 401/402, 403 | | | | |
| 198:1-198:13 | Form, 401/402, 403 | 198:14-20 | | | |
| 198:21-199:3 | Form, 401/402, 403 | | | | |
| 199:16-200:16 | Form, 401/402, 403 | 201:9-13; 201:22-202:4; 203:3-7 | NR, R, BSD | 201:14-15, 201:17-20 | 401/402, Scope |
| 203:8-203:11 | Form, 401/402, 403 | | | | |
| 203:14-203:16 | Form, 401/402, 403 | | | | |
| 204:3-204:7 | Form, 401/402, 403 | | | | |
| 204:9-204:18 | Form, 401/402, 403 | | | | |
| 204:20-205:4 | Form, 401/402, 403 | | | | |
| 205:6-205:8 | Form, 401/402, 403 | | | | |
| 206:2-206:13 | Form, 401/402, 403 | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Jason Pederson | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/15/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 206:21-207:7 | Form, 401/402, 403 | | | | |
| 207:8-207:16 | Form, 401/402, 403 | | | | |
| 208:19-211:12 | Form, 401/402, 403 | | | | |
| 211:20-211:23 | Form, 401/402, 403 | | | | |
| 211:25-212:3 | Form, 401/402, 403 | | | | |
| 213:18-214:6 | Form, 401/402, 403 | | | | |
| 214:13-214:23 | Form, 401/402, 403 | | | | |
| 215:11-216:4 | Form, 401/402, 403 | | | | |
| 216:10-216:12 | Form, 401/402, 403 | | | | |
| 217:8-218:8 | Form, 401/402, 403 | | | | |
| 218:24-219:7 | Form, 401/402, 403 | | | | |
| 221:13-221:17 | Form, 401/402, 403 | | | | |
| 222:12-222:16 | Form, 401/402, 403 | | | | |
| 222:17-223:6 | Form, 401/402, 403 | | | | |
| 223:7-223:19 | Form, 401/402, 403 | | | | |
| 224:3-224:14 | Form, 401/402, 403 | | | | |
| 240:24-241:1 | Form | | | | |
| 241:3-241:6 | Form | | | | |
| 242:20-242:23 | Scope, Form | | | | |
| 243:1-243:4 | Scope, Form | | | | |
| 243:6-243:7 | Scope | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Susan Tall | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/09/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 13:7-13:8 | | | | | |
| 14:5-14:21 | 401/402 | | | | |
| 15:3-15:10 | | 16:7-13; 16:20; 16:21-17:8 | | | |
| 46:19-48:15 | 401/402, 403, Form, Foundation, Hearsay | 39:18-40:3, 44:13-16, 44:19-45:1, 48:16-49:8 | BSD, R, 403 | | |
| 55:8-55:20 | 401/402, 403, Foundation, Hearsay | | | | |
| 55:25-56:5 | 401/402, 403, Foundation, Hearsay | | | | |
| 58:2-58:4 | 401/402, 403, Foundation, Hearsay | | | | |
| 58:6-59:3 | 401/402, 403, Foundation, Hearsay | | | | |
| 66:25-68:19 | 401/402, 403, Foundation, Hearsay, Form | | | | |
| 68:22-69:16 | 401/402, 403, Incomplete, Foundation, Hearsay | | | | |
| 69:22-72:16 | 401/402, 403, Foundation, Hearsay | | | | |
| 180:24-181:2 | 401/402, 403, Scope, Form | | | | |
| 181:4-181:9 | 401/402, 403, Scope, Form | | | | |
| 182:10-182:13 | 401/402, 403, Scope, Form | | | | |
| 182:16-182:22 | 401/402, 403, Scope, Form | | | | |
| 183:3-183:6 | 401/402, 403, Scope | | | | |
| 183:12-183:14 | 401/402, 403, Scope | | | | |
| 183:19-183:20 | 401/402, 403, Scope | | | | |
| 188:20-189:11 | 401/402, Foundation, Hearsay | | | | |
| 189:17-190:25 | 401/402, Foundation, Hearsay | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 11:21-12:4 | | | | | |
| 13:6-13:19 | | | | | |
| 13:24-14:4 | | | | | |
| 14:5-14:15 | | | | | |
| 14:22-15:6 | | 15:15-25 | 403 | | |
| 19:1-19:11 | Form | | | | |
| 19:19-19:21 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 20:3-20:10 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 20:22-21:15 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 21:16-21:22 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 22:6-22:15 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 22:16-22:22 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 23:5-23:14 | 401/402, Form | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 23:25-24:4 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 24:12-24:21 | 401/402, Form | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 25:5-25:16 | 401/402, Form | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 25:17-25:25 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 26:1-26:13 | 401/402 | 16:8-24, 19:12-18, 24:22-25:4 | 403, 611(a), NT, NR | | |
| 28:9-28:13 | | | | | |
| 28:21-28:23 | | | | | |
| 29:4-29:13 | | 29:14-17, 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, I, S | 29:18-19 | |
| 29:20-29:23 | | 29:14-17, 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, I, S | 29:18-19 | |
| 29:25-30:6 | 401/402, Form | 29:14-17, 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, I, S | 29:18-19 | |
| 30:7-30:18 | Form | 29:14-17, 30:19-31:6 | 403, 611(a), NR, 602, F, I | 29:18-19 | |
| 31:7-31:17 | | 30:19-31:6 | 403, 611(a), NR, 602, F | | |
| 32:8-32:11 | | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 32:12-33:20 | Form | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |
| 33:21-34:2 | | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |
| 34:3-34:12 | 401/402, 403, Form | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |
| 34:23-35:2 | 401/402, 403 | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |
| 35:3-35:12 | 401/402, 403, MIL, Foundation | 34:13-14, 34:16-22 | 403, 611(a), NR, BSD, O, 602, F, S | | |
| 35:17-35:25 | 401/402, 403, MIL, Foundation, Form | 36:13-16 | 403 | | |
| 36:5-36:12 | 401/402, 403, MIL | 36:13-16 | 403 | | |
| 37:2-38:4 | 401/402, 403, MIL | 36:13-16 | 403 | | |
| 38:8-38:15 | 401/402, 403, MIL | 36:13-16 | 403 | | |
| 38:16-39:2 | 401/402, 403, MIL | 36:13-16 | 403 | | |
| 39:7-39:25 | 401/402, 403, MIL | 36:13-16 | 403 | | |
| 42:2-42:7 | 401/402, 403, MIL, Incomplete | 41:6-42:1; 42:8-9 | 403, 611(a), NR, NT, BSD, O, F, S | | |
| 42:16-43:3 | 401/402 | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 43:4-43:9 | 401/402 | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 43:10-43:23 | 401/402 | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 43:24-44:9 | 401/402 | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 44:10-44:20 | 401/402, Form | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 44:21-44:24 | 401/402 | 44:25-45:14 | 403, 611(a), O, F, S | | |
| 45:15-46:13 | Form | | | | |
| 46:14-47:7 | 401/402, 403 | | | | |
| 48:12-50:2 | Incomplete | 48:9-11 | 403, NT, NR | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 50:3-50:11 | Form | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 50:12-50:19 | 401/402, 403 | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 51:1-51:16 | 401/402, 403 | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 51:19-51:25 | 401/402, 403 | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 52:1-52:10 | 401/402, 403 | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 53:23-54:13 | 401/402, 403 | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 54:14-55:1 | 401/402, 403, Incomplete | 50:20-21; 50:23-25; 52:11-16; 53:4-9, 53:12-16, 55:2-9, 55:21-56:7 | 403, 611(a), O, F, S, BSD | | |
| 56:8-56:12 | 401/402 | 55:21-56:7 | 403, 611(a), BSD | | |
| 56:13-57:5 | 401/402 | 55:21-56:7 | 403, 611(a), BSD | | |
| 58:13-59:8 | 401/402 | 58:6-12 | 403, 611(a) | | |
| 59:16-59:20 | 401/402 | | | | |
| 59:21-60:3 | 401/402 | | | | |
| 60:4-60:15 | 401/402, Form | | | | |
| 60:16-61:2 | 401/402, Form, MIL | | | | |
| 61:3-61:7 | 401/402, MIL | | | | |
| 61:8-63:5 | 401/402, MIL | | | | |
| 63:6-63:24 | 401/402, Form | | | | |
| 63:25-64:2 | 401/402 | | | | |
| 64:3-64:21 | 401/402, Form | 65:22-66:20 | 403, 611(a), BSD, O, S, 602, F | | |
| 64:22-65:21 | 401/402, Form | 65:22-66:20 | 403, 611(a), BSD, O, S, 602, F | | |
| 68:15-68:24 | 401/402, Form, MIL | 72:7-11; 72:17-18, 72:20-73:1 | 403, 611(a), BSD, O, S, 602, F | | |
| 68:25-69:6 | 401/402, MIL | 72:7-11; 72:17-18, 72:20-73:1 | 403, 611(a), BSD, O, S, 602, F | | |
| 69:20-70:15 | 401/402, MIL | 72:7-11; 72:17-18, 72:20-73:1 | 403, 611(a), BSD, O, S, 602, F | | |
| 70:16-71:10 | 401/402, Form, MIL | 72:7-11; 72:17-18, 72:20-73:1 | 403, 611(a), BSD, O, S, 602, F | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 74:6-74:15 | 401/402, MIL | | | | |
| 74:16-74:24 | 401/402, MIL | 74:25-76:4 | 403, 611(a), BSD, O, S, 602, F | | |
| 76:5-77:13 | 401/402, MIL | 77:14-23 | 403, 611(a), BSD, O, S, 602, NR | | |
| 77:24-78:5 | 401/402, MIL | | | | |
| 78:6-78:14 | 401/402, Form, MIL | | | | |
| 78:15-80:1 | 401/402, MIL | | | | |
| 80:2-80:19 | 401/402, MIL | | | | |
| 80:20-82:12 | 401/402, Form, MIL | | | | |
| 82:20-83:12 | 401/402, MIL | 83:13-18 | 403, 611(a) | | |
| 84:8-84:16 | 401/402, Form, MIL | 83:13-18 | 403, 611(a) | | |
| 85:4-85:10 | 401/402, MIL | | | | |
| 85:19-86:11 | 401/402, MIL | | | | |
| 86:12-86:18 | 401/402, Form, MIL | | | | |
| 86:19-87:17 | 401/402, MIL | | | | |
| 87:18-87:23 | 401/402, MIL | 90:15-91:17, 97:22-99:18 | 403, 611(a), BSD, O, S, 602, F | | |
| 87:24-88:19 | 401/402, Form, MIL | 90:15-91:17, 97:22-99:18 | 403, 611(a), BSD, O, S, 602, F | | |
| 88:20-89:15 | 401/402, Form, MIL | 90:15-91:17, 97:22-99:18 | 403, 611(a), BSD, O, S, 602, F | | |
| 89:17-90:14 | 401/402, MIL | 90:15-91:17, 97:22-99:18 | 403, 611(a), BSD, O, S, 602, F | | |
| 97:1-97:13 | Form, Foundation | 97:14-15, 97:17-21 | 403, 611(a), O, S, 602, F | | |
| 99:19-99:24 | 401/402 | 97:22-99:18, 99:25-100:23, 105:19-24 | 403, 611(a), BSD, O, S, 602, F, NR, R | | |
| 101:2-101:19 | 401/402 | 105:19-24 | 403, 611(a), BSD, O, S, 602, F, R | | |
| 101:20-101:25 | 401/402 | 105:19-24 | 403, 611(a), O, S, 602, R | | |
| 102:1-102:6 | 401/402 | 105:19-24 | 403, 611(a), O, S, 602, R | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Date of Deposition: 11/23/22 | | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections | |
| 105:25-106:13 | 401/402, 403, MIL | 105:15-24 | 403, 611(a), O, S, 602, R | | | |
| 106:20-107:15 | 401/402, 403, MIL | | | | | |
| 107:21-108:16 | 401/402, 403, Foundation, MIL | | | | | |
| 109:13-110:15 | 401/402, 403, Foundation, MIL | 110:25-111:24 | 403, 611(a), O, S, 602, NR, R | | | |
| 110:16-110:21 | 401/402, 403, Foundation, MIL | 110:25-111:24 | 403, 611(a), O, S, 602, NR, R | | | |
| 111:25-112:13 | 401/402, 403, Foundation, MIL | | | | | |
| 112:14-112:25 | Foundation, Form | | | | | |
| 113:1-113:16 | Foundation, Form | | | | | |
| 113:17-113:21 | 401/402, 403, Foundation, MIL | | | | | |
| 114:12-114:19 | 401/402, 403, MIL | | | | | |
| 115:4-115:19 | 401/402, 403, Foundation, MIL | | | | | |
| 116:13-116:24 | 401/402, 403, Foundation, MIL | | | | | |
| 116:25-117:5 | 401/402, 403, Foundation, MIL | | | | | |
| 117:23-118:16 | 401/402, 403, Foundation, Hearsay, MIL | | | | | |
| 118:17-118:22 | 401/402, 403, Foundation, Hearsay, MIL | | | | | |
| 118:23-119:13 | 401/402, 403, Foundation, Hearsay, MIL | | | | | |
| 119:14-119:23 | 401/402, 403, Foundation, Hearsay, MIL | | | | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 119:24-120:7 | 401/402, 403, Foundation, Hearsay, MIL | | | | |
| 122:8-123:8 | 401/402, 403 | | | | |
| 124:12-124:19 | 401/402, 403 | | | | |
| 125:24-126:5 | 401/402, 403, Form | | | | |
| 130:25-131:5 | 401/402, 403, Form | | | | |
| 131:7-131:21 | 401/402, 403, Form | | | | |
| 131:22-132:11 | 401/402, 403, Form, Foundation | | | | |
| 132:12-132:21 | 401/402, 403, Form, Foundation | | | | |
| 132:22-133:18 | | 133:19-134:24; 135:5-135:22 | 403, 611(a), O, LC, S, 602 | | |
| 134:25-135:4 | Form | 133:19-134:24; 135:5-135:22 | 403, 611(a), O, LC, S, 602 | | |
| 135:24-136:2 | | | | | |
| 136:7-136:20 | | | | | |
| 136:24-137:2 | | | | | |
| 137:3-137:12 | | | | | |
| 137:13-137:24 | | | | | |
| 138:8-138:21 | | 138:22-139:10 | 403, 611(a), O, S, 602, F | | |
| 139:11-139:23 | 401/402, 403 | 138:22-139:10 | 403, 611(a), O, S, 602, F | | |
| 141:25-142:10 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 142:16-142:25 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 143:8-143:15 | 401/402, 403 | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 143:16-144:5 | 401/402, 403 | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 144:11-144:19 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 145:3-145:11 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 146:4-146:14 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 146:24-147:7 | 401/402, 403, Form | 139:24-140:21 | 403, 611(a), O, S, 602, F, LC, BSD | | |
| 147:21-148:6 | 401/402, 403, Form | | | | |
| 148:7-148:18 | 401/402, 403, Form | | | | |
| 148:19-149:1 | 401/402, 403, Form, Scope | | | | |
| 149:17-150:1 | 401/402, 403, Form, Scope | | | | |
| 150:2-150:24 | 401/402, 403, Form, Scope | | | | |
| 150:25-151:8 | 401/402, 403, Foundation | | | | |
| 155:1-155:14 | 401/402, 403, Foundation | | | | |
| 155:19-156:4 | 401/402, 403, Hearsay, MIL | 156:5-7, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 156:8-156:20 | 401/402, 403, Hearsay, MIL | 156:5-7, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 156:21-157:9 | 401/402, 403, Hearsay, MIL | 156:5-7, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 157:15-158:3 | 401/402, 403, Foundation, Form, Hearsay, MIL | 184:19-186:6, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 158:16-159:2 | 401/402, 403, Foundation, Form, Hearsay, MIL | 159:3-16, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 159:17-160:6 | 401/402, 403, Foundation, Form, Hearsay, MIL | 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD | | |
| 160:11-160:21 | 401/402, 403, Foundation, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/23/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 161:2-161:16 | 401/402, 403, Foundation, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |
| 161:17-162:8 | 401/402, 403, Foundation, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |
| 162:9-162:20 | 401/402, 403, Foundation, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |
| 162:21-163:8 | 401/402, 403, Form, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |
| 163:9-163:15 | 401/402, 403, Form, Hearsay, MIL | 160:22-161:1, 184:19-186:6 | 403, 611(a), O, S, 602, F, R, BSD, NT, NR | | |
| 163:16-164:1 | 401/402, 403, Foundation, Hearsay, MIL | 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 164:10-164:19 | 401/402, 403, Foundation, Form, Hearsay, MIL | 164:20-165:16, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 165:17-166:1 | 401/402, 403, MIL | 164:20-165:16, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 166:2-166:9 | 401/402, 403, MIL | 164:20-165:16, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 166:12-167:9 | 401/402, 403, Foundation, Hearsay, MIL | 164:20-165:16, 168:8-10, 168:12-13, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 167:10-167:20 | 401/402, 403, Foundation, Hearsay, MIL | 164:20-165:16, 168:8-10, 168:12-13, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 168:3-168:7 | 401/402, 403, Foundation, MIL | 164:20-165:16, 168:8-10, 168:12-13, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 168:14-168:24 | 401/402, 403, Foundation, MIL | 164:20-165:16, 168:8-10, 168:12-13, 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 168:25-169:9 | 401/402, 403, Form, MIL | 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Marc Taub | | | | | |
|---|---|---|---|---|---|

| Date of Deposition: 11/23/22 | | | | | |
|---|---|---|---|---|---|

| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
|---|---|---|---|---|---|
| 169:11-169:23 | 401/402, 403, Form, MIL | 184:19-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 171:21-172:8 | 401/402, 403, MIL | 172:10-173:11, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 173:12-173:25 | 401/402, 403, Foundation, Form, MIL | 172:10-173:11, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 174:1-174:4 | 401/402, 403, Foundation, Form, MIL | 172:10-173:11, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 174:9-174:19 | 401/402, 403 | 175:18-176:14, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 174:20-175:17 | 401/402, 403 | 175:18-176:14, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 176:15-177:4 | 401/402, 403, Form | 175:18-176:14, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 177:5-177:7 | 401/402, 403 | 177:8-10, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 177:12-177:21 | 401/402, 403 | 177:22-24, 178:1-9, 178:15-19, 179:6-13, 179:15, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 178:10-178:14 | 401/402, 403 | 179:6-13, 179:15, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 179:2-179:5 | 401/402, 403 | 179:6-13, 179:15, 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |
| 180:7-181:3 | 401/402, 403, Form | 181:9-186:6 | 403, 611(a), O, S, 602, F, BSD | | |

DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Dr. Rose Thiessen | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/15/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 14:17-14:23 | | 6:11-12 | 403, 611(a) | | |
| 22:3-22:6 | | 21:24-22:2; 15:4-5 | 403, 611(a) | | |
| 35:11-36:1 | 401/402, 403 | 34:22-35:10, 36:2-12 | 403, 611(a) | | |
| 64:20-66:1 | 401/402, 403 | 66:2-68:6; 68:17-69:1 | R; 403; BSD | 68:7-16 | 401/402, 403, NR |
| 91:5-91:17 | 401/402, 403 | 51:20-52:13 | | | |
| 99:25-101:14 | Foundation, Form | 98:17-25; 99:25-100:3 | R; 403; BSD | 100:9-101:2 | 401/402, 403, Hearsay |
| 123:3-123:9 | | | | | |
| 125:1-126:4 | 401/402, 403, Hearsay, MIL | | | | |

DexCom v. Abbott
DexCom's Deposition Designations                                          **EXHIBIT 6D**
Case No. 1:22-cv-00605-KAJ **DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/14/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 13:1-14:14 | | 11:7-9 | 403, 611(a) | | |
| 15:20-16:8 | | | | | |
| 16:14-16:17 | | 16:24-25; 17:2-17:3 | 403, 611(a) | | |
| 17:9-18:22 | | | | | |
| 18:25-19:3 | Scope | | | | |
| 19:6-19:9 | Scope; Foundation | | | | |
| 19:12-19:15 | Scope; Foundation | | | | |
| 19:19-19:24 | Scope | | | | |
| 20:4-20:6 | Scope | | | | |
| 20:9-20:10 | Scope | | | | |
| 21:2-21:4 | Scope | 22:19-24; 23:10-23:17; 25:3-6; 25:9-11; 33:22-25; 36:3-36:20; 36:21-23; 36:25-37:11;37:13-37:21; 37:23-38:24; 39:1-39:7 | BSD, 403, 611(a) | | |
| 21:6-21:18 | Scope | 22:19-24; 23:10-23:17; 25:3-6; 25:9-11; 33:22-25; 36:3-36:20; 36:21-23; 36:25-37:11;37:13-37:21; 37:23-38:24; 39:1-39:7 | BSD, 403, 611(a) | | |
| 21:19-22:2 | Scope | | | | |
| 22:4-22:13 | Scope | | | | |
| 22:16-22:18 | Scope | | | | |
| 25:24-25:25 | Form | | | | |
| 26:2-26:8 | | | | | |
| 26:12-26:19 | Form | | | | |
| 26:21-26:21 | Form | | | | |

DexCom v. Abbott
DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

EXHIBIT 6D
DEXCOM'S DEPOSITION DESIGNATIONS

| Witness: Todd York | | | | | |
| --- | --- | --- | --- | --- | --- |
| Date of Deposition: 11/14/22 | | | | | |
| DexCom Initial Designations | Abbott Objections | Abbott's Counter-Designations | DexCom Objections | DexCom Counter-Counter Designations | Abbott Objections |
| 27:13-28:15 | Form; Foundation | 29:20-29:24; 30:1-30:4; 70:4-7; 70:10-18; 70:22-71:1;71:3-9 | BSD, 403, 611(a) | | |
| 28:18-28:23 | | 29:20-29:24; 30:1-30:4; 70:4-7; 70:10-18; 70:22-71:1;71:3-9 | BSD, 403, 611(a) | | |
| 28:24-29:15 | | 29:20-29:24; 30:1-30:4; 70:4-7; 70:10-18; 70:22-71:1;71:3-9 | BSD, 403, 611(a) | | |
| 29:18-29:19 | Scope | 29:20-29:24; 30:1-30:4; 70:4-7; 70:10-18; 70:22-71:1;71:3-9 | BSD, 403, 611(a) | | |
| 30:5-30:8 | | | | | |
| 30:12-30:14 | | 56:8-56:15 | | | |
| 31:10-31:13 | | | | | |
| 31:15-31:23 | 401/402; 403 | 56:8-15 | | | |
| 32:3-32:6 | | 65:13-23; 66:1-6; 35:22-25; 36:3-20 | BSD, 403, 611(a) | | |
| 32:11-32:14 | | 35:22-25; 36:3-20 | BSD, 403, 611(a) | | |
| 32:16-33:4 | Scope | 35:22-25; 36:3-20 | BSD, 403, 611(a) | | |
| 41:10-42:5 | | | | | |
| 42:6-42:9 | | | | | |
| 42:13-42:22 | | | | | |
| 43:13-43:19 | | 45:13-14; 45:17-25; 47:1-5; 47:7-47:11 | BSD, 403, 611(a) | | |
| 43:22-44:4 | Form | 45:13-14; 45:17-25; 47:1-5; 47:7-47:11 | BSD, 403, 611(a) | | |

DexCom v. Abbott
DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/14/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 44:8-44:20 | | 45:17-45:25; 45:13-14; 45:17-25; 47:1-5; 47:7-47:11 | BSD, 403, 611(a) | | |
| 46:1-46:3 | | | | | |
| 46:5-46:25 | | 47:1-5; 47-7-11; 48:1-49:2; 60:19-61:7 | BSD, 403, 611(a) | | |
| 49:5-49:9 | | 47:1-5; 47-7-11; 48:1-49:2; 60:19-61:7 | BSD, 403, 611(a) | | |
| 49:11-49:12 | Scope | 47:1-5; 47-7-11; 48:1-49:2; 60:19-61:7; 49:13-49:15; 49:18-49:21; 49:23-50:2 | BSD, 403, 611(a) | | |
| 54:6-54:9 | | 52:6-53:2; 53:16-53:20; 53:22-54:5 | BSD, 403, 611(a) | | |
| 54:11-54:14 | Scope | 52:6-53:2; 53:16-53:20; 53:22-54:5 | BSD, 403, 611(a) | | |
| 55:8-55:14 | | | | | |
| 68:7-68:10 | | | | | |
| 68:12-68:18 | | 61:21-62:12; 62:15-64:5; 71:19-71:21; 71:24-73:2; 80:11-80:25; 81:3-81:7; 81:9-81:12; 70:4-7;70:10-18; 70:22-71:1; 71:3-9 | BSD; 611(a) | | |

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/14/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 68:24-69:5 | | 61:21-62:12; 62:15-64:5; 71:19-71:21; 71:24-73:2; 80:11-80:25; 81:3-81:7; 81:9-81:12; 70:4-7;70:10-18; 70:22-71:1; 71:3-9 | BSD, 403, 611(a) | | |
| 69:7-69:14 | | 61:21-62:12; 62:15-64:5; 71:19-71:21; 71:24-73:2; 80:11-80:25; 81:3-81:7; 81:9-81:12; 70:4-7;70:10-18; 70:22-71:1; 71:3-9 | BSD, 403, 611(a) | | |
| 69:15-69:18 | | 61:21-62:12; 62:15-64:5; 71:19-71:21; 71:24-73:2; 80:11-80:25; 81:3-81:7; 81:9-81:12; 70:4-7;70:10-18; 70:22-71:1; 71:3-9 | BSD, 403, 611(a) | | |
| 69:22-69:24 | Scope | 61:21-62:12; 62:15-64:5; 71:19-71:21; 71:24-73:2; 80:11-80:25; 81:3-81:7; 81:9-81:12; 70:4-7;70:10-18; 70:22-71:1; 71:3-9; 70:1-3 | BSD, 403, 611(a) | | |

DexCom v. Abbott

DexCom's Deposition Designations

Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**

**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/14/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 83:13-83:21 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 84:2-84:4 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 84:6-84:20 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 84:22-84:24 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 85:7-85:8 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 85:12-86:7 | Scope; Foundation; 401/402; 403 | 85:1-2; 85:4-6; 86:11-18; 86:23-87:2; 87:4-11; 87:13-88:14; 88:18 | BSD, 403, 611(a) | | |
| 92:10-92:22 | | | | | |
| 100:20-100:23 | | 100:17-19 | 403, 611(a) | | |
| 101:1-101:3 | Scope; Foundation | 104:16-17; 104:20-22; 104:24-105:3 | 403, 611(a) | | |

DexCom v. Abbott
DexCom's Deposition Designations                                    **EXHIBIT 6D**
Case No. 1:22-cv-00605-KAJ **DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/14/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 101:4-101:5 | Scope | 104:16-17; 104:20-22; 104:24-105:3 | 403, 611(a) | | |
| 101:9-101:14 | Scope; Foundation | 104:16-17; 104:20-22; 104:24-105:3 | 403, 611(a) | | |
| 101:17-101:19 | Scope | 104:16-17; 104:20-22; 104:24-105:3 | 403, 611(a) | | |
| 101:20-102:2 | Scope | 104:16-17; 104:20-22; 104:24-105:3 | 403, 611(a) | | |
| 102:4-102:19 | Scope | | | | |
| 102:21-103:1 | Scope | | | | |
| 103:3-103:4 | Scope | | | | |
| 114:7-114:21 | Scope | | | | |
| 114:23-115:3 | Scope | 92:10-92:22 | 403, 611(a) | | |
| 115:5-115:5 | Scope | | | | |
| 117:7-117:11 | Scope; 401/402; 403 | | | | |
| 117:18-117:24 | Scope; 401/402; 403; Assumes | | | | |
| 118:2-118:6 | Scope; 401/402; 403 | | | | |
| 118:8-118:16 | Scope; 401/402; 403 | 118:20-21 | 403, 611(a) | | |
| 118:22-119:6 | Scope; 401/402; 403 | | | | |
| 119:9-119:16 | Scope; 401/402; 403 | | | | |

DexCom v. Abbott
DexCom's Deposition Designations                                    **EXHIBIT 6D**
Case No. 1:22-cv-00605-KAJ   **DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: 11/14/22** | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 119:19-119:22 | Scope; 401/402; 403 | | | | |
| 119:24-120:13 | Scope; 401/402; 403 | | | | |
| 120:15-120:20 | Scope; 401/402; 403 | | | | |
| 120:23-121:9 | Scope; 401/402; 403 | | | | |
| 121:12-121:18 | Scope; 401/402; 403 | | | | |
| 121:22-121:23 | Scope; 401/402; 403 | | | | |
| 122:1-122:4 | Scope; 401/402; 403 | | | | |
| 122:8-122:18 | Scope; 401/402; 403 | | | | |
| 124:1-124:3 | Scope; 401/402; 403 | | | | |
| 124:6-124:12 | Scope; 401/402; 403 | | | | |
| 124:15-124:16 | Scope; 401/402; 403 | | | | |
| 125:12-125:25 | Scope; 401/402; 403 | 126:5-7 | 403, 611(a) | | |

DexCom v. Abbott
DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/14/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 126:8-126:14 | Scope; 401/402; 403 | | | | |
| 127:16-128:3 | Scope; 401/402; 403 | | | | |
| 128:6-128:7 | Scope; 401/402; 403 | | | | |
| 128:8-128:14 | Scope; 401/402; 403 | | | | |
| 128:18-128:18 | Scope; 401/402; 403 | | | | |
| 128:25-129:6 | Scope; 401/402; 403 | | | | |
| 129:9-129:10 | Scope; 401/402; 403 | | | | |
| 129:21-130:2 | Scope; 401/402; 403 | | | | |
| 130:6-130:9 | Scope; 401/402; 403 | | | | |
| 130:10-130:16 | Scope; 401/402; 403 | | | | |
| 130:19-130:20 | Scope; 401/402; 403 | | | | |
| 136:11-137:13 | Scope; 401/402; 403 | 138:8-138:10; 138:13-138:24 | BSD, 403, 611(a) | | |

DexCom v. Abbott
DexCom's Deposition Designations
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 6D**
**DEXCOM'S DEPOSITION DESIGNATIONS**

| Witness: Todd York | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: 11/14/22 | | | | | |
| **DexCom Initial Designations** | **Abbott Objections** | **Abbott's Counter-Designations** | **DexCom Objections** | **DexCom Counter-Counter Designations** | **Abbott Objections** |
| 137:15-138:3 | Scope; 401/402; 403; Speculation | | | | |
| 138:6-138:7 | Scope; 401/402; 403 | | | | |
| 139:12-140:10 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |
| 140:12-140:16 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |
| 142:15-142:18 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |
| 142:20-143:7 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |
| 143:9-143:13 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |
| 143:17-143:19 | Scope; 401/402; 403 | 140:17-140:22; 140:24-141:12; 141:15-141:17; 141:24-142:9 | BSD, 403, 611(a) | | |

Exhibit 6P

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEXCOM, INC.,

               Plaintiff,

v.

ABBOTT DIABETES CARE INC., and
ABBOTT DIABETES CARE SALES CORP.

               Defendants.

Civil Action No. 22-605 (KAJ)

(CONSOLIDATED)

ABBOTT DIABETES CARE INC.,

               Plaintiff,

v.

DEXCOM, INC.,

               Defendant.

Civil Action No. 21-1699 (KAJ)

## EXHIBIT 6P TO PROPOSED FINAL PRETRIAL ORDER
## ABBOTT'S DEPOSITION DESIGNATIONS

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

Abbott Diabetes Care Inc. ("Abbott Diabetes Care") and Abbott Diabetes Care Sales Corp.

(collectively, "Abbott") hereby submit its Initial Trial Deposition Designations, which may be

played or read into evidence, or submitted to the Court.

Abbott reserves the right to revise, amend, supplement or modify its deposition

designations in light of any order regarding the scope of the trial, or in light of any information

submitted by Defendant DexCom, Inc. ("DexCom") as part of its trial filings or otherwise, such

as the availability of its witnesses to testify live.  In the event that DexCom does not call designated

"will call" live witnesses to trial, Abbott reserves the right to identify additional designations.

Abbott further reserves the right to supplement these deposition designations to rebut or otherwise

address the deposition designations identified by DexCom. Lastly, Abbott also reserves the right

to rely on any designations submitted by DexCom.

## I.    DEPOSITION OF JAMES BRAUKER (11/17/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 6:3-5 | R; 403 | | | | |
| 7:24-8:25 | R; 403 | | | | |
| 29:21-25 | R; 403 | | | | |
| 30:24-31:4 | R; 403; F | | | | |
| 31:5-7 | R; 403; F | | | | |
| 31:8-11 | R; 403; F | | | | |
| 36:6-19 | R; 403 | | | | |
| 36:20-25 | R; 403 | | | | |
| 37:1-6 | R; 403 | | | | |
| 37:7-21 | R; 403 | | | | |
| 37:22-25 | R; 403; F | | | | |
| 38:1-10 | R; 403; E | 31:5-11; Errata ll. 11-12 | | | |
| 38:11-20 | R; 403; E | 31:5-11; Errata ll. 11-12 | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 39:8-21 | R; 403; 602; O; S; F | | | | |
| 39:22-40:1 | R; 403 | | | | |
| 40:2-4 | R; 403 | | | | |
| 40:5-25 | R; 403; E | Errata ll. 13-14 | | | |
| 41:1-3 | R; 403 | | | | |
| 41:4-12 | R; 403 | | | | |
| 41:19-42:3 | R; 403; F; 611(a) | | | | |
| 42:4-6 | R; 403; F; 602; 611(a) | | | | |
| 42:7-22 | R; 403; F; 602; 611(a) | 42:23-43:8 | 401/402; 403; NR; NS | | |
| 43:9-12 | R; 403; F; 602; 611(a) | | | | |
| 43:13-44:8 | R; 403; F; 602; 611(a) | | | | |
| 44:9-10 | R; 403; F; 602; 611(a) | | | | |
| 44:11-21 | R; 403; F; 602; 611(a) | | | | |
| 44:22-24 | R; 403 | | | | |
| 44:25-45:25 | R; 403; F; 602; S | | | | |
| 46:21-25 | R; 403; F | | | | |
| 47:1-10 | R; 403; F; 602; S; O | | | | |
| 47:12-48:2 | R; 403; S | | | | |
| 48:3-5 | R; 403 | | | | |
| 48:10-13 | R; 403; S | | | | |
| 49:2-17 | R; 403; S | 49:18-20 | 401/402; 403; NQP; NR | | |
| 49:21-25 | R; 403; S; F; 602 | | | | |
| 50:3-7 | R; 403; S; F; 602 | | | | |
| 50:19-52:25 | R; 403; S; F; 602; H | | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 53:1-54:4 | R; 403; S; F; H; O | | | | |
| 54:11-21 | R; 403; S; F; 611(a) | | | | |
| 55:6-16 | R; 403 | | | | |
| 55:17-20 | R; 403 | | | | |
| 55:21-25 | R; 403 | | | | |
| 56:1-3 | R; 403; F | | | | |
| 56:4-6 | R; 403 | | | | |
| 56:7-9 | R; 403 | | | | |
| 56:10-12 | R; 403; F | | | | |
| 56:13-15 | R; 403; F | | | | |
| 57:3-9 | R; 403; F | | | | |
| 58:22-59:1 | R; 403; F; S | | | | |
| 60:19-25 | R; 403; F; O | | | | |
| 61:1-23 | R; 403; F; O | | | | |
| 61:25-62:19 | R; 403; F; O | 62:20-63:1 | 401/402; 403; NR; NA | | |
| 64:14-25 | R; 403; F; O; S | 67:9-17 | 401/402; 403; NA | | |
| 65:1-66:13 | R; 403; F; O; S | 67:9-17 | 401/402; 403; NA | | |
| 66:14-19 | R; 403; F; O; S | 67:9-17 | 401/402; 403; NA | | |
| 66:20-67:3 | R; 403; F; O; S | 67:9-17 | 401/402; 403; NA | | |
| 67:4-8 | R; 403; F; O; S; 602 | 67:9-17 | 401/402; 403; NA | | |
| 68:2-12 | R; 403; F; S; 611(a) | | | | |
| 69:25-70:5 | R; 403; F; 611(a) | | | | |
| 72:9-14 | R; 403 | | | | |
| 72:15-21 | R; 403 | | | | |
| 72:22-24 | R; 403 | | | | |
| 74:4-7 | R; 403 | | | | |
| 74:17-20 | R; 403; F; 602; O; S | | | | |
| 74:21-75:3 | R; 403; F; 602; O; S | | | | |

3

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 75:4-5 | R; 403; F; 602; O; S | | | | |
| 79:5-13 | R; 403; F | | | | |
| 79:14-20 | R; 403; F; S; 611(a) | | | | |
| 82:1-14 | R; 403; F | | | | |
| 82:15-18 | R; 403; F | | | | |
| 82:19-24 | R; 403 | | | | |
| 82:25-83:5 | R; 403 | | | | |
| 83:20-84:5 | R; 403 | | | | |
| 84:8-13 | R; 403; F; S | | | | |
| 84:14-16 | R; 403; F; S | | | | |
| 84:17-85:1 | R; 403; O | | | | |
| 85:25-86:4 | R; 403; F; S | | | | |
| 86:21-87:8 | R; 403; F; S | | | | |
| 87:23-88:4 | R; 403; F; S | 86:12-16 | 401/402; 403; F | 87:9-87:19 | R; 403; F; S |
| 88:5-9 | R; 403; F; S | | | | |
| 88:10-89:17 | R; 403; F; S; 602; 611(a) | | | | |
| 90:20-91:1 | R; 403; F; S; O | | | | |
| 93:2-9 | R; 403; F; S; O | | | | |
| 94:2-9 | R; 403; F; S; O; 611(a) | | | | |
| 94:10-96:2 | R; 403; F; S; O; 602; LC | | | | |
| 96:3-21 | R; 403; F; S; O; LC; 611(a) | | | | |
| 96:22-25 | R; 403; F; S; O; LC; 611(a) | | | | |
| 97:1-2 | R; 403; F; S; O; 611(a) | | | | |
| 97:3-15 | R; 403; F; S; O | | | | |
| 97:16-21 | R; 403; F; S; O; 611(a) | | | | |
| 97:22-25 | R; 403; F; S; O; 611(a) | | | | |
| 98:1-6 | R; 403; F; S; O; 611(a) | | | | |
| 100:14-21 | R; 403 | | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 105:13-106:3 | R; 403; F; S; O; 602 | | | | |
| 106:4-13 | R; 403; F; S; O | | | | |
| 106:14-20 | R; 403; F; S; O | | | | |
| 106:21-107:22 | R; 403; F; S; O | | | | |
| 108:7-17 | R; 403; F; S; O | | | | |
| 114:13-17 | R; 403; F; S; O | | | | |
| 115:13-116:12 | R; 403; F; S; O | 116:13-16 | 401/402; 403 | | |
| 116:17-21 | R; 403; F; S | | | | |
| 116:25-117:17 | R; 403; F; S; O | | | | |
| 118:8-11 | R; 403; F; S; O | | | | |
| 118:12-18 | R; 403; F; S; O; 611(a) | 118:19-22 | 401/402; 403; NA | | |
| 118:23-25 | R; 403; F; S; NT | | | | |
| 119:1-21 | R; 403; F; S; 611(a) | | | | |
| 120:3-13 | R; 403; F; S | | | | |
| 120:14-121:2 | R; 403; F; S | 121:3-21 | 401/402; 403; NA | | |
| 121:22-122:2 | R; 403; F; S | | | | |
| 122:3-5 | R; 403; F; S; MC | 121:3-21 | 401/402; 403; NA | | |
| 122:6-10 | R; 403; F; S; O | | | | |
| 122:11-13 | R; 403; F; S; O | 121:14-16 | 401/402; 403; NA; Incomplete | | |
| 122:17-20 | R; 403; F; S; O | | | | |
| 122:21-23 | R; 403; F; S; O | | | | |
| 124:15-24 | R; 403 | | | | |
| 129:15-20 | R; 403; 611(a); H | | | | |
| 134:20-135:6 | R; 403; F; S; O; 611(a) | 135:21-136:4 | 401/402; 403; NA; NR | | |
| 135:7-20 | R; 403; F; S; O; 611(a) | 135:21-136:4 | 401/402; 403; NA; NR | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 136:5-21 | R; 403; F; S; O; 611(a) | | | | |
| 137:3-17 | R; 403; F; S; O; 611(a) | 137:18-23 | 401/402; 403; NA | | |
| 139:21-140:15 | R; 403; F; S; O; H | 138:5-139:20 | | | |
| 141:5-23 | R; 403; F; S; O; H | 141:24-142:2 | 401/402; 403; NQP; NA | | |
| 142:3-5 | R; 403; F; S; H | | | | |
| 142:6-10 | R; 403; F; S; H | | | | |
| 142:11-15 | R; 403; F; S; H | | | | |
| 142:16-23 | R; 403; F; S; O | | | | |
| 142:24-143:4 | R; 403; F; S | | | | |
| 143:7-13 | R; 403; F; S; O | | | | |
| 143:14-20 | R; 403; F; S; O | 143:21-144:6 | 401/402; 403; NA; NR | | |
| 144:7-17 | R; 403; F; S; H | | | | |
| 144:18-145:10 | R; 403; F; S; H; O; LC | | | | |
| 145:11-14 | R; 403; F; S; NT | | | | |
| 145:15-146:16 | R; 403; F; S; H | | | | |
| 147:10-15 | R; 403; F; S; H; O | | | | |
| 147:16-19 | R; 403; F; S; H; O | | | | |
| 147:20-148:1 | R; 403; F; S; H; O | | | | |
| 148:2-10 | R; 403; F; S; H; O; 602 | | | | |
| 148:11-15 | R; 403; F; S; O | 148:16-18 | 401/402; 403; NR; NQP | 149:14-149:22 | R; 403; F; S |
| 150:10-152:20 | R; 403; F; S; O; H | | | | |
| 152:21-24 | R; 403; F; S; O; 602; 611(a); O | 154:22-155:10 | 401/402; 403; NA; NR | | |
| 153:15-19 | R; 403; F; S; O; 602; 611(a); O | 154:22-155:10 | 401/402; 403; NA; NR | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations | Plaintiff's Counter-Counter Designations | Defendant's Objections to Counter-Counter Designations |
|---|---|---|---|---|---|
| 156:1-10 | R; 403; F; S; O; 602; 611(a); O | 154:22-155:10 | 401/402; 403; NA; NR | | |
| 156:11-15 | R; 403; F; S; O; 602; 611(a); O | 154:22-155:10 | 401/402; 403; NA; NR | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

## II.    DEPOSITION OF SHANNON M. HANSEN (11/18/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 11:7-10 | | | |
| 11:20-12:22 | | | |
| 21:12-22 | | 21:23-22:3 | 401/402, 403 |
| 22:20-25 | R; 403 | | |
| 23:15-24:8 | R, 403 | | |
| 24:20-25:2 | | | |
| 25:16-22 | | | |
| 26:3-5 | | | |
| 26:17-20 | | | |
| 26:22-27:6 | | | |
| 27:22-28:6 | | | |
| 28:18-29:6 | R; 403; MIL | | |
| 29:18-21 | R; 403; MIL | 30:9-31:1 | 401/402, 403, Motion |
| 30:4-8 | | 30:9-31:1 | 401/402, 403, Motion |
| 32:22-33:3 | R; 403; MIL | 34:17-19; 34:21-35:1; 35:3-5; 35:7-9; 35:10-15 | 401/402 |
| 33:7-34:16 | R; 403; MIL | 34:17-19; 34:21-35:1; 35:3-5; 35:7-9; 35:10-15 | 401/402 |
| 36:2-8 | R; 403 | 37:3-10 | 401/402, 403 |
| 36:13-17 | R; 403 | 37:3-10 | 401/402, 403 |
| 36:22-37:2 | R; 403; MIL | 37:3-10 | 401/402, 403 |
| 43:3-9 | R; 403; MIL | 43:10-11 | |
| 100:2-24 | R, 403; F; S; MIL | 101:21-102:20; 102:22-103:15 | 401/402, 403, Ruling |
| 100:25-101:5 | R, 403; F; S; MIL | 101:21-102:20; 102:22-103:15 | 401/402, 403, Ruling |
| 101:6-20 | R, 403; F; S; MIL | 101:21-102:20; 102:22-103:15 | 401/402, 403, Ruling |
| 105:10-19 | R, 403; H; MIL | 107:19-108:6 | 401/402, 403, Motion, Ruling |
| 105:21-107:18 | R, 403; H; MIL | 107:19-108:6 | 401/402, 403, Motion, Ruling |
| 115:9-20 | R, 403, F, LC; MIL | | |
| 119:2-4 | R, 403, F, LC; MIL | | |
| 119:6-19 | R, 403, F, LC; MIL | | |
| 119:20-120:4 | R, 403, F, LC; MIL | | |
| 120:6-16 | R, 403, F, LC; MIL | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

III.   **DEPOSITION OF LAURA JOHNSON (11/9/2022)**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 7:11-13 | R; 403 | | |
| 9:7-13 | R; 403 | | |
| 10:5-13 | R; 403 | | |
| 10:19-25 | R; 403 | | |
| 11:20-12:9 | R; 403 | | |
| 12:11-13:2 | R; 403 | | |
| 13:3-13:6 | R; 403 | | |
| 19:13-19:16 | R; 403 | | |
| 22:3-7 | | | |
| 22:14-23:3 | | | |
| 24:18-24:21 | | 26:2-5; 26:9-10 | 401/402, 403 |
| 24:25-25:6 | | 26:2-5; 26:9-10 | 401/402, 403 |
| 26:14-16 | R; 403 | | |
| 27:24-28:2 | R; 403 | | |
| 28:20-28:23 | R; 403 | | |
| 39:15-19 | | | |
| 40:1-3 | | | |
| 41:13-16 | | | |
| 42:5-43:5 | | | |
| 44:2-20 | R; 403; MIL | | |
| 45:3-14 | R; 403; MIL | | |
| 46:1-3 | R; 403; MIL | | |
| 46:16-47:1 | R; 403; MIL | 47:1-3; 47:5-11 | Improper Counter |
| 47:12-14 | R; 403; H; MIL | 48:19-49:7 | Incomplete, LC, 401/402, 403, Lay Opinion, F |
| 47:16-16 | R; 403; H; MIL | 48:19-49:7 | Incomplete, LC, 401/402, 403, Lay Opinion, F |
| 47:18-48:11 | R; 403; H; MIL | 48:19-49:7 | Incomplete, LC, 401/402, 403, Lay Opinion, F |
| 49:25-50:5 | R; 403; H; MIL | 50:6-20 | 401/402, 403 |
| 52:19-24 | | | |
| 53:11-14 | R; 403; MIL | | |
| 53:15-15 | R; 403; MIL | | |
| 53:22-24 | R; 403; MIL | | |
| 54:8-16 | R; 403; H; MIL | | |
| 54:20-23 | | | |
| 54:25-55:2 | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 57:25-58:22 | R; 403; H; MIL | | |
| 59:13-25 | R; 403; H; MIL | | |
| 60:17-61:1 | R; 403; H; MIL | | |
| 61:3-13 | R; 403; H; MIL | | |
| 61:15-62:15 | R; 403; H; MIL | | |
| 80:10-12 | R; 403; H | | |
| 95:11-14 | R; 403 | 95:15-17 | 401/402 |
| 96:14-15 | R; 403 | | |
| 96:17-18 | R; 403 | | |
| 107:8-16 | R; 403; PRIV; MIL | | |
| 108:9-18 | R; 403; F | | |
| 109:3-14 | R; 403; F | | |
| 110:16-21 | F | | |
| 112:21-25 | R; 403; F | 113:9-17; 114:4-8; 116:13-21 | 401/402, NQP, Colloquy |
| 113:1-8 | R; 403; F; H; MC | 113:9-17; 114:4-8; 116:13-21 | 401/402, NQP, Colloquy |
| 113:19-22 | R; 403; F; H | 114:4-8; 116:13-21 | 401/402, 403 |
| 114:23-25 | R; 403; O | 114:4-8; 116:13-21 | 401/402, 403 |
| 115:1-116:6 | R; 403; F; H; O | 114:4-8; 116:13-21 | 401/402, 403 |
| 116:10-12 | R; 403; F | 114:4-8; 116:13-21 | 401/402, 403 |
| 116:22-117:2 | R; 403; F | 114:4-8; 116:13-21 | 401/402, 403 |
| 117:17-23 | R; 403; F | | |
| 117:24-118:6 | R; 403; F | | |
| 134:25-135:5 | R; 403; LC; O | | |

## IV.   DEPOSITION OF APURV KAMATH (11/9/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 6:3-6 | NT | | |
| 7:14-20 | NT | | |
| 8:23-25 | I | | |
| 9:1-3 | I | | |
| 9:4-7 | I | | |
| 9:8-12 | | | |
| 9:13-18 | | | |
| 9:19-10:11 | | | |
| 10:16-19 | | | |
| 11:8-20 | | | |
| 12:9-25 | I | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 13:1-14:14 | I | | |
| 15:3-7 | | | |
| 15:25-16:22 | | | |
| 16:23-25 | | | |
| 17:1-7 | | | |
| 20:22-21:8 | LC; R; 403 | | |
| 23:1-3 | | | |
| 23:18-20 | LC; R; 403 | | |
| 25:22-26:14 | | | |
| 28:1-14 | | | |
| 29:16-30:20 | | | |
| 32:2-25 | | | |
| 33:1-4 | | | |
| 42:8-22 | I | | |
| 43:4-6 | I | | |
| 43:17-44:5 | O; LC; R; 403 | | |
| 44:6-7 | LC; R; 403; I | | |
| 44:9-17 | LC; R; 403; I | | |
| 44:18-25 | O; LC; R; 403 | | |
| 45:1-3 | O; LC; R; 403; I | | |
| 45:5-12 | O; LC; R; 403; I | | |
| 45:13-16 | O; LC; R; 403; I | | |
| 45:18-22 | O; LC; R; 403; I | | |
| 45:23-47:6 | O; LC; R; 403; I | | |
| 47:8-20 | O; LC; R; 403; I | | |
| 47:23-48:10 | O; LC; R; 403 | | |
| 48:12-15 | O; LC; R; 403; I | | |
| 48:17-18 | O; LC; R; 403; I | | |
| 49:19-50:11 | I; LC | | |
| 50:13-14 | I; LC | | |
| 50:15-51:24 | R; 403 | | |
| 57:5-10 | R; 403; S; F; 602 | | |
| 58:14-18 | R; 403; S; F; 602 | | |
| 58:19-59:11 | R; 403; S; F; 602 | | |
| 59:12-15 | R; 403; S; I; F; 602 | | |
| 59:16-25 | R; 403; S; F; 602 | | |
| 60:1-7 | R; 403; S; I; F; 602 | | |
| 60:8-10 | R; 403; S; I; F; 602 | | |
| 60:11-25 | R; 403; S; I; F; 602 | | |
| 61:2-11 | R; 403; S | | |
| 61:13-62:2 | MC | | |
| 62:3-8 | R; 403; S; 611(a); F | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 62:9-24 | R; 403; S; 611(a); F | | |
| 62:25-63:6 | R; 403; S; 611(a); F | | |
| 65:4-66:16 | R; 403; S | | |
| 66:17-20 | R; 403; S | | |
| 66:21-67:4 | R; 403; S | | |
| 70:17-24 | R; 403 | | |
| 82:19-25 | | | |
| 83:1-7 | | | |
| 84:3-85:3 | R; 403 | | |
| 85:4-17 | R; 403 | | |
| 86:4-18 | R; 403 | | |
| 87:13-88:14 | R; 403 | | |
| 92:3-8 | R; 403; I; F | | |
| 92:10-17 | R; 403; I; F | | |
| 92:18-25 | R; 403 | | |
| 94:18-25 | R; 403; I | 93:1-94:17 | 401/402, 403, Foundation/Speculation |
| 95:2-4 | R; 403; I | 93:1-94:17 | 401/402, 403, Foundation/Speculation |
| 95:16-96:1 | R; 403 | 93:1-94:17; 95:6-14; 96:2-6; 96:8-14 | 401/402, 403, Foundation/Speculation |
| 96:16-22 | R; 403 | 93:1-94:17; 95:6-14; 96:2-6; 96:8-14 | 401/402, 403, Foundation/Speculation |
| 97:9-98:1 | R; 403 | 93:1-94:17; 95:6-14; 96:2-6; 96:8-14 | 401/402, 403, Foundation/Speculation |
| 99:3-100:16 | R; 403; LC; O | | |
| 101:15-102:17 | R; 403; LC | | |
| 102:18-103:21 | R; 403; LC | | |
| 108:20-24 | R; 403 | | |
| 109:6-21 | R; 403 | | |
| 110:16-20 | R; 403 | 110:21-25 | 401/402, 403 |
| 111:1-112:18 | R; 403 | | |
| 113:23-114:8 | R; 403; I | | |
| 114:10-115:19 | R; 403; I | | |
| 115:20-24 | R; 403 | | |
| 115:25-116:4 | R; 403 | | |
| 117:4-10 | | | |
| 117:23-25 | | | |
| 118:1-19 | | | |
| 119:10-120:18 | | | |
| 120:20-123:20 | R; 403 | | |
| 123:21-125:6 | R; 403 | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 125:18-127:11 | R; 403 | | |
| 133:21-134:6 | R; 403; LC; O | | |
| 134:22-135:14 | R; 403 | | |
| 135:15-136:1 | R; 403 | | |
| 136:2-137:5 | R; 403 | | |
| 139:15-19 | R; 403 | 139:20-140:2 | 401/402, 403 |
| 140:3-5 | R; 403 | | |
| 140:6-17 | | | |
| 142:12-15 | R; 403; I | | |
| 142:17-143:8 | R; 403; I | | |
| 143:9-11 | R; 403; I | | |
| 143:13-13 | R; 403; I | | |
| 143:15-17 | R; 403; I | 143:18-25 | 401/402, 403, NR |
| 144:1-145:11 | R; 403; I | 143:18-25 | 401/402, 403, NR |
| 145:12-25 | R; 403; I | | |
| 146:1-22 | R; 403 | | |
| 146:23-25 | R; 403; I | | |
| 147:2-5 | R; 403 | | |
| 147:6-12 | R; 403; I | | |
| 147:14-16 | R; 403; I | 147:18-23 | 401/402, 403 |
| 147:24-148:20 | R; 403 | | |
| 150:11-18 | NT | | |
| 150:20-24 | | | |
| 150:25-152:21 | | | |
| 153:2-4 | | | |
| 153:5-10 | | | |
| 153:11-19 | LC; O; I; S; 602 | | |
| 153:21-25 | LC; O; I; S; 602 | | |
| 154:1-157:2 | LC; O; I; S; 602; R; 403 | | |
| 157:3-11 | R; 403 | | |
| 158:20-159:7 | R; 403 | | |
| 163:12-165:15 | R; 403; O; 602 | | |
| 167:8-21 | | | |
| 168:16-169:1 | R; 403; O; 602; LC; I; S | | |
| 169:3-170:7 | R; 403; O; 602; LC; I; S | | |
| 170:20-172:6 | R; 403; O; 602; LC; I; S | | |
| 172:8-173:10 | R; 403; O; 602; LC; I; S | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 173:12-15 | R; 403; O; 602; LC; I; S | | |
| 175:13-23 | R; 403; O; 602; LC; I; S | | |
| 175:25-176:1 | R; 403; O; 602; LC; I; S | | |
| 176:3-6 | R; 403; O; 602; LC; S | | |
| 176:7-25 | R; 403; O; 602; LC; S | | |
| 177:1-9 | R; 403; O; 602; LC; I; S | | |
| 177:11-178:3 | R; 403; O; 602; LC; I; S | | |
| 178:4-7 | R; 403; O; 602; LC; S | | |
| 178:8-19 | R; 403; O; 602; LC; I; S | | |
| 178:21-179:7 | R; 403; O; 602; LC; I; S | | |
| 179:8-16 | R; 403; O; 602; LC; I; S | | |
| 179:18-181:20 | R; 403; O; 602; LC; I; S | | |
| 181:22-182:18 | R; 403; O; 602; LC; I; S | | |
| 184:17-19 | R; 403; LC; O; I | | |
| 184:21-24 | R; 403; LC; O; I | | |
| 185:2-5 | R; 403; LC; O; I | | |
| 185:7-7 | R; 403; LC; O; I | | |
| 186:2-9 | R; 403; LC; O; I | | |
| 186:10-188:6 | R; 403; LC; O | | |
| 193:2-194:13 | R; 403; LC; O | | |
| 194:14-20 | R; 403; LC; O | | |
| 194:21-195:22 | R; 403; LC; O | | |
| 195:23-25 | R; 403; LC; O | | |
| 196:1-17 | R; 403; LC; O | | |
| 196:18-197:20 | R; 403; LC; O | 197:21-198:12 | 401/402, 403, 702 |
| 198:13-20 | R; 403; LC; O; I; 611(a) | 197:21-198:12 | 401/402, 403, 702 |
| 198:22-25 | R; 403; LC; O; I; 611(a) | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 199:1-7 | R; 403; LC; O; I; 611(a) | | |
| 199:8-13 | R; 403 | | |
| 200:18-201:14 | R; 403 | 202:10-203:14 | 401/402, 403 |
| 203:15-25 | R; 403; LC; O; I; 611(a) | 202:10-203:14 | 401/402, 403 |
| 204:2-12 | R; 403; LC; O; I; 611(a) | | |
| 204:14-23 | R; 403; LC; O; I; 611(a) | | |
| 205:2-3 | R; 403; LC; O; I; 611(a) | | |
| 205:6-10 | R; 403 | | |
| 205:20-206:6 | R; 403 | | |
| 206:10-25 | R; 403 | | |
| 207:1-3 | R; 403 | | |
| 207:19-24 | R; 403 | | |
| 208:13-15 | R; 403 | | |
| 208:16-209:12 | R; 403; I | | |
| 209:13-211:14 | R; 403; I | | |
| 211:15-23 | R; 403; I | | |
| 211:25-212:1 | R; 403; I | | |
| 212:2-23 | R; 403 | | |
| 212:24-213:25 | R; 403 | | |
| 218:24-219:4 | R; 403; C; O; I | | |
| 219:6-18 | R; 403; C; O; I | | |
| 219:20-220:1 | R; 403; C; O; I; S | | |
| 220:3-15 | R; 403; C; O; I; S | | |
| 220:16-22 | R; 403 | | |
| 221:11-222:18 | R; 403 | | |
| 223:18-224:20 | R; 403; I | | |
| 241:12-14 | R; 403; LC; I; O | | |
| 241:16-23 | R; 403; LC; I; O | | |
| 241:24-242:1 | R; 403; LC; I; O | | |
| 242:3-19 | R; 403; LC; I; O | | |
| 242:20-24 | R; 403; LC; I; O; 611(a) | | |
| 243:1-3 | R; 403; LC; I; O; 611(a) | | |
| 243:5-9 | R; 403; LC; I; O; 611(a) | | |

16

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 243:11-14 | R; 403; LC; I; O; S; 611(a) | | |
| 243:15-23 | R; 403; LC; I; O; 611(a) | | |
| 243:25-244:16 | R; 403; LC; I; O; 611(a) | | |
| 244:25-245:15 | R; 403; LC; I; O | | |
| 245:16-19 | R; 403; LC; I; O | | |
| 245:21-246:10 | R; 403; LC; I; O | | |
| 246:11-247:5 | R; 403 | | |
| 247:6-12 | R; 403; I; O | | |
| 248:22-249:23 | R; 403; LC; O | | |
| 249:24-250:1 | R; 403 | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

V.    **DEPOSITION OF JOHN LISTER (11/16/2022)**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 6:13-15 | | | |
| 9:7-12 | | | |
| 10:21-11:8 | | | |
| 13:6-14:8 | R; 403 | | |
| 15:24-16:19 | R; 403; MIL | | |
| 17:14-19 | R; 403; MIL | | |
| 17:20-18:5 | R; 403; MIL | | |
| 18:22-24 | R; 403; LC; MIL | 18:25-19:9 | 401/402, 403, Lay Opinion |
| 21:4-17 | | 21:18-22 | 401/402, 403 |
| 22:14-17 | | | |
| 30:6-17 | R; 403; MIL | 31:8-11 | 401/402, 403, Lay Opinion, Incomplete, Assumes |
| 30:18-31:7 | R; 403; MIL | 31:8-11 | 401/402, 403, Lay Opinion, Incomplete, Assumes |
| 31:21-23 | R; 403; MIL | 32:14-33:4 | 401/402, 403, Privilege, Incomplete, NR |
| 32:4-13 | R; 403; MIL | 32:14-33:4 | 401/402, 403, Privilege, Incomplete, NR |
| 36:9-12 | | 36:13-37:2 | 401/402, 403 Incomplete |
| 42:10-18 | R; 403; LC; O; MIL | | |
| 42:20-43:4 | R; 403; LC; O; MIL | | |
| 43:5-17 | R; 403; MIL | | |
| 44:2-3 | R; 403; MIL | | |
| 44:5-9 | R; 403; MIL | | |
| 46:19-25 | R; 403; LC; O; MIL | | |
| 47:1-12 | R; 403; F; LC; O; MIL | | |
| 47:14-24 | R; 403; F; LC; O; MIL | | |
| 48:1-1 | R; 403; F; LC; O; MIL | | |
| 48:10-23 | R; 403 | 49:19-25 | 401/402, 403, Foundation/Speculation |
| 48:24-49:18 | R; 403 | 49:19-25 | 401/402, 403, Foundation/Speculation |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 50:12-24 | R; 403; F; O; S | | |
| 50:25-25 | R; 403 | | |
| 51:1-7 | R; 403 | | |
| 51:15-52:2 | R; 403; LC; MIL | | |
| 52:3-6 | R; 403; MIL | | |
| 52:8-11 | R; 403; LC; MIL | | |
| 52:13-13 | R; 403; LC; MIL | | |
| 52:14-17 | R; 403; LC; MIL | | |
| 52:19-19 | R; 403; LC; MIL | | |
| 52:20-24 | R; 403; LC; MIL | | |
| 53:1-12 | R; 403; F; LC; MIL | | |
| 53:13-21 | R; 403; F; LC; MIL | | |
| 53:23-54:4 | R; 403; F; LC; MIL | | |
| 54:8-55:2 | R; 403; F | | |
| 57:8-11 | R; 403; F | | |
| 57:13-19 | R; 403; F | | |
| 57:21-25 | R; 403; F; LC; O; MIL | | |
| 58:2-3 | R; 403; F; LC; O; MIL | | |
| 58:4-7 | R; 403; F; LC; O; MIL | | |
| 58:9-9 | R; 403; F; LC; O; MIL | | |
| 58:10-11 | R; 403; F; LC; O; MIL | | |
| 58:13-13 | R; 403; F; LC; O; MIL | | |
| 62:6-63:15 | R; 403; F | | |
| 63:16-18 | R; 403; F; LC; O; MIL | | |
| 63:20-64:5 | R; 403; F; LC; O; MIL | | |

19

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

## VI.    DEPOSITION OF ADAM NOAR (11/9/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 6:8-9 | | | |
| 7:22-25 | | | |
| 8:4-10 | | | |
| 8:15-25 | | | |
| 9:1-19 | | | |
| 10:12-16 | | | |
| 10:23-11:7 | | | |
| 11:17-12:5 | | | |
| 13:24-14:6 | R | | |
| 14:9-14 | R | 14:15-22 | R |
| 14:23-25 | R | 14:15-22 | R |
| 90:4-17 | R, 403, H, 602 | 90:18-91:3; 95:7-96:8 | R, 403, H, 602 |
| 91:6-92:16 | R, 403, H, 602 | 16:7-21; 92:17-25; 95:7-96:8 | R, 403, H, 602 |
| 93:1-11 | 403, 602, H | 93:12-18; 95:17-96:8 | R, 403, H, 602 |
| 93:19-21 | 403, 602 | 93:22-94:9; 95:17-96:8 | R, 403, H, 602 |
| 94:10-13 | 403, 602 | 93:22-94:9; 95:7-96:8 | R, 403, H, 602 |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

**VII.    DEPOSITION OF STEVE PACELLI (11/7/2022)**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 10:17-11:10 | | | |
| 11:14-12:3 | | | |
| 12:9-10 | | | |
| 12:11-13:12 | | | |
| 13:14-22 | | | |
| 13:24-15:1 | | | |
| 15:3-14 | | | |
| 15:18-16:5 | | | |
| 19:14-20:24 | R; 403; F | | |
| 21:24-22:1 | | | |
| 22:11-23:1 | | | |
| 24:9-25:15 | | 26:2-6 | 401/402 |
| 25:16-26:1 | | 26:2-6 | 401/402 |
| 26:7-10 | | 26:2-6 | 401/402 |
| 26:21-22 | | | |
| 27:7-13 | | | |
| 27:16-17 | | | |
| 29:16-25 | R; 403 | | |
| 30:1-2 | | | |
| 30:4-10 | | | |
| 30:18-31:7 | R; 403; F | | |
| 31:9-15 | R; 403; F | | |
| 31:17-32:3 | R; 403; F | | |
| 32:5-7 | R; 403; F | | |
| 32:13-15 | R; 403; F | | |
| 32:19-20 | R; 403; F | | |
| 33:2-11 | R; 403; F; O; S | | |
| 33:13-22 | R; 403; F; O; S | | |
| 33:23-34:2 | R; 403; F; O; S | | |
| 35:1-3 | R; 403; F; O; S | | |
| 35:17-36:3 | R; 403; F; O; S; 611(a) | | |
| 36:5-5 | R; 403; F; O; S; 611(a) | | |
| 37:7-9 | R; 403; F; O; S; 611(a) | | |
| 37:11-14 | R; 403; F; O; S; 611(a) | | |
| 37:16-16 | R; 403; F; O; S; 611(a) | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 37:18-20 | R; 403; F; O; S; 611(a) | | |
| 37:22-38:3 | R; 403; F; O; S; 611(a) | | |
| 38:5-6 | R; 403; F; O; S; 611(a) | | |
| 38:8-17 | R; 403; F; O; S; 611(a) | | |
| 38:19-39:15 | R; 403; F; O; S; 611(a) | | |
| 40:4-6 | R; 403; F; O; S | | |
| 40:10-17 | R; 403; F; I; LC;O; S; 611(a) | | |
| 40:19-19 | R; 403; F; LC | | |
| 40:20-41:2 | R; 403; F; O; S | | |
| 41:4-9 | R; 403; F; O; S | | |
| 41:11-13 | R; 403; F | | |
| 41:14-23 | R; 403; F | | |
| 44:1-7 | | | |
| 44:8-10 | | | |
| 44:17-18 | | | |
| 47:7-14 | | | |
| 49:23-50:2 | R; 403 | 50:20-51:5 | 403, NR |
| 50:4-14 | R; 403 | 50:20-51:5 | 403, NR |
| 52:2-24 | R; 403 | | |
| 53:1-3 | R; 403 | | |
| 53:19-54:14 | | | |
| 54:24-25 | R; 403; F; S; 602 | | |
| 55:1-4 | R; 403; F; S; 602 | | |
| 55:25-56:2 | | | |
| 56:3-11 | R; 403 | | |
| 56:12-25 | R; 403 | | |
| 57:1-4 | R; 403 | | |
| 57:24-58:15 | R; 403; MIL | 59:20-60:2 | |
| 58:22-59:15 | R; 403; MIL | 59:20-60:2 | |
| 60:3-4 | R; 403; LC | 59:20-60:2 | |
| 60:6-8 | R; 403; LC | 59:20-60:2 | |
| 62:20-63:3 | R; 403; F | | |
| 63:4-22 | R; 403; F | | |
| 63:23-64:1 | R; 403; F | | |
| 64:7-21 | R; 403; F | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 65:2-6 | R; 403; F; LC; O; 602 | | |
| 65:10-17 | R; 403; F; LC; O; 602 | | |
| 65:20-66:2 | R; 403; F | | |
| 66:3-11 | R; 403; F | | |
| 66:12-20 | R; 403; F | | |
| 66:21-67:2 | R; 403; F | | |
| 67:3-13 | R; 403; F; S | | |
| 67:15-15 | R; 403; F; S | | |
| 67:16-19 | R; 403; F; S | | |
| 67:21-24 | R; 403; F; S | | |
| 68:2-6 | R; 403; F; S; O | | |
| 68:9-25 | R; 403; F; SL O; 602 | | |
| 69:1-3 | R; 403 | | |
| 69:16-70:11 | R; 403; F | | |
| 74:10-16 | R; 403; F; 602; MIL | 76:10-14 | |
| 74:18-22 | R; 403; F; 602; MIL | 76:10-14 | |
| 74:24-24 | R; 403; F; 602; MIL | 76:10-14 | |
| 75:1-24 | R; 403; F; 602; MIL | 76:10-14 | |
| 76:2-9 | R; 403; F; 602; MIL | 76:10-14 | |
| 77:5-13 | R; 403; F; 602; MIL | | |
| 77:15-19 | R; 403; F; 602; MIL | | |
| 77:22-78:11 | R; 403; F; H; MIL | | |
| 78:12-23 | R; 403; F; H; 602; MIL | | |
| 78:24-79:14 | R; 403; F; H; 602; MIL | | |
| 80:3-5 | R; 403; MIL; O | | |
| 80:7-16 | R; 403; MIL; O; 611(a) | | |
| 80:19-20 | R; 403; F; MIL; 602; 611(a) | | |
| 80:22-81:10 | R; 403; F; MIL; O | | |
| 81:20-82:8 | R; 403; F; MIL; O | | |
| 82:10-17 | R; 403; F; MIL; O | | |
| 82:18-21 | R; 403; F; MIL; O | | |
| 82:23-25 | R; 403; F; MIL; O | | |
| 83:1-2 | R; 403; F; MIL; O | | |
| 83:4-10 | R; 403; F; MIL; O | | |
| 83:21-84:10 | R; 403; F; MIL; O | | |
| 85:7-14 | R; 403; F; MIL | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 85:16-17 | R; 403; F; MIL | | |
| 85:18-25 | R; 403; F; LC; MIL | | |
| 86:2-2 | R; 403; F; LC; MIL; O | | |
| 87:5-6 | R; 403; F; O; 602 | | |
| 87:8-16 | R; 403; F; O; 602 | | |
| 87:23-88:2 | R; 403 | | |
| 88:10-13 | R; 403; MIL; O | | |
| 88:15-18 | R; 403; MIL; O | | |
| 89:8-13 | R; 403; MIL; O | | |
| 89:15-17 | R; 403; MIL; O | | |
| 94:25-95:5 | R; 403; F | | |
| 95:6-8 | R; 403; F | | |
| 95:9-20 | R; 403; F | | |
| 95:21-25 | R; 403; F | | |
| 96:2-2 | R; 403; F | | |
| 96:13-97:3 | | | |
| 97:4-24 | | | |
| 97:25-98:2 | | | |
| 98:3-9 | | | |
| 98:19-99:1 | | 99:20-100:14 | 403, Assumes, Foundation/Speculation, Hearsay |
| 99:1-6 | | 99:20-100:14 | 403, Assumes, Foundation/Speculation, Hearsay |
| 99:7-19 | | 99:20-100:14 | 403, Assumes, Foundation/Speculation, Hearsay |
| 100:18-101:2 | | 99:20-100:14 | 403, Assumes, Foundation/Speculation, Hearsay |
| 101:3-102:2 | | 99:20-100:14 | 403, Assumes, Foundation/Speculation, Hearsay |
| 102:21-23 | | | |
| 103:11-23 | | | |
| 104:3-22 | | | |
| 105:9-16 | | | |
| 105:17-20 | | | |
| 105:22-106:2 | | | |
| 106:4-8 | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 106:23-107:1 | R; 403; 602 | 107:23-108:8 | 403, Foundation/Speculation, NR |
| 107:2-4 | R; 403; 602 | 107:23-108:8 | 403, Foundation/Speculation, NR |
| 107:5-9 | R; 403; 602 | 107:23-108:8 | 403, Foundation/Speculation, NR |
| 107:10-14 | R; 403; 602 | 107:23-108:8 | 403, Foundation/Speculation, NR |
| 109:5-8 | R; 403; 602 | | |
| 109:10-11 | R; 403; 602 | | |
| 109:12-13 | R; 403; 602 | | |
| 109:15-110:4 | R; 403; 602 | | |
| 172:8-11 | R; 403; F; 602 | | |
| 172:21-173:8 | R; 403; F; 602 | | |
| 173:19-174:21 | R; 403; F; 602 | | |
| 176:1-10 | R; 403; MIL | | |
| 176:16-22 | R; 403; MIL | | |
| 176:23-177:4 | R; 403; MIL | | |
| 178:3-21 | R; 403; MIL | | |
| 181:8-12 | R; 403; 602 | | |
| 181:24-182:4 | | | |
| 182:6-9 | | | |
| 182:15-183:3 | R; 403; O; 602; 611(a) | | |
| 183:5-18 | R; 403; O; 602; 611(a) | | |
| 183:21-22 | R; 403; O; 602; 611(a) | | |
| 183:24-24 | R; 403; O; 602; 611(a) | | |
| 184:2-22 | R; 403; 602 | | |
| 185:15-17 | R; 403; 602 | | |
| 185:18-25 | R; 403; 602 | | |
| 186:1-9 | R; 403; 602 | | |
| 186:10-12 | R; 403; 602 | | |
| 186:13-17 | R; 403; 602 | | |
| 186:18-21 | R; 403; LC; O; 602 | | |
| 186:23-25 | R; 403; LC; O; 602 | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 187:2-4 | R; 403; LC; O; 602 | | |
| 187:6-8 | R; 403; LC; O; 602 | | |
| 187:9-188:4 | R; 403; F; LC; O; 602 | | |
| 188:7-7 | R; 403; F; LC; O; 602 | | |
| 188:9-15 | R; 403; F; LC; O; 602 | | |
| 188:21-190:8 | R; 403; H; MIL | | |
| 190:25-191:18 | R; 403; H; MIL | | |
| 192:2-12 | R; 403; LC; O; 602 | | |
| 194:15-23 | R; 403; H; MIL | | |
| 194:24-195:12 | R; 403; H; MIL | | |
| 195:14-20 | R; 403; MIL | | |
| 195:23-196:7 | R; 403; MIL | | |
| 196:9-17 | R; 403; MIL | | |
| 196:19-197:1 | R; 403; I; MIL; S; 602 | | |
| 197:8-17 | R; 403; I; MIL; S; 602 | | |
| 197:19-25 | R; 403; MIL; S; 602 | | |
| 198:2-4 | R; 403; MIL; S; 602 | | |
| 198:5-8 | R; 403; MIL; S; 602 | | |
| 198:9-12 | R; 403; MIL; S; 602 | | |
| 199:25-201:4 | R; 403; LC; MIL | | |
| 201:6-11 | R; 403; LC; MIL | | |
| 201:13-14 | R; 403; LC; MIL | | |
| 206:22-207:4 | R; 403; F | | |
| 207:11-13 | R; 403; F; MIL | | |
| 207:14-18 | R; 403; F; MIL | | |
| 207:19-208:3 | R; 403; F; MIL | | |
| 208:4-5 | R; 403; F; MIL | | |
| 208:6-21 | R; 403; F; MIL | | |
| 208:22-209:8 | R; 403; F; MIL | | |
| 209:10-18 | R; 403; F; MIL; 602 | | |
| 209:20-20 | R; 403; F; MIL; 602 | | |
| 210:1-11 | R; 403; F; MIL; 602 | | |
| 210:13-15 | R; 403; F; I; MIL | | |
| 210:16-211:1 | R; 403; F; I; MIL | | |
| 211:2-4 | R; 403; F; I; MIL | | |
| 211:5-11 | R; 403; F; I; MIL | | |
| 211:12-14 | R; 403; F; I; MIL | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 211:15-25 | R; 403; F; I; MIL | | |
| 212:1-2 | R; 403; F; I; MIL | | |
| 212:3-8 | R; 403; F; I; MIL | | |
| 212:9-12 | R; 403; F; I; MIL | | |
| 212:13-213:8 | R; 403; F; I; MIL | | |
| 213:9-11 | R; 403; F; MIL | | |
| 213:12-19 | R; 403; F; MIL | | |
| 213:20-24 | R; 403; F; MIL | | |
| 213:25-214:14 | R; 403; F; MIL | | |
| 214:15-17 | R; 403; F; I; MIL | | |
| 214:18-215:15 | R; 403; F; I; MIL | | |
| 215:16-20 | R; 403; F; I; MIL | | |
| 215:21-216:8 | R; 403; F; MIL | | |
| 216:9-13 | R; 403; F; MIL | | |
| 216:14-20 | R; 403; F; MIL | | |
| 216:21-217:11 | R; 403; F; MIL | | |
| 217:12-23 | R; 403; F; MIL | | |
| 217:24-218:1 | R; 403; F; MIL; S | | |
| 218:3-4 | R; 403; F; MIL | | |
| 218:6-8 | R; 403 | | |
| 218:9-10 | R; 403 | | |
| 218:25-219:4 | R; 403; I; 611(a) | 219:10-12; 219:14-23 | 401/402, 403, Assumes, Foundation/Speculation, Lay Opinion |
| 219:7-9 | R; 403; I; 611(a) | 219:10-12; 219:14-23 | 401/402, 403, Assumes, Foundation/Speculation, Lay Opinion |
| 220:5-10 | R; 403 | 220:11-13; 220:15-16 | 401/402, 403, Assumes, Foundation/Speculation, Lay Opinion |
| 220:19-221:7 | R; 403 | 220:11-13; 220:15-16 | 401/402, 403, Assumes, Foundation/Speculation, Lay Opinion |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

VIII.    DEPOSITION OF PETER SIMPSON (11/17/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 9:7-8 | | | |
| 11:17-22 | | | |
| 11:23-12:3 | | | |
| 12:4-21 | | | |
| 12:22-13:17 | | | |
| 13:18-14:15 | | | |
| 15:25-16:9 | | | |
| 16:10-12 | | | |
| 16:13-25 | | | |
| 17:7-10 | | | |
| 17:23-20:24 | R; 403; S; 611(a) | | |
| 21:2-10 | R; 403; S; 611(a) | | |
| 22:4-18 | R; 403 | | |
| 22:19-23:8 | | | |
| 23:15-24:1 | | | |
| 24:7-15 | | | |
| 24:19-25 | | | |
| 25:18-26:8 | | 26:9-15 | 401/402, Colloquy |
| 26:24-27:3 | | | |
| 27:8-9 | | | |
| 27:10-29:10 | R; 403 | | |
| 30:8-9 | R; 403 | 29:25-30:7 | 403, Assumes, Foundation/Speculation, Hearsay |
| 30:13-21 | R; 403 | 29:25-30:7 | 403, Assumes, Foundation/Speculation, Hearsay |
| 30:25-32:5 | R; 403 | | |
| 37:8-17 | | | |
| 38:5-9 | | | |
| 51:14-20 | | | |
| 51:21-52:11 | | | |
| 52:12-20 | R; 403 | | |
| 52:22-22 | R; 403; I | | |
| 52:23-53:2 | R; 403 | | |
| 53:3-8 | R; 403 | 53:9-13 | 401/402 |
| 53:17-54:18 | R; 403 | | |
| 54:20-24 | R; 403 | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 54:25-55:3 | R; 403 | 55:4-56:1 | 401/402, Foundation/Speculation, Hearsay |
| 56:14-57:2 | | | |
| 59:5-22 | R; 403 | | |
| 60:4-11 | R; 403 | | |
| 60:14-24 | R; 403; H | | |
| 60:25-61:14 | R; 403; H | | |
| 61:15-18 | R; 403 | | |
| 61:19-25 | R; 403 | | |
| 62:1-4 | R; 403 | | |
| 62:5-63:24 | R; 403 | | |
| 63:25-64:2 | R; 403 | | |
| 64:6-18 | R; 403 | | |
| 64:19-25 | R; 403 | | |
| 69:7-15 | R; 403 | | |
| 77:14-21 | R; 403; LC | | |
| 78:8-24 | R; 403; LC | | |
| 79:6-80:4 | R; 403; LC | | |
| 80:9-12 | R; 403; LC | | |
| 82:4-16 | | | |
| 83:24-84:15 | | | |
| 93:14-20 | R; 403; MIL | | |
| 93:21-94:2 | R; 403; MIL | | |
| 95:16-23 | R; 403; MIL | | |
| 96:5-17 | | | |
| 97:18-98:9 | | | |
| 98:10-19 | R; 403; MIL | | |
| 99:12-100:4 | | | |
| 100:5-16 | | | |
| 100:17-101:17 | R; 403 | | |
| 102:10-15 | | | |
| 102:16-23 | R; 403 | | |
| 103:2-8 | R; 403 | | |
| 107:10-23 | R; 403 | | |
| 108:5-24 | R; 403 | | |
| 110:14-22 | R; 403 | | |
| 112:4-7 | R; 403; I | | |
| 112:8-22 | R; 403; I | | |
| 112:23-113:8 | R; 403; I | | |
| 113:12-20 | R; 403; I | | |
| 117:8-12 | R; 403; I | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 117:14-23 | R; 403; I | | |
| 117:24-118:3 | R; 403; I | | |
| 118:9-10 | R; 403; I | | |
| 118:12-21 | R; 403; I | | |
| 118:23-24 | R; 403; I | | |
| 118:25-25 | R; 403; I | | |
| 119:2-15 | I | | |
| 119:16-120:11 | R; 403; I | | |
| 120:23-121:2 | R; 403 | | |
| 121:4-8 | I | | |
| 121:13-17 | | | |
| 121:18-122:2 | | | |
| 122:9-15 | | | |
| 122:16-123:18 | | | |
| 123:22-124:1 | | | |
| 124:8-9 | I | | |
| 124:11-11 | I | | |
| 124:13-25 | I; LC | 125:2-4 | Incomplete (125:6–9) |
| 125:10-14 | | | |
| 125:15-17 | | 125:22-126:9; 126:11-18 | 403, Foundation / Speculation, IEO, Lay Opinion |
| 125:18-21 | | 125:22-126:9; 126:11-18 | 403, Foundation / Speculation, IEO, Lay Opinion |
| 126:24-25 | R; 403; LC | 125:22-126:9; 126:11-18 | 403, Foundation / Speculation, IEO, Lay Opinion |
| 127:2-128:8 | R; 403; LC | 125:22-126:9; 126:11-18 | 403, Foundation / Speculation, IEO, Lay Opinion |
| 129:19-130:12 | R; 403 | | |
| 130:13-131:14 | | | |
| 143:23-145:13 | R; 403 | | |
| 146:3-9 | R; 403 | | |
| 146:10-20 | | | |
| 147:9-16 | I | | |
| 147:19-19 | I | | |
| 147:21-148:11 | | | |
| 148:18-149:11 | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 152:21-153:14 | | 149:22-152:20 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion |
| 153:24-154:3 | I | | |
| 154:5-6 | I | | |
| 154:8-10 | R: 403; I | 154:8-10; 154:12-155:7 | 401/402, 403, Hearsay, NR |
| 154:12-15 | R: 403; I | 154:8-10; 154:12-155:7 | 401/402, 403, Hearsay, NR |
| 155:9-11 | R: 403; I | 154:8-10; 154:12-155:7 | 401/402, 403, Hearsay, NR |
| 155:13-16 | R: 403; I | 154:8-10; 154:12-155:7; 155:18-21; 155:23-156:9 | 401/402, 403, Hearsay, IEO, Lay Opinion, NR |
| 156:13-22 | | 154:8-10; 154:12-155:7; 155:18-21; 155:23-156:9 | 401/402, 403, Hearsay, IEO, Lay Opinion, NR |
| 156:25-157:15 | | | |
| 157:16-158:8 | | | |
| 158:11-20 | | | |
| 158:21-159:1 | | | |
| 159:2-7 | | | |
| 160:1-22 | R: 403 | | |
| 162:13-15 | | | |
| 163:4-14 | | | |
| 163:15-165:12 | R: 403; I | | |
| 165:14-166:11 | I | | |
| 168:6-11 | | | |
| 168:12-23 | | | |
| 169:24-170:22 | R: 403 | 170:16-171:2; 171:4-17 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 171:19-173:23 | | 170:16-171:2; 171:4-17 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 173:24-174:1 | R; 403; I | | |
| 174:3-9 | R; 403; I | | |
| 174:11-22 | R; 403 | 174:23-24; 175:1-7 | 401/402, 403, Foundation/Speculation, NR |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 175:8-17 | R; 403; I | | |
| 175:19-22 | R; 403; I | | |
| 176:11-12 | R; 403; I | 177:8-11; 177:13-178:6; 178:8-179:2; 179:4-20; 179:22-180:18 | 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 176:14-15 | R; 403; I | 177:8-11; 177:13-178:6; 178:8-179:2; 179:4-20; 179:22-180:18 | 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 176:17-25 | R; 403 | 177:8-11; 177:13-178:6; 178:8-179:2; 179:4-20; 179:22-180:18 | 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 177:1-7 | R; 403 | 177:8-11; 177:13-178:6; 178:8-179:2; 179:4-20; 179:22-180:18 | 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 181:2-6 | R; 403 | 184:7-25 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 181:7-10 | R; 403 | 184:7-25 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 181:11-13 | R; 403 | 184:7-25 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, NR |
| 185:15-186:3 | R; 403 | | |
| 186:10-13 | R; 403; I | | |
| 186:15-187:3 | R; 403; I | | |
| 187:4-13 | R; 403; I; LC | 189:17-191:22 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, Incomplete |
| 187:15-18 | R; 403; I; LC | 189:17-191:22 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, Incomplete |
| 187:20-22 | R; 403; I; LC | 189:17-191:22 | 401/402, 403, Foundation/Speculation |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| | | | , IEO, Lay Opinion, Incomplete |
| 187:24-24 | R; 403; I; LC | 189:17-191:22 | 401/402, 403, Foundation/Speculation, IEO, Lay Opinion, Incomplete |
| 192:8-193:20 | R; 403; I | | |
| 193:22-24 | R; 403; I | | |
| 194:2-3 | R; 403; I | | |
| 194:5-13 | R; 403; I | | |
| 196:2-5 | R; 403; I | | |
| 196:7-10 | R; 403; I | | |
| 196:11-14 | R; 403; I | | |
| 196:15-16 | R; 403; I | | |
| 196:18-19 | R; 403; I | | |
| 198:13-199:3 | | 199:5-201:25 | Colloquy, 403, Foundation/Speculation, IEO, Lay Opinion |
| 202:1-203:1 | LC | 203:2-3; 203:5-6 | 401/402, 403 |
| 203:8-204:8 | LC; I; 403 | | |
| 204:10-18 | LC; I; 403 | | |
| 204:20-23 | LC | | |
| 204:24-205:2 | | | |
| 205:3-5 | LC; I; 403 | | |
| 205:7-7 | LC; I; 403 | | |
| 205:9-10 | LC; I; 403 | | |
| 205:12-15 | LC; I; 403 | | |
| 205:17-20 | LC; I; 403 | | |
| 210:16-211:8 | LC; I; 403 | | |
| 211:14-20 | LC; I; 403 | | |
| 212:12-15 | LC; 403 | | |
| 212:16-22 | LC; 403 | | |
| 213:16-17 | | | |
| 213:21-23 | | | |
| 213:24-215:2 | | | |
| 215:3-15 | | | |
| 215:16-217:11 | R; 403 | | |
| 217:12-25 | R; 403 | | |
| 218:1-10 | R; 403 | | |
| 218:11-219:7 | R; 403 | | |
| 219:14-24 | R; 403 | | |
| 219:25-220:9 | R; 403 | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 230:24-231:11 | R; 403 | | |
| 231:12-14 | R; 403; I; LC | | |
| 231:16-232:5 | R; 403; I; LC | | |
| 245:25-246:7 | R; 403 | | |
| 246:8-18 | R; 403 | | |
| 246:19-247:12 | R; 403 | | |
| 247:13-17 | R; 403 | | |
| 247:18-248:2 | R; 403 | | |
| 248:3-5 | R; 403 | | |
| 248:14-249:2 | R; 403 | | |
| 249:3-250:4 | R; 403; I | | |
| 250:6-253:22 | R; 403; I; LC | | |
| 253:24-25 | R; 403; I; LC | | |
| 254:4-19 | R; 403 | | |
| 255:7-21 | R; 403 | | |
| 255:22-24 | R; 403 | | |
| 256:3-20 | R; 403 | | |
| 256:21-257:16 | R; 403 | | |
| 262:15-19 | | | |
| 262:20-25 | | | |
| 263:1-7 | | | |
| 263:8-264:8 | R; 403 | | |
| 264:11-16 | R; 403 | | |
| 264:17-265:3 | R; 403 | | |
| 269:24-270:7 | R; 403 | 267:25-268:15; 268:17-269:7 | 403, foundation/speculation, IEO, Lay Opinion, NR |
| 275:6-11 | R; 403 | | |
| 284:9-19 | R; 403; H | | |
| 285:6-9 | R; 403; H | 286:20-22; 286:24-287:4 | 401/402, 403, foundation/speculation |
| 285:10-24 | R; 403; H | 286:20-22; 286:24-287:4 | 401/402, 403, foundation/speculation |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

IX.    DEPOSITION OF ROSE M. THIESSEN (11/15/2022)

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 6:11-12 | | | |
| 7:9-14 | | | |
| 9:2-9 | R; 403 | | |
| 14:17-25 | | | |
| 15:18-23 | I | | |
| 21:24-22:6 | | | |
| 23:16-25 | | | |
| 24:5-6 | R; 403; I | | |
| 24:12-19 | R; 403; I | | |
| 33:18-23 | R; 403 | 33:24-34:4 | |
| 34:5-15 | R; 403 | | |
| 36:2-12 | R; 403 | 35:11-36:1 | 401/402, 403, Foundation/Speculation |
| 36:13-37:2 | R; 403 | | |
| 39:19-41:7 | R; 403; S; MIL | | |
| 43:22-44:1 | R; 403; H; NT | | |
| 44:11-14 | R; 403 | | |
| 45:19-25 | R; 403; H | | |
| 47:13-22 | R; 403; O | | |
| 51:20-52:13 | R; 403; H | | |
| 53:2-11 | R; 403 | | |
| 55:12-25 | R; 403; H; I | | |
| 56:1-19 | R; 403; H; I | | |
| 58:11-13 | R; 403; MIL | 58:14-17; 58:19-59:3 | Foundation/Speculation, NR |
| 59:4-7 | R; 403; I; MIL | 58:14-17; 58:19-59:3 | Foundation/Speculation, NR |
| 59:9-60:1 | R; 403; I; MIL | 58:14-17; 58:19-59:3 | Foundation/Speculation, NR |
| 63:8-25 | R; 403; I | | |
| 64:1-7 | R; 403; I | | |
| 80:16-25 | | | |
| 81:12-19 | | | |
| 81:24-25 | I | | |
| 82:1-1 | I | | |
| 82:6-13 | R; 403 | | |
| 83:19-22 | R; 403 | 87:16-20; 87:22-25 | Incomplete, 403 |
| 88:19-25 | R; 403 | 87:16-20; 87:22-25 | Incomplete, 403 |
| 89:1-5 | R; 403 | 87:16-20; 87:22-25 | Incomplete, 403 |
| 91:5-17 | | | |

**EXHIBIT 6P**
**ABBOTT'S DEPOSITION DESIGNATIONS**

| Plaintiff's Initial Designations | Defendant's Objections to Initial Designations | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|
| 93:7-14 | | | |
| 94:5-10 | | | |
| 97:16-98:7 | NT; Priv | | |
| 98:17-25 | | | |
| 99:25-100:3 | R; 403 | 100:9-20 | Form, NR, Foundation/Speculation |
| 102:10-24 | R; 403 | 100:9-20 | Form, NR, Foundation/Speculation |
| 111:15-17 | | | |
| 112:14-22 | | | |
| 113:2-9 | | | |
| 113:23-114:6 | R; 403 | | |
| 114:22-115:6 | R; 403; I | | |
| 115:11-116:3 | R; 403; I | | |
| 116:4-9 | R; 403; I | | |
| 128:2-11 | R; 403; H | | |
| 128:21-25 | R; 403; H | | |
| 129:1-16 | R; 403; H | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 7D TO PROPOSED FINAL PRETRIAL ORDER
DEXCOM'S OPINION TESTIMONY SUMMARY**

**EXHIBIT 7D**
**DEXCOM'S OPINION TESTIMONY SUMMARY**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 22-605-KAJ |
| | ) | **CONSOLIDATED** |
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ABBOTT DIABETES CARE INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 21-1699-KAJ |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEXCOM'S OPINION TESTIMONY SUMMARY**

**EXHIBIT 7D**
**DEXCOM'S OPINION TESTIMONY SUMMARY**

**Opinion Testimony**

Pursuant to paragraph 1(f) of the Trial Management Order, DexCom provides a brief

summary of the opinions to be offered by witnesses called to offer opinion testimony:

| | |
|---|---|
| Prof. Christoph Ann, LL.M. | Background information on patent law in Germany and its relationship to the patent laws and procedures of other European countries and to the ███████████████ provision in ¶¶A.13(c)(i) and H.3(i) of the SLA; rebuttal to the opinions of ADC's expert Peter Chrocziel; and the opinions in Prof. Ann's opening report. |
| Kenneth Gall, Ph.D. | Background information on continuous glucose monitors, including the technologies of the '193, '452, and EP 224 patents (collectively, "Asserted Patents"); that the claims of the Asserted Patents are not licensed under the SLA, including because they are not ████████████ by the references identified by Abbott; rebuttal to the opinions of Abbott's experts Thomas A. Harrington, Christopher G. Robertson, Matthew Schurman, Ph.D., and John L. Smith, Ph.D.; the level of ordinary skill in the art and the state of the art at the time of the inventions claimed in the Asserted Patents; and the opinions in Dr. Gall's opening, rebuttal, and/or reply expert reports, except for opinions on secondary considerations. |
| Rt. Hon. Sir Robin Jacob | Background information on patent law in the United Kingdom and its relationship to the patent laws and procedures of other European countries and  to the ██████ ███████████████ provision in ¶¶A.13(c)(i) and H.3(i) of the SLA; the opinions of ADC's expert Rt. Hon. Sir Christopher Floyd; and the opinions in Sir Jacob's opening report. |
| Roozbeh Jafari, Ph.D. | Background information on continuous glucose monitors, including the technologies of the '642, '213, '215, EP 159, EP 539, and EP 224 patents (collectively, "Asserted Patents"); that the claims of the Asserted Patents are not licensed under the SLA, including because they are not ████████ ██████ by the references identified by Abbott; rebuttal to the opinions of Abbott's experts John L. Smith, Ph.D. and Garry Steil, Ph.D.; the level of ordinary skill in the art and the state of the art at the time of the inventions claimed in the Asserted Patents; and the opinions in Dr. Jafari's opening, rebuttal, and/or reply expert reports, except for opinions on secondary considerations. |
| Patrick F. Kennedy, Ph.D. | Damages resulting from DexCom's alleged breaches of the SLA; Damages resulting from Abbott's breaches of the SLA; |

1

**EXHIBIT 7D**
**DEXCOM'S OPINION TESTIMONY SUMMARY**

|  |  |
|---|---|
|  | rebuttal to the opinions of Abbott's damages expert, Gerardi; and the opinions in Dr. Kennedy's opening, rebuttal, and reply expert reports. |
| Lori Laffel, M.D. | Background information on continuous glucose monitors and diabetes; rebuttal to the opinions of Abbott's expert Dr. Eugene Wright; and the opinions in Dr. Laffel's opening and/or reply reports. |
| John M. Whealan, J.D. | Background on patent law concepts that are relevant to an understanding of provision in the SLA and the application thereof; the business context and background of the parties to the SLA; rebuttal to the opinions of Abbott's expert Mr. Bensen; and the opinions in Prof. Whealan's rebuttal expert report, except for "legal opinions" as to "the scope and meaning of [an] agreement and its terms," or opinions on subjective "states of mind and intentions." |

OF COUNSEL:
David Bilsker
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(213) 443-3000

Kevin P.B. Johnson
Todd M. Briggs
Margaret Shyr
Zak Randell
Cat Williams
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Brian P. Biddinger
Cary E. Adickman
Alex Zuckerman
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for DexCom, Inc.*

**EXHIBIT 7D**
**DEXCOM'S OPINION TESTIMONY SUMMARY**

Nathan Hamstra
Jonathon Studer
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Valerie Lozano
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Isabel Peraza
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St. NW #900,
Washington, DC 20005
(202) 538-8000

Gavin Frisch
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Ave., Suite 520
Boston, MA 02119
(617) 712-7100

Theodore Kwong
HILGERS GRABEN PLLC
10000 N. Central Expy., Suite 400
Dallas, TX 75231
(972) 645-3097

Sophie A. Hood
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

Dated: May 2, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 7P TO PROPOSED FINAL PRETRIAL ORDER**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Abbott Diabetes Care Inc. and Abbott Diabetes Sales Corp. (collectively, "Abbott") provide a summary of opinion testimony that they may present at trial. This summary is not intended to be exhaustive, and Abbott reserves the right to present opinion testimony from each witness within the scope of that witness's expert reports and deposition testimony, to the fullest extent permitted by the Local and Federal rules. Abbott further reserves the right to modify this summary up to and until entry of the pretrial order, including in view of further developments in this case.

1. **Matthew Schurman**

    (a) **Background and Qualifications**

    Dr. Schurman has decades of experience as an engineer and consultant in the medical device industry, with emphasis on the evaluation and design of medical devices for diabetes management, including but not limited to glucose monitoring devices (including continuous glucose monitors), glucose sensors, and device validation. From 2002 to 2009, Dr. Schurman was a founder and Chief Technology Officer of GlucoLight Corporation, which focused on developing a novel glucose monitoring system. There, he led the development of multiple generations of optical glucose sensors and systems, co-designed over 12 clinical trials with over 500 subjects for system validation, and was named as an inventor on 8 issued U.S. patents relating to glucose monitoring technology. Since 2009, Dr. Schurman has been the managing partner of Newforge Technologies, a specialty engineering consulting firm that develops products, performs contract research, and consults on science and engineering issues in the medical device industry, among others. Dr. Schurman received a BA in Physics from Franklin and Marshall College in 1993, and his PhD in Materials Science and Engineering from Rutgers University in 1996.

    (b) **Expected Testimony**

2

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

At trial, Dr. Schurman is expected to testify on the following topics: (1) the background and history of diabetes and glucose monitoring, including continuous glucose monitoring technology; (2) the bases for his opinion that ███████████████████████████████ ████████████████████████████████ (3) the '452 and '193 Patents and their scope, content, disclosures, claimed inventions, and prosecution histories; (4) the state of the art relevant to the '452 and '193 Patents, the level of ordinary skill in that art, and the qualifications of a person of ordinary skill in that art; (5) the bases for his opinions that ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ (6) the bases for his opinion relevant to the issue of whether Abbott has an implied license to the '452 Patent based on DexCom's express license grants under the SLA; and (7) rebuttal to various opinions and testimony of DexCom's experts. Dr. Schurman may provide additional testimony consistent with his expert reports and deposition testimony.

**2.    Garry Steil**

**(a)    Background and Qualifications**

Dr. Steil has BS and MS degrees in electrical engineering from the University of Alberta, Canada, and a PhD in Physiology and Biophysics from the University of Southern California. He is a Communicating Member of Faculty at Harvard Medical School Boston Children's Hospital. He started at Harvard Medical School as an Assistant Professor in 2009 and was promoted to Associate Professor in 2020. Previously, Dr. Steil worked and/or consulted for multiple companies involved in developing diabetes management and treatment technologies, including Medtronic MiniMed, Eli Lilly and Abbott Diabetes Care. He is a member of key scientific organizations in the continuous glucose monitoring field, including the American Diabetes

3

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Association, Endocrine Society, and Society for Pediatric Research. Dr. Steil has served as a reviewer of numerous scientific journals, including the American Journal of Physiology, Diabetes Therapeutics and Technology, the Journal of Diabetes Science and Technology, Diabetes, Diabetes Care, Diabetes Medicine, and the Journal of Clinical Investigation. He has written and published widely in the diabetes field, including authoring or co-authoring more than 80 peer-reviewed scientific publications in the field, and is a named inventor on 53 patents relating to continuous glucose monitoring. Dr. Steil has worked in the field of diabetes management and continuous glucose monitoring for more than 25 years and has presented talks on the subject locally, nationally, and internationally. These include presentations at the American Diabetes Association, Boston Children's Hospital, MIT, National Institutes of Health, Rachmiel Levine Arthur Riggs Diabetes Symposium, Korean Diabetes Association, Turkish Diabetes Association, National Diabetes Congress, and the Advanced Technologies & Treatments for Diabetes Conference.

  **(b)**  **Expected Testimony**

  At trial, Dr. Steil is expected to testify on the following topics: (1) the background and history of diabetes and glucose monitoring, including continuous glucose monitoring technology; (2) the '215, EP '159 and EP '539 Patents and their scope, content, disclosures, claimed inventions, and prosecution histories; (3) the state of the art relevant to the '215, EP '159 and EP '539 Patents, the level of ordinary skill in that art, and the qualifications of a person of ordinary skill in that art; (4) the bases for his opinions that ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████ and (5) rebuttal to various opinions

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

and testimony of DexCom's experts. Dr. Steil may provide additional testimony consistent with his expert reports and deposition testimony.

    **3.**    **John Smith**

        **(a)**    **Background and Qualifications**

Dr. Smith is an independent consultant and Principal at NIVG Consulting, LLC. Dr. Smith has over 55 years of experience with electrochemical analytical instruments and systems, with 34 of those years being spent in the blood glucose monitoring field.  His work includes development of novel electrochemical instrumentation, development of automated clinical laboratory instrumentation, research and development, including for blood glucose meters and test strips, development of transcutaneous intravascular glucose measurement systems, and development of noninvasive glucose measurement systems.  He has consulted for more than 50 companies in the field of blood glucose monitoring or their investors.  Since obtaining his PhD in Analytical Chemistry from the University of Illinois in 1970, Dr. Smith has led research and development activities in blood glucose monitoring and electrochemical analytical instruments at several companies.  Dr. Smith was the Vice President of Research, Development, and Engineering (R, D, & E), Worldwide Vice President of R, D, & E, and Chief Scientific Officer at the LifeScan division of Johnson & Johnson where he was responsible for the invention, research, and development of novel blood glucose monitoring technology.  Dr. Smith was also intimately involved in developing microprocessor-based electrochemical instrumentation, signal-processing instrumentation, and analytical instrumentation based on signal-processing principles while employed at Princeton Applied Research Corporation.  Dr. Smith is the inventor on 17 issued U.S. patents, many of which relate to glucose monitoring, and is the inventor of the Static Mercury Drop Electrode that allowed revised signal processing techniques to be applied to

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

enhanced ultra-trace electrochemical measurements.  He has also authored several publications in refereed journals as well as a manuscript directed to the subject of glucose monitoring.

### (b) Expected Testimony

At trial, Dr. Smith is expected to provide testimony on the following topics: (1) the background and history of diabetes and glucose monitoring, including continuous glucose monitoring technology; (2) the '642, '215 and EP '224 Patents and their scope, content, disclosures, claimed inventions, and prosecution histories; (3) the state of the art relevant to the '642, '215 and EP '224 Patents, the level of ordinary skill in that art, and the qualifications of a person of ordinary skill in that art; (4) the bases for his opinions that ██████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████ and (5) rebuttal to various opinions and testimony of DexCom's experts. Dr. Smith may provide additional testimony consistent with his expert reports and deposition testimony.

### 4. Christopher Gerardi

### (a) Background and Qualifications

Mr. Gerardi is a vice president at Charles River Associates, an economic, financial, and accounting consulting firm. He has more than 30 years of experience providing economic, financial, and accounting advisory services to companies, legal counsel, regulatory authorities, and tribunals involved in transactions, investigations, and disputes. He specializes in quantum and economic analyses in matters relating to intellectual property, International Trade Commission investigations, and commercial matters including, for example, breach of contract claims and damages, and has provided oral and written expert evidence in over 200 matters before numerous forums. Mr. Gerardi has substantive experience in contract compliance and

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

intellectual property engagements across a variety of industries and has reviewed hundreds of patent licensing agreements across numerous industries.

### (b) Expected Testimony

At trial, Mr. Gerardi is expected to provide testimony on the following topics: (1) whether ADC is entitled to attorneys' fees and other litigation expenses ADC incurred in relation to defending itself against DexCom's U.S. and foreign patent infringement actions, and if so, the amount of attorneys' fees and other litigation expenses ADC is entitled to; (2) whether ADC is entitled to actual loss damages ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ (3) whether ADC is entitled to damages in the form of prejudgment interest; (4) rebuttal to various opinions and testimony of DexCom's experts, including opinions and testimony regarding any claimed damages amounts incurred by DexCom as a result of its breach of contract allegations against ADC. Mr. Gerardi may provide additional testimony consistent with his expert reports and deposition testimony.

### 5. Eric Bensen

### (a) Background and Qualifications

Mr. Bensen is an internationally recognized intellectual property law author and consultant, who is admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Federal Circuit and the United States District Courts for the Southern and Eastern Districts of New York. Mr. Bensen graduated from Hofstra University School of Law in 1996, and was admitted to the New York State Bar in 1997. Since 1998, his work has focused almost entirely on intellectual property matters, the majority of which has been in connection with patents, trade secrets, and intellectual property licensing. While with Dewey

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Ballantine LLP (1996-2000) and later Paul Hastings LLP (2000-2008), Mr. Bensen was actively involved in intellectual property litigations in federal and state courts across the country and the International Trade Commission as well as domestic and international intellectual property licensing matters involving U.S. intellectual property.  Since 2008, Mr. Bensen has consulted for Fortune 500 and other companies in the United States, Japan and Europe with matters involving all forms of intellectual property, but with a focus on patent, trade secret and intellectual property licensing matters. In that role, Mr. Bensen has advised and otherwise assisted clients with ongoing and potential intellectual property litigations in U.S. courts, drafting and negotiating intellectual property licenses, conducting intellectual property due diligence and formulating intellectual property protection strategies.  Mr. Bensen's expertise has led to retentions abroad including, among other things, providing advice on U.S. patent law in a matter before the European Patent Office and providing expert testimony on U.S. patent licensing in the United Kingdom, in the High Court of Justice of England and Wales, Chancery Division, in a specialist Patents Court.  Mr. Bensen has also written extensively on intellectual property law:  Since 2005, he has co-authored *Milgrim on Licensing* (Matthew Bender), a four-volume treatise that covers all forms of intellectual property licensing, a text that has been cited by the U.S. Supreme Court on a matter of patent licensing.  He has also been the author on the treatises *Bensen on Patent Licensing Transactions* (Matthew Bender); *Patent Law Perspectives*; *U.S. Patent Opinions & Evaluations* (LexisNexis), among others.

(b)    **Expected Testimony**

At trial, Mr. Bensen is expected to provide testimony on the following topics: (1) common usage and application of patent law terms and concepts relevant to the parties' competing interpretations of the SLA; (2) testimony based on his experience in licensing as to industry norms in licensing, and customary usage of contract terms, as related to the parties'

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

competing interpretations of the SLA; and (3) rebuttal to various opinions and testimony of DexCom's experts. Mr. Bensen may provide additional testimony consistent with his expert reports and deposition testimony.

### 6.     Thomas Harrington

#### (a)     Background and Qualifications

Mr. Harrington has been the Lead Consultant and Rubber Chemist of Rubber Science LLC in Akron, Ohio since 2018.  He founded the company and has been actively involved in consulting.  He has over 30 years of experience in the rubber industry.  From 1992 to 2018, he worked at Kent Elastomers.  He has compounded rubber, liquid rubbers, synthetic rubbers, synthetic latexes, and extruded thermoplastics elastomers in the medical arena.  As the Technical Director for a medical device and medical tubing manufacturer, Mr. Harrington was responsible for introducing new medical recipes that would compete and meet U.S. Pharmacopeia class VI requirements for different medical applications.   Much of his time was spent managing development projects, improving the manufacturing process of the elastomers, replacing discontinued materials, conducting failure analysis, reducing scrap, and improving the quality of products.

#### (b)     Expected Testimony

At trial, Mr. Harrington is expected to provide testimony on the following topics: (1) the background and history of elastomers and material selection for seals and electrical contacts; (2) the understanding of a person of ordinary skill in the art with respect to the teachings of DexCom's '683 Provisional as to material selection for a sealing member and electrical contacts; and (3) rebuttal to various opinions and testimony of DexCom's experts. Mr. Harrington may provide additional testimony consistent with his expert reports and deposition testimony.

### 7.     Christopher Robertson

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

(a)     **Background and Qualifications:**

Dr. Robertson is the principal consultant of Polymer Technology Services LLC in Akron, Ohio.  He is also the editor-in-chief of the scientific journal Rubber Chemistry and Technology. He has more than 20 years of experience as a materials scientist and engineer in the elastomer/rubber and plastic industries.  Prior to 2004, he had acquired five years of experience in research and development of elastomers and plastics at the U.S. Naval Research Laboratory, ExxonMobil Chemical Company, and Bridgestone Corporation.  A significant part of his research at the U.S. Naval Research Laboratory was studying the processability and structure-property behavior of polyisobutylene (PIB) elastomers with hyperbranched structures, including the effects of carbon black loading on the mechanical and electrical properties.  These novel PIB elastomers were being developed at the University of Akron by his collaborator Prof. Judit Puskas for various biomedical applications including breast implants and coatings for stents used in treating blocked arteries.  Through various collaborations with numerous scientists and engineers in industry and academia, he is the co-inventor of 29 granted U.S. patents and co-author of 68 publications in peer-reviewed journals.

(a)     **Expected Testimony**

At trial, Dr. Robertson is expected to provide testimony on the following topics: (1) the background and history of elastomers and material selection for seals and electrical contacts; (2) the understanding of a person of ordinary skill in the art with respect to the teachings of DexCom's '683 Provisional as to material selection for a sealing member and electrical contacts; and (3) rebuttal to various opinions and testimony of DexCom's experts. Dr. Robertson may provide additional testimony consistent with his expert reports and deposition testimony.

8.     **Peter Chrocziel**

(a)     **Background and Qualifications**

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Peter Chrocziel is an experienced patent litigator in Germany.  He attended the University of Erlangen Law School from 1976 to 1980 and took his State exams in 1980 and 1983. He obtained a Dr. Jur. in July 1985 from the University of Munich Law School, and a Masters of Comparative Jurisprudence from New York University School of Law in 1986.  He is currently Managing Director and sole owner at Vindelici Legal in Munich, Germany. Since he started practicing law, Prof. Dr. Chrocziel has always placed an emphasis on patent law issues, starting with his doctoral thesis comparing German, European, and U.S. law on the question of experimental use. Throughout his career, he has represented clients on both sides of patent infringement issues, including attacks on the validity of patents.

      **(b)**    **Expected Testimony**

At trial, Prof. Dr. Chrocziel is expected to provide testimony on the following topics: (1) the ███████████████ in Germany ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ (2) application of such ████████████ under German law; and (3) rebuttal to various opinions and testimony of DexCom's experts. Prof. Dr. Chrocziel may provide additional testimony consistent with his expert reports and deposition testimony.

      **9.**    **Christopher Floyd**

      **(a)**    **Background and Qualifications**

The Right Honorable Sir Christopher Floyd is a retired Lord Justice of Appeal for the Court of Appeal of England and Wales, a member of the Bar of England & Wales, and an Honorary Professor, Faculty of Laws, at University College London.  Sir Christopher was called to the Bar of England and Wales in 1975. He practiced as a barrister in the field of intellectual property law, in particular patents, from 1976 to 2007, being appointed to the rank of Queen's

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Counsel in 1992. Sir Christopher appeared as junior and then leading counsel in a large number of patent cases over that time period. In 2007, he became a judge of the High Court of Justice and authorized to sit in the Patents Court, during which time approximately 40% of his work consisted of patent trials. From 2011-2015 Sir Christopher was an external member of the Enlarged Board of Appeal of the European Patent Office. In 2013, he was appointed to the Court of Appeal, England and Wales as a Lord Justice of Appeal and appointed a Privy Counsellor. In 2019, he was appointed the Supervising Judge for intellectual property in the Court of Appeal. In the Court of Appeal, Sir Christopher was regularly involved in deciding appeals raising issues of patent law.  He retired in February 2021. In 2021, Sir Christopher was appointed an Honorary Professor in the Faculty of Laws at University College London.

      **(b)**      **Expected Testimony**

At trial, Sir Christopher is expected to provide testimony on the following topics: (1) the ███████████████████████ in the U.K. ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ (2) application of such ███████████████ under U.K. law; and (3) rebuttal to various opinions and testimony of DexCom's experts. Sir Christopher may provide additional testimony consistent with his expert reports and deposition testimony.

      **10.**      **Eugene Wright**

      **(a)**      **Background and Qualifications**

Dr. Wright earned his Bachelor of Science in Electrical Engineering from Princeton University in 1973 and his MD from Duke University School of Medicine in 1978, and is currently a Medical Director in Performance Improvement at the Charlotte Area Health Education Center. He also holds appointments as Consulting Associate in the Department of Medicine of Duke University Medical Center. Dr. Wright is board certified by the American

**EXHIBIT 7P**
**ABBOTT'S SUMMARY OF OPINION TESTIMONY**

Board of Internal Medicine. From 2013 to 2018, Dr. Wright was a Clinician and Diabetologist for The CARE Clinic, which provides free quality health care to eligible, uninsured, low-income adults. He served as the primary care provider for patients with diabetes. Dr. Wright has served on several advisory boards in the field of diabetes treatment, including the ADC Primary Care and Endocrine Advisory Board, the ADA/AHA Diabetes & Cardiovascular Disease Science Advisory Group and the Eli Lilly North American Diabetes Advisory Board. He has also served on editorial boards for numerous scientific journals, including Diabetes Technology and Therapeutics, Clinical Diabetes, UpToDate Endocrinology and Diabetes, and InforMed on Diabetes. Since 2009, Dr. Wright has been an active member of the planning committee of the Clinical Conference of the American Diabetes Association. Dr. Wright has published more than two dozen articles in the field of diabetes diagnosis, treatment, and management, including publications specifically on CGM systems. He has worked in diabetes treatment for more than 40 years and has given numerous presentations at national and international meetings on the subject, including presentations for the American Diabetes Association, the Diabetes Technology Society Meeting, and the World Diabetes Congress of the International Diabetes Federation.

**(b)     Expected Testimony**

At trial, Dr. Wright is expected to provide testimony on the following topics: (1) the background and history of diabetes and glucose monitoring, including continuous glucose monitoring technology, from a clinician perspective; (2) diabetes disease profile and treatment tools; and (3) rebuttal to various opinions and testimony of DexCom's experts. Dr. Wright may provide additional testimony consistent with his expert reports and deposition testimony.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | Civil Action No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

**EXHIBIT 8D TO PROPOSED FINAL PRETRIAL ORDER
DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

# EXHIBITS REDACTED IN THEIR ENTIRETY

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DEXCOM, INC.,<br><br>                     Plaintiff,<br><br>v.<br><br>ABBOTT DIABETES CARE INC., and<br>ABBOTT DIABETES CARE SALES CORP.,<br><br>                     Defendants. | C.A. No. 22-605-KAJ |

**DEXCOM'S MOTIONS *IN LIMINE***

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**DEXCOM MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF DEXCOM'S ALLEGED USE OF ABBOTT'S PATENTS, THAT DEXCOM'S SUCCESS IS DUE TO THE SLA, AND DEXCOM'S MARKET CAPITALIZATION, COMPANY-WIDE FINANCIALS OR OVERALL FINANCIAL HEALTH**

DexCom seeks an order precluding Abbott from introducing evidence or argument: (1) that any DexCom product has ever used any Abbott patents; (2) that DexCom's success in the market was due to Abbott's patents or the rights granted in the 2014 Settlement and License Agreement ("SLA"); and (3) concerning DexCom's market capitalization, company-wide financial information, or DexCom's overall financial health. Abbott has not identified any Abbott patent claims that purportedly cover any particular DexCom products, nor has Abbott provided any evidence or expert analysis showing that such claims cover any such products. And even if Abbott had provided such evidence or analysis, allegations that DexCom's products are covered by Abbott patents, or that DexCom's success in the market is due to the SLA, are not relevant to any claim or defense in this case, and would be highly prejudicial to DexCom. Similarly, evidence of DexCom's market capitalization, company-wide financial information, and overall financial health have no bearing on the issues in this case, and Abbott has not adduced any evidence that DexCom's growth in the market is related in any way to the purported use of Abbott patents or the rights granted in the SLA. Accordingly, such evidence should be precluded because it is irrelevant, and to the extent it has any probative value that value is outweighed by the risk of undue prejudice or confusion of the issues.

Abbott's pleadings and discovery responses suggest that Abbott plans to present an unsupported and fictional story to the jury that DexCom's success in the market was based on DexCom's use of technology claimed in Abbott patents and that without the licenses and covenant granted to DexCom in the SLA, DexCom would not have achieved the market success it has. For example, in its Answer and Counterclaims, Abbott contends that "Without the freedom to operate

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

that ADC Inc. granted through the SLA, DexCom could not have achieved such levels of exponential market growth." D.I. 279 at ¶9. Abbott's Answer also references Abbott's affirmative infringement case that it filed against DexCom, alleging that:

> DexCom continues to profit off of ADC Inc.'s innovations by wrongly using ADC Inc.'s unlicensed technology outside the scope of the SLA, as explained in ADC Inc.'s complaint filed in this District in July 2021. DexCom's current flagship G6 product wrongly infringes no fewer than 12 unlicensed ADC Inc. patents. *See Abbott Diabetes Care Inc. et al. v. DexCom, Inc.*, C.A. No. 21-977 (KAJ), D.I. 108.

*Id.* at ¶11.

Similarly, Abbott's interrogatory responses assert, without support, that "DexCom benefited enormously from the covenant not to sue in the SLA, which allowed DexCom to sell CGM devices implementing ADC's patented technology for years. DexCom cannot accept that benefit while flouting its end of the contractual bargain" (D.I. 333-12 [Abbott response to DexCom Interrogatory No. 14] at p. 50), that "DexCom received and enjoyed the benefits of the SLA, including by developing its flagship commercial G6 product, and other DexCom products, to incorporate numerous aspects of ADC's patented technology while under the SLA's protection," (D.I. 333-12 [Abbott response to DexCom Interrogatory No. 11] at p. 9) and that "DexCom was attempting to compete with ADC using various products, including its flagship G6 product, all of which were continuing to incorporate numerous aspects of ADC's patented technology." *Id.* at p. 12.

Despite these broad assertions, Abbott has provided no evidence, analysis or support for these contentions, leaving only the bare allegations of Abbott's counsel. Accordingly, whether *DexCom's* products practice any of *Abbott's* patents is not supported by any evidence or expert analysis, or even by any identification of specific patents or patent claims that are purportedly practiced by any particular DexCom product. Abbott never provided any claim charts showing how any claim of an Abbott patent reads on any DexCom product. Nor did Abbott provide any

2

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

expert analysis or opinions explaining how any claim of an Abbott patent covers any DexCom product.  Without such evidence, Abbott should not be permitted to make unsupported generalized assertions that DexCom has ever used or benefited from any Abbott patents or the rights granted in the SLA.

Not only are Abbott's assertions regarding use of Abbott's patents by DexCom devoid of any evidentiary support, they are also irrelevant to the license determination the jury will make— whether the asserted claims are fully supported and enabled by a licensed *DexCom* patent or patent application.  *See generally Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that Medtronic's '556 patent might read on the Falcon catheter is totally irrelevant to the question of whether Medtronic willfully infringed another patent.").

Similarly, DexCom's market capitalization, company-wide financial information, and overall financial health have no bearing whatsoever on this case, and Abbott has not adduced any evidence that DexCom's growth in the market is related in any way to the purported use of Abbott patents or the rights granted in the SLA.

Abbott's purported damages are not based on DexCom's alleged use of Abbott patents or growth in the market, and its damages expert does not rely on any DexCom company-wide financial information for his damages opinions.  Rather, Abbott seeks 1) attorney's fees, and 2) costs for actions it took in Germany related to *its* Freestyle Libre 3 product, neither of which flow from any purported benefits DexCom obtained from the SLA, alleged use of any Abbott patent, or DexCom's financial performance.  *See Evolved Wireless, LLC v. Apple Inc.*, No. 15-cv-00542-JFB-SRF, 2019 WL 1100471, at *4 (D. Del. Mar. 7, 2019) (excluding evidence about defendant's size and company-wide financial information because the "probative value of [such] evidence is outweighed by the danger that the jury might set damages on ability to pay rather than proper

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

evidence of damages"); *Vehicle IP, LLC v. AT&T Mobility LLC,* 227 F. Supp. 3d 319, 327 (D. Del.

2016) ("disclosure of total revenue 'cannot help but skew the damages horizon for the jury'")

(quoting *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1320 (Fed. Cir. 2011)); *Inventio AG*

*v. Thyssenkrupp Elevator Corp.*, C.A. No. 08-cv-00874-RGA, 2014 WL 554853, at *3 (D. Del.

Feb. 6, 2014) (excluding from trial discussion of defendant's size and overall revenues on the

grounds that it is "irrelevant to the expert's conclusion" and that the prejudice to the defendant

substantially outweighs its probative value); *Lectec Corp. v. Chattem, Inc.*, Case No. 5:08-cv-

00130-DF, 2011 WL 13086026, at *4-5 (E.D. Tex. Jan 4, 2011) (excluding evidence of the

defendant's financial size, reasoning that "any probative value of Defendants' financial size is

substantially outweighed by the danger that the jury might set damages based on Defendants'

ability to pay rather than on proper evidence of damages").

Evidence or argument concerning whether DexCom products have ever practiced any

Abbott patents or reference to DexCom's market capitalization, company-wide financials, and

overall financial health also risks "inject[ing] frolics and detours" that will increase the likelihood

of "side issues" that have potential to "unduly distract[ ] the jury from the main issues" during this

short trial. *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986); *see also Sonos,*

*Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *1 (D. Del. Nov. 21,

2017) (granting motion *in limine* as a defendant's own "patents are irrelevant to the issue of

infringement and are potentially confusing to the jury" and evidence concerning "patents in the

same technological field ... could mislead the jury").  Because these allegations and categories of

information are irrelevant to any issue in this case, Abbott should be precluded from referencing

them at trial, as the sole purpose of doing so would be to inflame the jury and would result in undue

prejudice to DexCom.

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

<u>**ABBOTT'S OPPOSITION TO DEXCOM'S MOTION *IN LIMINE* NO. 1**</u>

  All parts of DexCom's three-in-one MIL should be denied because it would put a thumb on DexCom's side of the scale at trial. Part One seeks to exclude evidence or argument "that any DexCom product has [] used any Abbott patents," while at the same time placing no limitations on DexCom's ability to present evidence or argument that DexCom products have ***not*** used Abbott patents or that any ***Abbott*** product has used any ***DexCom*** patents. Part Two seeks to exclude evidence or argument "that DexCom's success in the market was due to Abbott's patents," despite DexCom opposing exclusion of DexCom's evidence that Abbott's commercial success relates to DexCom's patents. *See* Abbott's MIL#1. And Part Three seeks to exclude evidence or argument "concerning DexCom's market capitalization, company-wide financial information, or DexCom's overall financial health," yet DexCom offers expert testimony and a David-and-Goliath story about Abbott being "a larger, better funded competitor" than DexCom. Ex. 1 (Berneman Op. Rpt.), ¶ 74. None of these one-sided requests is fair to Abbott. Certain limited ***mutual*** exclusions would be appropriate, however, as explained below.

<u>**ARGUMENT**</u>

  A. **Part One: MIL To Exclude Evidence/Argument "That Any DexCom Product Has Ever Used Any Abbott Patents"**

  DexCom argues that whether DexCom practices Abbott's patents "ha[s] no bearing on the issues in this case," and "to the extent it has any probative value that value is outweighed by the risk of undue prejudice or confusion of the issues." DexCom Op. Br. at 1. Abbott agrees that this trial is not an infringement trial, and that "practicing products" issues went away on summary judgment when obviousness and secondary considerations were eliminated from the license case. Exclusion of evidence that the parties' products practice another's patents is only fair, however, if it goes ***both ways***.

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

Specifically, DexCom should not be permitted to present argument or evidence that Abbott's products practice DexCom's patents, or that DexCom's products did not practice Abbott's patents. Those things are not relevant to the "license determination [DexCom says] the jury will make—whether the asserted claims are ████████████████ licensed DexCom patents or applications. *Id.* at 3. And only with these additional exclusions would it be fair to exclude evidence and argument that DexCom's products did not practice Abbott's patents.

To grant DexCom's MIL without making the exclusion mutual would only shift the "risk of undue prejudice or confusion of the issues" DexCom complains about onto Abbott. Moreover, Abbott would be hamstrung in its ability to rebut DexCom's one-sided, fictional story that Abbott needed or used DexCom's IP, but DexCom did not need or use Abbott's intellectual property. DexCom's MIL would skew the jury's understanding of the parties' relative bargaining powers in a way that could change the outcome of the case. Throughout this case, DexCom has argued that the license, dispute resolution, and forum selection clause promises DexCom broke had little value or meaning. For example, DexCom has argued that the dispute resolution procedure is unnecessary before litigation is filed and "futile" after litigation is filed. D.I. 334, 38. The notion that Abbott accepted less valuable promises is only believable if DexCom were, through its one-sided MIL, improperly allowed to paint a false picture that Abbott needed DexCom's patents but that DexCom did not need Abbott's.

Abbott does not read DexCom's MIL to seek exclusion of the fact that, in litigations leading up to the SLA, Abbott **claimed** DexCom infringed Abbott's patents, filed lawsuits **asserting** infringement, and sought remedies for that alleged infringement. These facts are relevant to explaining how the SLA came to be, and the benefits DexCom extracted from the SLA and the settlement of prior litigation, and important to rebut DexCom's arguments and insinuations that

6

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

the SLA promises DexCom broke were not very meaningful or valuable. These facts have been in the license case from the outset and are even spelled out in Abbott's Complaint. *See* D.I. 280, ¶¶ 2, 3, 9, 12, 21–26. DexCom has articulated no problem or prejudice associated with these facts in its MIL.

Abbott also does not read DexCom's MIL to seek exclusion of the fact that DexCom is *claiming* that Abbott infringed DexCom's patents and filed lawsuits *asserting* infringement, and has sought remedies for that alleged infringement. These facts are central to DexCom's alleged breaches of the SLA and damages due. DexCom's MIL has articulated no problem or prejudice associated with these facts, either.

Finally, DexCom criticizes and seeks to exclude "Abbott's ... references [to] Abbott's affirmative infringement case that it filed against Dexcom" in Action 21-977. DexCom Op. Br. at 2. Once again, this exclusion should be *mutual*, not one-sided. DexCom should not be able to refer to Abbott's affirmative infringement case, either. So long as *neither DexCom nor Abbott* may refer to that separate litigation, Abbott agrees to this aspect of DexCom's MIL.

B.     **Part Two: MIL To Exclude Evidence/Argument "That DexCom's Success In The Market Was Due To Abbott's Patents"**

DexCom seeks to exclude any evidence and argument "that DexCom's success in the market was due to Abbott's patents" as "irrelevant" while at the same time opposing Abbott's request in Abbott's MIL #1 to exclude evidence that *Abbott's* commercial success was due to *DexCom's* patents. Abbott can agree that it would be fair if both sides' evidence and argument attributing products' commercial success to patents can be excluded from this trial. But this exclusion needs to go both ways, not just one-way in DexCom's favor. The problem with DexCom's MIL #1 is again its one-sided nature.

7

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

The Court should mutually exclude both sides' evidence and argument that products' commercial success was due to patents or any particular patented features. The patent aspects of this trial should be about whether pre-2005 patents and applications ████████████ DexCom's asserted patent claims. There is no room in this four-day trial for mini-trials about whether products practice particular patents, whether those products are successful, and which patents if any are responsible for products' commercial success. And Abbott certainly should not have to face DexCom's assertions that products' success was due to DexCom's patents if Abbott is restricted from arguing and showing that the success is due to other factors, including Abbott's own patents and the rights to those patents DexCom got under the SLA.

### C.   Part Three: MIL To Exclude Evidence/Argument "Concerning DexCom's Market Capitalization," "Financial Information," or "Overall Financial Health"

DexCom argues that "DexCom's market capitalization, company-wide financial information, and overall financial health" "have no bearing whatsoever on this case." That is incorrect. DexCom itself has made this information relevant to this case. DexCom's own damages expert expresses opinions premised on Abbott being "a larger, better funded competitor" than DexCom during settlement negotiations. Ex. 1 (Berneman Op. Rpt.), ¶ 74. And DexCom's exhibit list shows that it has every intention of presenting evidence concerning Abbott's financial information and health, and market share. *See* DTX114, 179 (Abbott's 2021 market share); DTX469 (Abbott's 2021 Form 10-K); DTX706 (Abbott 2014 Form 10-K); DTX708 (Abbott 2019 Form 10-K). DexCom's MIL attempts to prevent Abbott from rebutting the "David-and-Goliath" story DexCom intends to present about the parties' relative bargaining powers.

Abbott's Complaint in this case shows how DexCom's market capitalization, financial information, and financial health are relevant to this case, too. It explains that when entering the SLA, DexCom faced "being enjoined from the market" entirely and had a "market capitalization

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

[of] —$3B and its stock price was $37." D.I. 280, ¶ 9. However, with the SLA in hand and the threat of litigation gone, DexCom grew to having a "market capitalization [of] —$41B and its stock price was —$427." *Id.* DexCom may disagree with these theories, or call them "unsupported," but these are things the jury should weigh. They are not reasons for exclusion of evidence at trial.

Abbott likewise should not be precluded from making arguments that "DexCom's growth in the market is related ... to ... the rights granted in the SLA." DexCom Op. Br. at 3. DexCom baldly asserts that "Abbott has not adduced any evidence" of this relationship, *id.*, but that is not true. Abbott has proffered evidence of DexCom's financial reports demonstrating its growth since entering the SLA, and identified public statements made to investors that DexCom was "pleased" to enter the SLA after having faced the prospect of significant damages and being enjoined from the market. Once again, DexCom ignores that these facts have been in the license case from the outset. *See, e.g.,* D.I. 280, ¶¶ 2, 3, 9, 12, 21–26.

DexCom should not be able to hide from the jury facts about the value of the SLA to DexCom, including how much DexCom's competing CGM business grew without the risk of patent litigation exposure as a result of the SLA promises Abbott kept. These facts raise significant questions about the positions DexCom is taking about how little the SLA required of DexCom in return. DexCom's MIL would restrict Abbott's ability to point out to the jury what this Court has pointed out before— DexCom's views, if accepted, could mean Abbott was a "fool[]" to enter the SLA. Ex. 2 (8/18/2022 Hearing Tr.) at 53:8–12.

DexCom also ignores Abbott's claims that "DexCom materially breached the implied covenant of good faith and fair dealing" when it filed and maintained suits against Abbott and its affiliates outside of this district. D.I. 280, ¶¶ 84–100. Those breaches, and DexCom's denial of

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

Abbott's affiliates being licensed under the SLA, put DexCom's market capitalization and

"financial condition" at issue because such evidence "illuminate[s]" the parties' "interests and

expectations in entering the [SLA]," "the relationship between" Abbott and DexCom, and "why

the parties sought to enter the [SLA]." *True N. Composites, LLC. v. Trinity Indus., Inc.*, 191 F.

Supp. 2d 484, 516–17 (D. Del. 2002). The jury should have that context when determining

"whether [DexCom] breached the implied covenant of good faith and fair dealing." *Id.*

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**DEXCOM MOTION *IN LIMINE* NO. 2 TO PRECLUDE ABBOTT FROM ARGUING OR SUGGESTING THAT DEXCOM TOOK NO STEPS TO AVOID BREACHING THE SLA, OR THAT ANY ALLEGED BREACHES WERE INTENTIONAL OR WILLFUL**

Abbott should be precluded from introducing evidence or argument that DexCom took no steps to avoid breaching the SLA, or that any alleged breaches were intentional or willful.

From the outset of this case, Abbott has sought to portray DexCom as a bad actor by alleging that DexCom intentionally ignored its obligations under the SLA in order to willfully deprive Abbott of the benefit of its bargain. Not only are these assertions completely unfounded, they are also not relevant to any issues at trial. As Abbott accurately described in its summary judgment briefing, "[p]roving breach of contract requires (1) contractual obligation; (2) breach of that obligation; and (3) resulting damage." D.I. 324 at 5 (citing *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011). DexCom's motivations or willfulness (or lack thereof) surrounding the circumstances of these alleged breaches are irrelevant to proving Abbott's breach of contract claim. *See AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, No. CV 2020-0310-JTL, 2020 WL 7024929, at *71 n.248 (Del. Ch. Nov. 30, 2020), *judgment entered,* (Del. Ch. 2021), and *aff'd,* 268 A.3d 198 (Del. 2021) ("[A]bsent specific language, proving a breach of contract claim does not require *scienter*."); *Myer Ventures, Inc. v. Barnak*, 1990 WL 172648, at *5 (Del. Ch. Nov. 2, 1990) ("[T]he contract does not require scienter for a breach to exist."). Abbott should not be permitted to inflame the jury with irrelevant and prejudicial accusations that DexCom's alleged breaches were intentional or undertaken with a motivation to harm Abbott.[1]

---

[1]   This is particularly pertinent here because Abbott appears to intend to argue that DexCom intended to obtain patents in breach of the SLA, but Abbott did not raise any license defense based on the "███████████████████" clause until nearly a year of litigation, in July of 2022. Ex. 1 [July 5, 2022 Abbott response to DexCom Interrogatory No. 9] at p. 51.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

Abbott's pretrial disclosures and discovery responses, however, indicate that Abbott may seek to offer such evidence at trial.  For example, Abbott designated deposition testimony from DexCom witnesses concerning prosecution of DexCom patents after the SLA's execution and whether such prosecution complied with DexCom's obligations under the SLA.  *See, e.g.*, Ex. 2 [Simpson Tr.] at 95:16-23; Ex. 3 [Thiessen Tr.] at 40:12-23; Ex. 4 [Lister Tr.] at 43:5-17.  Abbott's interrogatory responses also assert, without support, that "DexCom chose improper and unlawful ways to obtain patents and exert post-expiration leverage over ADC by derogating from ADC's rights in the manners set forth herein."  D.I. 333-12 [Abbott response to DexCom Interrogatory No. 11] at p. 13.  And, during the parties' meet and confer, Abbott refused to agree not to introduce the evidence at issue in this motion.

Courts have repeatedly held that a defendant's motive or intention are not relevant to a claim for breach of contract.  *See, e.g.*, *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 152–53 (D.D.C. 2014) (granting motion *in limine* concerning motive evidence as "[i]t is well-established that motive is irrelevant to a claim for breach of contract"); *Bakst v. Cmty. Mem'l Health Sys.*, Inc., No. CV 09-08241, 2011 WL 13214315, at *15 (C.D. Cal. Mar. 7, 2011) (granting motion *in limine* in breach of contract action as "evidence of [defendant's] motive for making the statements has no tendency to make a fact at issue more or less probable" and was thus irrelevant).  Moreover, to the extent that such evidence has any probative value, it is outweighed by the danger that it will confuse the issues at trial, mislead the jury, and unduly prejudice DexCom.  *See, e.g.*, *Argush v. LPL Fin., LLC*, 759 F. App'x 121, 125-26 (3d Cir. 2018) (affirming motion *in limine* as the defendant's "motive and intent were irrelevant" to the plaintiff's breach of contract claim and even if motive and intent were relevant exclusion was proper as "any probative value would be substantially outweighed by a risk of confusing the issues and misleading the

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

jury"); *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997) (affirming

motion *in limine* concerning motive in breach of contract case as "[t]he probative value of the

evidence was not great because Enron's motive is not at issue in a breach of contract case. Further,

the evidence could have unduly delayed the trial and led to confusion of the issues").  Accordingly,

such evidence and arguments should be precluded.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**ABBOTT'S OPPOSITION TO DEXCOM'S MOTION *IN LIMINE* NO. 2**

DexCom's MIL #2 seeks to exclude key evidence in Abbott's core case under the cover of an argument about "motivation and intent." This is a contract case where the parties dispute whether DexCom breached a contract. That contract required DexCom to "warrant and represent that it has not obtained and shall not obtain the issuance" of certain patent claims. Ex. 3 (SLA), ¶H.3. And yet DexCom, through this MIL, would have this Court preclude Abbott "from arguing or suggesting that DexCom took no steps to avoid breaching the SLA." DexCom Op. Br. at 11. The cases DexCom cites do not concern this kind of evidence that is directly relevant to the breach claims at issue. They mostly make the obvious point that scienter, willfulness, and intent are not required to prove breach of contract. None of them mean that the plaintiff in a breach of contract case should be precluded from introducing evidence and argument at trial that the defendant did little to nothing to comply with the contract.

**ARGUMENT**

By executing the SLA, DexCom "warrant[ed] and represent[ed] that it has not obtained *and shall not obtain* the issuance" of certain patent claims. Ex. 3 (SLA), ¶H.3. During discovery, however, Abbott obtained evidence that DexCom has done little or nothing to comply with this obligation. For example, Rose Thiessen, DexCom's long-time outside patent prosecution counsel, and Rule 30(b)(6) witness on "any effort to comply with the warranty in SLA ¶H.3," testified that



Ex. 4 (Thiessen Dep. Tr.) at 40:18-25

. DexCom's former General Counsel, John Lister, similarly testified that DexCom

Counsel, John Lister, similarly testified that DexCom

Ex. 5 (Lister Dep. Tr.) at 43:5¬44:9.

14

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

And Peter Simpson, a named inventor on most of DexCom's asserted patents, testified ███████

██████████████████████████████████████████████████████████████ Ex. 6 (Simpson

Dep. Tr.) at 95:16-23.

And when Abbott asked DexCom in an interrogatory to identify steps it took to comply

with its warranty, DexCom stated only that steps were taken, refused to provide any details of what

those were, and used "privilege" to shield Abbott from looking behind that generic, self-serving

statement. Ex. 7 (DXC 2nd Supp. Resp. to Abbott's 1st Rogs.) at 117-18. DexCom identified no

policy, protocol, procedure, check, or screen that DexCom implemented. It identified no

communications DexCom had to even inform any of its people about what patents the SLA

prohibited the company from obtaining. Evidence like this of DexCom's inaction after signing the

SLA is relevant because it puts weight on the "breach" side of the scale. The less DexCom did to

ensure its representation was truthful and to make sure the company was not obtaining the patents

it promised not to obtain, the more likely it is that the company failed to comply with those

representations and promises.

DexCom now seeks to exclude this evidence, arguing that Abbott should be precluded

"from arguing or suggesting that DexCom took no steps to avoid breaching the SLA." DexCom

Op. Br. at 11. DexCom's argument for exclusion is that "DexCom's ***motivations or willfulness***

(or lack thereof) surrounding the circumstances of [its] alleged breaches are irrelevant to proving

Abbott's breach of contract claim." *Id.*; *see also id.* at 12. But this argument does not work. None

of DexCom's cases say that evidence that a party to a contract took no steps to avoid breaching a

contract is irrelevant. Nor would such an argument even make sense. When the accused defendant

did little to nothing to comply with the contract, that is clearly relevant to the arguments that

defendant's lawyers will make to the jury that it did comply.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

DexCom's cited cases are inapposite. In the Delaware Chancery cases DexCom cites, a party accused of breaching a contract tried to use its good intentions or lack of knowledge to escape liability for breach. In *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC* the court rejected an argument that a party could avoid breach of covenant by having the intent to comply. 2020 WL 7024929, at *71 n.248 (Del. Ch. Nov. 30, 2020). In *Myer Ventures, Inc. v. Barnak* the court rejected an argument that an employee did not breach an agreement not to provide services to candidates with whom he previously had contact merely because he failed to recollect who h,is prior contacts were. These attempts to escape breach liability did not work, of course, because a breach of contract does not *require* scienter. These rejected arguments are certainly not the arguments Abbott is making in this case.

*Argush v. LPL Fin., LLC*, 759 F. App'x 121 (3d Cir. 2018) also does not support DexCom. In that case, the 3rd Circuit held that "the motive of a party in *terminating* ... *an agreement*" for breach is irrelevant to "whether the termination is effective." *Id.* at 125. That issue is not present here. Nor did the Third Circuit announce a sweeping rule in that case that all evidence that may bear on a party's motivation or willfulness in breaching must be excluded from trials, even if that evidence also bears on the likelihood of whether the party actually complied with a contract's stated terms. Instead the court found that the particular "motivation evidence" at issue *in that case* was "substantially outweighed" by the risks of confusing and misleading the jury *in that case* due to factors present in that case that DexCom does not even argue are present here (because it would "signal[] claims of retaliation, discrimination, or promissory estoppel"). *Id.* at 126.

Finally, DexCom's reliance on non-binding, out-of-district cases also does not assist it, because none holds that evidence showing an alleged breacher's failure to take steps to comply with its contractual obligations is irrelevant or inadmissible. *See Sabre Int'l Sec. v. Torres*

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

*Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 152–53 (D.D.C. 2014) (precluding evidence of bonuses paid to executives as purported motive to breach contract); *Bakst v. Cmty. Mem'l Health Sys.*, Inc., No. CV 09-08241, 2011 WL 13214315, at *14-15 (C.D. Cal. Mar. 7, 2011) (precluding evidence and argument that defendant's executives had "vendetta" against plaintiff as purported motive to breach non-disparagement clause); *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997) (evidence that defendant breached contract with a third party as showing motivation to breach contract with plaintiff excluded, *inter alia*, because it would have led to "side trial that would distract the jury from the main issues in the case").

Evidence that DexCom's failed to take steps to comply with its obligations is relevant to whether DexCom did or did not comply with those obligations, and should be admitted. It does not relate to the issues of DexCom's "motivations" and "intent" that DexCom claims it seeks to exclude. DexCom's motion is simply trying to prevent Abbott from talking about DexCom's failure to comply with the contract, and take the heart out of Abbott's breach case.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**DEXCOM MOTION *IN LIMINE* NO. 3 TO PRECLUDE ABBOTT FROM PRESENTING EXTRINSIC EVIDENCE ABOUT THE MEANING OR SCOPE OF UNAMBIGUOUS PROVISIONS IN THE SLA**

DexCom seeks an order precluding Abbott from introducing extrinsic evidence or related argument, including any evidence regarding the parties' intent or motivations about the meaning or scope of unambiguous provisions in the SLA. Such evidence is not relevant to any disputed issue at trial and should thus be excluded.

Since this Court's summary judgment ruling on the "obvious variant" term in ¶A.13(c)(ii) of the SLA, the only provisions of the SLA which remain relevant to whether an asserted claim of a DexCom patent is licensed to Abbott are ¶A.13(c)(i) and ¶H.3(a)(i), which both concern whether a claim is ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████ Abbott and DexCom agree that the SLA's ████████████████████ license provisions are the sole remaining provision under which Abbott may claim to have a license to the asserted claims. *See* D.I. 466 at 9 ("To the extent a license defense still exists for Abbott, it would be limited to the question of whether the asserted claims were ██████████████████ by a pre-2005 DexCom patent or patent application."); D.I. 467 at 15 (Abbott contends that it "is still licensed to DexCom's claims under the '████████████████' prong in ¶ A.13(c)(i) of the SLA."). The scope of these two provisions, however, is not disputed. The parties have consistently agreed that these clauses ██████████████████████████████████████████████ ███████████████████████████████████████████████████████████

*See, e.g.*, D.I. 333-12 [Abbott response to DexCom Interrogatory No. 11] at p. 13 (describing the scope of SLA ¶A.13(c)(i) as whether a claim is ████████████████████████ ███████████████████ by a patent or patent application captured in § A.13(a)"); D.I. 337-1 [DexCom response to Abbott Interrogatory No. 2] at p. 16 ("[A] claim is within the scope of the

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

license if the specification of one of the patents and applications captured in subsection ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Because there is no ambiguity

about the scope or meaning of SLA ¶A.13(c)(i) or ¶H.3(a)(i), the jury will not be required to

interpret the language of the SLA, but will only need to apply the unambiguous contract language

to a determination of whether the asserted claims of DexCom's patents are licensed.

Abbott's pleadings in this case, and pretrial disclosures, however, indicate that Abbott may

seek to offer evidence of the parties' motivations and intent surrounding the execution of the SLA

in connection with its claims for breach of the agreement.  For example, in its Answer Abbott

asserted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮, DexCom sought to settle ADC Inc.'s lawsuits" and provided "a broad license" with

provisions that "serve to prevent DexCom from manipulating its patent portfolio to exclude

relevant licensed technology from the license" by "gam[ing] the patent system."  D.I. 279 at ¶¶3-

5.  Abbott has also designated deposition testimony from witnesses involved in the negotiation of

the SLA concerning, *e.g.*, why ¶H.3 was added to the agreement (Ex. 5 [Hansen Tr.] at 100:12-

24), their understanding of the scope of ¶H.3 (*id.* at 115:9-20), and the parties' intent regarding the

scope of the licenses granted (Ex. 4 [Lister Tr.] at 42:10-20, 51:15-52:2).[2]  Such extrinsic evidence

concerning the parties' motivations, understanding of the scope and intent regarding the licenses

granted is legally irrelevant and should be excluded.  *Stream TV Networks, Inc. v. SeeCubic, Inc.*,

279 A.3d 323, 337 n.67 (Del. 2022) (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,

702 A.2d 1228, 1232 (Del. 1997) ("extrinsic evidence may not be used to interpret the intent of

the parties, to vary the terms of the contract or to create an ambiguity."); *Roseton OL, LLC v.*

---

[2]   As a contingency, DexCom also designated some deposition testimony and included
trial exhibits relating to the negotiation of and interpretation of the SLA.  To the extent this motion
is granted, DexCom would not seek to offer such extrinsic evidence.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

*Dynegy Holdings Inc.*, C.A. No. 6689-VCP, 2011 WL 3275965, at *11 n.85 (Del. Ch. July 29, 2011) ("Because I have found § 4.2 likely to be unambiguous, extrinsic evidence of the subjective intent of the parties when they entered into the Guaranties is not relevant." (under New York law, which, like Delaware adheres to the objective theory of contracts)).

Allowing presentation of such extrinsic evidence concerning the SLA would be error and would only serve to confuse the issues at trial, waste time, and mislead the jury. *See, e.g.*, *L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 275 (3d Cir. 2013) (reversing denial of JMOL that term was unambiguous and noting "[a]dding to the difficulties, the Court repeatedly allowed the jury to receive evidence of the Contract's meaning from outside the four corners of the Contract, something that should not occur with regard to unambiguous contract provisions"); *Buddy's Plant Plus Corp. v. Centimark Corp.*, 978 F. Supp. 2d 523, 536 (W.D. Pa. 2013) (granting motion *in limine* to preclude extrinsic evidence on the meaning of "waterproofing materials" as the term was unambiguous).

Abbott may argue that extrinsic evidence related to the SLA is relevant to its implied covenant claim, but that claim only covers the narrow issue of whether the SLA license grant to Abbott extends to its affiliates. D.I. 279 at ¶202 ("[T]he covenant of good faith and fair dealing inherent in the SLA obligates DexCom to extend the protection from suit afforded by the license in section C.2 of the SLA to licensed activities by ADC Inc. affiliate or third party manufacturers and distributors."). Thus, to the extent extrinsic evidence about the parties' "reasonable expectations" is properly admissible, it is only so as it relates to the narrow issue of whether Abbott's affiliates are licensed, not any other provisions or general intent of the agreement. That, however, appears to be exactly what Abbott intends to do. DexCom thus seeks an order precluding Abbott from introducing evidence or argument concerning Abbott's "reasonable expectations," or

20

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

other such irrelevant extrinsic evidence, except for the limited purpose of resolving the scope of

protection afforded to Abbott's affiliates under the SLA's license.

Any suggestion that Abbott's implied covenant claim is relevant to other alleged breaches

is belied by the history of that claim.  In its original complaint, Abbott pled a broad breach of the

implied covenant of good faith and fair dealing, alleging that "[t]o the extent DexCom argues or

the Court finds that any of the breaches alleged in Paragraph 80 [detailing Abbott's 'five, separate

and independent' breaches of the SLA currently at issue in this matter] above are not breaches of

the SLA's express terms, they are at minimum breaches of the SLA's implied covenant of good

faith and fair dealing."  C.A. No. 21-1699, D.I. 2 ¶86.  DexCom filed a motion to dismiss Abbott's

claim for breach of the implied covenant of good faith and fair dealing, which this Court granted.

D.I. 271 at 14.  In doing so, the Court granted Abbott leave to amend stating that "Abbott identified

in its reply to DexCom's motion to dismiss what may be a ***cognizable implied obligation, i.e.,***

***protection of Abbott Diabetes Care affiliates***, but the language in the complaint to which Abbott

cites provides little clarity." *Id.* (emphasis added).  Abbott then filed an amended claim for breach

of the implied covenant that was limited to the issue of protection of its foreign affiliates.  *See,*

*e.g.*, D.I. 279 at ¶200 (alleging "in the alternative, to the extent DexCom argues or the Court finds

that DexCom did not breach the express terms of the SLA by suing ADC Inc.'s affiliates, such

suits are at minimum breaches of the SLA's implied covenant of good faith and fair dealing").

In other words, in order to survive a pleading motion, Abbott limited its implied covenant

of good faith and fair dealing breach claim to the issue of whether its affiliates are covered by the

SLA's license.  Despite this, Abbott's draft pretrial exchanges suggest it intends to rely on its

implied covenant claim to assert much broader implied protections under the SLA's license and

introduce otherwise irrelevant evidence.  Abbott should not be permitted to resurrect its broader,

21

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

dismissed implied covenant claim to shoehorn in irrelevant evidence, such as its "reasonable expectations" as to the general purposes of the SLA's license protection, when such evidence has no bearing on its operative implied covenant claim.

This Court should preclude Abbott from introducing any evidence or argument concerning the parties' motivations, understanding of the scope, intent, or "reasonable expectations" under the SLA, except for the narrow purpose of determining the applicability of the SLA's license to Abbott's affiliates. *See ICU Med., Inc. v. RyMed Techs.*, Inc., 752 F. Supp. 2d 486, 496 (D. Del. 2010) (excluding testimony that only served as "back-door way of encouraging the jury to" reach an irrelevant and unfairly prejudicial conclusion).

22

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**ABBOTT'S OPPOSITION TO DEXCOM'S MOTION *IN LIMINE* NO. 3**

DexCom's request in MIL #3 seeks to exclude a hodgepodge of vague and overbroad "evidence or related argument" lumped together and labeled with ambiguous characterizations, such as "extrinsic evidence" and "the parties' intent or motivations about the meaning or scope of unambiguous provisions in the SLA." The lack of specificity in DexCom's requests alone warrants denial. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). This problem is compounded by DexCom's failure to explain how any of its cited examples—a couple of deposition pages and a few pleading paragraphs—meet these fuzzy criteria, much less how they do the things that supposedly prompted its motion in the first place. DexCom never shows how any testimony or argument "var[ies] the terms" or "create[s] an ambiguity" in the contract. DexCom as "[t]he movant bears the burden of demonstrating that the evidence is inadmissible," *id.*, and utterly fails do so here.

DexCom's motion also should be denied due to its faulty premise. DexCom's motion is premised on its argument that "there is no ambiguity about the scope or meaning" of any terms in the SLA contract, and that absent an ambiguous term, "evidence concerning the parties' motivations, understanding of the scope and intent regarding the licenses granted is legally irrelevant and should be excluded." But DexCom simply ignores that the scope and meaning of multiple SLA provisions is disputed, including application of the SLA's provisions defining ██████████████████████████████████████████ and application of the Challenge Provisions (¶¶ F.3, F.4) to Abbott's accused *inter partes* reviews. DexCom's motion cannot be reconciled with the Court's ruling on summary judgment that jury will be "resolv[ing] which part[y's] interpretation" of at least the Challenge Provisions "is correct." *See* D.I. 482 at 19. Where, as here, a jury is resolving the parties' competing interpretations, they may "examine the content

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

of the extrinsic evidence (along with all the other evidence) in order to make this determination."

*Philadelphia Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 188 (3d Cir. 2016).

DexCom also wholly fails to address other reasons why the parties' understandings, motivations, and intent regarding the SLA would be relevant and admissible.

These and other reasons why DexCom's motion should be denied are discussed below.

***First***, this Court has already recognized that the parties have competing interpretations of the Challenge Provisions and declined to "resolve which parties' interpretation of Sections F.3 and F.4 of the SLA is correct." D.I. 482 at 19. That means the jury will be determining which interpretation of ¶¶ F.3 and F.4 is correct. Where, as has been decided to be the case here, "reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder ***must*** consider admissible extrinsic evidence." *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012). Yet DexCom's MIL would exclude this necessary evidence.

DexCom's motion also would improperly exclude evidence relating to the parties' understandings, motivations, and intentions surrounding the definitions of licensed "ADC Products" and "Ancillary Products." Yet DexCom did not even file a motion for summary judgment about the meanings of those terms, likely because it is so clear that the parties have competing interpretations that the jury would need to resolve. Here again, the jury "must" be permitted to consider the extrinsic evidence when making those determinations. *Id.*

***Second***, DexCom's motion ignores that evidence of the parties' understandings of, and intentions for, the SLA is relevant to issues other than contract interpretation. That evidence is relevant to the issue of the "reasonable expectations of the parties" that is used to "comput[e] damages for a breach of contract claim." *Cobalt Operating, LLC v. James Crystal Enters.*, 2007

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

WL 2142926, at *29 (Del. Ch. Jul. 20, 2007) ("In Delaware, the traditional method of computing damages for a breach of contract claim is to determine the reasonable expectations of the parties."). For example, DexCom should not be permitted to hide from the jury evidence of the parties' expectations that the SLA would avoid litigation and resolve disputes outside of court while it contests Abbott's positions that, absent DexCom's breach, the SLA's Dispute Resolution Clause (¶ J.1) would have avoided litigation. Yet that is the type of evidence DexCom's motion stealthily targets.

*Third*, DexCom's motion should be denied as non-specific and overly broad because it does not identify the evidence it would exclude if granted, *Leonard*, 981 F. Supp. 2d at 276, and because the only examples it cites are not actually tied to DexCom's stated reasons for exclusion. DexCom identifies a total of approximately two pages of deposition testimony and three assertions in Abbott's Answer that would be implicated by its motion. DexCom Op. Br. at 19. DexCom makes no argument and provides no analysis of how those arguments or pieces of evidence would necessarily be used to "vary the terms of the contract or to create an ambiguity" in the contract, or are relevant only for interpretation of unambiguous contract terms. *Id.*

The cited testimony from Ms. Hansen and Mr. Lister do neither of these things. Instead, it provides relevant background about the genesis of the SLA and the terms at issue, including why and how the parties sought to settle their dispute through the cross-licenses granted by the SLA and the warranty provision, and the parties' mutual understanding with respect to the scope and purpose of the "worldwide license." *See* Ex. 8 (Hansen Dep. Tr.) at 100:12-24, 115:9–20; Ex. 5 (Lister Dep. Tr.) at 42:10–20, 51:15–52:2. This testimony does not seek to vary the terms in the contract, create ambiguity or interpret an unambiguous contract term. It reveals the history of "mistrust between the parties" at the time the SLA was negotiated, and the problems with

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

DexCom's patent prosecution strategy leading to Abbott's insistence on the license, warranty, and representation provisions that the jury will be applying at trial. Ex. 3 (SLA), ¶¶ A.13(c), H.3. This history is at least relevant to rebutting DexCom's views that the SLA required no action by DexCom to make sure its patents complied with its representations, and that the SLA's license and covenant-not-to-sue protections excluded all or nearly all of Abbott's commercial CGM products.

This history DexCom's motion seeks to exclude also shows "the commercial context between the parties" and "the 'basic business relationship between parties [that] must be understood'" "[b]efore attempting to discern the parties' shared intent with respect to particular provisions of a contract." *Kabakoff v. Zeneca, Inc.*, 2020 WL 6781240, at *17 (Del. Ch. Nov. 18, 2020) (quoting *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 927 (Del. 2017)). Delaware courts recognize that "[t]he basic business relationship between parties must be understood to give sensible life to any contract." *Chicago Bridge & Iron*, 166 A.3d at 926–27 (discussing that the parties' complicated history and business dealings led them to enter into the at-issue purchase agreement). Even DexCom's cited *Eagle Industries* case recognized that "it is appropriate for the trial court to consider some undisputed background facts to place the contractual provision in its historical setting." 702 A.2d at 1232 n.7. DexCom's motion would strip out that type of context from this case without reason.

DexCom's assertion that evidence regarding the parties' negotiations cannot be relevant at all is simply incorrect. *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *16 n.88 (Del. Ch. July 11, 2011) (quoting 11 WILLISTON ON CONTRACTS § 32:7 (4th ed. 2011) ("[T]he circumstances surrounding the execution of a contract may always be shown and are always relevant to a determination of what the parties intended by the words they chose.").

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

***Finally***, DexCom's motion should also be denied because it improperly seeks permission to litigate before the jury whether the SLA's license grant affords protection from suit to Abbott's affiliates. But in denying DexCom's summary judgment motion, the Court already held that the SLA unambiguously, explicitly protects Abbott's affiliates from "charges of infringement." D.I. 484 at 4–6. This issue is no longer in dispute and any extrinsic evidence or argument asserting that the SLA's meaning and scope do not provide protection for Abbott's affiliates is no longer relevant and should not be presented to the jury. To the extent DexCom seeks a ruling allowing it to put this improper extrinsic evidence before the jury, its motion should be denied.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**DEXCOM MOTION *IN LIMINE* NO. 4 TO PRECLUDE ABBOTT FROM SEEKING DAMAGES BASED ON ANY ALLEGED BREACHES ASSOCIATED WITH DEXCOM'S FILINGS IN GERMANY**

Abbott should be precluded from seeking any of its "actual loss" damages.  Abbott's "actual loss" damages are based on a claim that Abbott had to accelerate ██████████ ████████████████████ in Germany as a result of DexCom's patent infringement lawsuits there, and that doing so cost it ████████  Specifically, Abbott claims that, as a result of DexCom's assertion of four allegedly licensed patents against Abbott in Germany, Abbott had to switch its customers to the ██████████████████████████████ ████████████.[3]  *See, e.g.*, D.I. 333-2 [Gerardi Reply Rpt.] ¶138 (opining that DexCom's German lawsuits "upended" Abbott's strategy for rolling out ██████ in Germany); D.I. 333-1 [Gerardi Rpt.] ¶¶46, 57, 59-60 (Abbott "was concerned" about the ██████████ in the German actions so it ████████████████████████████████ ████████████████████████████████████████████ ████████████).  It is now undisputed, however, that one of the four patents asserted by DexCom—EP 3435866 ("EP '866")—is not licensed to Abbott.  As a result, there is no question that DexCom was entitled to assert that patent against Abbott in Germany and the ████████ ████████ that Abbott claims caused its actual loss damages was not a result of any alleged breach of the SLA by DexCom.

Abbott's theory is based on the premise that each of the four DexCom EP patents asserted against Abbott in Germany is licensed under the SLA, and that Abbott would not have had to change its ████████████████ in Germany to avoid the potential that ██████ would be

_____

[3]   Some of the asserted patents were also asserted against the FSL3, further undermining Abbott's theory.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

enjoined—███████ ███████████████████████████████ when it had purportedly planned to have

a mix of the ███████████ — if Dexcom had not breached the SLA by suing on licensed patents.

D.I. 333-2 [Gerardi Reply Rpt.] ¶12 ("[Abbott] would not have needed to implement ████████

████████████ but for DexCom's breach of the forum selection clause by filing suit in Germany

rather than Delaware" and "but for DexCom's decision to bring patent infringement claims based

on patents it licensed to [Abbott] or should not have obtained under the SLA.").  Abbott has

conceded, however, that it no longer has a claim that EP '866 is licensed under the SLA following

the Court's summary judgment ruling that the "obvious variant" clause refers to obviousness-type

double patenting.  D.I. 472 at 2 ("Abbott has contended that all asserted claims, except those of

the EP 866 Patent, are licensed under the SLA's ███████████████████ prongs."; "Abbott

agrees that (a) the issue of whether Abbott has a license to the EP 866 patent … would be mooted

if the 'obvious variant' clause means claim-to- claim ODP.").  As a result, Abbott never had a

basis for alleging that it was licensed to the claims of EP '866, and DexCom's assertion of EP '866

in Germany cannot be a breach of the SLA's license provision.  Without a license defense on EP

'866, and no possible claim that DexCom asserted EP '866 in breach of the SLA, Abbott's damages

theory falls apart.  The ██████████████████████████ in Germany that Abbott claims

drove its █████████████████ allegedly resulted in its actual loss damages would remain even

if the other three asserted DexCom EP patents are found to be licensed.  Abbott's claimed amounts

due to ████████████████ are therefore irrelevant to any issue remaining in the case, and should be

excluded.  *Argush v. LPL Fin., LLC*, 759 F. App'x 121, 125-26 (3d Cir. 2018) (affirming multiple

motions *in limine* as the evidence at issue was irrelevant to plaintiff's claims); *see also J.R.*

*Partners LLC v. Dimensional Stone Prod., LLC*, No. CIV.A. 2004-12-463, 2007 WL 2284549, at

*5 (Del. Com. Pl. Aug. 2, 2007) (refusing to award partial damages where "Plaintiff provided no

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

itemized evidence proving damages for any specific task" such that "an award of partial damages would be based purely on speculation by the Court.").

To the extent Abbott contends that its claims predicated on DexCom's alleged breach of the SLA's forum selection and dispute resolution clauses should permit its "actual loss" damages to be presented to the jury, this Court's summary judgment rulings foreclose that argument as well. The Court found that DexCom's filing of foreign infringement actions was not a breach of the forum selection or dispute resolution clauses.  *See* D.I. 483 at 3 ("[B]ecause DexCom could not have brought its foreign infringement actions in Delaware, it did not breach the SLA's forum selection clause by filing those actions in the United Kingdom and Germany."); *id.* at 4 ("As DexCom's filing of litigation in the United Kingdom and Germany did not breach the SLA's forum selection clause, and Abbott has failed to specify any damages from a breach of the dispute resolution clause, Abbott's motion is DENIED-IN-PART insofar as it argues that DexCom breached the SLA by engaging in foreign litigation.").  Given that DexCom's German actions did not breach the forum selection or dispute resolution clauses, there is no basis for assessing damages pursuant to these clauses.  Additionally, to the extent Abbott remains entitled to seek attorney's fees as damages,[4] it should not be entitled to present to the jury damages in the form of fees related to foreign forum issues or EP '866 given the Court's summary judgment rulings.

---

[4]   Dexcom is moving for reconsideration that attorney's fees are compensable under the SLA given ¶K.13 of the SLA.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**ABBOTT'S OPPOSITION TO DEXCOM'S MOTION *IN LIMINE* NO. 4**

DexCom's fourth motion is a thinly veiled, improper summary judgment motion on an issue this Court has already decided. DexCom moves to preclude Abbott "from seeking any of its 'actual loss' damages" flowing from the ███████████████████████████████ ███████████████. DexCom Op. Br. at 28. But in its recent summary judgment order, this Court held Abbott "has presented sufficient evidence for a jury to find that Abbott would not have accelerated its product rollout but for DexCom's breach." D.I. 484 at 3. "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Board of Ed.*, 913 F.2d 1064, 1069 (3d Cir. 1990). It is "not the proper vehicle by which to eliminate issues from a case," much less to reargue a previously unsuccessful motion for summary judgment. *Johns Hopkins University v. Alcon Laboratories Inc.*, 2018 WL 4178159, at *21 (D. Del. Aug. 30, 2018); *see also Martsolf v. Brown*, 547 F. App'x 167, 170 n.5 (3d Cir. 2012) ("Because it asked the District Court to reverse its summary judgment ruling, Plaintiff's motion in limine is properly construed as a motion for reconsideration.").

This Court should deny DexCom's motion for that reason alone, but DexCom's argument is also meritless. A reasonable jury could find that Abbott would have avoided its acceleration costs if DexCom had complied with the SLA's dispute resolution clause rather than filing foreign infringement actions asserting licensed patents. Whether for procedural reasons or on the merits, DexCom's motion should be denied.

**ARGUMENT**

A motion in limine is not an opportunity to raise—much less re-raise—summary judgment disputes. "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Johns Hopkins*, 2018 WL

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

4178159, at *21. "Treating a motion in limine like a motion for summary judgment would eliminate the procedural protections of notice which the federal rules require before judgment on the merits may be granted." *Id.* (internal quotations omitted).

For that reason, courts in this District and across the country routinely deny motions in limine that are really "thinly ...disguised motion[s] for summary judgment." *Uzhca v. Wal-Mart Stores, Inc.*, 2023 WL 2529186, at *8 n.7 (S.D.N.Y. Mar. 15, 2023). In *Cirba Inc. v. VMware, Inc.*, for example, Judge Stark denied a motion to exclude all evidence in support of a party's §102(g) defense. 2020 WL 1316464, at *2 (D. Del. Jan. 6, 2020). Judge Stark described the motion as "more akin to a motion for summary judgment, as it contends that there is not sufficient evidence from which a reasonable jury could find corroboration" and "based on the premise" that the defendant "cannot sustain its burden on its burden on its §102(g) defense." *Id.* Rather than resolve that dispute in an abbreviated motion in limine, Judge Stark held the moving party would "have an opportunity at trial to move for judgment as a matter of law should it believe that [the defendant] has failed to present sufficient evidence." *Id.* Judge Bryson, in *Sonos, Inc. v. D&M Holdings Inc.*, similarly denied a motion that "sought to exclude evidence or argument relating to damages" because the motion "was not properly cast as a motion in limine, but instead was seeking a dispositive ruling on a substantive issue in the case." 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017); *see also AMAG Pharms. v. Sandoz, Inc.*, 2018 WL 1041035, at *1-2 (D.N.J. Feb. 22, 2018) (denying motion in limine where "th[e] motion looks more like a summary judgment motion than one attempting to limit evidence.").

DexCom's motion should meet the same fate. Like in *AMAG Pharmacueticals*, DexCom "has not pointed to any specific paragraphs or the testimony of any particular witness" it seeks to exclude. 2018 WL 1041035, at *1-2. DexCom instead contends "Abbott should be precluded from

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

seeking any of its 'actual loss' damages." DexCom Op. Br. at 28. To support that argument,

DexCom asserts that "there is no question that DexCom was entitled to assert" the EP '866 patent

"against Abbott in Germany"[5] and that "the ████████████ that Abbott claims caused its

actual loss damages was not the result of any breach of the SLA by DexCom." *Id.* Those are

(incorrect) arguments why no reasonable juror could supposedly award Abbott the acceleration-

related damages it seeks, not an argument that the evidence Abbott uses to support its damages

claim is confusing, unduly prejudicial, or otherwise inadmissible.

None of the cases DexCom relies on suggest otherwise. Those cases excluded evidence as

irrelevant to the issues for trial; they did not grant summary judgment through a motion in limine.

*Argush v. LPL Financial, LLC*, for example, was a contract dispute over whether an employee was

fired for conduct that amounted to "willful misconduct." 759 F. App'x 121, 125 (3d Cir. 2018).

The employer's motive and intent were irrelevant to that issue, and the Third Circuit affirmed the

district court's decision not to admit evidence on those topics because it risked "confusing the

issues and misleading the jury" into thinking motive and intent were relevant. *Id.* That is very

different from DexCom's request that the Court first grant it summary judgment of no damages

and then, as a result, excluded damages-related evidence as irrelevant. As for *J.R. Partners LLC

v. Dimensional Stone Products, LLC*, that decision did not even involve an *in limine* ruling. 2007

WL 22845549 (Del. Com. Pl. Aug. 2, 2007). The court in that case granted judgment as a matter

of law of no damages in a post-trial decision. *Id.* at *1, 5. This case is currently in a different

---

[5]    Abbott disputes that DexCom was entitled to assert EP '866 in Germany prior to
engaging in the proper dispute resolution process and plans to appeal that ruling. Abbott does not
intend to re-argue the Court's decision here, but includes this footnote to clarify the record as
DexCom has already misrepresented Abbott's position with respect to EP '866 to the German
court.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

procedural posture, where the virtually uniform rule is that courts will not grant judgment as a matter of law through *in limine* rulings.

Even if DexCom's arguments were procedurally proper, summary judgment is not appropriate here. Whether the parties could have avoided the German litigation if DexCom had complied with the dispute resolution clause, like all causation questions, is one the jury should decide. *Rose v. Cadilac Fairview Shopping Ctr. Props.*, 1996 WL 45334, at *2 (Del. Sup. May 1, 1996) ("Under Delaware law, issues of causation are questions reserved for the jury."). DexCom's CEO and its Executive Vice President for Global Revenue have publicly stated DexCom "has always been willing to resolve [its] disputes with Abbott under terms that would ensure the mutual availability of both of our life altering products." Ex. 9 (ABTDEL605_00041223) at 2. That is the purpose behind the dispute resolution clause: it requires ███████████████████████████████ ███████████████████████████████ Ex. 10 (Taub Dep. Tr.) at 134:6-13. A reasonable jury could infer from DexCom's public statements, the dispute resolution clause itself, and the testimony about the purpose of that provision that there would have been no German litigation if the parties went through the contractual dispute resolution process *before* DexCom filed suit. Mr. Gerardi's damages calculations, in turn, establish the financial harm to Abbott caused by that unnecessary and improper litigation. Ex. 11 (Gerardi Reply Rpt.) at 48.

There is no evidence proving the dispute resolution process would have been unsuccessful. DexCom steadfastly refused to participate in the process—despite multiple invitations from Abbott—after filing suit in violation of its contractual commitments. Ex. 12 (ABTDEL605_00002064); Ex. 13 (ABTDEL605_00002219); Ex. 14 (ABTDEL605_00002220). Nor does it make a difference that the Court recently concluded the EP '866 patent is not licensed. D.I. 484. The parties did not have this Court's ruling in July 2021 and whether that patent is

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

licensed would have been a necessary part of the pre-suit dispute-resolution conversation. *See* Ex.

12 (ABTDEL605_00002064) (Abbott seeking ██████████████████████████

██████  under the dispute resolution clause of the SLA); Ex. 10 (Taub Dep. Tr.) at 134:6-24

(explaining ██████████████████████████████████████████

███████████████████████████████████████████ As part of

that conversation, the jury could find the parties would have worked through their licensing

differences for EP '866 and the other asserted patents (which the jury should find are licensed),

their infringement and invalidity disputes, and resolved their dispute for all the EP patents "under

terms that would ensure" the "availability" of Abbott's products without resorting to litigation and

injunction threats. Ex. 9 (ABTDEL605_00041223) at 2.

This Court's recent summary judgment rulings concerning the dispute resolution and forum

selection clauses do not foreclose this causation theory. As an initial matter, the Court denied

Abbott's motion for summary judgment concerning the dispute-resolution clause. D.I. 483 at 4. It

did not grant summary judgment in DexCom's favor. *Id.* DexCom, in any event, reads too much

into this Court's decision. The Court held Abbott's motion did not "specify any damages from a

breach of the dispute resolution clause" ***standing alone*** for the actions pending in Germany and

the U.K. *Id.* The Court did not hold Abbott could not seek damages for the consequences of a

combined breach of the dispute resolution clause and the SLA's license provisions. To the

contrary, the Court held Abbott "presented sufficient evidence for a jury to find that Abbott would

not have accelerated its product rollout but for DexCom's breach." D.I. 484 at 3. The Court should

deny DexCom's motion and allow Abbott to present that evidence to the jury.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

**DEXCOM MOTION *IN LIMINE* NO. 5 TO PRECLUDE GERARDI FROM OFFERING PREJUDICIAL OR WITHDRAWN OPINIONS**

DexCom moves to preclude Abbott's damages expert, Mr. Gerardi, from offering opinions that are unduly prejudicial to DexCom or that Abbott has withdrawn, including (i) alleged "unquantified" harms suffered by Abbott; (ii) damages from any purported breach of the SLA's warranty provision, ¶H.3; and (iii) attorneys' fees and costs damages from McAndrews Held & Malloy, Ltd. ("McAndrews").

First, Gerardi should be precluded from opining that Abbott has incurred "unquantified" harms resulting from DexCom's alleged breaches. D,I. 333-1 [Gerardi Rpt.] ¶¶100-103. In his report, Gerardi opined that "ADC's reputation as a reliable business partner may have been affected" by the FSL3 acceleration and that the FSL3 acceleration was a "distraction" that had a "real, if unquantifiable, effect on [Abbott's] business." *Id.* ¶¶102-103. However, in (successfully) opposing DexCom's *Daubert* motion, Abbott represented that "[i]f the[se] harms remain unquantifiable, Gerardi will not offer opinions on them." D.I. 386 at 24. And at his deposition, Gerardi ███████████████████████████████████████████████████████████ ████████████████████████ D.I. 333-3 [Gerardi Dep. Tr.] at 275:4-277:6. In light of Abbott's representation to the Court, and Gerardi's deposition testimony, the Court should preclude Gerardi from opining that Abbott has suffered any unquantified harms. In addition to being precluded based on Abbott's own representation, these speculative opinions are likely to confuse and mislead the jury and unduly prejudice DexCom and should be excluded on this independent ground. *See, e.g.*, *CareDx.*, 2021 WL 1840646, at \*4 (finding unreliable expert opinions excludable under Rule 403 because their probative value was "substantially outweighed by the dangers of unfair prejudice [and] misleading the jury").

36

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

Second, Gerardi should be precluded from opining that Abbott is entitled to monetary damages as a result of DexCom's alleged breach of the warranty provision of the SLA—¶H.3. Gerardi's report purports to tie Abbott's claimed damages to DexCom's alleged breach of ¶H.3. *See* D.I. 333-2 [Gerardi Reply Rpt.] ¶¶11-12. However, there is no dispute that ¶H.3 expressly precludes ADC from obtaining monetary damages for DexCom's breach of that provision, providing that "ADC shall as its sole remedy be deemed licensed[.]"  SLA ¶H.3.  In (successfully) opposing DexCom's motion for summary judgment of no damages in the event of a breach of ¶H.3, Abbott represented that it "does not seek monetary damages for DexCom's breach of ¶H.3." D.I. 386 at 5. Abbott should not be permitted to reverse course and have Gerardi suggest to the jury that any of its purported damages can or do flow from a breach of ¶H.3.  *See, e.g.*, *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 363–64 (1st Cir. 1998) (expert's changed testimony should have been excluded on the grounds of unfair surprise since party believed case would present one key issue only to have opposing party address a different issue).

Third, Abbott's claimed McAndrews' attorneys' fees and costs damages are premised on fundamentally unreliable evidence, and allowing Abbott's expert to offer damages opinions on these fees to the jury would be unduly prejudicial to DexCom.  To opine on Abbott's McAndrews attorneys' fees and costs damages, Gerardi relies on ███████████████████████████████ ██████████████████████████████████████████████████.  D.I. 333-25 [ABTDEL605_00081569];   D.I.   333-26   [ABTDEL605_00081597];   D.I.   333-27 [ABTDEL605_00081705]; D.I. 333-28 [ABTDEL605_00081769]. Abbott has not identified who created these ████████, how line entries were determined to relate only to defensive work, or explained why Abbott did not produce McAndrews' actual invoices or any underlying data. Allowing Gerardi to offer damages opinions as to these fees, the purported evidence for which is

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

████████████████████████████████ would be unduly prejudicial to DexCom.  McAndrews is Abbott's counsel in its *offensive* litigation against DexCom (*see generally* C.A. No. 21-cv-977), and it thus cannot be assumed that line entries containing descriptions such as "create [redacted]" and "work related to [redacted]" encompass work performed by McAndrews that in any way relates to defending Abbott in DexCom's lawsuits.  *See* D.I. 333-25-28.  But if Abbott is allowed to present these damages to the jury, that is exactly what Abbott will be asking the jury to do: assume these ███████ in attorney's fees from its offensive counsel for unknown work based on documents of unknown origin are for defensive work.

Additionally, Abbott's failure to provide the data underlying these compilations of McAndrews' attorneys' fees runs afoul of Rule 1006, which provides that if a party use a summary or chart it "must make the originals or duplicates available for examination . . . by other parties at a reasonable time and place." Fed. R. Evid. 1006.  DexCom requested this information, but Abbott refused to provide it.  Ex. 6 [12.01.2022 email from G. Frisch to A. Ross]; *see Stich v. U.S.*, 730 F.2d 115, 119 (3d Cir. 1984) (recognizing "force to t[he] argument" that trial court erred in admitting table without granting opposing party access to the underlying data pursuant to Rule 1006, but finding argument was waived due to failure to raise the argument with the trial court).

For at least these reasons, the Court should preclude Abbott from offering any argument or expert opinion regarding unquantified harms Abbott allegedly suffered, damages flowing from a breach of ¶H.3 or damages in the form of McAndrews attorneys' fees and costs.

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

<u>**ABBOTT'S OPPOSITION TO DEXCOM'S MOTION *IN LIMINE* NO. 5**</u>

DexCom's MIL #5 rehashes arguments this Court already rejected. D.I. 484. In its motion, DexCom challenges (1) Gerardi's opinions on unquantified harms; (2) damages based on DexCom's breach of the SLA's warranty provision, ¶ H.3; and (3) defense costs for work performed by McAndrews Holt & Malloy. DexCom unsuccessfully raised each of those arguments in its summary judgment and *Daubert* motions. D.I. 369 at 39, 55-59. DexCom's arguments have not improved through repetition, and it offers no basis for this Court to reconsider its recent rulings. *See* D. Del. L.R. 7.1.5(a); *Turner v. Pierce*, 2015 WL 4205145, at *1 (D. Del. July 13, 2015); *see also Martsolf v. Brown*, 547 F. App'x 167, 170 n.5 (3d Cir. 2012) ("Because it asked the District Court to reverse its summary judgment ruling, Plaintiff's motion *in limine* is properly construed as a motion for reconsideration."). The motion should be denied.

<u>**ARGUMENT**</u>

*First*, there is no merit to DexCom's renewed argument to exclude Gerardi's opinions addressing unquantified harms. The harm to Abbott stemming from DexCom's breach of the SLA and the resulting German litigation is still ongoing. The ████████████ has had an impact on Abbott's launch efforts in at least the United States and the United Kingdom. Ex. 15 (Gerardi Op. Rpt.) ¶ 101. At the time Gerardi served his reports, the harms impacting those markets were too recent to meaningfully quantify. Gerardi reserved the right to supplement his report if those harms later become quantifiable. *Id.* If the harms remain unquantifiable, Gerardi will not offer opinions on them.

Gerardi separately explained that, in addition to the harms he puts a dollar figure on in his reports, Abbott has been harmed by redirecting the time and effort of its employees in Germany and elsewhere to supporting the ████████████, which was a distraction to pre-existing business plans. *Id.* ¶ 103. This distraction impacted Abbott's business, and although not

39

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

quantifiable, demonstrates that Gerardi's calculations likely understate the financial harm caused

by DexCom's breaches. *Id.* Such testimony will not "confuse and mislead the jury." DexCom Op.

Br. at 36. Quite the opposite. Gerardi's testimony will give the jury a more complete picture of the

harms caused by DexCom's conduct and confidence that "if there is an error" in Gerardi's numbers

"it is that he is underestimating the economic damages" DexCom caused. *See Comm'r of the Dep't*

*of Plan. & Nat. Res. V. Century Aluminium*, 2013 WL 1235655, at *5 (D.V.I. Mar. 26, 2013)

(finding testimony reliable where expert "used very conservative figures so if there is an error it is

that he is underestimating the economic damages").

  ***Second***, DexCom continues to misinterpret the "sole remedy" provision in ¶ H.3 of the

SLA and Abbott's damages arguments. As part of that provision, DexCom represented that it

would not obtain certain patent claims and the parties agreed that "[i]f DexCom breaches ***this***

warranty and representation by obtaining issuance of such a claim, ADC shall as its sole remedy

be deemed licensed to such claim on a royalty-free, non-exclusive and non-sublicensable basis

(*i.e.*, consistant [*sic*] with Paragraph C.2 of the Agreement)." Ex. 3, ¶ H.3. This does not mean

DexCom faces ***no*** liability for bringing suits in the U.S. and abroad based on patent claims it

represented it would never obtain. The sole remedy provision is limited to breaches "of that

provision," as DexCom admits. D.I. 334 at 39 ("The express language of §H.3 precludes ADC

from obtaining monetary damages for DexCom's breach ***of that provision***."). By asserting those

patent claims, DexCom breached other provisions of the SLA, such as the forum selection clause,

dispute resolution clause and the license in ¶ C.2 that Abbott obtained based on DexCom's breach

of ¶ H.3. As this Court held in its summary judgment decision, "Section H.3 does not mean that

DexCom faces no liability for violating other sections of the contract" and DexCom "violated th[e]

license grant" in ¶C.2 "by suing Abbott." D.I. 484 at 2, 4; *see also GMG Cap. Invs. v. Athenian*

**EXHIBIT 8D**
**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

*Venture Partners I,* 36 A.3d 776, 782 (Del. 2012). Abbott seeks damages for that breach—not

DexCom's earlier breach of ¶ H.3 by obtaining several of its patents in the first place—and those

are the damages Gerardi quantifies in his report. Ex. 11 (Gerardi Reply Rep.) ¶¶ 10-12.

  **Third**, DexCom's criticisms of McAndrews' fees go only to weight not admissibility; they

frequently repeat verbatim arguments DexCom made in its unsuccessful *Daubert* motion. *See* D.I.

334 at 55-56. DexCom's chief complaint is with the form of the document memorializing

McAndrews time entries. DexCom Op. Br. at 37. DexCom objects that Gerardi relies on ████

███████████████████████████████████████████████ *id.*, but whether

an expert "relied on the best data in forming his opinions is a question for the jury," *Allscripts*

*Healthcare v. Andor Health*, 2022 WL 3021560, at *15, 17 (D. Del. July 29, 2022); *Wright v.*

*Elton*, 2022 WL 1091280, at *3 (D. Del. Apr. 12, 2022) (rejecting *Daubert* motion, finding

allegations that expert "used unreliable data to support his opinions, made unreasonable

assumptions for missing data, and used unsound actuarial methodologies" "go[es] to the weight

and not the admissibility of the experts' testimony"). DexCom implies that because McAndrews

is Abbott's counsel in its offensive litigation, it is unlikely there would be defensive-related time

entries. *See* DexCom Op. Br. at 38. That is simply not true. McAndrews attorneys entered

appearances in the defensive case and appear on the signature block of Abbott's defensive

pleadings. *See, e.g.*, D.I. 31-33 (*pro hac vice* motions), 35 (Abbott's 9/20/2021 motion to transfer,

signed on to by McAndrews attorneys Leland G. Hansen, Edward A. Mas II, and Alexander M.

Vogler).

  Moreover, the parties are engaged in a global litigation campaign against each other, both

asserting patent infringement claims and defending against such claims. That at times requires

coordination and input from counsel in all aspects of the litigation. The McAndrews fees clearly

<div align="center">41</div>

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

show just that. *See, e.g.*, Ex. 16 (ABTDEL605_00081569) at 1 ███████████████

██████████████████████████████████████████████████; *id.*

at 2 (█████████████████████████████████████████████████

████████████████████ [REDACTED]"); *id.* at 2-3 (██████████████

███████████████ [REDACTED] ███████████████████

███████████████; Ex. 17 (ABTDEL605_00081597) at 45 ████████████

████████████████████████████████████████████████████

██████████████ [REDACTED]"); *id.* at 49 █████████████████

████████████████████████████████████████████████████

███ [REDACTED]"). DexCom will have the chance to present its own expert testimony pointing

out where Dr. Kennedy believes the McAndrews invoices reflect work on Abbott's offensive case

and DexCom will have the opportunity to cross-examine Gerardi if it believes some of the defense

costs he calculates are for offensive work. The factfinder can then make its own assessment of

whether Gerardi's defense-cost calculations are reliable. There is also nothing inappropriate about

the level of redactions in the McAndrews ██████ Unlike the invoices DexCom relies on for its

fee request, the McAndrews invoices do not entirely redact the description of the work performed.

Ex. 18 (Kennedy Op. Rep.) ¶ 20; Ex. 19 (DXCMDEL00617851); Ex. 20 (Kennedy Dep. Tr.) at

262:4-14.

Finally, DexCom asserts that the McAndrews fees "runs afoul of Rule 1006." DexCom Op.

Br. at 38. But Rule 1006 does not apply because the McAndrews fees are not "summar[ies],

chart[s], or calculation[s] to prove the content of voluminous writings, recordings, or

photographs." Fed. R. Evid. 1006. Instead, each of the McAndrews billing entries reflect the billing

**EXHIBIT 8D**

**DEXCOM'S MOTIONS IN LIMINE AND ABBOTT'S OPPOSITIONS THERETO**

entries in their original form, and therefore, it is the "jury [that] determines...whether ... evidence

of content accurately reflects the content." Fed. R. Evid. 1008.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEXCOM, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>ABBOTT DIABETES CARE INC., and<br>ABBOTT DIABETES CARE SALES CORP.<br><br>            Defendants. | Civil Action No. 22-605 (KAJ)<br><br>(CONSOLIDATED) |
| ABBOTT DIABETES CARE INC.,<br><br>            Plaintiff,<br><br>v.<br><br>DEXCOM, INC.,<br><br>            Defendant. | Civil Action No. 21-1699 (KAJ) |

## ABBOTT'S MOTIONS IN LIMINE

I.  **DEXCOM SHOULD BE PRECLUDED FROM INTRODUCING ITS
    SECONDARY CONSIDERATIONS OF NONOBVIOUSNESS TESTIMONY AND
    ARGUMENT**

Because the issue of obviousness has been eliminated from trial as a result of the Court's

summary judgment ruling, D.I. 484, DexCom's "secondary considerations of nonobviousness"

evidence, testimony and argument should be excluded from trial, too. To the Court's question—

—DexCom correctly responded as follows:

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ DexCom's secondary considerations testimony and argument should be excluded as irrelevant, misleading, time-wasting, and unduly prejudicial to Abbott. Fed. R. Evid. 401, 403.

Despite Abbott's written and oral requests, DexCom has not identified any issue to be decided by the jury to which any of its secondary considerations contentions would be relevant. DexCom has also identified no place in the record where DexCom disclosed its intentions to rely on those contentions and evidence for other issues. DexCom's position is that the people DexCom named as inventors on its patents should have free rein at trial to "talk about" "what they invented and why it matters," and how people thought that was "cool." Ex.1. But since DexCom prevailed on its motion for summary judgment that ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ What the named inventors think about how their own inventions "mattered" and whether that is "cool" has nothing to do with this issue.

## ARGUMENT

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ Thus, obviousness and secondary considerations of nonobviousness should be out of the case. DexCom agreed to this. D.I. 466; D.I. 471; D.I. 481, 15:19–16:6.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

This means for purposes of the license case that DexCom should not be introducing testimony or arguing to the jury that DexCom's claimed inventions (i) are commercially successful, (ii) addressed long-felt needs, (iii) were copied, (iv) were praised, (v) had unexpected results, or (vi) were "taught away" from by the prior art. DexCom likewise should not be introducing testimony or arguments to the jury attributing any *products*' success, need-satisfaction, copying, praise, or results to DexCom's claimed inventions. These types of arguments, to the extent they were ever in the case, would go to nothing more than secondary considerations of nonobviousness issues that are now definitively "out of the case." They are not considerations for whether DexCom's asserted patent claims are ███████████████████████████████ ███████████, or any issue the jury needs to decide now. DexCom's after-the-fact refusal to keep its secondary considerations *contentions* out of this case, even though it got the ███████████ it asked for and admitted that secondary considerations are out of the case, is a fundamentally unfair bait-and-switch. Should the Court find otherwise, Abbott's summary judgment and *Daubert* motions would need to be revived and resolved.

Furthermore, injecting these considerations into the trial would be unduly prejudicial to Abbott for the additional reason that they would serve no purpose except to potentially mislead a jury into thinking that the asserted patent claims are less likely to be licensed, less likely to be found in DexCom's pre-2005 disclosures, or more likely to be assertable against Abbott, if those claims are associated with success, praise, copying, unexpected results, real-world benefits, or satisfaction of patient or industry needs. Those likelihoods have nothing to do with those associations.

And Abbott should not have to spend its limited trial time explaining the meanings and histories of its commercial FreeStyle Libre product advertisements, and what those do and do not

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

say about DexCom's patents, and all the flawed assumptions DexCom is making when it implies that those show DexCom's patented inventions are what drove the ads and sales of those products. Nor should Abbott be forced to rebut and disprove DexCom's unsupported arguments and suggestions that each of DexCom's claimed inventions are allegedly independently responsible for eliminating pain, leaks, fingersticks, and alarm problems in all the parties' commercial CGM devices. Such arguments would be a time-consuming distraction from the critical issues in this case: whether DexCom breached the contract in other ways besides the way that has already been adjudicated on summary judgment (D.I. 483), the damages for DexCom's breaches, and whether the asserted patent claims are fully supported and enabled by certain pre-2005 patent documents.

As the proponent of its evidence, DexCom bears the burden of showing its relevance. DexCom has not done that during the parties' meet and confer. DexCom refused to agree to this motion, or any portion of it, even though DexCom identified no reason why any of its secondary considerations arguments is relevant to any issue that has not dropped out of the case. Instead, DexCom argued that Abbott's proposed motion would on its face prevent an inventor from testifying about "why" his or her invention "matters" and how people think that is "cool." Ex.1. But that argument is a non-starter. That testimony amounts to expert opinion testimony coming from a fact witness. And DexCom has never disclosed to Abbott any theory under which that testimony would be a factor in the ███████████████████████ hat remains in this case. Fed. R. Civ. P. 37(c)(1). DexCom's argument only confirms that it wants to repackage its secondary considerations contentions and slap a new label on them—"inventor testimony about his or her inventions"—and allow the jury to consider the same considerations that DexCom said were "out of the case" when the jury is deciding whether those patent claims are licensed to Abbott.

DexCom also argued in its communications with Abbott that this motion was "one-sided"

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

because "Abbott employs secondary considerations analysis in its ███████████████

opinions." Ex.2. But DexCom supported that allegation with no examples. Regardless, Abbott has

no intention of introducing evidence that the Court rules is irrelevant and inadmissible.

      The potential for unfair prejudice and jury confusion thus substantially outweighs whatever

probative value the secondary considerations evidence may have. DexCom should be held to its

representation that ███████████████ ... *secondary considerations fall out of the case*

*entirely*." D.I. 471.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

<u>**DEXCOM'S OPPOSITION TO ABBOTT'S MOTIONS IN LIMINE NO. 1**</u>

DexCom continues to agree that secondary considerations are not at issue in the first trial, and many of the facts offered in support of secondary considerations are no longer relevant. But Abbott's one-sided[1] motion seeks to exclude more—*i.e.*, any evidence and argument that may be relevant to secondary considerations, even if the evidence and argument is also relevant to the remaining issues. This overbroad request would prevent DexCom from effectively rebutting Abbott's ███████████████████ arguments and from telling its invention story. As outlined further below, many categories of evidence and argument that would potentially be excluded by Abbott's overbroad motion are relevant to the remaining issues, and it would be improper to preclude DexCom from introducing this relevant evidence.

Contrary to Abbott's assertion, DexCom has not backtracked on its representations regarding secondary considerations or the mootness of Abbott's summary judgment and *Daubert* motions. (Mot. 1-2.) For example, DexCom does not intend to have its experts opine regarding the drivers of sales for Libre products, so long as Abbott agrees to the same. (Mot. 3-4.) Similarly, DexCom does not intend to have its experts offer opinions linking the success of the accused products to the claimed inventions, so long as Abbott agrees not to argue that its success is due to other reasons. (Mot. 4.) But Abbott's motion is indiscriminate and its requested relief goes too far.[2]

---

[1]  Abbott's motion seeks to exclude "DexCom's 'secondary considerations of nonobviousness' evidence" (Mot. 1) while still allowing Abbott to introduce such evidence.

[2]  Additionally, Abbott's experts have relied on the absence of secondary considerations to bolster their opinions that claims are ███████████████████████████████████ ██████████████████████████████████████████████ This argument is legally erroneous, but DexCom understands Abbott's motion as a representation that it will not offer any such opinion at trial. (Mot. 4-5.)

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

*Invention Story and Possession of Invention.* DexCom intends to present testimony
from Peter Simpson and Apurv Kamath at trial, two of the named inventors on the asserted
patents. They are also named inventors on the references that Abbott contends ███████████
███████ the asserted claims. Mr. Simpson and Mr. Kamath are expected to testify about the
development of their inventions, including the problems they faced, how their inventions solved
those problems, and what they possessed at the relevant times. By way of example, Mr. Simpson
is a named inventor on the '452 Patent and the '683 provisional that Abbott relies on for its
license defense. At deposition, he testified that the seal described in the '683 provisional did not
have the sandwich design that he and his co-inventors disclosed and claimed in the '452 Patent.
Ex. 2 [Simpson Dep. Tr.] at 207-208. He also explained why the inventors conceived of the
sandwich design and what benefits it offered, including to avoid failures in the sensor
deployment. *Id.* at 189-192.

Testimony about the knowledge the inventors possessed at the relevant times is highly
relevant to whether the provisional applications that Abbott relies on ████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████ Abbott's request to exclude all "evidence, testimony or argument that there were
needs for the claimed inventions (e.g., 'long felt' but unmet needs), or that the claimed
inventions satisfied needs" could improperly prevent the inventors from offering relevant
testimony, such as why they conceived of the sandwich design and other innovations of the '452
Patent. Abbott cannot credibly dispute the relevance of this fact testimony, especially having
sought (and obtained) DexCom's testimony on these topics specifically for the license case. *See*

7

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

Ex. 3 [Abbott's Rule 30(b)(6) Notice] at 12 (Topic 22: "The inventions claimed in the DexCom

U.S. Asserted Patents and the DexCom Foreign Asserted Patents, including the conception and

reduction to practice thereof."); *id.* at 15 (Topic 42: "The subject matter of the DexCom pre-2005

patents and patent applications listed in Exhibit A.").

> *Teaching Away.* Abbott contends DexCom should not be able to argue that references

"taught away" from the claimed inventions.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

[REDACTED]

Some of the evidence that was relevant to secondary considerations is also relevant to other issues that remain in the case.  Abbott's motion *in limine* should be denied because it seeks to preclude DexCom from presenting such relevant evidence.  DexCom would be substantially prejudiced if such evidence were excluded, as DexCom would be prevented from showing that, in fact, [REDACTED]

[REDACTED]

EXHIBIT 8P
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

II.     **DEXCOM SHOULD BE PRECLUDED FROM ASSERTING OR IMPLYING THAT ANY ASSERTED PATENT CLAIMS ARE NOT LICENSED BECAUSE OF THEIR ALLOWANCE BY THE PATENT OFFICE**

DexCom intends to argue to the jury that asserted claims are not licensed simply because the patent office allowed them, the examiner considered certain references during prosecution, and/or the claims are entitled to a "presumption of validity." Such arguments are prejudicial, irrelevant to whether claims are licensed under the SLA, and should be excluded.

*First*, that an asserted claim was allowed by the patent office is irrelevant to whether it is licensed under the SLA. The license is, of course, intended to cover allowed claims. *Second*, that the examiner might have considered certain references when determining whether claims are novel (*under 35 U.S.C. § 102*) or non-obvious (*under 35 U.S.C. § 103*) is irrelevant to what the jury will be asked to decide—whether the asserted claims are " ███████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ *Third*, all issues regarding invalidity over prior art have been stayed, and no "presumption of validity" applies to the license analysis.

<u>**ARGUMENT**</u>

Abbott contends that claims from DexCom's asserted patents are licensed ██████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

███████████████ The Court has stayed all infringement and validity issues, so no §102 or §103, or any other, invalidity issues will arise at the upcoming trial.[3]

In response to Abbott's and its experts' license analyses, DexCom has indicated it intends to rely on evidence that patentees traditionally seek to present to rebut anticipation or obviousness allegations. For example, in its contentions, DexCom repeatedly asserts that Abbott "improperly relies primarily on patents or applications that were already considered by the Examiner in allowing the claims" of, were "cited on the face of," or were considered during IPRs or oppositions of, the asserted claims. *See* Ex.3 at 27, 30-31, 34-35, 70, 73, 76, 79. DexCom's experts also rely on the examiners' purported consideration of references during prosecution. For example, the experts opine that asserted claims are not ████████████████████████████ ███████████████ based in part on a summary of an examiner interview that DexCom itself wrote, asserting that the "Examiner agreed that the pending independent claims are *patentably distinguished*" over the provisionals. *See* Ex.4, ¶¶54-56, 72, 134, 183, 210, 236, 246, 316, 318, 338; Ex.5, ¶¶154-155, 158. The experts also assert that certain references incorporated into DexCom's pre-2005 applications were "considered" by the examiner. *See* Ex.4, ¶¶57-63, 72, 79, 94, 104, 108, 119, 132, 144, 160, 166, 172, 273, 281, 287. Notably, DexCom and its experts do not identify anywhere that any examiner was called upon to consider the license issue the jury must decide in this case—████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

---

[3] ████████████████████████████████████████
████████████

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

DexCom should be precluded from presenting evidence, testimony or argument suggesting or implying that any asserted claims are not licensed because the patent office allowed the claims, the examiner considered certain references during prosecution, and/or the claims are entitled to a "presumption of validity." The only reason for DexCom to do so would be to improperly conflate license and validity issues to try to convince the jury to find the asserted claims not licensed *simply because* an examiner allowed them to issue over certain references. Any such argument would unfairly undermine the legitimacy of Abbott's license claims based on irrelevant considerations.

*First*, that the patent office granted a claim cannot be evidence it is not licensed. The license is, of course, intended to cover granted claims, ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ Suggesting a claim should be held not licensed simply because the patent office allowed it would be contrary to the express license terms and merely serve to confuse the jury.

*Second*, that the examiner might have considered certain references during prosecution, or found a claim "patentably distinguished" from them, is irrelevant to the issue the jury will decide in this case—████████████████████████████████████████████████████

███████████████████████████████████████████████ No examiner engaged in that analysis. To the extent the examiner substantively considered the references at all,[4] at most, the examiner would have considered whether they *anticipated* the claims under §102 or *rendered them obvious* under §103. As DexCom and its experts have repeatedly stated, however,

---

[4] Most were merely listed in Information Disclosure Statements (IDSs) along with hundreds of other references and initialed by the examiner as having been "considered" before the final claims were even proposed. *See, e.g.*, Ex.27 at DXCMTX_00000984 (identifying Mastrototaro '847 patent); Ex.28 at DXCMTX_00002860 (same).



**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**



 The records of examiner interviews in which the examiner purportedly "agreed" pending

claims were "patentably distinguished" over certain DexCom provisionals should also be excluded

as irrelevant and misleading for other reasons. The hearsay interview summaries were written and

submitted by DexCom, and there is no similar "agree[ment]" referenced in the examiner's own

summaries of the same interviews. *Compare* Ex.7 at DXCMTX_00002540-42 *with id.* at DXCMTX_00002419. Moreover, the interview summaries do not identify on what basis the examiner purportedly "agree[d]" the claims were "patentably distinguished" from the provisionals. *See* Ex.7 at DXCMTX_00002540-42. As the referenced provisionals indisputably do not qualify as prior art to the claims at issue, it is equally, if not more, likely the examiner would have found the claims to be "patentably distinguishable" on that basis, rather than that the examiner compared the pending claims to the hundreds of pages of disclosures in the provisionals during an interview. But the record summary does not describe the bases for the purported "agree[ment]," which is even further reason it is prejudicial and should be excluded.

*Third*, DexCom should not be permitted to reference a "presumption of validity." That presumption by definition applies only to invalidity analyses, and is used to justify the clear and convincing evidence standard for invalidity. But all validity issues in this case have been stayed, and there is no dispute that the burden applied to Abbott's license case is preponderance of the evidence. And even if validity were being tried, the presumption "is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258–59 (Fed. Cir. 2004); *see also Teva Pharms. Int'l. GmbH v. Eli Lilly & Co.*, 2022 WL 10489059 (D. Mass. Oct. 17, 2022) (granting motion *in limine* to preclude reference to presumption of validity).

Allowing DexCom to offer evidence, testimony or argument about the issuance and prosecution of its patents would open the door to rebuttal evidence relating to Abbott's counterclaims. This includes Abbott's counterclaim that DexCom, its named inventors, and prosecuting attorney committed inequitable conduct by submitting to the Patent Office (1) facially invalid claims; (2) false declarations of inventorship to secure accelerated examination based on

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

age; and (3) information disclosure statements comprising thousands of references to misdirect the examiner from, and bury, material prior art. *See* D.I. 279, ¶¶247–326. Injecting these issues into the license case would heighten the risk of confusing the issues and wasting time. *See, e.g., Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, 2020 WL 954938, at *1 (D. Del. Feb. 27, 2020).

In sum, permitting DexCom to present evidence, testimony, or argument suggesting or implying asserted claims are not licensed because the claims were allowed by a patent office, were allowed after the examiner considered certain references, or are entitled to a presumption of validity would contradict the SLA's express terms, introduce irrelevant matters into the license case, unfairly prejudice Abbott, confuse the issues, and mislead the jury. DexCom should be precluded from doing so under Federal Rules 402 and 403.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

<u>**DEXCOM'S OPPOSITION TO ABBOTT'S MOTIONS IN LIMINE NO. 2**</u>

During prosecution of some of the DexCom asserted patents, the examiner specifically

considered ████████████████████████████████████████████████████



Additionally, many of Abbott's license arguments rely on prior art listed on the face of the

asserted patents.  Without supporting authority, Abbott seeks to preclude these facts from

consideration on relevance grounds.

It is well-settled law that the examiner's consideration of the prior art patents or

applications relied upon by Abbott in support of its license arguments is relevant.  To prevail on

its arguments that the asserted claims are licensed, ████████████████████████████

████████████████████████████████████████████████████████ *See Shire LLC v. Amneal*

*Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (where prior art was considered by the

examiner, the defendants "have the added burden of overcoming the deference that is due to a

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

qualified government agency presumed to have properly done its job"); *Stone Basket*

*Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1179-80 (Fed. Cir. 2018).[5]



Thus, even under the easier-to-satisfy anticipation standard, the examiner found that the claims were patentable despite the pre-2005 DexCom applications.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

Abbott next argues that the examiner interview summaries should be excluded because they are "misleading." (Mot. 13-14.) The only thing misleading is Abbott's argument. In Exhibit 7, Abbott provided DexCom's and the examiner's summaries of *two different interviews*, hence why they appear to be different. *Compare* Abbott Ex. 7 at DXCMTX_00002493 (2/24/2021 interview) *with id.* at DXCMTX_00002542 (2/9/2021 interview). In fact, both the examiner's and DexCom's summaries of the February 9, 2021 interview reflect that Provisional Application Nos. 60/614,683 and 60/614,764 were discussed. Ex. 9 [2/9/2021 Interview Summaries]. That one includes slightly more detail than the other does not render the more detailed summary "irrelevant" or "misleading."[6]

Abbott also minimizes the examiner's consideration of the provisional applications because "the referenced provisionals indisputably do not qualify as prior art to the claims at issue." (Mot. 14.) Abbott is simply wrong. Abbott overlooks that provisional patent applications can publish as part of another application, making the provisional disclosures available as prior art. *Trs. of Columbia U. v. Symantec Corp.*, 580 F. Supp. 3d 236, 268 (E.D. Va. 2022). For example, the '683 provisional was incorporated by reference into U.S. Patent Publication 2005/0176136, which published August 11, 2005, prior to the '452 Patent's February 22, 2006 claimed priority date. Pre-AIA 35 U.S.C. §102(a). Similarly, the portions of the '764 provisional that Abbott relies on—Abbott's own '509 patent and a Medtronic patent that were included in an appendix of the '764 provisional—both are prior art to all the asserted patents. Abbott's requested relief would strip away from the jury highly relevant evidence that skilled

---

[6]     Two weeks after Abbott's motion *in limine* was served on DexCom pursuant to the parties' agreed schedule, and after having received Dexcom's response, Abbott submitted a corrected exhibit 7 containing the February 9, 2021 interview summaries. As explained above, DexCom's and the examiner's interview summaries are entirely consistent and Abbott still does not explain how they are inconsistent.

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

professionals in the Patent and Trademark Office examined the very references Abbott now

claims disclose every limitation of the asserted patents.

Abbott also asks the Court to preclude reference to the presumption of validity.[7]  That

request should be denied.  Courts, including in this district, frequently deny such motions.  *See,*

*e.g.*, *Int'l Bus. Machines Corp. v. Groupon, Inc.*, 2018 WL 3007662, at \*2 (D. Del. June 15,

2018) (denying motion to preclude patentee from referencing the presumption of patent validity);

*Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, 2023 WL 2664200, at \*9 (M.D. Fla. Mar.

28, 2023).  The *Chiron* decision Abbott cites merely held that the district court did not err by

declining to instruct the jury on the "presumption of validity" because it nevertheless provided an

instruction for the jury to apply the "clear and convincing" standard for invalidity.  *Chiron Corp.*

*v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004).  Here, Abbott seeks to prove ███

████████████████████████████████████████████████████████████████

██████████████ f anything, the presumption of validity is even more relevant here.

Nevertheless, if the Court agrees with Abbott that DexCom should not be permitted to

reference 35 U.S.C. § 282's statement that a "patent shall be presumed valid," then the jury

should still be permitted to view the Federal Judicial Center's patent tutorial video.  The issues in

this trial turn on highly technical patent arguments and the patent tutorial video provides helpful

context, including what patents are, how people obtain patents, the parts of a patent, and how to

read them.

Finally, if the Court permits reference to the examiner explicitly considering the same

references Abbott relies on, then Abbott threatens it will introduce legally insufficient and

---

[7]  This request is unrelated to the rest of this motion *in limine* and should have been its

own motion.

EXHIBIT 8P
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

completely irrelevant evidence concerning its ***stayed*** counterclaims for inequitable conduct.  This

is a non-sequitur intended to unduly influence the Court's reasoning.  As an initial matter,

inequitable conduct is an issue for the Court, not the jury.  *Am. Calcar, Inc. v. Am. Honda Motor*

*Co., Inc.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011).  Thus, Abbott should not be permitted to

reference these allegations in this trial (or at the next, for that matter).

Abbott points to three buckets of ***allegations*** (not evidence) it would purport to introduce,

and none have anything to do with the license defense.  Further, all are insufficient to support an

inequitable conduct allegation as a matter of law.  First, Abbott says it will introduce evidence

that DexCom submitted facially invalid claims.  Abbott cites no evidence other than attorney

argument.  Moreover, Abbott does not and cannot allege that any introduction of such claims

was material.  *Aventis Pharma SA v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012).  And,

unlike the examiner's consideration of the exact references at issue here, the original scope of the

claims in prosecution has nothing to do with the license defense.  Abbott does not (and cannot)

suggest that the scope of the issued claims is identical to what Abbott claims is "facially invalid."

Second, Abbott says it will introduce evidence of "false declarations of inventorship to

secure accelerated examination based on age." (Mot. 14.)  DexCom disagrees that any false

declaration was submitted, but setting aside that point, that allegation also has nothing to do with

the license defense, *i.e.*, whether the issued claims are fully supported and enabled by an earlier

DexCom patent or application.  This argument is particularly puzzling given that Abbott does not

assert the patents are invalid for incorrect inventorship.

Third, Abbott says it will introduce "information disclosure statements comprising

thousands of references to misdirect the examiner from, and bury, material prior art." (Mot. 15.)

That argument makes no sense in light of the facts of this case.  The examiner interview

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

summary specifically calls out the references on which Abbott relies – showing that DexCom

brought those specific references to the examiner's attention.  That is the opposite of burying a

reference.  Regardless, allegations of "burying" are insufficient to establish inequitable conduct.

*E.g.*, *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009);

*ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1317 (M.D. Fla. 2013); *KFx Med.,*

*LLC v. Stryker Corp.*, 2019 WL 2012977, at *5 (S.D. Cal. May 7, 2019).  Abbott's arguments

would only serve to mislead and confuse the jury and would be highly prejudicial to DexCom.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

**III.    DEXCOM SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE, TESTIMONY, OR ARGUMENT THAT IT TOOK STEPS TO ENSURE THAT ITS REPRESENTATIONS IN SLA ¶H.3 WERE TRUTHFUL OR TO ENSURE THAT IT HAS COMPLIED WITH ITS OBLIGATIONS UNDER THE SLA ¶H.3.**

DexCom wants to use privilege as a sword and a shield. It wants to tell the jury that, before suing Abbott, "DexCom took steps to" (1) "ensure that its representations in [¶H.3 of] the SLA were truthful," and (2) "ensure that it has complied with all of DexCom's obligations under [¶H.3 of] the SLA," even though it steadfastly maintained during discovery that all "[t]he details of th[ose] [purported] steps" were "privileged." That is improper.

A party "cannot 'use the privilege as a sword rather than a shield,' and thereby 'divulge whatever information is favorable to [the client's] position and assert the privilege to preclude disclosure of the detrimental facts.'" *Princeton Digit. Image Corp. v. Office Depot Inc.*, 2017 WL 3264068, at *2 (D. Del. Aug. 1, 2017). This Court should "preclude[e] [DexCom] from presenting evidence at trial on a topic for which it did not provide discovery"—here, the steps it purportedly took to ensure its representations in ¶H.3 of the SLA were truthful, and that it complied with its obligations under that warranty. *See Ironburg Inventions Ltd. v. Valve Corp.*, --- F.4th ---, 2023 WL 2749199, at *10 (Fed. Cir. 2023); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) ("The attorney-client privilege cannot be used as both a sword and a shield."). "It would be extremely unfair to allow [DexCom] to withhold this evidence from [Abbott] in discovery and then allow [DexCom] to turn around and argue that it did not [breach] based on the" steps it precluded Abbott from challenging through discovery. *Mikulan v. Allegheny Cnty.*, 2017 WL 2374430, at *6 (W.D. Pa. May 31, 2017) (granting motion *in limine*).

<u>**ARGUMENT**</u>

In ¶H.3 of the SLA, DexCom ███████████████████████████████████████

████████████████████████████████████

22

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**



Ex.8, ¶H.3. Abbott asserts that DexCom breached this clause. D.I. 279, ¶¶116, 117. On June 9,

2022, Abbott served the following interrogatory asking DexCom about any steps it took to ensure

its representation in ¶H.3 of the SLA was truthful, and any efforts to not obtain the patent claims

DexCom promised not to obtain:

> Identify and describe in detail anything DexCom (or anyone on DexCom's behalf)
> did before executing the SLA on July 2, 2014 to determine the truth of its
> representation in SLA ¶ H.3; anything DexCom (or anyone on DexCom's behalf)
> did after executing the SLA on July 2, 2014 to determine the truth of its
> representation in SLA ¶ H.3; and any effort DexCom (or anyone on DexCom's
> behalf) has made to not obtain the issuance of patent claims that it warranted and
> represented ███████████████████ and Set Forth the Complete Basis
> for Your answer.

Ex.9 at 8-9. DexCom provided no substantive response. It objected that this interrogatory "***seeks***

***information protected by the attorney-client privilege, attorney work product doctrine immunity,***

***or other applicable privilege***." Ex.10 at 12-13.

Abbott wrote to DexCom about its failure to substantively respond, highlighting the choice

DexCom had made: "We take it from DexCom's response that it will not contend in this action

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

that DexCom or anyone on DexCom's behalf ever did anything to determine the truth of its SLA

¶H.3 warranty or to comply with that warranty." Ex.11 at 4. In response, DexCom doubled down

on its assertion that the interrogatory "generally appear[s] to seek, in large if not exclusive part,

privileged information." Ex.12 at 4.

On September 30, 2022, DexCom "supplemented" its response by reiterating its prior

objections, including its privilege objection, and adding the following conclusory statement:

> Prior to executing the SLA, DexCom took steps to ensure that its representations in
> the SLA were truthful. Since executing the SLA, DexCom has taken steps to ensure
> that it has complied with all of DexCom's obligations under the SLA.

Ex.13 at 53-54. DexCom did not identify what the alleged steps it took were, nor identify any

further information about them. *Id.*

DexCom thus withheld under a shield of "privilege" all information Abbott could use to

challenge DexCom's self-serving statements. Abbott wrote to DexCom again, noting that "[t]o the

extent DexCom will contend at trial that it took any steps to ensure that its representation in SLA

§ H.3 was truthful, or to ensure that it has complied with SLA § H.3, [Abbott is] entitled to

discovery of the details surrounding such steps DexCom has taken." Ex.14 at 3-4. Abbott stated:

> If DexCom does not agree to be precluded at trial from making such contentions,
> however, please immediately supplement DexCom's response with all responsive
> information about any steps it took to ensure its representations in the SLA were
> truthful or to ensure that it has complied with its obligations under the SLA.

*Id.* at 4. DexCom still did not provide any further responsive information, instead supplementing

a second time, adding only a privilege argument:

> ***The details of the steps undertaken by DexCom***—to ensure that its representations
> in the SLA were truthful, and to ensure that it has complied with its obligations
> under the SLA—***are privileged because they were undertaken by or at the
> direction of in-house counsel at DexCom and/or outside counsel for DexCom***.

Ex.15 at 117-118. DexCom continued to maintain privilege on this topic through depositions.

During the deposition of Rose Thiessen, DexCom's prosecuting attorney and Rule 30(b)(6)

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

witness on "attempts [by DexCom] to comply with the warranty in SLA ¶H.3 ████████

██████████████████████ DexCom's counsel instructed her not to answer questions

relevant to this topic. *See* Ex.16, 90:10–92:2, 116:10–17.

DexCom should be precluded under the sword/shield principle from introducing evidence,

testimony or argument that it took steps to ensure that (1) its representations in ¶H.3 of the SLA

were truthful, or (2) it complied with its obligations under that warranty. Having invoked privilege

to shield from discovery all information about these purportedly taken steps besides its self-serving

assertions that they happened, DexCom should not be permitted to present them to the jury.

Otherwise, DexCom would get an unfair tactical advantage, and Abbott would be unduly

prejudiced. While DexCom would suggest to the jury through these "steps" that it acted in good

faith and avoided breach by relying on advice of counsel and taking preventative actions, Abbott

could not fairly rebut these suggestions because it never got the discovery it would need to do so.

DexCom's position is similar to that of a defendant who seeks to rebut a willful

infringement claim by arguing it sought advice of counsel before launching its accused products,

but withholds the details of that advice and how it was sought. Courts do not permit that, holding

the defendant must choose whether to waive privilege or be precluded. *See, e.g.*, *Pac. Biosciences*

*of Cal., Inc. v. Oxford Nanopore Techs. Inc.*, 2020 WL 954938, at *1 (D. Del. Feb. 27, 2020)

(excluding testimony relating to "general business practice of seeking attorney advice related to

intellectual property" where defendant "did not disclose reliance on advice of counsel during

discovery"); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008) ("Although

Qualcomm stresses that it did obtain opinions of counsel regarding invalidity of the patents in suit,

it concedes that the district court properly excluded this fact from evidence in light of Qualcomm's

decision not to waive privilege with respect to these opinions."). Here, DexCom made its choice

EXHIBIT 8P
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

by standing on its privilege objections. Absent preclusion, DexCom would "unfairly imply that it sought, and received, exculpatory advice in this case without [Abbott] ever having [had] a fair opportunity to test what advice [DexCom] actually sought and received." *Pac. Biosciences*, 2020 WL 954938, at *1.

*Power Integrations, Inc. v. Fairchild Semiconductor International Inc.* is instructive. 2018 WL 5631531, at *1 (D. Del. Oct. 31, 2018). In that case, the Court ruled a party could not rely on letters "drafted by and at the direction of counsel" describing the party's litigation defenses because the party "chose during discovery not to disclose its reliance on advice of counsel, so [the other side] had no opportunity to explore the substance of this advice." *Id.* The Court reasoned that permitting the evidence would allow the jury to find that either "(i) these communications were directed by counsel, so [accused infringer] must have been following the advice of counsel, allowing [accused infringer] to obtain the benefit of reliance on advice of counsel without permitting appropriate discovery into it; or (ii) these communications were authored by a non-lawyer [] executive or employee, who subjectively believed what he or she was communicating, which would give the jury an erroneous impression." *Id.* Here too, DexCom should not be permitted to provide evidence that would lead the jury to give DexCom the "benefit of reliance on advice of counsel without permitting appropriate discovery into it." *Id.*[8]

---

[8] As a practical matter, DexCom apparently intends to have a business or R&D witness take the stand and assert that DexCom's lawyers took the necessary steps to ensure DexCom complied with its warranty, without presenting the actual lawyers, and having blocked all discovery from them. Not only would that implicate the sword-shield doctrine as described herein, but it also would implicate the "missing witness doctrine," which is "based on the simple proposition that if a party who has evidence which bears on the issues fails to present it, it must be presumed that such evidence would be detrimental to his cause." *United States v. Hines*, 470 F.2d 225, 230 (3d Cir. 1972). It would be particularly unfair for Abbott to have to face such testimony without the benefit of the adverse inference from DexCom's missing evidence and lawyer witnesses that should generally follow. *See, e.g.*, *Lin v. Rohm & Haas Co.*, 685 F. App'x 125, 132 (3d Cir. 2017).

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

For all these reasons, DexCom should be precluded from introducing evidence, testimony, or argument that it took steps to ensure that its representations in ¶H.3 of the SLA were truthful or to ensure that it complied with its obligations under that warranty.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

<u>**DEXCOM'S OPPOSITION TO ABBOTT'S MOTIONS IN LIMINE NO. 3**</u>

As described in DexCom's second motion *in limine*, DexCom's intent and motivations concerning Abbott's alleged breaches of the SLA are irrelevant to the issues at trial, and should be excluded.[9]  Accordingly, Abbott's motion *in limine*, which seeks exclusion of evidence, testimony or argument concerning whether DexCom "took steps to ensure that (1) its representations in ¶H.3 of the SLA were truthful, or (2) it complied with its obligations under that warranty" would be mooted if DexCom's second motion *in limine* is granted.

DexCom's position, as detailed in its motion, is that the parties' "swords" regarding irrelevant intent or motivation evidence should remain firmly in their sheaths.  If, however, DexCom's motion is denied and Abbott is permitted to present evidence concerning DexCom's purported intent, motivations, or willfulness, DexCom should be permitted to respond consistent with the information it disclosed in discovery.  A ruling otherwise would unfairly prejudice DexCom by allowing Abbott to present a one-sided narrative on irrelevant issues while silencing DexCom from offering any response.

None of the authorities cited by Abbott counsel a different result.  Unlike those cases, DexCom has not relied on any attorney advice or otherwise selectively relied on the contents of any privileged information in responding to Abbott's interrogatory asking whether DexCom took steps to ensure its representations in connection with ¶H.3 of the SLA were truthful and whether DexCom took steps to comply with ¶H.3 of the SLA.  In the cases cited by Abbott, privileged information was selectively disclosed in connection with a claim or defense, or the proponent of the contested evidence sought to inappropriately or belatedly assert an advice of counsel defense.

---

[9]   During the parties' meet and confer, DexCom asked Abbott if it would accept a mutual agreement to exclude such evidence from trial as irrelevant.  Abbott refused.

*See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1294 (Fed. Cir. 2023)

(affirming denial of new trial when district court precluded testimony concerning a witness's

opinion on infringement when the defendant "had not permitted [the witness] to testify about this

topic during his deposition" on the basis of attorney-client privilege); *Energy Heating, LLC v.*

*Heat On-The-Fly, LLC*, 889 F.3d 1291 (Fed. Cir. 2018) (upholding district court's exclusion of

testimony "because the attorney-client privilege was asserted during the deposition" of the

witness, and the "last-minute attempt to waive the attorney-client privilege so close to trial in

order to claim an advice of counsel defense [which] was untimely and, in the district court's

assessment, would have prejudiced" the opposing parties); *Pac. Biosciences of Cal., Inc. v.*

*Oxford Nanopore Techs., Inc.*, C.A. No. CV 17-1353-LPS-CJB, 2020 WL 954938, at *1 (D. Del.

Feb. 27, 2020) (excluding evidence relevant to advice of counsel defense when defendant chose

during discovery not to disclose its reliance on advice of counsel); *Princeton Digital Image*

*Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS, 2017 WL 3264068, at *1-2 (D. Del. Aug. 1,

2017) ("In these circumstances, the Court is persuaded that PDIC has put privileged

communications at issue in this litigation by selectively relying on documents or

communications that are privileged attorney-client communications or attorney work product.");

*Mikulan v. Allegheny Cnty.*, No. 15-1007, 2017 WL 2374430, at *6 (W.D. Pa. May 31, 2017)

(motion *in limine* granted precluding defendant from arguing it "did not discriminate against

[plaintiff] based on the withheld legal advice").[10]

---

[10]   For the same reasons, Abbott's cited cases concerning rebuttal of a willful
infringement claim offer no support for its position as in such circumstances selective disclosure
of opinion-of-counsel evidence to rebut a claim of willful infringement requires selective waiver
of privilege. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008)
("Because opinion-of-counsel evidence, along with other factors, may reflect whether the
accused infringer 'knew or should have known' that its actions would cause another to directly

**EXHIBIT 8P**
## ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO

In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, C.A. No. CV 08-309-LPS, 2018 WL 5631531 (D. Del. Oct. 31, 2018), a case Abbott claims is "instructive" (Mot. at 26), the defendant sought to introduce "customer letters – which were drafted by and at the direction of counsel" to rebut the plaintiff's induced infringement claim. *Id.* at *1. The court excluded the letters as "the record lacks linking evidence [due to the defendant's claim of privilege] that would allow a reasonable factfinder to find that [the defendant] subjectively believed in" the substance of the letters and that "importantly, [defendant] chose during discovery not to disclose its reliance on advice of counsel." *Id.* That is not similar to the facts here. DexCom has not asserted an advice of counsel defense and is not relying on any privileged materials regarding its compliance with SLA ¶H.3. Rather, it only seeks to rely on factual information disclosed in discovery if Abbott is permitted to adduce evidence of DexCom's motivations or willfulness in connection with its breach claims. That is entirely appropriate. *See, e.g.*, *Sensormatic Elecs., LLC v. Genetec (USA) Inc.*, C.A. No. 20-760-GBW, 2022 WL 14760185, at *4 (D. Del. Oct. 20, 2022) (assertions about a party's state of mind that do not use "the *actual content* of otherwise privileged attorney-client communications" is not using the privilege as a sword (emphasis added)); *McKee v. PetSmart, Inc.*, 71 F. Supp. 3d 439, 441–42 (D. Del. 2014) ("The court concludes that defendant has not waived the attorney-client privilege by asserting a good faith affirmative defense because defendant has not relied on privileged communications or testimony in support of its defense."); *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[T]he advice of the [the party's] counsel is not placed in

---

infringe, we hold that such evidence remains relevant to the second prong of the intent analysis.").

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

issue, and the privilege is not waived, unless [the party] seeks to limit its liability by describing that advice and by asserting that he relied on that advice.").

In *Micron Tech., Inc. v. Rambus Inc.*, C.A. No. CV 00-792 (SLR), 2007 WL 9771153 (D. Del. Aug. 29, 2007), for example, the defendant asserted the attorney-client privilege in response to interrogatories which called for a legal analysis as to whether the asserted patents infringed the accused products. *Id.* at *7. Relying on the Third Circuit's decision in *Rhone-Poulenc* the court held that this assertion of privilege was not a proper basis to exclude testimony of the defendant's non-lawyers regarding the defendant's belief regarding non-infringement. *Id.* at *7-8. This was because "a claim or defense must rest on the advice of counsel or a party must attempt to prove a claim or defense by disclosing such advice before the privilege can be considered waived." *Id.* (citing *Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 520-521 (E.D. Pa. 1996)).

Abbott's motion should be denied for the further reason that Abbott was not precluded from taking discovery concerning DexCom's actions relating to ¶H.3.



If anyone is using the privilege as a sword and shield, it is Abbott. Abbott is seeking over

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**



This is far more akin to what Abbott is complaining is improper, *i.e.*, suggesting to the jury that it acted in good faith by relying on analyses by counsel while withholding that analyses during discovery.

Abbott's motion, if anything, merely shows that the information at issue is irrelevant. The jury will determine whether DexCom's representations were in fact true. The steps taken by DexCom to ensure compliance with those representations are not relevant to that question.

EXHIBIT 8P
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

**IV.    DEXCOM SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE,
TESTIMONY OR ARGUMENT REGARDING RECALLS OR WITHDRAWALS
OF THE PARTIES' PRODUCTS FROM THE MARKET, INCLUDING
ABBOTT'S BABY FORMULA AND CGM PRODUCTS**

Abbott moves *in limine* to preclude any evidence, testimony, or argument regarding recalls

or withdrawals of the parties' products from the market, including but not limited to Abbott's baby

formula and CGM products, and any legal investigations or legal actions associated with such

recalls.[11] Such evidence has no probative value to this case. For example, evidence that Abbott or

DexCom withdrew a product from the market would not have any "tendency" to make the fact that

Abbott's products are licensed under the SLA "more or less probable than it would be without the

evidence." *See* Fed. R. Evid. 401. And the danger of unfair prejudice from its admission would

substantially outweigh its probative value. Fed. R. Evid. 403.

## ARGUMENT

Abbott's baby formula products are not relevant to any issue in this case. Rather, any

reference to recalls of that product or the associated investigations and legal actions would be

unfairly prejudicial. *See Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1178517, at *2 (D. Del.

Mar. 13, 2019) (unfair prejudice "means an undue tendency to suggest decision on an improper

basis, commonly, though not necessarily, an emotional one."). For example, reference to Abbott's

baby formula products may lead jurors to pass judgment in the case based improperly on an

emotional response to Abbott's handling of an infant formula plant shutdown. *See Olson v. Ford

Motor Co.*, 410 F. Supp. 2d 855, 867 (D.N.D. 2006) ("even if evidence of [the recalls] would be

---

[11] DexCom agreed to a mutual exclusion of references to most CGM recalls and
withdrawals, but insisted that: (1) it should be permitted to reference recall and withdrawal of
Abbott's FreeStyle Navigator product; and (2) it would only agree not to reference Abbott's baby
formula product recall if Abbott agreed "not to reference any product lines outside of the
diabetes care space or its history of or its reputation for delivering healthcare products outside of
the diabetes care space."

EXHIBIT 8P

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

deemed relevant," the Court would exclude such evidence under Rule 403 because its probative value is substantially outweighed by the dangers of unfair prejudice). Thus, any evidence, testimony, or argument regarding recall or withdrawal of Abbott's baby formula from the market is irrelevant, prejudicial, and should be excluded. *See Wolfe v. McNeil-PPC Inc.*, 2012 WL 38914, at *3 (E.D. Pa. Jan. 9, 2012) (granting motion *in limine* to exclude evidence of or reference to recalls of products); *Kane v. Ford Motor Co.*, 450 F.2d 315, 316-317 (3d Cir. 1971) (affirming exclusion of a recall letter describing defects not at issue).

The Court should also preclude evidence, testimony, and argument about the recall and discontinuance of Abbott's FreeStyle Navigator ("Navigator") CGM because it is irrelevant and unduly prejudicial. Courts have excluded such irrelevant evidence in other cases. *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2005 WL 67086, at *1 (D. Del. Jan. 5, 2005) (granting motion *in limine* "to exclude irrelevant evidence concerning governmental investigations of FDA recalls").

Abbott scientists and engineers developed the Navigator in the early 2000s. After the commercial launch, it was realized that the plastic housing near the battery compartment of the Navigator could crack. In April 2009, Abbott issued a recall of devices having such potential issues. Ex.17 at ABTDEL605_00041772. ███████████████████████

██████████

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**



Ex.18 at ABTTX_00018648. Subsequently, Abbott made a business decision—unrelated to the cracked housing—to discontinue the Navigator in the U.S. market, although the Navigator remained for sale outside the U.S. Ex.19, 22:3–23:18; Ex.20, 34:23-35:12, 37:2-38:4.

      Neither the recall of Navigator nor Navigator's discontinuation should play a role at this breach of contract trial. Neither of these events inform what ███████████████████████ ██████████████████████████ Nevertheless, DexCom refuses to let go of its evidence and argument about these events. Below is a list of examples of what DexCom still apparently intends to present at trial about them:

- Ex.21, ¶¶105-118; 143-155, and documents cited therein (arguing that the cracked housing, the recalls, and the discontinuance are related to the obviousness issue).

- Ex.5, ¶271, and documents cited therein (same).

- Ex.22, ¶¶61, 75–84; 114–122, and documents cited therein (same).

- Ex.19, 34:6–48:13 (discussion regarding the cracked housing, the recalls, and the discontinuance of the Navigator in the U.S. market).

- Ex.23, 40:2–9 (same).

- Ex.20, 35:3–42:1 (same).

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

DexCom wants to point to Navigator's cracked housing and recall, and its discontinuation, to argue and suggest to the jury that the claimed inventions of its '452 patent improved CGMs' water-resistance and leak properties. But these types of arguments and suggestions have no place in the current trial, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████. In this four-day breach of license case, the focus of the patent aspects of the case should be on ██████████████████████████████████████████████████████████████

██████ Yet DexCom would have the parties and the jury debate the causes of product recalls, the existence and causes of any differences in the water-resistance and leak properties of CGM products, and whether the presence or absence of DexCom's claimed structures in its '452 patent had anything to do with those differences. That is not what this case is about.

Navigator's plastic housing issues and recalls have no nexus to the asserted patent claims. Their relevance was already a stretch when ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████ Even assuming DexCom comes up with new theories of relevancy in response to this motion, DexCom should be precluded from raising them for the first time at this stage of litigation.

DexCom should also be precluded from introducing evidence, testimony, and argument about recall, cracked housing, and discontinuance of the Navigator because they would unfairly prejudice Abbott. If DexCom raises them in front the jury, Abbott would be forced to explain, *e.g.*, the differences between the plastic housing near the battery compartment and the connector seal

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

and electrical contacts. In addition to wasting judicial and party resources, such irrelevant evidence

would confuse the jurors and distract them from the real issue ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, were DexCom to

introduce this evidence it would be to put Abbott and Abbott's products (based on a Navigator

product not even accused of infringement) under negative light before the jury by creating a false

impression that Abbott products are generally unreliable or unsafe.

    For these reasons, any evidence, testimony, and argument about plastic housing cracks,

recall, or discontinuance of the Navigator—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—should be excluded.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

<u>**DEXCOM'S OPPOSITION TO ABBOTT'S MOTIONS IN LIMINE NO. 4**</u>

Abbott seeks to exclude evidence or argument regarding 1) the withdrawal of the Abbott Navigator from the U.S. market; 2) the recall of the Abbott Navigator that preceded its withdrawal; and 3) the recall of Abbott's baby formula products.  DexCom has separately moved *in limine* to exclude Abbott's arguments that DexCom needed or used Abbott technology for its products.[12]  But should Abbott be permitted to characterize the parties' respective positions at the time of entry into the SLA for other purposes not covered by DexCom's Motion in Limine No. 1, DexCom should be permitted to respond by pointing out that Abbott had no CGM product on the market at the time it entered into the SLA following Abbott's recall and withdrawal of FreeStyle Navigator.  And although DexCom believes that Abbott's baby formula and other non-CGM products are not relevant to any issue in this case, Abbott nevertheless appears to disagree, as it refused to agree that it would not introduce evidence or argument about its products or businesses outside the diabetes care space.

First, Abbott claims that "DexCom wants to point to Navigator's cracked housing and recall, and its discontinuation, to argue and suggest to the jury that the claimed inventions of its '452 patent improved CGMs' water-resistance and leak properties."  (Mot. at 36.)  But DexCom ***does not*** intend to introduce evidence or argument regarding "the existence and causes of any differences in the water-resistance and leak properties of CGM products, and whether the presence or absence of DexCom's claimed structures in its '452 patent had anything to do with those differences."  (Mot. at 36.)[13]

---

[12]   DexCom Motion *In Limine* No. 1.

[13]   Similarly, DexCom does not intend to discuss the "legal investigations or legal actions associated with such recalls."  Mot. at 33.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**



Should the Court deny DexCom's motion *in limine* no. 1 and permit Abbott to make such arguments, DexCom is entitled to respond to those arguments by showing the reality of the parties' respective positions at the time. Namely, DexCom would be entitled to show that, as of 2014 DexCom had successfully released a series of products going back to 2006, whereas Abbott did not even have a CGM product on the U.S. market from 2011 to 2017 because it withdrew its Navigator product from the U.S. market shortly following its broad recall. *See, e.g.*, Abbott Ex. 19, 34:9-14 ██████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ "); *id.* at 23:9-12.

Regardless, DexCom would not seek to introduce evidence or argument concerning the specific details concerning the failures leading to Abbott's Navigator recall or whether that recall is relevant to DexCom's '452 patent. But if Abbott is permitted to characterize the parties' respective bargaining positions at the time, DexCom should not be precluded from referencing the recall and the subsequent "discontinuance of the Navigator." (Mot. at 34-37.) Indeed, Abbott does not even address its relevance to the parties' respective positions in the market at the time the SLA was executed, instead focusing on arguments DexCom has no intention of making.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

Nor does Abbott even attempt to articulate any undue prejudice to Abbott of DexCom's intended arguments. Abbott's claimed prejudice all hinges on having to explain the details of the cracked housing issues in its Navigator and how they relate to the general water-resistance and leak properties of CGM products. But nowhere does Abbott identify any undue prejudice resulting from DexCom generally referencing the Navigator's recall and its withdrawal from the U.S. market. And there is none. The only undue prejudice would be if Abbott was allowed to argue that DexCom was the inferior CGM maker and needed Abbott's patents, while shielding from the jury the fact that it had no product on the market after it had to recall the only one it did have on the market. DexCom should not be precluded from describing the general circumstances of Abbott's Navigator withdrawal from the market, shortly after the widespread recall, as this directly bears on the parties' relative position at the time of the SLA's execution.

None of Abbott's cited authorities support Abbott's requested relief. Only two of the four cited authorities appear to concern recalls in the context of a motion *in limine*, but neither provides any support of substance for Abbott's motion. *Wolfe v. McNeil-PPC Inc.*, 2012 WL 38914, at *3 (E.D. Pa. Jan. 9, 2012) (no explanation of basis for exclusion of recalls); *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2005 WL 67086, at *1 (D. Del. Jan. 5, 2005) (no explanation of basis of exclusion for "evidence concerning governmental investigations of FDA recalls"). Its other two cited authorities did not concern product recalls in any way and are entirely factually distinguishable. *See Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 867 (D.N.D. 2006) (excluding evidence which "failed to show that this incident is substantially similar to the [car] accident" at issue in plaintiff's case where, among other defects, proffered testimony did not include the "make or model year of the vehicle"); *Kane v. Ford Motor Co.*, 450 F.2d 315, 316-317 (3d Cir. 1971) ("Indeed, the letter was irrelevant to

appellant's theory of the case. Appellant contended that an improperly installed brake hose caused the accident. The service letter, however, spoke of the possible improper installation of front brake wheel supports.").

Abbott's decision to recall the Navigator and withdraw from the U.S. CGM market for years prior to the SLA's execution is directly relevant to respond to Abbott's arguments that it was DexCom that needed Abbott's patents to compete in the CGM market.  DexCom should thus not be precluded from offering such evidence or testimony at trial.

Second, Abbott's arguments regarding baby formula recalls are undercut by its refusal to agree not to reference such product lines.  As DexCom told Abbott during the meet and confer process, it agrees that "Abbott's baby formula products are not relevant to any issue in this case." (Mot. at 33.)  Despite this, Abbott would not agree to refrain from referencing its product lines outside diabetes care.  Apparently, Abbott intends to freely reference that it is an old, established company with a widely known reputation for delivering quality healthcare products inside and outside of the diabetes care market in the hopes of trading on the jury's goodwill.  If Abbott does so, DexCom should be permitted to respond by pointing out the problems associated with Abbott's products outside the diabetes care market.  That is only fair.  It is Abbott's choice to make such arguments, which its motion all but concedes are not relevant to the issues in this trial.  The interests of judicial economy and clarity for the jury would counsel that Abbott not open this door.  But Abbott would not agree to refrain from doing so and DexCom should not be prevented from responding in kind.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

V.      **DEXCOM SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE, TESTIMONY OR ARGUMENT THAT THE LAW REQUIRES AN EXPERT TO ASSUME ABBOTT WOULD HAVE PREVAILED IN THE GERMAN LITIGATION**

DexCom has provided expert opinion and advanced arguments that "a liability finding in favor of [Abbott] in this matter" "implie[s]" Abbott would have been "victorious on its license defense" in Germany, Ex.24, ¶55, and that if "[Abbott] prevails on its liability in this case," "there is ███████████ in Germany, Ex.25, 74:15-75:21. DexCom should not be permitted to offer this evidence and argument, which is based on its damages expert's view about what the law requires an expert to assume, rather than expert analysis of the facts. Ex.24, ¶55. Nor should DexCom be permitted to elicit any other testimony suggesting the law requires damages experts to assume that, if Abbott prevails here, the German court would reach the same conclusion. Such evidence not only has no basis in principle or precedent, but it improperly usurps this Court's responsibility to instruct the jury on the law. *See Am. Cruise Lines v. HMS Am. Queen Steamboat*, 2017 WL 3528606, at *6 (D. Del. Aug. 16, 2017). Any evidence, testimony or argument stating that the law requires experts to make this assumption about the outcome of German litigation should be excluded under FRE 402, 403, and 702.

## ARGUMENT

DexCom's breaches of the SLA caused Abbott significant financial harm. This included



German patent proceedings are bifurcated: one court hears infringement, and another body hears validity. D.I. 386 at 3. Infringement courts move

**EXHIBIT 8P**

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

relatively quickly, while validity proceedings lag, often by months or years. *Id.* Absent a stay, the

infringement remedy is an injunction, resulting in a so-called "injunction gap" where the patent's

validity has not been fully assessed and may not be until much later. *Id.*

DexCom nonetheless relies on dubious

legal claims (on top of flawed factual arguments) to attack this clear causal connection.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

But DexCom's position completely ignores the temporal aspect of the German proceedings versus this license trial.  The German trials were scheduled to occur, and in most instances did occur, over a year before the license trial is scheduled to be heard.

DexCom also attempted to elicit testimony from Abbott's damages expert, Christopher Gerardi, that the law requires an expert to assume that Abbott would prevail on its licensing defense *both* in this case *and* in Germany. DexCom's counsel asked ████████████

████████████████████████████████████████████████████

████████████████████████████ Ex.26, 149:12-22. And in its recent summary judgment motion, DexCom blurred the lines between this case and the German action by arguing "Abbott's actual loss damages are based on amounts it alleged incurred to account for the fact that it might lose the German actions—*i.e.*, be found unlicensed[—]" and that "Abbott seeks damages based on a breach of a license even though the damages were incurred based on the assumption that Abbott was not licensed under that license." D.I. 334 at 44. These questions and arguments all rest on the assertion that a damages expert must assume Abbott would prevail on its licensing defense *both* in this case *and* in separate proceedings in a different court in another country.

The Court should not allow DexCom to present its contested legal arguments to the jury through its expert or through cross-examination of Abbott's witnesses. DexCom and Dr. Kennedy do not have any factual basis for their "implied … assumption" that if Abbott prevails on its licensing claims here, it would have prevailed in Germany too. Ex.24, ¶55. Nor is Dr. Kennedy an expert in the German legal system or comparative law qualified to offer an opinion about how a German court would resolve Abbott's licensing claims. Ex.24, ¶¶3-4; Ex.25, 88:7-11. Dr. Kennedy, like DexCom, instead offers an opinion based on his understanding of what ████████

████████████████████████████ an expert must make about the outcome of the

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

German cases. Ex.25, 74:15-75:21; Ex.24, ¶55. Without any factual basis behind those assumptions, DexCom and Dr. Kennedy are simply making contested legal claims and asking the jury to disregard the testimony of Abbott's damages expert because it is inconsistent with the assumptions that DexCom believes an expert is required to make.

Evidence and argument in front of the jury about what an expert must assume about the outcome of a different court proceeding is irrelevant, unduly prejudicial, and beyond the relevant expertise of the witnesses. "[T]he District Court must ensure that an expert does not testify as to the governing law of the case." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). The court in *Berckeley* excluded expert testimony on corporate scienter because it "drew multiple legal conclusions." *Id.* at 216-17. Such testimony, the Third Circuit explained, "is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *Id.* at 217. Courts in this district have similarly excluded expert testimony that offered "a legal opinion that is inadmissible under Rule 702 because it will not assist the Court in resolving a fact issue," "would not assist a trier of fact and exceeds the scope of [the witness's] expertise as an economist." *Proctor & Gamble v. Teva Pharms.*, 2006 WL 2241128, at *1 (D. Del. Aug. 4, 2006). Still other decisions have granted motions *in limine* "to exclude the report and testimony of [an expert] to the extent his expert opinion concerns legal arguments and conclusions" and explained "[t]he Court will decide the ultimate legal issues in this case and any legal opinion FBTS would like to provide the Court should be done through proper briefing, not expert opinion." *Perez v. First Bankers Tr.*, 2015 WL 5722843, at *4 (D.N.J. Sept. 29, 2015). These decisions all reflect the well-established principle that "[t]he Rules of Evidence do not permit expert testimony as to legal conclusions." *Proctor & Gamble*, 2006 WL 2241128, at *1; *M.S. v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d Cir. 2020) ("[A]n expert witness is prohibited from rendering a legal opinion.").

Allowing Dr. Kennedy or DexCom's attorneys to offer their views on the assumptions an expert must make about the outcome of other proceedings is improper for a second, equally important reason: It would usurp this Court's authority to instruct the jury about what the law requires. "Courts should also exclude 'testimony that usurp[s] either the role of the trial judge instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *Capri Sun v. Am. Beverage*, 595 F. Supp. 3d 83, 120-21 (S.D.N.Y. 2022) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)). Here, the evidence and arguments DexCom intends to present about the German litigation would do exactly that by "explain[ing] the law" and attempting to "instruct the jury on the law." *Am. Cruise Lines*, 2017 WL 3528606, at *6 (excluding expert testimony that "impermissibly usurps [the court's] role, which is to instruct the jury on the law."). Abbott believes an instruction on the assumptions an expert should draw about the outcome of the German cases is irrelevant and unnecessary, but if the jury requires guidance on that topic, it should come from the Court.

Making matters worse, DexCom's arguments are legally incorrect. A proper damages analysis must assume Abbott will prevail on its breach claims *in this case*, but does not require assuming the German court would not issue an injunction first or would similarly conclude that Abbott has a license to DexCom's European patents. Parties often include forum selection clauses because they prefer that forum's certainty of process and established caselaw. *See, e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993). At the time Abbott ███████████ ████████, the trial here was scheduled to take place more than a year *after* the original March-May 2022 trial dates in Germany. D.I. 389, Ex.1 ¶¶59-60; *id.*, Ex.10. Abbott thus faced the risk that the German court would reject its license defense and enjoin Abbott's products, with Abbott only much later prevailing on its claims here where the parties agreed to litigate them.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

The Court should therefore preclude DexCom from presenting to the jury its flawed legal

arguments and unsupported assumptions about the outcome of the German litigation.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

<u>**DEXCOM'S OPPOSITION TO ABBOTT'S MOTIONS IN LIMINE NO. 5**</u>

   Abbott's motion *in limine* No. 5 seeks to preclude DexCom from introducing evidence or argument that the law requires an expert to assume Abbott would have prevailed in the German litigation. The only evidence Abbott points to as purportedly falling in this bucket is a single sentence in Dr. Kennedy's report that Abbott mischaracterizes to cast him as offering legal opinions. But a review of Dr. Kennedy's rebuttal report makes clear he is not offering any legal opinions and neither he nor DexCom intend to offer evidence or argument about what the law requires.

<div style="background:black;height:200px;"></div>

the German system is sometimes described as having an injunction gap because "[i]nfringement courts move relatively quickly, while validity proceedings lag, often by months or years" and "the infringement remedy is an injunction, resulting in a so-called 'injunction gap' where the patent's validity has not been fully assessed and may not be until much later." (Mot. at 42-43). But this "injunction gap" is immaterial to Abbott's damages claims because, in Germany, license defenses are resolved in the infringement case, not the invalidity case. D.I. 333-21 [Ann Rpt.] ¶72.

   Accordingly, in response to Mr. Gerardi's opinions, Dr. Kennedy correctly opined that Mr. Gerardi's "injunction gap" theory is illogical. *See* Abbott Ex. 24 [Kennedy Reb. Rpt.] ¶¶48-57. Abbott's motion focuses entirely on a single sentence in Dr. Kennedy's rebuttal report in a

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

section entitled ████████████████████████████████████████████████████

(*Id.* §V(B)(i)) and under the sub-heading entitled ████████████████████████

████████████████████████████████████████ *Id.* §V(B)(i)(a).  Reading the

entirety of the paragraph from which Abbott plucks a single sentence makes clear Dr. Kennedy is

explaining that the injunction gap premise is illogical because, based on his understanding from

DexCom's German law expert, Abbott's license defense in Germany is adjudicated during the

infringement proceeding, not during any later validity proceeding.  Abbott Ex. 24 [Kennedy Reb.

Rpt.] ¶55.  Thus, Dr. Kennedy opines that ████████████████████████████████████

████████████████████████ *Id.*

Abbott does not dispute that Mr. Gerardi's actual loss damages are premised on this

assumption that there was an unjustified threat of an injunction gap risk.  If Mr. Gerardi may

present his opinions and this underlying assumption to the jury, DexCom should be permitted to

critique the merits of it.  Contrary to Abbott's rhetoric, nowhere does Dr. Kennedy (or any

DexCom expert) opine that "a proper damages analysis ***must*** assume not only that Abbott will

prevail in this case, but also that the German court would similarly have concluded Abbott has a

license to DexCom's European patents."  (Mot. at 43 (emphasis in original).)  His opinions do

not "improperly usurp this Court's responsibility to instruct the jury on the law."  (Mot. at 42.)[14]

Dr. Kennedy's opinions are merely offered in rebuttal to the opinions set forth in Gerardi's

opening report, which was littered with opinions about the German legal system and how it

---

[14]      As Dr. Kennedy testified at deposition (testimony right before the selective quote
Abbott's motion highlights), ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████  Abbott Ex. 25 at 83:5-14.

EXHIBIT 8P

**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

functioned.[15]  It was Abbott's choice to  ███████████████████ Abbott should not be

permitted to present this damages theory to the jury, ███████████████

██████████████ but silence DexCom from critiquing the flaws in its theory.

Moreover, to the extent Abbott thought Dr. Kennedy was offering impermissible legal

opinions that did not satisfy Rule 702 and *Daubert*, the time to raise that was months ago when

motions to exclude expert testimony were due.  But Abbott filed no such motion, presumably

because Abbott knows Dr. Kennedy has not offered any improper legal opinions.  And, to the

extent Abbott had any valid criticisms of Dr. Kennedy's rebuttal opinions, or the opinions he

relies on, it could have raised them in its experts' reply reports.  But tellingly, Abbott offered no

rebuttal to Dr. Ann's opinion that license defenses in Germany are heard during the infringement

proceedings.  D.I. 333-21, ¶72.[16]  And all Mr. Gerardi offered in response to Dr. Kennedy's

opinion that no threat of an injunction gap existed was an opinion that Abbott could not assume

in the "actual world" that it would prevail on its license defense.  D.I. 333-2, ¶16.[17]

---

[15]     *See, e.g.*, D.I. 333-1, ¶57 ("I understand that German proceedings are bifurcated
into two parts; one court hears infringement cases, and another body hears validity challenges.
Infringement courts move relatively quickly, while the validity proceedings lag, often by months
or potentially years. During the infringement case, if liability is found, the court issues an
injunction as a remedy absent a stay.  As a result, there is a so-called 'injunction gap,' because
the patent's validity has not been fully assessed and may not be until much later."); *id.*, ¶59
█████████████████████████████████████████████████████████████████
█████████████ ).

[16]     In fact, Mr. Gerardi admitted he was ████████████████████
███████ Ex. 12 [Gerardi Dep. Tr.] at 151.

[17]     Contrary to Abbott's assertion that "most" of the German trials occurred "over a year
before the license trial is scheduled to be heard," (Mot. at 44), in fact most of the German
proceedings have not occurred.  No hearing has taken place regarding the EP 866 and EP 539
patents, and even the first instance hearings for EP 159 and EP 224 are not yet completed.

**EXHIBIT 8P**
**ABBOTT'S MOTIONS IN LIMINE AND DEXCOM'S OPPOSITIONS THERETO**

Ultimately, Abbott's motion *in limine* No. 5 is simply an eleventh-hour attempt to salvage its flawed damages case by misrepresenting Dr. Kennedy's opinions. Perhaps that is because while Abbott's actual loss damages theory never made any sense, in light of the Court's summary judgment ruling it has become even more fatally flawed. As set forth in DexCom's motion *in limine* No. 4, because there is no longer any assertion that EP 866 is licensed, DexCom was entitled to assert that patent against Abbott in Germany. Thus, the claimed threat of an injunction gap risk cannot be the result of DexCom's alleged breaches, but rather the fact that Abbott may be found to infringe an undisputedly unlicensed patent.[18] Yet, notwithstanding this reality, Abbott continues to incorrectly claim that DexCom's breaches harmed it by the "threat of an unjustified injunction," and that ███████████████████████████████████ ████████████████████████████████████ (Mot. at 42-43.) That is wrong.

Abbott may not like the current state of its damages theory, or the strength of DexCom's rebuttal opinions, but that is not a basis to exclude proper rebuttal opinions through a motion *in limine*. DexCom has no intention of offering evidence or argument from Dr. Kennedy about "what the law requires" or to otherwise "usurp[] this Court's responsibility to instruct the jury on the law. (Mot. at 42.) However, Abbott's motion appears to go beyond that, seeking to exclude proper rebuttal opinions it never challenged. That request should be denied.

---

Indeed, as Abbott's counsel told this Court, "we have courts abroad waiting for the ruling here." Ex. 13 [02.07.2023 Hr'g Tr.] at 48.

[18]   Moreover, in light of the Court's ruling that it was not a breach of the forum selection clause to sue in Germany on EP patents (D.I. 483 at 3), filing a lawsuit in Germany, a country with a bifurcated system, is not in of itself a breach.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DEXCOM, INC.,

               Plaintiff,

v.

ABBOTT DIABETES CARE INC., and
ABBOTT DIABETES CARE SALES CORP.

           Defendants.

Civil Action No. 22-605 (KAJ)

(CONSOLIDATED)

ABBOTT DIABETES CARE INC.,

               Plaintiff,

v.

DEXCOM, INC.,

           Defendant.

Civil Action No. 21-1699 (KAJ)

**EXHIBIT 9 TO PROPOSED FINAL PRETRIAL ORDER**
**LIST OF JOINT EXHIBITS**

DexCom v. Abbott
Joint Trial Exhibit List
Case No. 1:22-cv-00605-KAJ

**EXHIBIT 9**
**LIST OF JOINT EXHIBITS**

| JTX No. | Doc Date | Beg Bates/Dkt. No. | End Bates/Dkt. No. | Doc Description |
|---------|----------|--------------------|--------------------|-----------------|
| 1 | 7/2/2014 | DXCMDEL00279506 | DXCMDEL00279541 | Settlement & License Agreement btw Abbott Diabetes Care, Inc. and DexCom, Inc. |
| 2 | 3/31/2021 | ABTDEL605_00004526 | ABTDEL605_00004655 | European Patent Specification No. EP 2 829 224 B1 Brister |
| 3 | 4/14/2021 | ABTDEL605_00004656 | ABTDEL605_00004710 | European Patent Specification No. EP 2 914 159 B1 Bhavaraju |
| 4 | 11/18/2020 | ABTDEL605_00004711 | ABTDEL605_00004782 | European Patent Specification No. EP 3 435 866 B1 Wedekind |
| 5 | 6/9/2021 | ABTDEL605_00004783 | ABTDEL605_00004835 | European Patent Specification No. EP 3 782 539 B1 Bhavaraju |
| 6 | 7/7/2020 | ABTDEL605_00079263 | ABTDEL605_00079320 | U.S. Patent No. 10,702,193 B2 Simpson |
| 7 | 7/7/2020 | N/A | N/A | U.S. Patent No. 10,702,215 B2 Hampapuram |
| 8 | 4/20/2021 | N/A | N/A | U.S. Patent No. 10,980,452 B2 Simpson |
| 9 | 5/4/2021 | THIESSEN00005575 | THIESSEN00005740 | U.S. Patent No. 10,993,642 B2 Simpson |
| 10 | 5/11/2021 | ABTDEL605_00079672 | ABTDEL605_00079810 | U.S. Patent No. 11,000,213 B2 Kamath |