## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEXCOM, INC., | |
| Plaintiff, | |
| v. | C.A. No. 22-605 (KAJ) |
| ABBOTT DIABETES CARE INC., and ABBOTT DIABETES CARE SALES CORP. | (CONSOLIDATED) |
| Defendants. | |
| ABBOTT DIABETES CARE INC., | |
| Plaintiff, | |
| v. | C.A. No. 21-1699 (KAJ) |
| DEXCOM, INC., | |
| Defendant. | |

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

1    GENERAL .................................................................................................................3

   1.1    INTRODUCTION ...........................................................................................3

   1.2    EVIDENCE DEFINED ....................................................................................4

   1.3    CONSIDERATION OF EVIDENCE ...............................................................5

   1.4    CREDIBILITY OF WITNESSES....................................................................6

   1.5    EXPERT WITNESSES .....................................................................................7

   1.6    DEPOSITION TESTIMONY...........................................................................8

   1.7    STIPULATIONS OF FACT .............................................................................9

   1.8    THE PARTIES AND THEIR CONTENTIONS ...........................................10

   1.9    BURDENS OF PROOF...................................................................................11

2    THE CONTRACT CLAIMS...................................................................................12

   2.1    CONTRACT DEFINED .................................................................................12

   2.2    RESOLVING CONTRACTUAL AMBIGUITY ...........................................13

   2.3    ABBOTT'S LICENSE DEFENSE AND CLAIM FOR BREACH OF THE LICENSE GRANT...............................................................................14

   2.4    The Parties' Respective Claims For Breach Of Dispute Resolution Clauses ............................................................................................................15

3    THE ALLEGEDLY LICENSED PATENT CLAIMS ...........................................16

   3.1    PATENT CLAIMS..........................................................................................16

   3.2    INDEPENDENT AND DEPENDENT CLAIMS...........................................18

   3.3    THE "FULLY SUPPORTED AND ENABLED" STANDARD.....................19

   3.4    LEVEL OF ORDINARY SKILL ...................................................................22

4    DELIBERATIONS AND VERDICT.......................................................................23

## 1    GENERAL

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you on the law that you must follow in deciding this case.

You will have a copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case, and your juror binder.

## 1.2    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

## 1.3   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.4   CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testified to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness was contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony was when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

## 1.5    EXPERT WITNESSES

You have heard testimony containing opinions from a number of expert witnesses.  In weighing this opinion testimony, you may consider their qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinions of the expert witnesses should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinions of the expert witnesses, you may consider any bias that they may have, including any bias that may arise from evidence that they have been or will be paid for reviewing the case and testifying.

## 1.6   DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were played by video. The deposition testimony may have been edited to exclude irrelevant testimony, as the parties had only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the depositions may appear to have been edited. This deposition testimony must be given the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 1.7     STIPULATIONS OF FACT

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.  You must therefore treat these facts as having been proved for the purposes of this case.

## 1.8    THE PARTIES AND THEIR CONTENTIONS

I will now review for you the positions of the parties that you will have to consider in reaching your verdict.

Abbott contends that it has a license to DexCom's patent claims that protects the activities of Abbott and its affiliates. Abbott contends that this license is in the Settlement and License Agreement, which we have referred to as the "SLA" or the "Agreement."

Abbott claims that DexCom breached the Settlement and License Agreement in a number of ways, including:

1. by obtaining certain patents that DexCom agreed not to obtain,

2. by initiating and maintaining a lawsuit accusing Abbott of patent infringement for patent claims that Abbott contends were licensed under the SLA, and

3. by failing to engage in the dispute resolution process agreed to in the SLA.

Abbott also seeks a determination that the scope of the SLA's license grant includes the DexCom patent claims that you will be asked to address, which I will simply refer to as the "DexCom patent claims."

DexCom denies these claims.  DexCom also contends that Abbott breached the SLA's dispute resolution clause.

Abbott denies DexCom's allegation.

You will be asked to determine these issues according to instructions I will give you in a moment.

## 1.9    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a contract case such as this, each party must prove its claims by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. To put it differently, if you were to put the parties' evidence relating to a particular breach on opposite sides of a scale, the evidence supporting the assertions of the party claiming the breach would have to make the scale tip somewhat to that party's side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not either party has met its "more likely than not" burden of proof.

## 2      THE CONTRACT CLAIMS

### 2.1      CONTRACT DEFINED

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.

The SLA is a contract.

## 2.2    RESOLVING CONTRACTUAL AMBIGUITY

I have determined that the following term of the SLA is ambiguous and disputed:

- "ADC Products"

If the ambiguous provision is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, then the first interpretation must be preferred. You should avoid adopting an unreasonable interpretation that produces an absurd result or one that no reasonable person would have accepted when entering the contract, unless you find that this was the parties' intent.

To determine the parties' intent regarding the ambiguous provision, you should look to the construction given to the provision by the parties as shown through their conduct during the period after the contract allegedly became effective and before the institution of this lawsuit. Subjective understandings of a party to a contract which are not communicated to the other party are irrelevant unless otherwise known to the other party or unless they should have been known to the other party.

You may consider the overt statements and acts of the parties, the business context of the agreement, prior dealings between the parties, and business custom and usage in the industry. You may consider this evidence to interpret ambiguous contract language. You are only to use these principles to resolve the party's dispute as to "ADC Products."

All other provisions at issue in this case are unambiguous and you must not consider any of these factors in evaluating any other issue, such as determining breach or whether patents are licensed. I will instruct you as to the meaning of some of these unambiguous provisions in these instructions.

## 2.3 ABBOTT'S LICENSE DEFENSE AND CLAIM FOR BREACH OF THE LICENSE GRANT

Abbott contends that it has a license to DexCom's patent claims that either meet the definition of "DexCom Licensed Patents" in ¶ A.13 of the SLA, or were obtained in breach of the warranty in ¶ H.3 of the SLA, that protects it from DexCom's claims of infringement. Abbott also contends that DexCom breached that license by suing it for infringement of those claims.

¶ C.2 of the SLA says that "subject to ADC's material compliance with the terms and conditions of this Agreement, DexCom hereby grants ADC a royalty-free, worldwide, non-exclusive, non-sublicensable license under DexCom Licensed Patents to make, have made, use, offer for sale, sell, distribute, import, and have imported ADC Products." In addition, ¶ H.3 of the SLA says that, if DexCom obtains a patent claim in breach of the warranty in that provision, Abbott shall be "deemed licensed to such claim on a royalty-free, non-exclusive and non-sublicensable basis (*i.e.*, consistent with Paragraph C.2 of the Agreement)."

Together, these clauses mean that Abbott has a royalty-free, non-exclusive and non-sublicensable license under any patent claim that either meets the definition of "DexCom Licensed Patents" in ¶ A.13 of the SLA, or was obtained in breach of the warranty in ¶ H.3 of the SLA, to make, have made, use, offer for sale, sell, distribute, import, and have imported, any products that meet the definition of "ADC Products" in ¶ A.3 of the SLA.

It will be up to you to determine if any or all of DexCom's patent claims are licensed to Abbott because they fall within the definition of "DexCom Licensed Patents" in ¶ A.13 of the SLA or were obtained in breach of the warranty in ¶ H.3 of the SLA, and whether DexCom breached the license by suing Abbott for infringement of any such licensed claims.

**2.4     The Parties' Respective Claims For Breach Of Dispute Resolution Clauses**

It will also be up to you to determine if each party breached the dispute resolution clause in ¶ J.1 of the SLA.  The procedure specified in ¶ J.1 applies in the event a dispute "arise[s] from, under or relating to this Agreement."

## 3      THE ALLEGEDLY LICENSED PATENT CLAIMS

### 3.1     PATENT CLAIMS

You need to understand the role of patent "claims." The patent claims are the numbered

sentences at the end of each patent. The claims are important because it is the words of the claims

that define what a patent covers. The figures and text in the rest of the patent provide a description

and/or examples of the invention and provide a context for the claims, but it is the claims that

define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on

what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each

claim sets forth its requirements in a single sentence. The requirements of a claim are often referred

to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim- by-claim.

You will first need to understand what each claim covers to resolve some of the questions

presented to you. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to provide definitions of terms of the claims and it is your

role to apply those definitions of the terms to the issues that you are asked to decide in this case.

You must accept the definitions of these words in the claims that I give you as being correct. It is

your job to take these definitions and apply them to the issues that you are deciding.

I will now tell you the meanings of the following words and groups of words from the

claims of the patents:

| Patent | Term | Definition |
|--------|------|------------|
| '215 | "second function" | "function that provides a predictive alert/alarm" |
| '452 | "durometer hardness" | "Shore hardness, in accordance with ASTM D2240" |

These definitions also appear in your jury binder.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take any definition of the language of the claims I have given you as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as whether a claim in one of DexCom's asserted patents is fully supported and enabled by a pre-2005 DexCom patent or patent application, and therefore licensed to Abbott. These issues are yours to decide.

**3.2    INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

Other claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.

## 3.3   THE "FULLY SUPPORTED AND ENABLED" STANDARD

Abbott contends that the patent claims asserted by DexCom against it are licensed under either Section A.13(c)(i) or H.3(i) of the SLA because the claims are fully supported and enabled by a pre-2005 DexCom patent or patent application.

The SLA's "fully supported and enabled" standard invokes the U.S. legal standard for written description and enablement.

I will first describe the written description requirement.

The written description requirement is met for a given claim if the description in at least one pre-2005 DexCom patent or patent application is sufficient to show that the inventor was in possession of the full scope of the claimed invention in that claim. Abbott must establish the written description requirement by a preponderance of the evidence.

In deciding whether the pre-2005 DexCom patent or patent application satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of January 1, 2005. The specification of the pre-2005 DexCom patent or patent application must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the claim's effective filing date would have understood that the element is necessarily present in what the specification of the pre-2005 DexCom patent or patent application discloses. It is not sufficient that the specification of the pre-2005 DexCom patent or patent application discloses only enough to make the invention in the later claim obvious to the person having ordinary skill.

The written description of the pre-2005 DexCom patent or patent application does not have to be in the exact words of the later claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the specification, or

19

disclosure, of the pre-2005 DexCom patent or patent application. Drawings alone may provide a "written description" of an invention. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

I will next describe the enablement requirement.

To succeed in showing that an asserted claim is "enabled" by a pre-2005 DexCom patent or patent application, Abbott must show by a preponderance of the evidence that the specification, or disclosure, of the pre-2005 DexCom patent or patent application contains a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the later patent claim to make and use the full scope of the claimed invention in that claim as of January 1, 2005 without undue experimentation.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)      the time and cost of any necessary experimentation;

(2)      how routine any necessary experimentation is in the field of continuous glucose monitoring;

20

(3)     whether the pre-2005 DexCom patent or patent application discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the pre-2005 DexCom patent or patent application;

(5)     the nature and predictability of the field of continuous glucose monitoring;

(6)     the level of ordinary skill in the field of continuous glucose monitoring; and

(7)     the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of the claimed invention and the state of the art at the time of the effective filing date of the claim, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention. Enablement does not require that a patent disclosure enable one of ordinary skill in the art to make and use a commercially viable embodiment.

The relevant date for determining if an asserted claim is fully supported and enabled by a pre-2005 DexCom patent or patent application is January 1, 2005.

**3.4    LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of continuous glucose monitoring is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor(s) and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

**4 DELIBERATIONS AND VERDICT**

When you retire to the jury room to deliberate, you may take with you these instructions, your juror binder, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

23

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You also must not use your electronic devices to communicate with anyone about the case, or to conduct any research about this case until I accept your verdict – including through electronic messaging or social media. You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then

24

return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.