IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-605 (KAJ) |
| | ) | CONSOLIDATED |
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| ABBOTT DIABETES CARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1699 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ABBOTT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO COMPEL SPECIFIC PERFORMANCE OF THE PARTIES' SETTLEMENT AND LICENSE AGREEMENT, OR IN THE ALTERNATIVE FOR A PERMANENT INJUNCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)

OF COUNSEL:

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

Amanda J. Hollis
Gregory B. Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Jason M. Wilcox P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 389-5000

Leland G. Hansen
James M. Hafertepe
Sharon A. Hwang
Michael J. Carrozza
Manuela Cabal
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

September 8, 2023

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 4

STATEMENT OF FACTS & NATURE AND STAGE OF PROCEEDINGS............................. 5

SUMMARY OF ARGUMENT ........................................................................................... 7

LEGAL STANDARDS ..................................................................................................... 7

ARGUMENT .................................................................................................................. 8

      A.     The SLA Is A Valid Contract, Which Abbott Is Ready, Willing, And Able To Perform .......................................................................................... 9

      B.     The Balance Of Equities Weighs Heavily In Favor Of Abbott's Request For Specific Performance ........................................................................ 11

      C.     Abbott Has No Adequate Legal Remedy For DexCom's Breaches Of The SLA ............................................................................................... 14

      D.     Abbott's Proposed Order For Specific Performance Is Appropriately Tailored ..................................................................................... 15

      E.     In the Alternative, A Permanent Injunction Should Be Granted .......................... 17

CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Healthcare Admin. Svs., Inc. v. Aizen*,
  285 A.3d 461 (Del. Ch. 2022) .................................................................................. 11

*Cox Commc'ns, Inc. v. T-Mobile US, Inc.*,
  273 A.3d 752 (Del. 2022) ........................................................................................ 6

*Ctr. for Investigative Reporting v. Se. Pennsylvania Trans. Auth.*,
  975 F.3d 300 (3d Cir. 2020) .................................................................................... 14

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ............................................................................................ 4, 14

*Gildor v. Optical Sols., Inc.*,
  C.A. No. 1416-N, 2006 WL 4782348 (Del. Ch. June 5, 2006) .............................. 11

*Hastings Funeral Home, Inc. v. Hastings*,
  C.A. No. 2021-0373, 2022 WL 16921785 (Del. Ch. Nov. 14, 2022) .................. 8, 9

*Hemstreet v. Spiegel, Inc.*,
  851 F.2d 348 (Fed. Cir. 1988) ................................................................................ 15

*Level 4 Yoga, LLC v. CorePower Yoga, LLC*,
  2022 WL 601862 (Del. Ch. Mar. 1, 2022) .............................................................. 5

*Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*,
  67 A.3d 373 (Del. 2013) .......................................................................................... 5

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ............................................................................. 5, 6, 8

*Paul Elton, LLC v. Rommel Delaware, LLC*,
  No. 2019-0750, 2020 WL 2203708 (Del. Ch. May 7, 2020) ................................... 5

*Snow Phipps Grp., LLC v. KCAKE Acquisition, Inc.*,
  C.A. No. 2020-282, 2021 WL 1714202 (Del. Ch. Apr. 30, 2021) ..................... 5, 12

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*,
  920 F.3d 777 (Fed. Cir. 2019) ................................................................................ 14

*Walton v. Beale*,
  C.A. No. 19749, 2006 WL 265489 (Del. Ch. Jan. 30, 2006) ................................... 8

**Statutes**

35 U.S.C. § 286 ................................................................................................................15

**Other Authorities**

*Restatement (Second) of Contracts* § 358(1) ................................................................12

## INTRODUCTION

During this litigation, DexCom has been told repeatedly that it violated multiple provisions of the Settlement and License Agreement ("SLA," JTX-1[1]) between Abbott and DexCom. This Court ruled on summary judgment that DexCom violated the forum selection clause (JTX-1 (SLA) ¶ J.4) when it filed its patent infringement lawsuit in the Western District of Texas. (D.I. 483 at 1-3.) The jury found that DexCom breached both DexCom's warranty that it would not obtain certain patent claims (JTX-1 (SLA) ¶ H.3) and the SLA's dispute resolution clause (*id.* ¶ J.1). (D.I. 563 at 3.) And the jury found that the FreeStyle Libre technology DexCom accused of infringement was licensed "ADC Products" technology under the SLA (JTX-1 (SLA) ¶A.3). (D.I. 563 at 3.) Nonetheless, DexCom continues to insist that it can assert its patents in litigation against Abbott's licensed technology without first following the SLA's forum selection and dispute resolution procedures. Without an order from this Court requiring specific performance, DexCom will continue to violate the SLA.

All of the requirements for ordering specific performance exist here. There can be no dispute that a valid contract exists, and that Abbott has performed and is ready, willing, and able to perform its obligations under the SLA. Specific performance of the SLA's forum selection and dispute resolution clauses would not cause greater harm to DexCom than it would prevent harm to Abbott. And Abbott has no adequate legal remedy for DexCom's breach of the forum selection and dispute resolution clauses, despite the fact it has suffered monetary damage from those breaches. The Court previously ruled that Abbott cannot recover any attorneys' fees it incurred due to DexCom's breaches of those clauses. If there were any doubt that specific performance is

---

[1]     The exhibits and trial exhibits cited herein are attached to the Declaration of Jason Wilcox in Support of Abbott's Post-Trial Motions concurrently-filed with this brief.

appropriate here, the SLA includes a "Specific Performance" clause under which Abbott is "entitled to seek to compel specific performance of the obligations of [DexCom] under this Agreement."  (JTX-1 (SLA) ¶ J.3.)

The Court cannot turn back time and give Abbott the rights it negotiated for that could have avoided DexCom's Texas suit.  But it can enforce Abbott's rights under the SLA, including specifically the forum selection and dispute resolution clauses.  Absent such an order, DexCom has the ability to continue to willfully disregard the promises it made in the SLA without consequence.  An order for specific performance is the only equitable way to ensure that Abbott gets at least some of the benefits of its bargain.

<u>**STATEMENT OF FACTS & NATURE AND STAGE OF PROCEEDINGS**</u>

In 2014, Abbott and DexCom had been engaged in patent litigation for nine years, with three separate patent litigation lawsuits between the parties that were consolidated in this District.  (JTX-1 (SLA) at 1.)  On July 2, 2014, the parties entered into the SLA in order to resolve that litigation.  (*Id.* at 1, 29-30.)

Among other promises the parties made to each other in the SLA, the parties agreed to Section J.  In that section, the parties agreed to follow a specified dispute resolution procedure for "any dispute(s) aris[ing] from, under or relating to this Agreement."  (*Id.* ¶ J.1.)  They further agreed that this District "shall have exclusive jurisdiction over any dispute arising from or under or relating to this Agreement" (*id.* ¶ J.4) and that either party "shall be entitled to seek to compel specific performance of the obligations of the other Party under this Agreement" (*id.* ¶ J.3).  The parties also agreed to a "covenant period" lasting from the SLA's effective date through March 31, 2021, during which the parties covenanted not to sue each other on the terms stated in the SLA.  (*Id.* ¶¶ A.3, A.11 A.14, D.1-4.)

On June 30, 2021—just three months after the covenant not to sue expired—DexCom sued Abbott in the Western District of Texas, alleging Abbott infringed five DexCom patents.  (D.I. 1 ¶¶ 2, 10.)  DexCom did not follow the SLA's dispute resolution procedures before filing suit in Texas and refused Abbott's repeated requests to engage in the dispute resolution process.  (*See* D.I. 324 at 4; D.I. 295 ¶¶168-178.)  Abbott moved to transfer the case from the Western District of Texas to Delaware, which was granted on May 5, 2022.  (D.I. 105.)  The Texas court held that the lawsuit "is likely covered by the SLA, triggering application of the [forum selection clause]." (*Id.* at 9.)

This Court agreed with the Texas court, granting summary judgment that DexCom breached the SLA's forum selection clause by filing suit in Texas rather than Delaware.  (D.I. 483 at 1-3.)  The Court rejected DexCom's argument that there was no dispute "arising from or under or relating to" the SLA when it filed its infringement action.  (*Id.* at 2.)  It agreed with Abbott that "[t]he lawsuit was a violation of the SLA's forum selection clause the moment it was filed in Texas."  (*Id.*)  It was unpersuaded by DexCom's arguments that the forum selection and dispute resolution clauses were not triggered before Abbott raised license arguments or defenses to DexCom's infringement action, or that the asserted claims were not licensed under the SLA.  (*Id.*)

Other license issues in this consolidated breach of contract and patent infringement action were tried to a jury in July 2023.  The jury found that DexCom breached the dispute resolution clause in the SLA by filing patent infringement claims without following the agreed-upon dispute resolution procedure, and breached DexCom's warranty that it would not obtain patent claims by obtaining issuance of claim 1 of U.S. Patent No. 10,702,215 ("the '215 patent").  (D.I. 562 at 3.)

In a related case in this court, DexCom has again asserted patents that are licensed under the SLA, including a parent of the '215 patent (U.S. Patent No. 9,119,528) without first complying

with the mandatory dispute resolution procedures.  (C.A. No. 23-239, D.I. 15 ¶¶22-120; C.A. No. 23-239, D.I. 25 ¶¶ 192-198; Ex. 2 (7/28/23 Ltr. D. MacDonald to DexCom Legal) at 2.)

## SUMMARY OF ARGUMENT

1.      All of the requirements for an order for specific performance are met.  There is no dispute that the SLA is a valid contract, and Abbott has shown with clear and convincing evidence that it is ready, willing, and able to perform its obligations under the contract.

2.      The balance of equities weighs in favor of granting Abbott's request for specific performance, because Abbott has suffered and will continue to suffer harm due to DexCom's breach of the forum selection and dispute resolution clauses, whereas an order of specific performance will not cause DexCom any harm.

3.      The SLA entitles a party to seek to compel specific performance because money damages may not be adequate for the other party's breach, and Abbott has no legal remedy for DexCom's breaches of the SLA's forum selection and dispute resolution clauses.

4.      In the alternative to specific performance, the Court should grant a permanent injunction enjoining DexCom from breaching the SLA's forum selection and dispute resolution clauses because all of the factors courts consider support the issuance of a permanent injunction here: (1) Abbott "has suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) considering "the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) the "public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## LEGAL STANDARDS

The SLA and the "performance, enforcement, breach, or termination [t]hereof shall be construed, governed, and interpreted in accordance with the laws of the State of Delaware and the

United States of America."  (JTX-1 (SLA) ¶ K.7.)   In Delaware, "[a] party seeking specific performance must establish that (1) a valid contract exists, (2) [the party] is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).   The party seeking specific performance "must prove by clear and convincing evidence that [it] is entitled to specific performance and that [it] has no adequate legal remedy."  *Id.*   Specific performance is available to enforce forum selection and dispute resolution clauses.  *See, e.g., Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 386 (Del. 2013) (party was "entitled to equitable relief by having the forum selection clause specifically enforced"); *Paul Elton, LLC v. Rommel Delaware, LLC*, C.A. No. 2019-0750, 2020 WL 2203708, at *9 (Del. Ch. May 7, 2020) (complaint "states a claim for specific performance" of dispute resolution clause).  Delaware courts have "not hesitated to order specific performance" in certain cases, "particularly where sophisticated parties represented by sophisticated counsel stipulate that specific performance would be an appropriate remedy in the event of breach."  *Snow Phipps Grp., LLC v. KCAKE Acquisition, Inc.*, C.A. No. 2020-282, 2021 WL 1714202, at *51 (Del. Ch. Apr. 30, 2021); *see also Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *30 (Del. Ch. Mar. 1, 2022) (same) (quoting *Snow Phipps*).

## ARGUMENT

Abbott is entitled to specific performance of the SLA and its forum selection and dispute resolution clauses.  Clear and convincing evidence shows that the elements necessary for specific performance are met.  And the SLA itself—negotiated by sophisticated parties with sophisticated counsel—states the parties are "entitled to seek to compel specific performance of the obligations of the other Party" under that agreement.  (JTX-1 (SLA) ¶ J.3.)  Ordering specific performance will allow Abbott to enjoy at least some of the benefits of the agreed dispute-resolution procedures,

as well as the forum selection requirement, while ensuring that DexCom can no longer ignore or sidestep its contractual obligations.

> **A.    The SLA Is A Valid Contract, Which Abbott Is Ready, Willing, And Able To Perform**

At no point in this hard-fought litigation has there been any question or argument raised about whether the SLA is a valid contract.  Indeed, it meets all the requirements for a valid contract.  "[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."  *Osborn*, 991 A.2d at 1158.  "Consideration requires that each party to a contract convey a benefit or incur a legal detriment, such that the exchange is 'bargained for'."  *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 764 (Del. 2022).  Abbott and DexCom intended that the SLA bind them, as they agreed to a representation and warranty that the SLA "shall constitute a legal, valid, and binding obligation enforceable against [the party] in accordance with its terms."  (JTX-1 (SLA) ¶ H.1.)  The terms of the contract are sufficiently definite—particularly the forum selection and dispute resolution clauses—as evidenced by this litigation between the parties and the Court's jury instruction stating that the only "ambiguous and disputed" term of the SLA is the term "ADC Products."  (D.I. 561 at 13.)  And the parties exchanged legal consideration for the SLA, as they each "grant[ed] each other the limited rights described in" the SLA in order "to resolve their patent disputes" existing at the time they entered into the SLA and "avoid the inconvenience, uncertainty, and expense of litigation."  (JTX-1 (SLA) at Recitals.)

Nor is there any question that Abbott is ready, willing, and able to perform its obligations under the SLA.  For example, the dispute resolution clause requires that before filing suit for "any dispute(s) aris[ing] from, under or relating to" the SLA, the parties engage in a process in which they "shall discuss and negotiate an expeditious resolution of the dispute in good faith."  (JTX-1

(SLA) ¶ J.1.)  The jury found that DexCom breached this clause but Abbott did not, demonstrating that Abbott is ready, willing, and able to perform under the SLA.  Even DexCom agrees Abbott is ready, willing, and able to perform its SLA obligations, as Steven Pacelli, DexCom's corporate representative on the topic, confirmed that he has "no reason to think" Abbott did not "live[] up to its promises under the SLA." (D.I. 577 at 715:3-16.).

Moreover, as far back as September 2021, Abbott informed DexCom of its willingness to engage in the SLA's dispute resolution procedures.  In a September 20, 2021 letter, Abbott informed DexCom that its infringement allegations were filed in breach of the dispute resolution clause and asked for a meeting "in accordance with Section J.1 of the SLA."  (Ex. 1 (9/20/21 Ltr. A. Hollis to DexCom Legal) at 3.)  DexCom refused to engage in the dispute resolution process in this case, despite Abbott's repeated attempts to do so.  (*See* D.I. 324 at 4; D.I. 295 ¶¶168-178.) That September 2021 letter further stated that if DexCom "contend[ed] that any ADC Product or activity infringes any other purportedly unlicensed patents or patent claims it owns … at any time during the SLA's term, [Abbott] requests that such dispute also be addressed at a meeting in accordance with Section J.1 of the SLA."  (Ex. 1 (9/20/21 Ltr. A. Hollis to DexCom Legal) at 3.) Yet in another case pending in this District, DexCom once again did not engage in the SLA's dispute resolution process before asserting counterclaims alleging that the same Abbott FreeStyle Libre systems—with the same sensors and components used with those sensors that the jury found to be "ADC Products" in this case—allegedly infringe additional DexCom patents, including one with a claim nearly identical to claim 1 of the '215 patent found to be licensed by the jury in this case.  (C.A. No. 23-239, D.I. 15 ¶¶22-120; C.A. No. 23-239, D.I. 25 ¶¶ 192-198; Ex. 2 (7/28/23 Ltr. D. MacDonald to DexCom Legal re '528 patent) at 2.)  Nonetheless, Abbott continues to

express its willingness to "discuss and negotiate an expeditious resolution of the dispute in good faith."  (Ex. 2 (7/28/23 Ltr. D. MacDonald to DexCom Legal re '528 patent) at 2.)

> **B.** **The Balance Of Equities Weighs Heavily In Favor Of Abbott's Request For Specific Performance**

"In balancing the equities for specific performance, the Court must consider whether 'specific performance of a validly formed contract would cause even greater harm than it would prevent.'"  *Hastings Funeral Home, Inc. v. Hastings*, C.A. No. 2021-0373, 2022 WL 16921785, at *8 (Del. Ch. Nov. 14, 2022) (quoting *Walton v. Beale*, C.A. No. 19749, 2006 WL 265489, at *7 (Del. Ch. Jan. 30, 2006) (granting specific performance)); *see also Osborn*, 991 A.2d at 1161 (same).  Here, an order of specific performance of the SLA and its forum selection and dispute resolution clauses would prevent harm to Abbott while imposing no harm or burden on DexCom—it would be forced to do what it already agreed to do.

Abbott has suffered and will continue to suffer harm without an order for specific performance of the SLA.  Due to DexCom's multiple SLA breaches, including breaches of the forum selection and dispute resolution clauses, Abbott had to defend itself from DexCom's wrongfully asserted patent claims without any notice, in the wrong venue, for about a year, and incur the additional litigation expense of moving to transfer the case to this District.  This Court acknowledged that Abbott's attorneys' fees "are a direct damage associated with DexCom's breach of the SLA's forum selection and dispute resolution clauses."  (D.I. 483 at 2.)  But it also held (over Abbott's objection) that Abbott was not entitled to recover its attorneys' fees for those breaches.  (D.I. 512 at 14-15; Ex. 3 (6/8/23 Hearing Tr.) at 87.)  Without an order for specific performance, Abbott will continue to suffer these irreparable harms, as DexCom will have both the incentive and ability to breach the SLA without consequence.

11

This harm is not merely theoretical, as DexCom has filed counterclaims in co-pending case C.A. No. 23-239 alleging Abbott's FreeStyle Libre systems infringe additional DexCom patents. (C.A. No. 23-239, D.I. 15 at ¶¶22-120.)  Once again, and despite Abbott's specific request dating back to 2021, DexCom did not engage in the SLA's dispute resolution procedures before filing these counterclaims.  (C.A. No. 23-239, D.I. 25 ¶¶ 192-198; Ex. 2 (7/28/23 Ltr. D. MacDonald to DexCom Legal re '528 patent).)  To defend its conduct, DexCom repeats arguments that the Court already rejected on summary judgment—including the argument that DexCom does not have to engage in the dispute resolution procedure so long as it has a unilateral belief that its counterclaims in C.A. No. 23-239 do not "arise under or relate to the SLA."  (Ex. 4 (8/7/23 Ltr. K. Chatfield to D. MacDonald) at 2.).  DexCom's breach of the SLA's dispute resolution procedure is even more flagrant this time.  It knowingly accuses the same Abbott FreeStyle Libre systems—with the same sensors and components used with those sensors that Abbott argued and the jury found to be "ADC Products" licensed under the SLA in this case.  (D.I. 483 at 2.)  Indeed, one of the claims asserted in case No. 23-cv-239 is substantially identical to claim 1 of the '215 patent that was found to be licensed by the jury in this case.  (Ex. 2 (7/28/23 Ltr. D. MacDonald to DexCom Legal re '528 patent) at 2.)  By filing suit and *then* agreeing to engage in negotiations, DexCom has deprived Abbott of its right to prior notice and the opportunity to resolve and narrow disputes before litigation is instituted—a right Abbott undisputedly obtained when it entered into the SLA.

The fact that DexCom has breached multiple provisions of the SLA, while the jury found that Abbott did not breach the SLA, further tip the equities in Abbott's favor.  *See Hastings Funeral*, 2022 WL 16921785, at *8 (finding "that the equities tip in [plaintiff's] favor since it has not breached the Agreement").  This Court ruled on *summary judgment* that DexCom breached the SLA's forum selection clause.  (D.I. 483 at 1-3.)  The jury also found that DexCom breached

both the SLA's dispute resolution clause and one of DexCom's warranty and representations. (D.I. 563.)  Meanwhile, the Court and the jury did not find that Abbott breached any portion of the SLA.  (*Id.*)

In contrast, abiding by the SLA's forum selection and dispute resolution clauses would not cause harm to DexCom, and would present at most a minimal burden.  Under the procedures outlined in the SLA's dispute resolution clause, the parties are to meet within 14 days after notice of a dispute to "discuss and negotiate an expeditious resolution of the dispute in good faith." (JTX-1 (SLA) ¶ J.1.)  If the parties are not able to resolve their dispute within 30 days of that initial meeting, the presidents of each party (or their direct designees) are to have a second meeting within 45 days of the initial meeting to again "discuss and negotiate in good faith to arrive at a resolution of the dispute(s)."  (*Id.*)  If the parties are not able to resolve their dispute within 30 days of that second meeting, then a party may institute litigation in Delaware.  (*Id.*)  Thus, these procedures would delay the institution of any litigation by, at most, three months—hardly a "harm" and a minimal burden if any.  If any patents DexCom plans to assert are truly and inarguably unlicensed, following the dispute resolution procedure need not even take as long as that and may be resolved within the first 14 days or less.  DexCom agreed to these procedures, and it has no basis to ignore them now.

To be clear, Abbott does not argue that the SLA captures every single patent claim that DexCom theoretically owns, or that it has a license to every DexCom patent.  But that does not provide an excuse for DexCom to ignore the SLA's forum selection and dispute resolution clauses altogether with the bare assertion that a patent dispute does not "arise under or relate to the SLA." By filing patent infringement claims and only going through the dispute resolution process later if Abbott raises a license defense, DexCom is compounding litigation, not avoiding it as the dispute

resolution clause was intended to do.  Further harm to Abbott should be prevented by ordering DexCom's specific performance of the SLA's forum selection and dispute resolution clauses.

### C.    Abbott Has No Adequate Legal Remedy For DexCom's Breaches Of The SLA

When a contract includes a provision allowing for a decree of specific performance, it supports a finding that there is no adequate remedy at law and the party is entitled to specific performance.  *See Am. Healthcare Admin. Svs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022) ("The existence of [specific performance] provisions is sufficient to support a decree of specific performance, although a court can decline to issue one if there are supervening equities or other considerations."); *Gildor v. Optical Sols., Inc.*, C.A. No. 1416-N, 2006 WL 4782348, at *11 (Del. Ch. June 5, 2006) (discussing contractual provision granting specific performance, stating "Delaware courts do not lightly trump the freedom to contract and, in the absence of some countervailing public policy interest, courts should respect the parties' bargain").  Abbott and DexCom agreed to just such a provision in the SLA, which recognized that "money damages may not be an adequate remedy at law if either Party fails to perform in any material respect any of its obligations under this Agreement" and the parties therefore "shall be entitled to seek to compel specific performance of the obligations of the other Party under this Agreement."  (JTX-1 (SLA) ¶ J.3.)  As shown above, there are not "supervening equities" at play here, as the balance of the equities weighs in favor of Abbott's request for specific performance, and thus there is no reason not to enforce this specific performance provision.

Moreover, if this specific performance provision is not enforced, Abbott is left with no remedy in law *or* equity for DexCom's breaches of the forum selection and dispute resolution clauses of the SLA (other than belated transfer to Delaware under the forum selection clause). There can be no dispute that DexCom's breaches of the SLA caused Abbott to incur attorneys' fees it would not have incurred had DexCom complied with the forum selection and dispute

resolution clauses.  (D.I. 483 at 2 (Abbott's attorneys' fees "are a direct damage associated with DexCom's breach of the SLA's forum selection and dispute resolution clauses.").)  But the Court interpreted the SLA (over Abbott's objection) as barring Abbott's recovery of those attorneys' fees attributable to DexCom's breaches.  (D.I. 512 at 14-15; Ex. 3 (6/8/23 Hearing Tr.) at 87.)  Abbott is therefore left with no legal remedy for these breaches, let alone an adequate one that would remotely put it into the position it would have been but-for DexCom's breaches.  This is precisely what the SLA's specific performance provision was designed to prevent when it acknowledged that "money damages may not be an adequate remedy at law if either Party fails to perform in any material respect any of its obligations under this Agreement," and therefore the parties are "entitled to seek to compel specific performance of the obligations of the other Party under this Agreement." (JTX-1 (SLA) ¶ J.3.)

### D.   Abbott's Proposed Order For Specific Performance Is Appropriately Tailored

An order for specific performance should be drawn to effectuate the purpose of the contract and on terms as justice requires.  *See Snow Phipps*, 2021 WL 1714202, at *55 (citing *Restatement (Second) of Contracts* § 358(1)).  The purpose of the SLA's dispute resolution clause was to give the parties an opportunity to meet and make a good faith effort to resolve any disputes arising "from, under or relating to" the SLA, ***before*** incurring the risks, burdens, and expense of litigation. And the purpose of the SLA's forum selection clause was to make Delaware the "exclusive" jurisdiction for these disputes, not merely a place to which the parties could transfer those disputes after a year of litigation elsewhere.  Justice requires an order for specific performance because DexCom has repeatedly shown its willingness to breach the SLA, causing Abbott harm for which it has no other remedy.

Abbott has tailored its proposed order for specific performance to define the disputes that may be considered to arise "from, under or relating to" the SLA, ensuring the terms are not overly

broad and the parties have guidance on when the dispute resolution procedure will be necessary. Abbott does not seek to extend the time period of the order for specific performance beyond the expiration date of the SLA, December 31, 2025.  (*See* JTX-1 (SLA) ¶ I.1.)  Abbott does not seek to enforce the forum selection and dispute resolution clauses with an order for specific performance applicable to claims that Abbott infringes foreign patents, because the Court found on summary judgment that DexCom's U.S. patent infringement lawsuit breached the SLA "the moment it was filed" but did not similarly find that DexCom's foreign actions breached the SLA.[2]

Abbott's request also does not extend to all U.S. patent infringement claims DexCom may theoretically file against Abbott, but is instead limited to claims by DexCom that Abbott's FreeStyle Libre products infringe U.S. patents, and any other U.S. patent infringement claims to which Abbott raises a license defense based on the SLA.  The FreeStyle Libre products are the products DexCom accused of infringement in this case and whose components were proven to be licensed.[3]  The inclusion of "any other U.S. patent infringement claims to which Abbott raises a license defense based on the SLA" tracks this Court's holding on summary judgment that DexCom breached the SLA the "moment it filed" its infringement claims to which Abbott later raised a non-frivolous license defense.  It also stops DexCom from again arguing and acting as if infringement lawsuits are not "disputes … arising from or under or relating to the SLA" when they are filed,

---

[2]   Abbott disagrees with the Court's summary judgment order regarding the foreign actions (D.I. 483 at 3-4) and plans to appeal that order.

[3]   DexCom admitted at trial that "A FreeStyle Libre system comprising a cell phone application and not a separate reader that accepts disposable test strips meets the definition of ADC Products in Section A(3) of the SLA."  (D.I. 577 at 519:6-10.)  And Abbott proved at trial that "its allegedly licensed sensors, and components used with those sensors, in the FreeStyle Libre 14 day with reader and FreeStyle Libre 2 with reader" are also "'ADC Products' as set forth in ¶A.3 of the SLA."  (D.I. 563 at 3.)

and as if its dispute resolution and forum selection clause obligations can be avoided until and unless DexCom has first seen Abbott's license defense to its infringement claims.

Thus, Abbott requests an order for specific performance of the SLA's forum selection and dispute resolution clauses (JTX-1 ¶¶ J.1, J.4) requiring that DexCom file any claims that Abbott's FreeStyle Libre products infringe U.S. patent claims, and any other U.S. patent infringement claims to which Abbott raises a license defense based on the SLA, only in Delaware and only after DexCom has complied with the SLA's dispute resolution clause until the SLA expires according to its own terms on December 31, 2025. This order for specific performance of the dispute resolution clause of the SLA will effectuate the purpose of that clause and provide Abbott with a remedy for DexCom's willful disregard of it.

### E.     In the Alternative, A Permanent Injunction Should Be Granted

If the Court decides that Abbott's requested remedy of specific performance should not be granted, then an order permanently enjoining DexCom along the lines of Abbott's proposed order should be granted in the alternative. To obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391; *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019); *Ctr. for Investigative Reporting v. Se. Pennsylvania Trans. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020). For the reasons already discussed above, and for the additional reasons discussed below, all these factors support entry of a permanent injunction in this case.

As discussed in Argument Sections B and C above, Abbott will be irreparably deprived of the benefit of its contract if DexCom is not permanently enjoined, and legal remedies such as

17

money damages are not available and inadequate in any event.  As discussed in Argument Section B, the balance of hardships also favors Abbott.

The public interest favors Abbott's injunction request too.  Absent an injunction, DexCom will suffer no consequence for its failure to try to resolve disputes with Abbott before DexCom launches and obtains the leverage of a potentially massive patent litigation.  That type of litigation is precisely what the SLA, including its licenses and forum selection and dispute resolution clauses, was supposed to prevent.  DexCom has gone to extraordinary lengths to prevent Abbott from having the benefit of the SLA, including refusing Abbott's requests to transfer its case to Delaware and refusing to engage in the agreed-upon dispute resolution process, even after Abbott sought court enforcement of those obligations, and even after the Texas court confirmed that Abbott had a non-frivolous license defense.  DexCom's approach is fundamentally at odds not only with the provisions of the SLA but with the public's interest in enforcing settlement agreements and in litigation avoidance more generally.  *See Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.").

Meanwhile, Abbott's proposed order would not interfere with the public's interest in protecting valid patent rights.  Patent damages are available for "infringement committed ... six years prior to the filing of the complaint or counterclaim for infringement."  35 U.S.C. § 286.  Abbott's requested order expires on December 31, 2025, which is less than six years after the March 31, 2021, mutual covenant not to sue expired.  Thus, all of the permanent injunction factors squarely support issuance of a permanent injunction in this case.

## CONCLUSION

Abbott respectfully requests that this Court order specific performance of DexCom's obligations under the forum selection and dispute resolution clauses of the SLA, as set forth in Abbott's motion and proposed order.  In the alternative, Abbott requests that the Court grant a permanent injunction consistent with the terms in Abbott's proposed order.

OF COUNSEL:

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

Amanda J. Hollis
Gregory B. Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Jason M. Wilcox P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

September 8, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

Leland G. Hansen
James M. Hafertepe
Sharon A. Hwang
Michael J. Carrozza
Manuela Cabal
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 8, 2023, upon the following in the manner indicated:

John W. Shaw, Esquire                                    *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Nathan Hamstra, Esquire                                  *VIA ELECTRONIC MAIL*
Jonathon Studer, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 North Wacker Drive, Suite 2700
Chicago, IL  60606
*Attorneys for Plaintiff*

Valerie Lozano, Esquire                                  *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Cary E. Adickman, Esquire                                *VIA ELECTRONIC MAIL*
Brian P. Biddinger, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*

David Bilsker, Esquire                                   *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Kevin P.B. Johnson, Esquire                                         *VIA ELECTRONIC MAIL*
Margaret Shyr, Esquire
Todd M. Briggs, Esquire
Cat Williams, Esquire
Zak Randell, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
*Attorneys for Plaintiff*

Gavin Frisch, Esquire                                               *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02119
*Attorneys for Plaintiff*

Theodore Kwong, Esquire                                             *VIA ELECTRONIC MAIL*
HILGERS GRABEN PLLC
10000 North Central Expy., Suite 400
Dallas, TX  75231
*Attorneys for Plaintiff*

Sophie A. Hood, Esquire                                             *VIA ELECTRONIC MAIL*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
*Attorneys for Plaintiff*

                                        */s/ Rodger D. Smith II*

                                        _____
                                        Rodger D. Smith II (#3778)