IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEXCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-605 (KAJ) |
| | ) | CONSOLIDATED |
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| ABBOTT DIABETES CARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1699 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ABBOTT'S OPENING BRIEF IN SUPPORT OF ITS
RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW**

OF COUNSEL:
Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-20000

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Abbott Diabetes Care Inc. and
Abbott Diabetes Care Sales Corp.*

Jason M. Wilcox P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 389-5000

Leland G. Hansen
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 4

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 5

LEGAL STANDARDS ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.      DexCom Breached The SLA's Licensing Provisions As A Matter Of Law ...................... 8

II.     Claims 11, 14, and 27 Of The '452 Patent Are "DexCom Licensed Patents" ................. 11

       A.     The '683 Application Fully Supports And Enables Claims 11 And 27 ................ 12

       B.     The '683 Application Fully Supports And Enables Claim 14 ............................ 14

CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajinomoto Co. v. Int'l Trade Comm'n,*
   932 F.3d 1342 (Fed. Cir. 2019)................................................................5

*Alcon Rsch., Ltd. v. Barr Labs., Inc.,*
   745 F.3d 1180 (Fed. Cir. 2014)................................................................4

*Amgen v. Sanofi,*
   143 S. Ct. 1243 (2023)................................................................5

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
   598 F.3d 1336 (Fed. Cir. 2010)................................................................4, 13

*Broadcom Corp. v. Emulex Corp.,*
   732 F.3d 1325 (Fed. Cir. 2013)................................................................11

*Cornell Univ. v. Illumina, Inc.,*
   2014 WL 12601516 (D. Del. Sept. 29, 2014)................................................................6

*Edge of the Woods v. Wilmington Savings Fund Soc'y, FSB,*
   2001 WL 946521 (Del. Super. Aug. 16, 2001)................................................................6

*FS.com Inc. v. Int'l Trade Comm'n,*
   65 F.4th 1373 (Fed. Cir. 2023) ................................................................5

*Ironburg Inventions Ltd. v. Valve Corp.,*
   2021 WL 2137868 (Fed. Cir. May 26, 2021) ................................................................11

*Ivize of Milwaukee, LLC v. Complex Litig. Support, LLC,*
   2009 WL 1111179 (Del. Ch. Apr. 27, 2009) ................................................................7

*Jacobs v. Nintendo of Am., Inc.,*
   370 F.3d 1097 (Fed. Cir. 2004)................................................................6, 7

*Krippelz v. Ford Motor Co.,*
   667 F.3d 1261 (Fed. Cir. 2012)................................................................9

*Lampi Corp. v. Am. Power Prods, Inc.,*
   228 F.3d 1365 (Fed. Cir. 2000)................................................................4

*Lochner Techs., LLC v. Vizio, Inc.,*
   567 F. App'x 931 (Fed. Cir. 2014) ................................................................4

*Morgan v. Covington Township*,
563 F. App'x 896 (3d Cir. 2014) ....................................................................4

*Norman v. Elkin*,
860 F.3d 111 (3d Cir. 2017)........................................................................4, 7

*In re P3 Health Grp. Holdings, LLC*,
2022 WL 16548567 (Oct. 31, 2022) ..............................................................7

*Purdue Pharma L.P. v. Epic Pharma, LLC*,
811 F.3d 1345 (Fed. Cir. 2016)....................................................................13

*S3 Inc. v. NVIDIA Corp.*,
259 F.3d 1364 (Fed. Cir. 2001)......................................................................4

*Sanitec Indus. v. Micro-Waste Corp.*,
2006 WL 3455000 (S.D. Tex. Nov. 28, 2006) ...............................................6

*STMicroelectronics N.V. v. Agere Sys., Inc.*,
2009 WL 144405 (Del. Super. Ct. May 19, 2009) .........................................6

*Streck v. Rsch. & Diagnostic Sys.*,
665 F.3d 1269 (Fed. Cir. 2012)......................................................................5

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009)......................................................................6

*WCM Indus., Inc. v. IPS Corp.*,
721 F. App'x 959 (Fed. Cir. 2018) ..........................................................10, 11

**Statutes**

35 U.S.C. § 112.......................................................................................................8

**Rules**

Fed. R. Civ. P. 50(a) ...............................................................................................4

**Other Authorities**

Restatement (Second) of Contracts § 346(2) ..........................................................7

# INTRODUCTION[1]

The jury correctly found that Abbott has an express license to claims 1, 7, 19, and 23 of U.S. Patent No. 10,980,452 and claim 1 of U.S. Patent No. 10,702,215.  Based on that verdict, judgment should be entered as a matter of law that DexCom breached the 2014 Settlement and License Agreement ("SLA") by suing Abbott for alleged infringement of those licensed claims.  As this Court held at summary judgment, a license is "a promise by the licensor not to sue the licensee" and if Abbott is licensed to any of the asserted claims, "DexCom [] violated that license grant by suing Abbott."  (D.I. 484 at 4.)

The Court should also grant judgment as a matter of law that Abbott has an express license to claims 11, 14, and 27 of the '452 patent.  Each of those claims is fully supported and enabled by a pre-2005 DexCom patent application, U.S. Application No. 60/614,683.  Claims 11 and 27, for example, require that the sealing member recited in claims 1 and 19 have "a raised ridge to improve a seal around the electrical contact."  DexCom's expert did not dispute that the '683 application discloses a sealing member with this feature because he couldn't.  Several figures in the '683 application clearly show a sealing member with raised ridges—a point DexCom's expert conceded when he testified that Figure 4 in the '683 application depicts a "ridge around the sealing member."  (Tr. 1115:7-13.)  Abbott's expert showed those figures to the jury, described how that ridged sealing member protects the electrical contact from moisture, and testified that the '683 application fully supports and enables claims 11 and 27.  (Tr. 745:22-749:10; 750:21-753:17; 810:21-813:1.)  The '683 application and this undisputed testimony from both parties' experts is

---

[1]     "Abbott" refers to Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.  "DexCom" is DexCom, Inc.

more than sufficient to establish that the '683 application supports and enables these claims, and a reasonable jury could not have discounted this undisputed evidence.

The support for claim 14 is equally indisputable.  Claim 14 simply combines the sandwiched sensor design of claim 19 with the durometer hardness requirement in claim 1.  The jury's verdict establishes that the jury found each of those elements fully supported and enabled by the '683 application; otherwise, the jury would not have found claims 1 and 19 expressly licensed.  But the jury must have incorrectly found the combination of those elements is not fully supported and enabled.  DexCom never made that argument and it finds no support in the record.  The same embodiment in the '683 application that describes a sandwiched sensor design also describes electrical contacts with a higher durometer hardness than the sealing member.  Like claims 1 and 19, claim 14 is thus fully supported and enabled as a matter of law.

## NATURE AND STAGE OF THE PROCEEDINGS

Three months after the parties' mutual covenant not to sue expired, DexCom sued Abbott for allegedly infringing the '452 patent and four other DexCom patents.  (D.I. 1.)  Abbott subsequently sued DexCom for breaching the SLA by, among other things, asserting Abbott infringed licensed patents.  (C.A. No. 21-1699-KAJ, D.I. 2.)  The two cases were consolidated after DexCom's infringement action was transferred from the Western District of Texas, and the Court stayed DexCom's infringement claims pending resolution of Abbott's license defense.  (*See* D.I. 176, ¶¶ 1-2.)

The Court held a four-day trial on the license defense in July 2023.  The SLA grants Abbott a license "under DexCom Licensed Patents" to make, use, and sell "ADC Products."  Abbott asserted that 17 claims of the '452 patent are DexCom Licensed Patents (a defined term that, in some instances, includes individual claims).  (*See* D.I. 563 at 2.)  Abbott's expert, Dr. Matthew Schurman, analyzed all 17 claims and offered the opinion that each one is fully supported and

enabled by the '683 application, which is a pre-2005 DexCom patent application. (Tr. 744:12-18, 755:20-756:3.) Dr. Schurman directed the jury to several paragraphs and figures in the '683 application that supported his opinions. (*See, e.g.*, Tr. 744:1-6; 750:21-753:17; Ex. 8, PDX-8.037.)[2] It was undisputed that the '683 application supported and enabled many of the relevant claim elements. For those elements, Dr. Schurman used color-coded demonstratives to identify the undisputed elements, tie those elements to specific structural components in the '452 patent, and pinpoint where those structural components are disclosed in the '683 application. (Tr. 744:7-756:3; Ex. 8 at PDX-8.031-38.) DexCom's expert, Dr. Kenneth Gall, disputed only whether the '683 application fully supported and enabled "[t]he sandwich seal design, the male/female connectors, and durometer hardness." (Tr. 1091:3-9, *see also* Tr. 749:14-750:6.) Dr. Schurman explained in detail how the '683 application supports and enables those three elements. (Tr. 814:25-841:24, 908:8-909:15.)

The jury found for Abbott on several of its defenses. The jury found that Abbott has an express license to claims 1, 7, 19, and 23 of the '452 patent (and claim 1 of the '215 patent). (D.I. 563 at 2.) The jury also found that the sensors and components used with those sensors in FreeStyle Libre 14-day and FreeStyle Libre 2 products are licensed "ADC Products" under the SLA. (D.I. 563 at 3.) With respect to the parties' breach-of-contract claims, the jury found that DexCom breached the SLA's dispute resolution clause, that Abbott had not breached that clause, and that DexCom had not breached its licensing commitments by asserting that Abbott infringed licensed claims. (D.I. 563 at 3-4.) The jury found that Abbott did not have an express license to claims 10, 11, 14, 26, 27 41, 45, 48, 49, 62, 63, 67, and 68 of the '452 patent. (D.I. 563 at 2.)

---

[2]      The exhibits and trial exhibits cited herein are attached to the Declaration of Jason Wilcox in Support of Abbott's Post-Trial Motions concurrently filed with this brief.

Abbott now renews its motion for judgment as a matter of law (1) that DexCom breached the SLA by filing suit asserting licensed claims, and (2) that Abbott has an express license to claims 11, 14, and 27 of the '452 patent.  (*See* D.I. 558.)

## LEGAL STANDARDS

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  A court must "view[] the evidence in the light most favorable to the nonmoving party," *Morgan v. Covington Township*, 563 F. App'x 896, 899 (3d Cir. 2014), but "a scintilla of evidence is not enough" to tip the scales in favor of the non-moving party, *Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017).

A claim is fully supported by the written description in a pre-2005 DexCom patent or patent application if the pre-2005 patent or application "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  Under this test, the disclosure is not "limited to a preferred embodiment," *Lampi Corp. v. Am. Power Prods, Inc.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000), or insufficient "just because [the claim] is broader than the specific examples disclosed," *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 939 (Fed. Cir. 2014).  The '683 application similarly "need not include subject matter that is known in the field of the invention" because "patents are written for persons experienced in the field of the invention."  *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001).  The "critical inquiry" is instead whether the written description provides "sufficient detail that a person of ordinary skill would understand that the inventor was in possession of it at the time of filing."  *Alcon Rsch., Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190-91 (Fed. Cir. 2014).

The enablement requirement is satisfied if a skilled artisan, reading the specification, would be able to "make and use the claimed invention" without undue experimentation. *FS.com Inc. v. Int'l Trade Comm'n*, 65 F.4th 1373, 1375 (Fed. Cir. 2023); *Amgen v. Sanofi*, 143 S. Ct. 1243, 1254 (2023). When assessing enablement, the specification must again be "viewed from the perspective of one of skill" in the relevant art, *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1359 (Fed. Cir. 2019), and thus "a patentee can rely on information that is 'well-known in the art.'" *Streck v. Rsch. & Diagnostic Sys.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012).

## ARGUMENT

### I.    DexCom Breached The SLA's Licensing Provisions As A Matter Of Law

The Court should grant judgment as a matter of law that DexCom breached the SLA by filing suit asserting claims it licensed to Abbott. DexCom sued Abbott in June 2021, asserting that the FreeStyle Libre, FreeStyle Libre 2, and FreeStyle Libre 3 products infringe the '452 and '215 patents among others. (D.I. 1 at 21-34, 44-68.) But ¶ C.2 of the SLA grants Abbott a royalty-free license to "DexCom Licensed Patents" to "make, have made, use, offer for sale, sell, distribute, import, and have imported ADC Products." (JTX-1 ¶ C.2.) The jury found claims 1, 7, 19, and 23 of the '452 patent are DexCom Licensed Patents (a term that covers individual claims) and that the sensors and components used with those sensors in the FreeStyle Libre and FreeStyle Libre 2 products are ADC Products (D.I. 563 at 2-3); DexCom has conceded that the entire FreeStyle Libre 3 system is likewise an ADC Product (Tr. 519:6-10.) The jury further found that DexCom breached ¶ H.3 of the SLA by obtaining claim 1 of the '215 patent, (D.I. 563 at 2)—a breach that confers a "license[] to such claim on a royalty-free" basis "consist[e]nt with Paragraph C.2 of the Agreement," (JTX-1 ¶ H.3; *see also* D.I. 561 at 14.) In these circumstances, there is no question that DexCom accused licensed products of infringing licensed claims and that, as a result, DexCom's infringement suit breached the SLA.

"[A] patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275-76 (Fed. Cir. 2009); D.I. 484 at 4. DexCom broke that promise by asserting that licensed components of the FreeStyle Libre products infringed licensed claims of the '452 and '215 patents. As the Court previously ruled, assuming Abbott is licensed, "DexCom [] violated that license grant by suing Abbott." (D.I. 484 at 4.) This Court's decision is hardly an outlier. Courts across the country have similarly held a licensor "as a matter of law commit[s] a material breach of [a] License Agreement" by filing suit asserting licensed patents. *Sanitec Indus. v. Micro-Waste Corp.*, 2006 WL 3455000, at *39-40 (S.D. Tex. Nov. 28, 2006); *STMicroelectronics N.V. v. Agere Sys., Inc.*, 2009 WL 144405, at *4 (Del. Super. Ct. May 19, 2009); *Edge of the Woods v. Wilmington Savings Fund Soc'y, FSB*, 2001 WL 946521, at *7 (Del. Super. Aug. 16, 2001) (breached contractual release by "institut[ing] and maint[aining]" an action on released claims).

DexCom did not dispute at trial that filing suit asserting that licensed products infringed licensed claims would violate the SLA. That is not surprising because the Court had already rejected DexCom's primary defense before trial. Prior to trial, DexCom had argued that a license is not a promise not to sue when a contract contains a separate, more limited covenant not to sue. The Court disagreed: "That the SLA contains both a license grant and covenant not to sue does not mean that there can be no overlap between the two provisions such that the license ceases to provide protection against suit." (D.I. 484 at 4.) Indeed, nothing in the SLA suggests the license grants in paragraphs C.2 and H.3 conferred an affirmative defense to an infringement claim divorced from the promise not to sue. Under the SLA, a license and a covenant not to sue remain "the same thing." *Cornell Univ. v. Illumina, Inc.*, 2014 WL 12601516, at *5 (D. Del. Sept. 29, 2014).

The Court correctly found support for its decision in *Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097 (Fed. Cir. 2004); D.I. 484 at 4 (citing *Jacobs*).  When faced with a contract containing both a license provision and a covenant not to sue provision, the Federal Circuit did not decide that the license provision was merely a defense that could be raised in an infringement suit and something less than a promise not to sue.  Instead, it found the coexistence of these provisions supported an interpretation of the license provision to grant an affirmative right to sell the recited products—something that went "much further" than mere "free[dom] of [] liability for [] infringement."  *Id.* a 1101.

Abbott is not required to establish damages to succeed on its breach claim.  "It is axiomatic that when there is a breach of a valid and binding contract … [t]he party whose legal right has been invaded by such breach is entitled to at least nominal damages, for the law recognizes that every injury imports damage."  *Ivize of Milwaukee, LLC v. Complex Litig. Support, LLC*, 2009 WL 1111179, at *12 n.48 (Del. Ch. Apr. 27, 2009); *see Norman v. Elkin*, 860 F.3d 111, 128-29 (3d Cir. 2017) (applying Delaware law, holding a court "erred in rejecting the breach of contract claim … on the grounds that Norman could not prove anything but nominal damages").  This small nominal award is "'fixed without regard to the amount of loss'" to "vindicate a breach of contract" and establish the rights of the parties.  *In re P3 Health Grp. Holdings, LLC*, 2022 WL 16548567, at *9 & n.2 (Oct. 31, 2022) (quoting Restatement (Second) of Contracts § 346(2)); *see also Ivize*, 2009 WL 1111179, at *12 (nominal damages awarded "in recognition of a technical injury").  A judgment that DexCom breached the SLA's licensing provisions will vindicate Abbott's license rights and establish that DexCom cannot subject Abbott to the burden and expense of defending against infringement claims asserting licensed patents.  (*See* Tr. 468:3-24 (describing Abbott's burden and expense).)

10

## II.        Claims 11, 14, and 27 Of The '452 Patent Are "DexCom Licensed Patents"

As discussed above, the jury correctly found claims 1, 7, 19, and 23 of the '452 patent are "DexCom Licensed Patents." (D.I. 563 at 2.) Judgment should be entered as a matter of law that three additional claims of the '452 patent—claims 11, 14, and 27—are also licensed.

The SLA's definition of "DexCom Licensed Patents" has three relevant parts. (JTX-1 ¶ A.13.) *First*, DexCom granted a license to DexCom patents and patent applications with pre-2005 filing dates. (*Id.* ¶ A.13(a).) *Second*, DexCom granted a license to its patents claiming priority to those pre-2005 patents and applications. (*Id.* ¶ A.13(b).) *Third*, in ¶ A.13(c), DexCom granted a license to a claim in any patent that "claim[s] priority to a patent or application captured in subsection (b), but not claiming priority to a patent or application captured in subsection (a)," if the claim "is fully supported and enabled in the manner required under 35 U.S.C. § 112." (*Id.* ¶ A.13(c).)

Each of the relevant claims of the '452 patent satisfies the requirements of ¶ A.13(c). There is no dispute the '452 patent claims priority to U.S. Patent No. 8,615,282. (JTX-8; *see also* Tr. 735:8-738:3.) The '282 patent, in turn, claims priority to the '683 application (PTX-35)—a pre-2005 DexCom patent application. (*See* PTX-121; Tr. 732:16-735:7.) The '452 patent thus satisfies the first part of the test in ¶ A.13(c). The patent claims priority to a patent captured by ¶ A.13(b) (DexCom patent that claims priority to a pre-2005 DexCom patent application), but does not itself claim priority to a pre-2005 patent or application. (*See* JTX-1 ¶ A.13(c)(i).) DexCom did not dispute any of these points at trial, and the jury necessarily made these factual findings when deciding claims 1, 7, 19, and 23 are licensed. The only question, then, is whether claims 11,

14, and 27 are fully supported and enabled by the '683 application.  The answer is yes, each of those claims is fully supported and enabled by that pre-2005 application as a matter of law.[3]

## A.    The '683 Application Fully Supports And Enables Claims 11 And 27

Claims 11 and 27 depend from claims 1 and 19, respectively, and add that "the sealing member comprises a raised ridge to improve a seal around the electrical contact."  (JTX-8, claims 11, 27.)  Figures 3 and 4 of the '683 application depict a sealing member with such a ridge:



(PTX-35, Figs. 3, 4 (annotated); *see also id.* Fig. 10B.)  As those figures illustrate, the perimeter of the seal 36 has a raised ridge that surrounds the seal's interior.  *See Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1268-69 (Fed. Cir. 2012) (holding district court erred by not granting JMOL where "[t]here is no question that a person of ordinary skill, reviewing these figures, would understand them to show" a claimed feature).  That seal "fits within the contact holder 34 and provides a gas-tight seal configured to protect the contacts 28 from outside moisture."  (*Id.* ¶ 118; *see also id.* ¶¶ 113, 119; Tr. 810:21-812:4; Ex. 8 at PDX-8.038.)  Dr. Schurman presented annotated versions

---

[3]       Abbott also has an implied license to these claims, and others, for the reasons discussed in its concurrently-filed implied-license brief.

of Figures 3 and 4 to the jury and pointed the jury to the portions of the '683 application describing the sealing member depicted in those figures.  (Tr. 750:21-751:16, 753:1-5; *see generally id.* 750:21-753:17; Ex. 8 at PDX-8.037.)  And DexCom's expert, Dr. Gall, acknowledged Figure 4 depicts a "***ridge around the sealing member***."  (Tr. 1115:10-17 (describing Ex. 8 at PDX-8.067); *see also* PTX-35, Fig. 4.)

Dr. Schurman also described how the seal protects the electrical contact and other electronic components.  As he told the jury, "the user needs to sort of click in the electronics unit" 16 shown in Figure 3, "which actually compresses the seal in order to make that seal seal against the components."   (Tr. 812:16-20; PTX-35, Figs. 2-3; Ex. 8 at PDX-8.039-040.) Dr. Schurman explained "[w]hen [the electronics unit] comes down and compresses, then what you have is the seal is being squeezed together, and it sandwiches the sensor within the seal." (Tr. 812:23-813:1.)  The raised ridge is the portion of the seal that will first come into contact with the electronics unit, and the compression of that ridge by the electronics unit therefore necessarily contributes to and improves the resulting seal at the end of the compression process—just as claims 11 and 27 require.

Based on these disclosures, Dr. Schurman testified unequivocally that the '683 application fully supports and enables a sealing member with a raised ridge that improves the seal.  As part of his testimony, Dr. Schurman color-coded each of the allegedly licensed claims of the '452 patent; he highlighted claims 11 and 27 in green to signify the elements in those claims are associated with the sealing member.  (Tr. 745:22-746:24, 748:24-749:10, 753:1-5; PDX-8.032, 8.034.) Dr. Schurman told the jury that, for the elements he color-coded, there is no dispute between the experts that those claim elements from the '452 patent are fully supported and enabled by the '683 application.  (Tr. 746:25-747:22, 748:20:749:13.); *see also WCM Indus., Inc. v. IPS Corp.*, 721

13

F. App'x 959, 966-67 (Fed. Cir. 2018) (limitation-by-limitation testimony not required where the "infringement dispute at trial focused on only a single claim limitation").  Dr. Schurman then testified that "the claims are fully supported and enabled by the '683 application" and that "the '683 application fully supports and enables all of the claimed structural components of the '452 patent," a category that includes the raised ridges.  (Tr. 755:20-756:3 (asking Dr. Schurman to "[s]ummariz[e] your usage of the colored highlighted claim language with respect to what was previously described and enabled by the '683 application").)  DexCom did not challenge these opinions on cross-examination.

DexCom's expert, Dr. Gall, did not dispute that the '683 application fully supports and enables a sealing member with a raised ridge either.  Dr. Gall disputed only whether the '683 application fully supported and enabled "[t]he sandwich seal design, the male/female connectors, and durometer hardness."  (Tr. 1090:24-1091:5, *see also* Tr. 749:14-750:6.)  The Federal Circuit has previously held JMOL is appropriate where a party "did not specifically argue at trial that it did not practice [a certain] limitation" and "elected not to crossexamine [the other side's] expert on this issue."  *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013).  JMOL is equally appropriate here, especially where both experts testified that the sealing member has ridges.  (Tr. 745:22-746:24, 748:24-749:10; 753:1-5; 1115:7-13.)  That testimony, and the figures and description of the sealing member in the '683 application, establish as a matter of law that the '683 application fully supports and enables claims 11 and 27.  *See Ironburg Inventions Ltd. v. Valve Corp.*, 2021 WL 2137868, at *5 (Fed. Cir. May 26, 2021).

### B.    The '683 Application Fully Supports And Enables Claim 14

The '683 application fully supports and enables claim 14 of the '452 patent for similar reasons.  Claim 14 depends from claim 1 and additionally requires that "the sealing member comprises an upper portion and a lower portion, wherein an ex vivo portion of the transcutaneous

analyte sensor is sandwiched between the upper and lower portion." (JTX-8, claim 14.) The jury found the '683 application fully supports and enables an identical claim element in claim 19. (JTX-8, claim 14; D.I. 563 at 2.) The only difference between claims 14 and 19 is that claim 14, through its dependency on claim 1, requires an electrical contact with a higher durometer hardness than the sealing member—a requirement the jury necessarily found fully supported and enabled when it found claim 1 licensed. (*Compare* JTX-8, claims 1, 14; *with* claim 19; *see* D.I. 563 at 2.). The jury accordingly must have found the '683 application does not fully support and enable a sealing member that **both** sandwiches the sensor **and** is softer than the electrical contact. But DexCom never advanced that argument and it finds no support in the record.

The same embodiment of the '683 application that describes a sealing member that is softer than the electrical contact also describes a sensor sandwiched by the sealing member. The '683 application discloses that the seal depicted in Figures 7A-D and 10B is "formed from an elastomeric material, such as silicone" (PTX-35 ¶ 118), while the electrical contact is "metallic" or "hard plastic" (*id.* ¶¶ 119, 121, 166, 170; *see also* Tr. 824:20-825:24). Using several contemporaneous references, Dr. Schurman explained to the jury that a skilled artisan would understand "[t]he metal" the '683 application describes "would always be harder than the seal." (Tr. 825:24-826:3; *see generally* Tr. 815:7-826:3, 827:20-833:6; PTX-562; PTX-505.) He further explained that the contacts remain harder than the seal even when "formed from [the] conductive elastomeric material such as a carbon black elastomer," described as an alternative embodiment of the contacts depicted in Figures 7A-D and 10B. (PTX-35 ¶ 120; Tr. 826:4-827:19.) Based on the same figures, Figures 7A-D and 10B, Dr. Schurman then testified that the '683 application depicts the upper and lower portions of the sealing member "com[ing] together and form[ing] a sandwich on the ex vivo portion of the sensor" after the cannula used to insert the sensor is retracted.

15

(Tr. 833:14-836:13; *see also* Tr. 812:5-813:1 ("the seal … sandwiches the sensor), 813:11-814:17 ("sandwich down"), 908:22-909:13 (testifying that the "two faces" of the sealing member "will come together and sandwich the sensor between them").   The jury, given its verdict for claims 1 and 19, must have accepted Dr. Schurman's testimony.

"The disclosures pointed to by [Dr. Schurman for the sandwiching and durometer hardness elements] are all 'directly related'"—again, they are about the same embodiment—"and thus there is no impermissible picking and choosing" as a matter of law.   *See Purdue Pharma L.P. v. Epic Pharma, LLC*, 811 F.3d 1345, 1358-59 (Fed. Cir. 2016) (rejecting argument that the district court erred by using distinct sections of prior reference and reassembling them into an embodiment to find that all limitations were present).   Moreover, Dr. Schurman did not stop there.   He testified "the claims as a whole" and "all the claim elements in their combination" are "fully supported and enabled by the '683 application."   (Tr. 750:13-20; *see also* Tr. 755:20-756:3, 841:15-24.)   This testimony establishes that the '683 application would not only "reasonably convey[] to those skilled in the art" that DexCom possessed each of the individual elements required by claim 14— a fact established by the jury's verdict—but also the combination of those elements as arranged in the claim.   *Ariad Pharms.,* 598 F.3d at 1351.   Dr. Gall disputed whether the '683 application fully supports and enables a sandwiched sensor or a sensor that is softer than the electrical contact at all, but did not dispute that, if the '683 application fully supports and enables both of these features, it fully supports and enables a device that combines them.   The evidence, viewed as a whole, thus supports only one conclusion:   claim 14 of the '452 patent, and the combination of features it recites, is fully supported and enabled by DexCom's '683 application.

## CONCLUSION

Judgment as a matter of law should be granted that (1) DexCom breached the SLA by filing suit asserting claims it licensed to Abbott, and that (2) claims 11, 14, and 27 of the '452 patent are "DexCom Licensed Patents."

OF COUNSEL:

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

Amanda J. Hollis
Gregory B. Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Jason M. Wilcox P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 389-5000


September 8, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Rodger D. Smith II

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*


Leland G. Hansen
James M. Hafertepe
Sharon A. Hwang
Michael J. Carrozza
Manuela Cabal
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 8, 2023, upon the following in the manner indicated:

John W. Shaw, Esquire                                          *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Nathan Hamstra, Esquire                                       *VIA ELECTRONIC MAIL*
Jonathon Studer, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 North Wacker Drive, Suite 2700
Chicago, IL  60606
*Attorneys for Plaintiff*

Valerie Lozano, Esquire                                          *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Cary E. Adickman, Esquire                                     *VIA ELECTRONIC MAIL*
Brian P. Biddinger, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*

David Bilsker, Esquire                                            *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Kevin P.B. Johnson, Esquire                          *VIA ELECTRONIC MAIL*
Margaret Shyr, Esquire
Todd M. Briggs, Esquire
Cat Williams, Esquire
Zak Randell, Esquire
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
*Attorneys for Plaintiff*

Gavin Frisch, Esquire                                *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02119
*Attorneys for Plaintiff*

Theodore Kwong, Esquire                              *VIA ELECTRONIC MAIL*
HILGERS GRABEN PLLC
10000 North Central Expy., Suite 400
Dallas, TX  75231
*Attorneys for Plaintiff*

Sophie A. Hood, Esquire                              *VIA ELECTRONIC MAIL*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
*Attorneys for Plaintiff*


                                    */s/ Rodger D. Smith II*

                                    _____
                                    Rodger D. Smith II (#3778)